**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| SARAH,<br><br>Plaintiff,<br><br>v.<br><br>Google LLC, YouTube LLC, James JACKSON, also known online as "ONISION," and LUCAS JACKSON, formerly known online as "LAINEYBOT," "LAINEY" and "KAI,"<br><br>Defendants. | CASE NO: 1:23-CV-00223-HYJ-SJB<br><br>HON. HALA Y. JARBOU |

**DEFENDANTS GOOGLE LLC AND YOUTUBE LLC'S MOTION TO DISMISS COMPLAINT FOR FAILURE TO STATE A CLAIM**

Pursuant to Fed. R. Civ. P. 12(b)(6) and 47 U.S.C. § 230, Defendants Google LLC and YouTube, LLC move this Court to dismiss Plaintiff's Complaint in its entirety. As set out more fully in the accompanying Brief in Support of this Motion, Plaintiff's claims fail to state a claim because Plaintiff's claims under 18 U.S.C. § 2255 (Count III, which is based on alleged violation of 18 U.S.C. § 1591(a); and Count IV, which is based on an alleged violation of 18 U.S.C. § 2422) fail because Plaintiff seeks to hold YouTube vicariously liable for the Jackson Defendants' actions. But the private right of action created by § 2255 does not allow secondary liability, and Plaintiff's allegations do not come close to suggesting that YouTube itself violated § 1591 (by trafficking Plaintiff or "knowingly assisting, supporting, or facilitating" the Jackson's alleged trafficking effort) or § 2422 (by knowingly persuading Plaintiff to engage in illegal sexual activity). Additionally, any claim under § 2255 is barred by the Communications Decency Act, 47 U.S.C. § 230(c)(1) ("§ 230"), because it seeks to hold YouTube liable for publishing (or failing to remove) content created by the Jacksons.

Additionally, Plaintiff fails to state a claim under 18 U.S.C. § 1595, which is predicated on an alleged violation of § 1591 (Count II). Plaintiff does not allege that Google and YouTube have committed a criminal violation of § 1591 which is required to evade § 230's immunity. Plaintiff

has also not pleaded a claim under § 1595 independently.

Pursuant to Local Rule 7.1(d), counsel for Defendants certifies that he requested Plaintiff's concurrence in this Motion via email and phone correspondence. Plaintiff does not concur in the relief sought in this Motion and intends to file an opposition.

Respectfully submitted,

**Clark Hill PLC**

By: */s/ Christopher M. Trebilcock*
Christopher M. Trebilcock
500 Woodward Avenue, Suite 3500
Detroit, Michigan 48226
ctrebilcock@clarkhill.com
(313) 965-8300
ctrebilcock@clarkhill.com

DATE: May 19, 2023

**Wilson Sonsini Goodrich & Rosati Professional Corporation**

By: */s/ Brian M. Willen*________________
Brian M. Willen
Benjamin Margo
1301 Avenue of the Americas, 40th Floor
New York, NY 10019-6022
(212) 999-5800
bwillen@wsgr.com
bmargo@wsgr.com

DATE: May 19, 2023

Attorneys for Defendants
GOOGLE LLC and YOUTUBE, LLC

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| SARAH,<br><br>Plaintiff,<br><br>v.<br><br>Google LLC, YouTube LLC, James JACKSON, also known online as "ONISION," and LUCAS JACKSON, formerly known online as "LAINEYBOT," "LAINEY" and "KAI,"<br><br>Defendants. | CASE NO: 1:23-CV-00223-HYJ-SJB<br><br>HON. HALA Y. JARBOU |

**BRIEF IN SUPPORT OF DEFENDANTS GOOGLE LLC AND YOUTUBE LLC'S MOTION TO DISMISS COMPLAINT FOR FAILURE TO STATE A CLAIM**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................ 1
BACKGROUND ........................................................ 2
A. The YouTube Video Service ........................................................ 2
B. The Jackson Defendants ........................................................ 3
C. Plaintiff and Her Claims ........................................................ 3
ARGUMENT ........................................................ 6
I. PLAINTIFF HAS NO VIABLE CLAIM AGAINST YOUTUBE UNDER § 2255.......... 7
A. A Claim Under § 2255 Requires Allegations That The Defendant Violated A Predicate Criminal Statute. ........................................................ 7
1. Plaintiff Has Not Alleged That YouTube Violated § 2422. ........................ 9
2. Plaintiff has Not Alleged That YouTube Violated § 1591(a).................. 10
B. Section 230 Bars Plaintiff's Claims Under § 2255. ........................................ 14
II. PLAINTIFF FAILS TO STATE A CLAIM UNDER § 1595. ........................................ 16
A. Plaintiff Fails to Get Through The FOSTA Gateway Because She Does Not Allege YouTube Violated § 1591. ........................................................ 16
B. Even Without Regard To FOSTA, Plaintiff Fails to State a Claim Against YouTube Under § 1595. ........................................................ 18
CONCLUSION ........................................................ 22

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*A.B. v. Hilton Worldwide Holdings Inc.*,
484 F. Supp. 3d 921 (D. Ore. 2020)....22

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....7

*Boim v. Holy Land Found. for Relief & Dev.*,
549 F.3d 685 (7th Cir. 2008)....8

*Cent. Bank, N.A. v. First Interstate Bank, N.A.*,
511 U.S. 164 (1994)....8

*Diez v. Google, Inc.*,
831 F. App'x 723 (5th Cir. 2020)....15

*Doe #1 v. Twitter, Inc.*,
No. 22-15103, 2023 U.S. App. LEXIS 10808 (9th Cir. May 3, 2023)....11, 15, 17

*Doe v. City of Gauley Bridge*,
2022 U.S. Dist. LEXIS 150204 (S.D. W. Va. Aug. 22, 2022), *appeal docketed*, No. 22-2025 (4th Cir. Sept. 29, 2022)....7

*Doe v. Hansen*,
2018 U.S. Dist. LEXIS 81453 (E.D. Mo. May 15, 2018)....7, 8

*Doe v. Kik Interactive, Inc.*,
482 F. Supp. 3d 1242 (S.D. Fla. 2020)....*passim*

*Doe v. MySpace, Inc.*,
528 F.3d 413 (5th Cir. 2008)....15

*Doe v. Red Roof Inns, Inc.*,
2020 U.S. Dist. LEXIS 67142 (N.D. Ga. Apr. 13, 2020), *aff'd*, 21 F.4th 714....21

*Doe v. Red Roof Inns, Inc.*,
21 F.4th 714 (11th Cir. 2021)....2, 18, 19, 20

*Doe v. Reddit, Inc.*,
2021 U.S. Dist. LEXIS 129876 (C.D. Cal. July 12, 2021) *aff'd,* 51 F.4th 1137....15

*Does v. Reddit, Inc.*,
51 F.4th 1137 (9th Cir. 2022)....*passim*

*DSPT Int'l, Inc. v. Nahum*,
2007 U.S. Dist. LEXIS 101988 (C.D. Cal. Aug. 14, 2007), *aff'd*, 624 F.3d 1213 (9th Cir. 2010)....8

*Fair Hous. Council v. Roommates.com*,
521 F.3d 1157 (9th Cir. 2008)....15

*G.G. v. Salesforce.com, Inc.*,
603 F. Supp. 3d 626 (N.D. Ill. 2022).... *passim*

*Geiss v. Weinstein Co. Holdings LLC*,
383 F. Supp. 3d 156 (S.D.N.Y. 2019)....18, 20

*H.G. v. Inter-Continental Hotels Corp.*,
489 F. Supp. 3d 697 (E.D. Mich. 2020)....8, 18, 20, 21

*J.B. v. G6 Hosp., LLC*,
2021 U.S. Dist. LEXIS 170338 (N.D. Cal. Sept. 8, 2021),
*aff'd sub nom. J.B. v. Craigslist, Inc.*,
2023 U.S. App. LEXIS 10806 (9th Cir. May. 3, 2023)....17

*Jean-Charles v. Perlitz*,
937 F. Supp. 2d 276 (D. Conn. 2013)....7

*Jones v. Dirty World Ent. Recordings LLC*,
755 F.3d 398 (6th Cir. 2014)....14, 15

*Jones v. Glob. Info. Grp., Inc.*,
2009 U.S. Dist. LEXIS 23887 (W.D. Ky. Mar. 25, 2009)....8

*Kassem v. Ocwen Loan Servicing, LLC*,
704 F. App'x 429 (6th Cir. 2017)....3

*Klayman v. Zuckerberg*,
753 F.3d 1354 (D.C. Cir. 2014)....14

*L.H. v. Marriott Int'l, Inc.*,
604 F. Supp. 3d 1346 (S.D. Fla. 2022)....17

*M.H. v. Omegle.com, LLC*,
2022 U.S. Dist. LEXIS 4543 (M.D. Fla. Jan. 10, 2022)....10, 14, 15, 17

*Noble v. Weinstein*,
335 F. Supp. 3d 504 (S.D.N.Y. 2018)....11, 20

*O'Kroley v. Fastcase, Inc.*,
831 F.3d 352 (6th Cir. 2016)....14

*Ratha v. Phatthana Seafood Co.*,
2017 U.S. Dist. LEXIS 230292 (C.D. Cal. Dec. 21, 2017), *aff'd*, 26 F.4th 1029 (9th Cir. 2022)....8

*S.J. v. Choice Hotels Int'l, Inc.*,
473 F. Supp. 3d 147 (E.D.N.Y. 2020)....22

*Singleton v. Clash*,
951 F. Supp. 2d 578 (S.D.N.Y. 2013)....................9

*Swartwout v. Edgewater Grill LLC*,
2013 U.S. Dist. LEXIS 97250 (W.D. Mich. July 12, 2013)....................8

*United States v. Afyare*,
632 F. App'x 272 (6th Cir. 2016)....................10, 11, 12

*United States v. Bailey*,
228 F.3d 637 (6th Cir. 2000)....................10

*Upton v. Vicknair*,
2021 U.S. Dist. LEXIS 118756 (E.D. La. June 25, 2021)....................7

*Zeran v. Am. Online, Inc.*,
129 F.3d 327 (4th Cir. 1997)....................14

**STATUTES**

18 U.S.C. § 1591.................... *passim*

18 U.S.C. § 1591(a).................... *passim*

18 U.S.C. § 1591(a)(1)....................10

18 U.S.C. § 1591(a)(2)....................10

18 U.S.C. § 1591(e)(3)....................13

18 U.S.C. § 1595.................... *passim*

18 U.S.C. § 1595(a)....................18

18 U.S.C. § 2255.................... *passim*

18 U.S.C. § 2255(a)....................7

18 U.S.C. § 2422.................... *passim*

18 U.S.C. § 2422(a)....................9

18 U.S.C. § 2422(b)....................9, 10

47 U.S.C. § 230.................... *passim*

47 U.S.C. § 230(c)(1)....................2, 14

47 U.S.C. § 230(e)(5)(A)....................16, 17, 18

**RULES**

Fed. R. Civ. P. 12(b)(6) ........................................................................................................1

## INTRODUCTION

Plaintiff offers troubling allegations against Defendants James Jackson ("Onision") and Lucas Jackson ("Lainey") (collectively "the Jacksons" or "Jackson Defendants"). She alleges that as a minor she was "groomed" by the Jacksons through an extended series of online communications that led her to make multiple visits to the Jacksons' home in Washington, where she was eventually raped by Onision when she was 18 years old. These allegations may well give Plaintiff a claim against the Jackson Defendants. But Plaintiff has also sued Google LLC and YouTube, LLC (collectively, "YouTube"). And as to YouTube, her Complaint is entirely deficient and should be dismissed under Fed. R. Civ. P. 12(b)(6).

Plaintiff does not claim that YouTube was involved in the Jacksons' grooming efforts or that it knew anything about those efforts or her rape. Instead, Plaintiff seeks to hold YouTube liable because it gave Onision a platform—not a platform for sex trafficking but for posting popular videos, like the viral hit "Banana Song" and a range of videos about "teenage concerns." Like many other YouTube personalities, Onision's channel was monetized—he was for a time able to earn advertising revenue from his YouTube videos. Plaintiff does not claim that any of those monetized videos were unlawful or that they documented sex trafficking or reflected the sexual abuse of any children. Nor does Plaintiff allege that she ever communicated with the Jacksons through YouTube; to the contrary, all of Plaintiffs' communications with the Jacksons that were part of the alleged grooming occurred on other online services (or in person). In short, YouTube's only purported link to Plaintiff's experiences with the Jacksons is that she first learned of Onision because he operated a well-known YouTube channel—and years after the fact, Onision uploaded videos to YouTube in which he claimed that Plaintiff had raped and sexually extorted him. As a matter of law, such allegations fail to state any viable cause of action against YouTube.

First, Plaintiff's claims under 18 U.S.C. § 2255 (Count III, which is based on alleged

violation of 18 U.S.C. § 1591(a); and Count IV, which is based on an alleged violation of 18 U.S.C. § 2422) fail because Plaintiff seeks to hold YouTube vicariously liable for the Jackson Defendants' actions. But the private right of action created by § 2255 does not allow secondary liability, and Plaintiff's allegations do not come close to suggesting that YouTube itself violated § 1591 (by trafficking Plaintiff or "knowingly assisting, supporting, or facilitating" the Jackson's alleged trafficking effort) or § 2422 (by knowingly persuading Plaintiff to engage in illegal sexual activity). Moreover, any claim under § 2255 is barred by the Communications Decency Act, 47 U.S.C. § 230(c)(1) ("§ 230"), because it seeks to hold YouTube liable for publishing (or failing to remove) content created by the Jacksons.

Plaintiff's claim under 18 U.S.C. § 1595, which is similarly predicated on an alleged violation of § 1591 (Count II), fares no better. While certain § 1595 claims against online services are carved out of § 230, that is so only where the service provider itself committed a criminal violation of § 1591, which Plaintiff has not alleged here. *See, e.g.*, *Does v. Reddit, Inc.*, 51 F.4th 1137, 1145 (9th Cir. 2022). While the Court could stop there, Plaintiff has not pleaded a claim under § 1595 even without regard to § 230 because she makes no plausible allegation that YouTube knowingly benefited from participating in a sex trafficking "venture" that victimized her or that YouTube knew or should have known about the Jackson Defendants' alleged efforts to traffic her. *See, e.g.*, *Doe v. Red Roof Inns, Inc.*, 21 F.4th 714 (11th Cir. 2021).

## BACKGROUND

### A. The YouTube Video Service

Google owns and operates YouTube, an online video service with billions of users and millions of user-created "channels" offering a vast array of video content. Compl. ¶¶ 9-11. YouTube users can create and post videos to their channels, which other users can view. Users are not allowed to create a regular YouTube account—and thus to upload videos or post comments on

others' videos—until they are 13. Declaration of Benjamin Margo ("Decl.") Ex. A (Terms of Service) at 3.[1]

### B. The Jackson Defendants

James Jackson, also referred to as "Onision," is a well-known YouTube content creator. Compl. ¶ 21. He was at one time part of the YouTube Partner Program ("YPP"), which allowed him to receive a share of advertising revenue associated with the videos he posted on YouTube. *Id.* ¶ 115.[2] Onision also maintained numerous separate forums—not on YouTube—for communicating with his fans and other members of the public; these are referred to in the Complaint as "Onision Forums." *Id.* ¶¶ 149-150, 158-163. YouTube had no alleged role in hosting or supervising these Onision Forums; they "were overseen by Onision and Lainey." *Id.* ¶ 154. It was there (not on YouTube) that fans could message Onision or Lainey in hope of a response. *See id.* ¶¶ 37, 150-51.

### C. Plaintiff and Her Claims

Plaintiff (proceeding under the name "Sarah") alleges that the Jackson Defendants "groomed" her when she was a minor, including years worth of online communications between them, multiple trips by Sarah to visit the Jacksons at their home, and culminating in Onision's alleged rape of her when she was 18 years old. Compl. ¶¶ 4-7, 40-43, 175-315. None of these communications or alleged grooming activity took place on YouTube, however, and YouTube was not involved in Onision's alleged rape of Sarah in their home in Washington. Instead, according to the Complaint, the relevant communications occurred on "the Onision Forums" (¶¶ 33, 37, 149-

[1] YouTube's Terms of Service are cited extensively in the Complaint (¶¶ 25-26, 35, 86-87, 90, 126, 363, 383, 410) and are incorporated by reference. *See, e.g.*, *Kassem v. Ocwen Loan Servicing, LLC*, 704 F. App'x 429, 432 (6th Cir. 2017).

[2] The standard YPP contract, referred to and fairly incorporated in the Complaint (*id.* ¶¶ 22, 82, 99), is attached as Exhibit B to the declaration of Benjamin Margo.

151, 154-155), Twitter (¶¶ 178, 183), Apple's Messages app (¶ 273 screenshot), a group chat on the app Kik (¶ 179, 184), and "a group chat called 'The Three Musketeers'" (¶ 189). Thus, while the Complaint includes various screenshots showing messages between Plaintiff and the Jackson Defendants, all of those screenshots are taken from online services *other* than YouTube. *See, e.g., id.* ¶ 128 (Facebook)); ¶¶ 143, 183, 192, 197, 200-202, 208, (Twitter); *id.* ¶ 201 (Instagram).

YouTube's purported connection to the events giving rise to this case is far more indirect. Plaintiff alleges that as a depressed minor she "found Onision's channel on Youtube and was attached to the topics, as they spoke about self-harm and self-image." *Id.* ¶¶ 175-176. And Plaintiff says that she "came to know who Lainey was by watching the Onision channels" and later befriended him "online." *Id.* ¶¶ 38-39. The Complaint does not identify any specific videos that Sarah claims to have seen on Onision's YouTube channels, and Plaintiff does not allege that anything she saw on those channels was illegal or improper. She also does not allege anything about Lainey's use of YouTube that has anything to do with this case.

Plaintiff merely alleges that because she was a "fan" of the Onision's channel, she eventually "reached out to Onision and Lainey on their Twitter page" (*id.* ¶ 178) and through the (non-YouTube-hosted) "Onision forums" (*id.* ¶ 37). Consistent with that, Plaintiff does not allege to have exchanged ***any*** messages or otherwise communicated with the Jacksons through YouTube. Instead, all of the alleged communications between the Jacksons and Sarah that occurred during the alleged grooming process took place off of YouTube. *Id.* ¶¶ 178-315. After the initial communication on Twitter, the Jacksons began messaging Sarah via an online service called Kik. *Id.* ¶ 184. The Complaint alleges that Sarah fell into a relationship with Lainey through these online messages—again, all of which took place off of YouTube—and believed that she was "in love" with Lainey. *Id.* ¶¶ 186-204. Eventually, the Jacksons invited Sarah to visit them at their home in

Washington State, and starting in September 2016 and continuing for the next three years, Plaintiff did so multiple times. *Id.* ¶¶ 40-41, 207-265. During these visits, Plaintiff alleges, the Jacksons continued to groom her (*id.* ¶¶ 210-264), and in a visit to Washington in January 2019, after she turned 18, she claims that Onision raped her (*id.* ¶¶ 266-301). She made at least two more visits to see the Jacksons later that year. *Id.* ¶¶ 311-315.

While these allegations are disturbing, the Complaint alleges almost nothing to link the Jacksons' alleged grooming and eventual alleged sexual assault of Sarah to YouTube. As noted, Plaintiff does not allege that she viewed any objectionable content on either of the Jacksons' YouTube channels. The Complaint generally alludes to videos that Onision posted that are not linked to Plaintiff. Compl. ¶¶ 14-18, 102-106, 112, 117, 119. While some of that content may have been "controversial," none of it is alleged to have been illegal, and much of it seems like generic online fare. *See id.* ¶¶ 19, 111 (describing Onision's viral hit "Banana Song"); ¶¶ 20, 113 (explaining that "Onision rose in popularity because he was commenting on and doing skits portraying other YouTuber['s]"). The Complaint also points to certain videos that Onision posted on YouTube in 2022—years after the events at issue—in which he accused Plaintiff of "sexual extortion" and of having raped him. *Id.* ¶¶ 321-324. In short, while Plaintiff alleges generally that "Onision used his fame and platform to objectify children, to form relationships with underage girls, to entice them, groom them" (¶ 29; ¶ 129), the Complaint offers no factual allegations suggesting that any actual "grooming" (as defined in ¶ 6) occurred on or through YouTube.

Plaintiff's theory instead seems to be that Onision became popular by posting content on YouTube that appealed to younger people and engaged in predatory off-platform behavior, including the alleged grooming and rape of Sarah. But the Complaint does not allege that YouTube encouraged, took part in, or benefited from the Jacksons' off-platform actions. Instead, Plaintiff

generally alleges that "YouTube was receiving value and profit-sharing with Onision on … content" that he posted on his YouTube channel. ¶ 36; *see also id.* ¶¶ 21-28, 126-127, 129. But here again Plaintiff does not identify any monetized YouTube content that depicted or related to her or that was intended to lure her (or others) to engage in sexual activity. Plaintiff certainly does not allege that the Jacksons ever posted, much less earned money from, any CSAM on YouTube, whether relating to Plaintiff or anyone else. And Plaintiff alleges that YouTube demonetized Onision in early 2021. *Id.* ¶¶ 334-35.

Nevertheless, Plaintiff has sued not just the Jacksons, but YouTube, which she faults for giving a platform to Onision and failing to do enough to police his channels. Compl. ¶¶ 14-21, 35-37, 102-106, 111-113, 115-117. Plaintiff alleges that YouTube was generally on notice of his offensive videos about women (¶¶ 35, 120-124) (though, again, none of those had anything to do with Plaintiff or her alleged grooming) and claims generally that by not deplatforming Onision, YouTube "enable[d] . . . his harmful and volatile content" (¶ 127, *see also id.* ¶¶ 35-37, 129, 334-337). But the Complaint does not allege that YouTube played any role in the conduct by the Jacksons that was allegedly criminal. Nor does Plaintiff allege that YouTube had any knowledge of the Jacksons' purported efforts to groom her, much less the alleged sexual assault, or of any communications between them.

Based on this, Plaintiff asserts the following causes of action against YouTube: (1) a claim under the Trafficking Victims' Protection Reauthorization Act, 18 U.S.C. § 1595 ("TVPRA") for benefitting from a sex trafficking venture in violation of 18 U.S.C. § 1591(a) (Count II); and (2) claims under 18 U.S.C. § 2255 for purported sex trafficking in violation of 18 U.S.C. § 1591(a) (Count III) and for enticement under 18 U.S.C. § 2422 (Count IV).

## ARGUMENT

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## I. PLAINTIFF HAS NO VIABLE CLAIM AGAINST YOUTUBE UNDER § 2255.

Plaintiff's claims against YouTube under § 2255 are predicated on alleged violations of two different federal criminal statutes: (1) 18 U.S.C. § 1591(a) (Count III); and (2) 18 U.S.C. § 2422 (Count IV). Both fail.

### A. A Claim Under § 2255 Requires Allegations That The Defendant Violated A Predicate Criminal Statute.

Section 2255 authorizes victims of certain crimes relating to child pornography to bring civil claims and recover damages. 18 U.S.C. § 2255(a). It is well settled that § 2255 does not provide for vicarious or other forms of secondary liability. *See, e.g.*, *Doe v. City of Gauley Bridge*, 2022 U.S. Dist. LEXIS 150204, at *33-34 (S.D. W. Va. Aug. 22, 2022), *appeal docketed*, No. 22-2025 (4th Cir. Sept. 29, 2022) ("[T]he Court finds that Congress did not intend to permit a theory of vicarious liability under § 2255"); *Upton v. Vicknair*, 2021 U.S. Dist. LEXIS 118756, at *13 (E.D. La. June 25, 2021) ("a claim under § 2255 is limited to a defendant [who] committed the acts described in any of the listed offenses") (cleaned up); *Doe v. Hansen*, 2018 U.S. Dist. LEXIS 81453, at *14, (E.D. Mo. May 15, 2018) ("the civil remedy provision of [§ 2255] does not permit claims for secondary or vicarious liability"); *Jean-Charles v. Perlitz*, 937 F. Supp. 2d 276, 281-82 (D. Conn. 2013) ("§ 2255 does not provide for secondary liability").

This is supported by the statute's legislative history (*e.g.*, *Gauley Bridge*, 2022 U.S. Dist. LEXIS 150204, at *32-33), and by the rule that courts will not read federal statutes to allow secondary liability without clear intent from Congress. *See Jean-Charles*, 937 F. Supp. 2d at 281

("[T]he lack of any reference to secondary liability in § 2255 is fatal to the plaintiffs' position."); *Hansen*, 2018 U.S. Dist. LEXIS 81453, at *30-31 (same); *accord Cent. Bank, N.A. v. First Interstate Bank, N.A.*, 511 U.S. 164, 182 (1994) ("[W]hen Congress enacts a statute under which a person may sue and recover damages from a private defendant for the defendant's violation of some statutory norm, there is no general presumption that the plaintiff may also sue aiders and abettors."); *Swartwout v. Edgewater Grill LLC*, 2013 U.S. Dist. LEXIS 97250, at *9 (W.D. Mich. July 12, 2013) ("[T]he court is not at liberty to superimpose common-law claims of secondary liability, such as conspiracy, joint enterprise, or aiding and abetting, to expand the class of persons liable for statutory violations."); *Jones v. Glob. Info. Grp., Inc.*, 2009 U.S. Dist. LEXIS 23887, at *8 (W.D. Ky. Mar. 25, 2009) ("[F]ederal courts typically decline to create secondary liability not specified by statute."); *Boim v. Holy Land Found. for Relief & Dev.*, 549 F.3d 685, 689 (7th Cir. 2008) ("statutory silence on the subject of secondary liability means there is none.").

This defeats Plaintiff's claims against YouTube based on § 2255. Plaintiff's theory—that YouTube is liable because it is in an "agency and/or profit-sharing relationship" with Onision (Compl. at 1; *see also* ¶ 22)—is precisely the kind of vicarious liability that the statute does not allow.[3] Instead, to pursue a claim under § 2255, Plaintiff would have to allege that YouTube itself

[3] Even if agency liability were a viable theory in this case, Plaintiff fails to plausibly allege that the Jackson Defendants were acting as agents of YouTube, much less in a way that would make YouTube liable for sex trafficking. Nothing in the YPP agreement creates an agency relationship between YouTube and content creators, and the Complaint's bare, unsupported, and (tellingly) equivocal allegation (¶ 22) does not change that. *See, e.g.*, *H.G. v. Inter-Continental Hotels Corp.*, 489 F. Supp. 3d 697 (E.D. Mich. 2020) (rejecting as factually and legally insufficient allegations that hotel franchisees were agents of the franchisor defendant); *Ratha v. Phatthana Seafood Co.*, 2017 U.S. Dist. LEXIS 230292, at *20 (C.D. Cal. Dec. 21, 2017) (explaining that an "arms-length commercial relationship" "does not create an agency relationship") (cleaned up), *aff'd*, 26 F.4th 1029 (9th Cir. 2022). But even if an agency relationship had existed, Plaintiff does not (and could not) allege that Onision's purported off-platform sexual misconduct was within the scope of any such agency. *See, e.g.*, *DSPT Int'l, Inc. v. Nahum*, 2007 U.S. Dist. LEXIS 101988, at *8 (C.D. Cal. Aug. 14, 2007), *aff'd*, 624 F.3d 1213 (9th Cir. 2010) ("principals are only liable for the torts of

"violated at least one of the criminal statutes listed in Section 2255." *Singleton v. Clash*, 951 F. Supp. 2d 578, 584 (S.D.N.Y. 2013) (cleaned up). Plaintiff's claims are premised on two such statutes; but in neither case does the Complaint come close to alleging that YouTube's conduct amounted to a criminal violation of those laws.

1. Plaintiff Has Not Alleged That YouTube Violated § 2422.

Section 2422 creates criminal liability for those who "knowingly persuade[], induce[], entice[], or coerce[]" a person in connection with "prostitution" or "any sexual activity for which any person can be charged with a criminal offense" "or attempts to do so." 18 U.S.C. § 2422(a) & (b). Subsection (a) forbids knowingly persuading, inducing, enticing, or coercing "any individual to travel in interstate … commerce … to engage in" criminal sexual activity. Subsection (b) does not require inducement to travel, but requires that the affected person "has not attained the age of 18 years." Compl. ¶ 403 (quoting both subsections). Plaintiff alleges this statute was violated when the Jackson Defendants "used … grooming to lure, recruit, solicit, and entice minor Plaintiff" to cross state lines "for the purpose of engaging in sex acts with her." *Id.* ¶ 405; *accord* ¶¶ 401, 406-409.

But Plaintiff makes ***no*** allegation that YouTube itself did anything to try to induce her to travel to Washington, much less to do so to engage in criminal sexual activity. Nor could she. Instead, Plaintiff's only effort to link YouTube to any purported violation of § 2422 is to allege that "YouTube was notified that Onision was using their platform to groom, lure, persuade, induce, entice, or coerce children with his platform, but continued to profit-share with him and did not curtail his harmful abuse," Compl. ¶ 410. That is not a violation by YouTube of § 2422, much less one that relates to Plaintiff. While the Complaint does not go so far as to allege even that YouTube

their agents committed within the scope of their agency") (cleaned up).

knew that the Jacksons were trying to or had lured Sarah to Washington for sexual activity (*see id.* ¶ 411), even if YouTube had had such knowledge, that would not amount to an allegation that YouTube *itself* had knowingly enticed Plaintiff in violation of § 2422. *Cf. United States v. Bailey,* 228 F.3d 637, 639 (6th Cir. 2000) (explaining that § 2422(b) "only applies to those who 'knowingly' persuade or entice, or attempt to persuade or entice, minors" and thus "only affects those who intend to target minors"). Without that, Plaintiff has no claim under § 2255.

2. Plaintiff has Not Alleged That YouTube Violated § 1591(a).

For similar reasons, Plaintiff cannot state a § 2255 claim against YouTube based on § 1591(a). As relevant here, that statute imposes criminal liability on anyone who "knowingly … recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person" knowing or in reckless disregard of the fact that "the person has not attained the age of 18 years and will be caused to engage in a commercial sex act." 18 U.S.C. § 1591(a)(1). The beneficiary liability provision of § 1591 creates liability where a defendant (1) "knowingly" "benefits" (2) from "participation in a venture" (which § 1591 defines as "knowingly assisting, supporting, or facilitating a violation of subsection (a)(1)"); while (3) knowing or in reckless disregard of the fact that "the person" who was trafficked in violation of § 1591(a)(1) was under 18 and "will be caused to engage in a commercial sex act." *Id.* § 1591(a)(2).

To "hold a defendant criminally liable as a beneficiary of sex trafficking, the defendant must have actually 'engaged in some aspect of the sex trafficking.'" *Does v. Reddit, Inc.*, 51 F.4th 1137, 1145 (9th Cir. 2022) (quoting *United States v. Afyare*, 632 F. App'x 272, 286 (6th Cir. 2016)); *accord Afyare*, 632 F. App'x at 286 (holding that "§ 1591(a)(2) targets those who participate in sex trafficking"). "[C]ourts interpret 18 U.S.C. § 1591 to require actual knowledge and overt participation in a sex trafficking venture by the ICS provider—generalized knowledge without active participation is insufficient." *M.H. v. Omegle.com, LLC*, 2022 U.S. Dist. LEXIS

4543, at *8 (M.D. Fla. Jan. 10, 2022); *accord Doe v. Kik Interactive, Inc.,* 482 F. Supp. 3d 1242, 1251 (S.D. Fla. 2020) ("Section 1591 requires knowing and active participation in sex trafficking by the defendants"); *Noble v. Weinstein*, 335 F. Supp. 3d 504, 524 (S.D.N.Y. 2018) ("some participation in the sex trafficking act itself must be shown.").

Under § 1591, therefore, "[m]ere association with sex traffickers" is not enough, *Reddit*, 51 F.4th at 1145, nor is alleging an ongoing "business relationship" between the defendant and a sex trafficker. *Doe #1 v. Twitter, Inc.*, No. 22-15103, 2023 U.S. App. LEXIS 10808, at *5 (9th Cir. May 3, 2023) ("*Reddit* … requires a more active degree of 'participation in the venture' than a 'continuous business relationship' between a platform and its users.'"); *accord Afyare*, 632 F. App'x at 286 (§ 1591 does not "criminalize a defendant's 'mere negative acquiescence'"). Instead, the beneficiary defendant must actively and knowingly support the criminal sex trafficking violation and additionally (in the case of a minor victim) must know that the victim "has not attained the age of 18" and would be caused to be "engage[d] in a commercial sex act." *Reddit*, 51 F.4th at 1145 ("establishing criminal liability requires that a defendant knowingly benefit from knowingly participating in child sex trafficking").

The Complaint here offers no factual allegations suggesting that YouTube did any such thing. First, Plaintiff nowhere alleges that YouTube actually participated in the purported sex trafficking activity—much less did so knowingly. As discussed, the only alleged link between YouTube and Plaintiff's alleged grooming by the Jacksons is that YouTube generally allowed Onision to post videos on its platform and that those videos attracted an audience to Jackson, including Plaintiff, who reached out to him or Lainey through separate channels not hosted by YouTube. Compl. ¶¶ 14-21, 37-38, 176-179. Plaintiff also alleges that, at least before his channel was demonetized in 2021 (*id.* ¶ 334), Onision received some of the advertising revenue from

videos he posted—but again, these videos are not alleged to be unlawful or to have been the means by which Plaintiff was trafficked by the Jacksons. *Id.* ¶¶ 28, 36, 115-117, 127, 129, 153. In short, none of the communications between Plaintiff and the Jacksons that allegedly culminated in the Jacksons bringing Plaintiff to Washington occurred on or through YouTube. Compl. ¶¶ 40, 178-315. Even taking the allegations in the Complaint as true, therefore, YouTube did not "participate [in] and commit some 'overt act' that further[ed] the sex trafficking aspect" of any "venture" involving the Jackson Defendants. *Afyare*, 632 F. App'x at 286.

Nor does the Complaint allege that any assistance YouTube may have provided to the Jacksons was done *knowing* that they were engaged in sex trafficking. *See, e.g., id.* at 632 F. App'x at 285 ("mere membership" in a venture is insufficient if the defendant is "ignorant of the venture's sex trafficking activities (and the means and methods thereof)"). Plaintiff does not allege that YouTube was aware of any of her communications with the Jacksons, much less communications that amounted to unlawful sexual grooming. The most Plaintiff alleges is that "[a]fter Sarah moved in, word got out that a minor child had moved in with Onision and Lainey and many people on YouTube were not comfortable with this" (Compl. ¶ 331)—and that several years *after* the events in question Onision posted videos accusing Sarah of "sexual extortion" (*id.* ¶¶ 321-325). None of this creates liability under § 1591. Unidentified YouTube users being "not comfortable" in some unspecified way with the living situation of other users does not invest YouTube with knowledge of alleged rape—much less make it responsible for alleged off-platform criminal activity by a third party. Nor does Onision posting videos *denying* wrongdoing; even assuming his allegations against Sarah were false, YouTube cannot be charged with (retroactively) knowing what the Jacksons did merely because they publicly insisted on their innocence.[4]

[4] Plaintiff also vaguely alleges that YouTube was notified multiple times that Onision was

Apart from all that, § 1591 requires that the defendant know or recklessly disregard that the trafficking victim was under 18 and "will be caused to engage in a commercial sex act." 18 U.S.C. 1591(a). Plaintiff offers no allegation that YouTube had such knowledge. She does not allege that YouTube knew that she was communicating with the Jacksons, much less knew that the Jacksons were attempting to engage her in a sex act for which she would give or receive something of value. *Id.* § 1591(e)(3).

In short, the Complaint does not come close to stating a claim that YouTube violated the beneficiary provisions of § 1591. Courts have repeatedly dismissed such claims against online service providers based on far more substantial allegations. *See, e.g.*, *Reddit*, 51 F.4th at 1139-40, 1145 (rejecting allegations that Reddit violated § 1591 by allowing the sale of advertising on pages featuring child pornography, and failing to remove such material "even when users report it"; such allegations suggested merely that Reddit had "'turned a blind eye' to . . . content posted on its platform"—"not that it actively participated in sex trafficking"); *G.G. v. Salesforce.com, Inc.*, 603 F. Supp. 3d 626, 642-43 (N.D. Ill. 2022) (Salesforce did not violate § 1591 even when it provided support to Backpage, a website used to post sex trafficking advertisements depicting plaintiff); *Kik*, 482 F. Supp. 3d at 1251 (messaging platform did not violate § 1591 when users used the platform to solicit sexual activity with minors and the platform had general knowledge that sex trafficking incidents were occurring). This Court should do likewise.

---

"harming young people with his platform." Compl. ¶ 363. This apparently refers to Onision's posting of content that was "objectifying, offensive, and controversial" (*id.* ¶ 14) —"specifically targeting teen users and their insecurities" (*id.* ¶ 117). *See also id.* ¶ 16-17, 103-106, 112, 117-119, 124. But posting offensive content is not sex trafficking, and it does not violate § 1591. And none of this content has anything to do with Plaintiff, much less suggest that YouTube knew that the Jacksons were doing anything to harm her.

**B. Section 230 Bars Plaintiff's Claims Under § 2255.**

While they fail of their own accord, Plaintiff's § 2255 claims are also barred by § 230. Section 230(c)(1) applies to "interactive computer service provider[s]" and immunizes them from claims that seek to treat them as "publisher[s]" of third-party content. *O'Kroley v. Fastcase, Inc.*, 831 F.3d 352, 355 (6th Cir. 2016); *accord Jones v. Dirty World Ent. Recordings LLC*, 755 F.3d 398, 406 (6th Cir. 2014). Section 230 applies where (1) the defendant is a "provider ... of an interactive computer service"; (2) the allegedly harmful content at issue was "provided by another information content provider," and not the defendant; and (3) the claim seeks to hold the defendant liable as a "publisher or speaker" of that content. 47 U.S.C. § 230(c)(1); *see also O'Kroley*, 831 F.3d at 355; *Kik*, 482 F. Supp. 3d at 1248; *M.H.*, 2022 U.S. Dist. LEXIS 4543, at *15.

Here, it is indisputable that YouTube "is an interactive computer service, an entity that provides 'access by multiple users to a computer server,'" *O'Kroley*, 831 F.3d at 355 (Google is interactive computer service), and that all of the information at issue (including all the material posted by the Jackson Defendants) was created and provided by third-parties, not by YouTube. Yet Plaintiff seeks to hold YouTube liable as a publisher of that third-party content. Her claims are premised on the idea that YouTube should have removed or made less prominent Onision's content or terminated his channel because it was "objectifying, offensive, and controversial." Compl. ¶ 14; *see also id.* ¶¶ 1, 16-18, 29, 35, 37, 103-106, 112-113, 117-120, 123, 126-129, 336-337. Plaintiff also alleges that YouTube should have prevented Onision from monetizing the videos he posted on YouTube. *Id.* ¶¶ 1, 22-28, 35-36, 115-117, 120-127, 129, 334-335.

Imposing such liability for publishing decisions regarding third-party content is the heart of what § 230(c)(1) prohibits. *See, e.g.*, *Klayman v. Zuckerberg*, 753 F.3d 1354, 1359 (D.C. Cir. 2014) ("the very essence of publishing is making the decision whether to print or retract a given piece of content"); *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997) (§ 230 protects

against liability for the "exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone, or alter content"); *Doe v. MySpace, Inc.*, 528 F.3d 413, 420 (5th Cir. 2008) (no liability under § 230 for "decisions relating to the monitoring, screening, and deletion of content"); *Fair Hous. Council v. Roommates.com*, 521 F.3d 1157, 1170-1171 (9th Cir. 2008) ("[A]ny activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230."). As the Sixth Circuit has explained, "[w]ithout § 230, persons who perceive themselves as the objects of unwelcome speech on the internet could threaten litigation against interactive computer service providers, who would then face a choice: remove the content or face litigation costs and potential liability. Immunity shields service providers from this choice." *Jones*, 755 F.3d at 407-08.

Accordingly, courts have consistently applied § 230 to bar similar claims that online service providers are liable for supporting sex trafficking (or similar offenses) by allowing the posting of (or failing to remove) third-party content that allegedly helped facilitate such misconduct. *See, e.g.*, *Kik*, 482 F. Supp. 3d at 1249 (claim that defendants "fail[ed] to enact policies that would have prevented her from being trafficked by fellow Kik users" is "exactly the type of claim that CDA immunity bars"); *Doe #1*, 2023 U.S. App. LEXIS 10808, at *6 ("the district court correctly ruled that section 230 precluded Plaintiffs from stating a viable claim for possession and distribution of child pornography"); *M.H.,* 2022 U.S. Dist. LEXIS 4543, at *12-14 (§ 230 barred claim "that Omegle created a forum that harbored, enticed, and solicited child sex trafficking" and related claims that "seek to redirect liability onto Omegle for the ultimate actions of their users."); *Doe v. Reddit, Inc.*, 2021 U.S. Dist. LEXIS 129876, at *1, 8-11 (C.D. Cal. July 12, 2021) (§ 230 barred claims that Reddit allowed posting of "sexually explicit videos and images of individuals under the age of 18") *aff'd,* 51 F.4th 1137; *Diez v. Google, Inc.*, 831 F. App'x 723, 724-25 (5th

Cir. 2020) (same, for claims against Google for allegedly failing "to filter out certain images" of child pornography). This case is no different. Plaintiff's claims seek to hold YouTube liable for the actions of its users (the Jacksons), and those claims are based on the theory that YouTube should have more vigorously exercised its prerogatives as a publisher by monitoring, removing, or restricting access to, or advertising on, content created by those users. Section 230 does not allow such claims.

## II. PLAINTIFF FAILS TO STATE A CLAIM UNDER § 1595.

In addition to her claim under § 2255, Plaintiff also asserts a claim based on the TVPRA, which allows civil claims based on violations of federal criminal statutes relating to sex trafficking. 18 U.S.C. § 1595. Plaintiff's § 1595 claim against YouTube is based on a purported violation of § 1591, and it fails as a matter of law. First, in light of § 230, it is well settled that § 1595 claims against online service providers require allegations that the service provider itself criminally violated § 1591—which, as discussed, Plaintiff does not and could not allege. Second, even putting aside § 230, Plaintiff does not plausibly allege that YouTube violated § 1595, which requires plausible allegations that the defendant knowingly participated in and benefitted from a venture that it had reason to know was engaged in a relevant sex trafficking violation.

### A. Plaintiff Fails to Get Through The FOSTA Gateway Because She Does Not Allege YouTube Violated § 1591.

Unlike claims under § 2255, certain civil claims under § 1595 are exempted from § 230. 47 U.S.C. § 230(e)(5)(A). But this carve-out, created in 2018 as part of the Fight Online Sex Trafficking Act ("FOSTA"), is narrow. By its terms, it applies only to claims under § 1595 "if the conduct underlying the claim constitutes a violation of section 1591 of that title." § 230(e)(5)(A).

Applying the plain language of the statute and its legislative history, courts—including most recently the Ninth Circuit—have repeatedly held that "for a plaintiff to invoke FOSTA's

immunity exception, she must plausibly allege that the website's own conduct violated section 1591." *Reddit*, 51 F.4th at 1141; *accord Doe #1*, 2023 U.S. App. LEXIS 10808, at *1 (same); *L.H. v. Marriott Int'l, Inc.,* 604 F. Supp. 3d 1346, 1367 (S.D. Fla. 2022) ("FOSTA withdrew immunity from only those § 1595 claims in which the defendant's conduct violated the TVPRA's criminal provision, 18 U.S.C. § 1591"); *Kik*, 482 F. Supp. 3d at 1251 ("FOSTA permits civil liability for websites only 'if the conduct underlying the claim constitutes a violation of section 1591.' And section 1591 requires knowing and active participation in sex trafficking by the defendants."); *J.B. v. G6 Hosp., LLC,* 2021 U.S. Dist. LEXIS 170338, at *39 (N.D. Cal. Sept. 8, 2021) (FOSTA "provides an exemption from immunity for a section 1595 claim if, but only if, the defendant's conduct amounts to a violation of section 1591."), *aff'd sub nom. J.B. v. Craigslist, Inc.*, 2023 U.S. App. LEXIS 10806 (9th Cir. May. 3, 2023); *G.G.*, 603 F. Supp. 3d at 641-42 (same). In short, a "complaint against a website that merely alleges trafficking by the website's users—without the participation of the website—would not survive." *Reddit*, 51 F.4th at 1142.

Here, however, as discussed above, Plaintiff does not even try to allege, nor could she, that YouTube itself engaged in a violation of § 1591. *See supra* section I.A.2. Without that, Plaintiff has no § 1595 claim against YouTube that can survive § 230. *See, e.g.*, *L.H.*, 604 F. Supp. 3d at 1367 ("because L.H. did not allege in her complaint that craigslist [sic] itself violated § 1591, the Court finds her claim does not fall within the FOSTA exemption"); *Kik*, 482 F. Supp. 3d at 1251 ("Plaintiff has not alleged facts that would plausibly establish that Defendants knowingly participated in the sex trafficking venture involving her; she alleges that Defendants knew that other sex trafficking incidents occurred on Kik. This does not satisfy FOSTA's requirement…."); *M.H.*, 2022 U.S. Dist. LEXIS 4543, at *18 ("Without allegations that Omegle had actual knowledge of, or overtly participated in the sex trafficking venture by John Doe, Plaintiffs fail to

state a plausible sex trafficking claim that would escape CDA 230 immunity.”).

### B. Even Without Regard To FOSTA, Plaintiff Fails to State a Claim Against YouTube Under § 1595.

While the Court need go no further, Plaintiff's § 1595 claim against YouTube would fail even without regard to FOSTA or § 230. The TVPRA authorizes civil liability only where a defendant “knowingly benefit[ted] financially or by receiving anything of value” “from participation in a venture” that it “knew or should have known has engaged in an act in violation of this chapter,” here, sex trafficking under § 1591. 18 U.S.C. § 1595(a). The Eleventh Circuit has clearly set out the elements a plaintiff must allege to state such a claim:

> We hold that Section 1595(a) should be applied according to its plain meaning: that is, to state a claim for beneficiary liability under the TVPRA, a plaintiff must plausibly allege that the defendant (1) knowingly benefited (2) from taking part in a common undertaking or enterprise involving risk and potential profit, (3) that the undertaking or enterprise violated the TVPRA as to the plaintiff, and (4) that the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA as to the plaintiff.

*Red Roof Inns*, 21 F.4th at 719”); *see also, e.g., H.G.*, 489 F. Supp. 3d at 704 (dismissing beneficiary claim under § 1595). Plaintiff falls far short of pleading these elements as to YouTube.

*First,* even assuming that YouTube entered into some “venture” with James Jackson via the monetization agreement for his YouTube channel (*see* Compl. ¶ 22), that was not a “sex trafficking” venture. The plain language of § 1595 requires that the “venture” from which the defendant benefitted was engaged in a violation of the sex trafficking laws (here § 1591). Entering into a venture with third parties wholly unrelated to sex trafficking does not give rise to liability—even if it turns out that those third parties were separately engaged in illegal activity. *See, e.g., H.G..,* 489 F. Supp. 3d at 704 (under § 1595, “a plaintiff must plead facts showing that the defendant knew or should have known of sex trafficking *by the particular venture in which the defendant allegedly participated.*”); *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156,

169 (S.D.N.Y. 2019) ("The participation giving rise to the benefit must be participation in a sex-trafficking venture, not participation in other activities engaged in by the sex traffickers that do not further the sex-trafficking aspect of their venture."); *cf. G.G.*, 603 F. Supp. 3d at 645 ("a plaintiff must 'connect the dots' between their trafficking and the specific defendant").

Plaintiff's claims founder on that principle. The YPP monetization agreement is a standard-form agreement between YouTube and scores of different content creators to share advertising revenue associated with their videos. *See* Compl. ¶¶ 21-26, 80-87; Ex. B. An agreement to share ad revenue on YouTube videos is ***not*** a venture to engage in sex trafficking—much less as to Plaintiff. Moreover, as discussed above, there is no allegation that any of the videos that Onision monetized on YouTube included any sex trafficking content, or were the means that the Jacksons used to try to lure Plaintiff into an unlawful sexual relationship. Even crediting the allegations in the Complaint, therefore, the Jackson Defendants' efforts to "groom" Plaintiff occurred outside of YouTube and were not part of the limited video-advertising relationship YouTube had with Onision. As such, Plaintiff has "provided no plausible allegations that [YouTube] took part in the common undertaking of sex trafficking." *Red Roof Inns*, 21 F.4th at 726-27 ("These allegations may suggest that the franchisors financially benefited from renting hotel rooms to the Does' sex traffickers. But they do nothing to show that the franchisors participated in a common undertaking involving risk or profit that violated the TVPRA—*i.e.*, the alleged sex trafficking ventures.").

Courts have repeatedly rejected beneficiary claims under the TVPRA where the economic relationship between the Defendant and an alleged sex trafficker was similarly disconnected from any actual trafficking activity. In *G.G.*, for example, the court rejected a 1595 claim where Plaintiffs failed to "adequately allege[] that Salesforce 'participated' in the venture with Backpage that trafficked G.G." 603 F. Supp. 3d at 647. That was so even though the parties had a long-term

commercial relationship: "The mere fact that Salesforce's software played a critical role in Backpage's expansion, indeed, even if such expansion would not be possible without the capabilities provided by that software, is not enough to demonstrate Salesforce's own participation in any venture with Backpage." *Id.* at 648; *see also, e.g.*, *Geiss*, 383 F. Supp.3d at 169 ("The TWC Defendants undoubtedly benefited from H. Weinstein's continued employment at TWC.... The controlling question, however, is whether H. Weinstein provided any of those benefits to TWC because of TWC's facilitation of H. Weinstein's sexual misconduct. The FAC pleads no facts that would plausibly support such a conclusion."); *Noble*, 335 F. Supp. 3d at 524 (allegations that beneficiary defendant "benefited financially from Harvey Weinstein's promotion of films and other business-related activities in foreign commerce" insufficient to state a claim under §§ 1595 and 1591; "[w]hat is missing are factual allegations that link [defendant']s actions to Harvey's 2014 conduct toward [plaintiff]").

*Second*, Plaintiff has not alleged YouTube's knowledge of the relevant trafficking violation. As the plain language of the statute makes clear, "the defendant must have either actual or constructive knowledge that the venture—in which it voluntarily participated and from which it knowingly benefited —violated the TVPRA ***as to the plaintiff***." *Red Roof Inns*, 21 F.4th at 725 (emphasis added); *accord G.G.*, 603 F. Supp. 3d 626, 646 (N.D. Ill. 2022) (§ 1595 requires the plaintiff "to allege that the defendant knew (or should have known) about the ***specific*** sex trafficking venture—that is, the venture tied to the underlying § 1591 violation ***of the plaintiff***") (emphasis in original); *H.G.*, 489 F. Supp. 3d at 704-05 ("the relevant state-of-mind inquiry for purposes of the third element focuses on whether the defendant knew or should have known of sex trafficking by the venture in which he allegedly participated"; "knowledge or willful blindness of a general sex trafficking problem" is not enough). Here, however, there is no plausible allegation

that YouTube had actual or constructive knowledge of the Jackson Defendants' purported illegal sex trafficking of Plaintiff.

As discussed above, the Complaint does nothing to establish that YouTube knew or had any reason to know about the Jacksons' communications with Plaintiff, all of which happened off the YouTube platform. The allegation that YouTube users complained about unrelated content posted by Onision, which had nothing to do with Sarah and did not discuss unlawful sexual relationships with minors (Compl. ¶¶ 118-124) does not plausibly suggest that YouTube should have known the Jacksons were engaged in efforts to traffic Sarah (or anyone else). Likewise, the vague suggestion that some unnamed YouTube users were "not comfortable" that Sarah moved in with the Jacksons (*id.* ¶ 331) cannot charge YouTube with knowledge even of that fact—much less actual or constructive knowledge that the Jacksons were trying to "groom" her to engage in a "commercial sex act" in violation of § 1591.[5]

As in other cases, such allegations fall far short of what is required to plead a TVPRA claim. *See, e.g.*, *H.G.*, 489 F. Supp. 3d at 705-06 (rejecting allegations under § 1595 where even though plaintiff claimed "that Defendants participated in the ventures that trafficked her for sex," they failed to "identif[y] specific facts, known to these Defendants, that would have or should have put them on notice of any unlawful activity—much less sex trafficking—by those particular ventures"); *Doe v. Red Roof Inns, Inc.*, 2020 U.S. Dist. LEXIS 67142, at *9 (N.D. Ga. Apr. 13, 2020) (allegation of customer complaints about prostitution "insufficient to meet a known or

[5] Plaintiff also points to a documentary featuring her and her allegations about Onision, which was released several years *after* the relevant events. Compl. ¶ 333 But she acknowledges that shortly after the documentary was released, YouTube "decided to demonetize Onision for violations of their policies." *Id.* ¶ 334. Moreover, the videos that Onision allegedly posted after that, in which he accused Plaintiff of extortion and rape (*id.* ¶¶ 320-325), cannot be turned on their head to somehow create actual or constructive knowledge on YouTube's part that Onision had years earlier engaged in sex trafficking.

should have known standard under either 18 U.S.C. §§ 1595(a) or 1591(a)”), *aff'd*, 21 F.4th 714; *G.G.*, 603 F. Supp. 3d at 647 (“because Plaintiffs have not alleged that Salesforce had actual or constructive knowledge of G.G.'s trafficking, they have not adequately pleaded that element of a § 1595 claim”); *A.B. v. Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d 921, 938 (D. Ore. 2020) (“although Plaintiff's allegations indicate that Defendants had notice of sex trafficking generally occurring at their hotels, Plaintiff has not alleged facts which sufficiently link notice of Plaintiff A.B.'s sex trafficking to any of these Defendants”); *S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 154 (E.D.N.Y. 2020) (“Because plaintiff has not alleged that the franchisor defendants had the requisite knowledge of a specific sex trafficking venture, they cannot be held directly liable under the TVPRA.”).

## CONCLUSION

For these reasons, Plaintiff's claims against YouTube must be dismissed.

Respectfully submitted,

**Clark Hill PLC**

By: /s/ Christopher M. Trebilcock
Christopher M. Trebilcock
500 Woodward Avenue, Suite 3500
Detroit, Michigan 48226
ctrebilcock@clarkhill.com
(313) 965-8300

DATE: May 19, 2023

**Wilson Sonsini Goodrich & Rosati Professional Corporation**

By: /s/ Brian M. Willen
Brian M. Willen
Benjamin Margo
1301 Avenue of the Americas, 40th Floor
New York, NY 10019-6022
(212) 999-5800
bwillen@wsgr.com
bmargo@wsgr.com

DATE: May 19, 2023

Attorneys for Defendants
GOOGLE LLC and YOUTUBE, LLC

**CERTIFICATE OF COMPLIANCE WITH LCivR 7.2(b)(i)**

This document complies with the limitation set forth in W.D. Mich. L. Civ. R 7.3(b)(i) because the brief contains 7,504 words, excluding parts of the brief exempted by Local Rule 7.3(b)(ii) and (c). This word count was generated using Microsoft Word for Microsoft 365.

By: */s/ Christopher M. Trebilcock*
Christopher M. Trebilcock

**CERTIFICATE OF SERVICE**

I hereby certify that on May 19, 2023, I caused the foregoing paper to be electronically filed with the Clerk of Court using the ECF system, which will send notification to counsel of record.

By: */s/ Christopher M. Trebilcock*
Christopher M. Trebilcock

# EXHIBIT 1

# DECLARATION OF BENJAMIN MARGO

I, Benjamin Margo, declare as follows:

1. I am an attorney admitted to practice in this Court, appearing on behalf of Defendants Google LLC and YouTube, LLC ("YouTube") in the above-captioned action. I have personal knowledge of the facts set forth herein, and, if called as a witness, could and would testify competently thereto.

2. Attached hereto as Exhibit A is a true and correct copy of YouTube's Terms of Service Agreement, available at <www.youtube.com/t/terms>.

3. Attached hereto as Exhibit B is a true and correct copy of the YouTube Partner Program Terms.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 17, 2023, in Hudson County, New Jersey.

*/s/ Benjamin Margo*

Benjamin Margo

# Exhibit A

YouTube

# Terms of Service

Terms of Service

Paid Service Terms of Service

Paid Service Usage Rules

Collecting Society Notices

Copyright Notices

Community Guidelines

## What's in these terms?

This index is designed to help you understand some of the key updates we've made to our Terms of Service (Terms). We hope this serves as a useful guide, but please ensure you read the Terms in full.

### Welcome to YouTube!

This section outlines our relationship with you. It includes a description of the Service, defines our Agreement, and names your service provider.

### Who May Use the Service?

This section sets out certain requirements for use of the Service, and defines categories of users.

### Your Use of the Service

This section explains your rights to use the Service, and the conditions that apply to your use of the Service. It also explains how we may make changes to the Service.

### Your Content and Conduct

This section applies to users who provide Content to the Service. It defines the scope of the permissions that you grant by uploading your Content, and includes your agreement not to upload anything that infringes on anyone else's rights.

### Account Suspension and Termination

This section explains how you and YouTube may terminate this relationship.

### About Software in the Service

This section includes details about software on the Service.

### Other Legal Terms

This section includes our service commitment to you. It also explains that there are some things we will not be responsible for.

### About this Agreement

This section includes some further important details about our contract, including what to expect if we need to make changes to these Terms; or which law applies to them.

## Terms of Service

Dated: January 5, 2022

# TERMS OF SERVICE

# Welcome to YouTube!

**Introduction**

Thank you for using the YouTube platform and the products, services and features we make available to you as part of the platform (collectively, the "Service").

**Our Service**

The Service allows you to discover, watch and share videos and other content, provides a forum for people to connect, inform, and inspire others across the globe, and acts as a distribution platform for original content creators and advertisers large and small. We provide lots of information about our products and how to use them in our Help Center.

Among other things, you can find out about YouTube Kids, the YouTube Partner Program and YouTube Paid Memberships and Purchases (where available).You can also read all about enjoying content on other devices like your television, your games console, or Google Home.

**Your Service Provider**

The entity providing the Service is Google LLC, a company operating under the laws of Delaware, located at 1600 Amphitheatre Parkway, Mountain View, CA 94043 (referred to as “**YouTube**”, “**we**”, “**us**”, or “**our**”). References to YouTube’s “Affiliates” in these terms means the other companies within the Alphabet Inc. corporate group (now or in the future).

**Applicable Terms**

Your use of the Service is subject to these terms, the YouTube Community Guidelines and the Policy, Safety and Copyright Policies which may be updated from time to time (together, this "**Agreement**"). Your Agreement with us will also include the Advertising on YouTube Policies if you provide advertising or sponsorships to the Service or incorporate paid promotions in your content. Any other links or references provided in these terms are for informational use only and are not part of the Agreement.

Please read this Agreement carefully and make sure you understand it. If you do not understand the Agreement, or do not accept any part of it, then you may not use the Service.

## Who may use the Service?

**Age Requirements**

You must be at least 13 years old to use the Service; however, children of all ages may use the Service and YouTube Kids (where available) if enabled by a parent or legal guardian.

**Permission by Parent or Guardian**

If you are under 18, you represent that you have your parent or guardian's permission to use the Service. Please have them read this Agreement with you.

If you are a parent or legal guardian of a user under the age of 18, by allowing your child to use the Service, you are subject to the terms of this Agreement and responsible for your child's activity on the Service. You can find tools and resources to help you manage your family's experience on YouTube (including how to enable a child under the age of 13 to use the Service and YouTube Kids) in our Help Center and through Google's Family Link.

**Businesses**
If you are using the Service on behalf of a company or organisation, you represent that you have authority to act on behalf of that entity, and that such entity accepts this Agreement.

## Your Use of the Service

**Content on the Service**
The content on the Service includes videos, audio (for example music and other sounds), graphics, photos, text (such as comments and scripts), branding (including trade names, trademarks, service marks, or logos), interactive features, software, metrics, and other materials whether provided by you, YouTube or a third-party (collectively, "Content").

Content is the responsibility of the person or entity that provides it to the Service. YouTube is under no obligation to host or serve Content. If you see any Content you believe does not comply with this Agreement, including by violating the Community Guidelines or the law, you can report it to us.

**Google Accounts and YouTube Channels**
You can use parts of the Service, such as browsing and searching for Content, without having a Google account. However, you do need a Google account to use some

features. With a Google account, you may be able to like videos, subscribe to channels, create your own YouTube channel, and more. You can follow these instructions to create a Google account.

Creating a YouTube channel will give you access to additional features and functions, such as uploading videos, making comments or creating playlists (where available). Here are some details about how to create your own YouTube channel.

To protect your Google account, keep your password confidential. You should not reuse your Google account password on third-party applications. Learn more about keeping your Google account secure, including what to do if you learn of any unauthorized use of your password or Google account.

**Your Information**

Our Privacy Policy explains how we treat your personal data and protect your privacy when you use the Service. The YouTube Kids Privacy Notice provides additional information about our privacy practices that are specific to YouTube Kids.

We will process any audio or audiovisual content uploaded by you to the Service in accordance with the YouTube Data Processing Terms, except in cases where you uploaded such content for personal purposes or household activities. Learn More.

**Permissions and Restrictions**

You may access and use the Service as made available to you, as long as you comply with this Agreement and applicable law. You may view or listen to Content for your personal, non-commercial use. You may also show YouTube videos through the embeddable YouTube player.

The following restrictions apply to your use of the Service. You are not allowed to:

1. access, reproduce, download, distribute, transmit, broadcast, display, sell, license, alter, modify or otherwise use any part of the Service or any Content except: (a) as expressly authorized by the Service; or (b) with prior written permission from YouTube and, if applicable, the respective rights holders;

2. circumvent, disable, fraudulently engage with, or otherwise interfere with any part of the Service (or attempt to do any of these things), including security-related features or features that (a) prevent or restrict the copying or other use of Content or (b) limit the use of the Service or Content;

3. access the Service using any automated means (such as robots, botnets or scrapers) except (a) in the case of public search engines, in accordance with YouTube's robots.txt file; or (b) with YouTube's prior written permission;

4. collect or harvest any information that might identify a person (for example, usernames or faces), unless permitted by that person or allowed under section (3) above;

5. use the Service to distribute unsolicited promotional or commercial content or other unwanted or mass solicitations;

6. cause or encourage any inaccurate measurements of genuine user engagement with the Service, including by paying people or providing them with incentives to increase a video's views, likes, or dislikes, or to increase a channel's subscribers, or otherwise manipulate metrics in any manner;

7. misuse any reporting, flagging, complaint, dispute, or appeals process, including by making groundless, vexatious, or frivolous submissions;

8. run contests on or through the Service that do not comply with YouTube's contest policies and guidelines;

9. use the Service to view or listen to Content other than for personal, non-commercial use (for example, you may not publicly screen videos or stream music from the Service); or

10. use the Service to (a) sell any advertising, sponsorships, or promotions placed on, around, or within the Service or Content, other than those allowed in the Advertising on YouTube policies (such as compliant product placements); or (b) sell advertising, sponsorships, or promotions on any page of any website or application that only contains Content from the Service or where Content from the Service is the primary basis for such sales (for example, selling ads on a webpage where YouTube videos are the main draw for users visiting the webpage).

**Reservation**

Using the Service does not give you ownership of or rights to any aspect of the Service, including user names or any other Content posted by others or YouTube.

**Develop, Improve and Update the Service**

YouTube is constantly changing and improving the Service. As part of this continual evolution, we may make modifications or changes (to all or part of the Service) such as adding or removing features and functionalities, offering new digital content or services or discontinuing old ones. We may also need to alter or discontinue the Service, or any part of it, in order to make performance or security improvements, make changes to comply with law, or prevent illegal activities on or abuse of our systems. These changes may affect all users, some users or even an individual user. When the Service requires or includes downloadable software (such as the YouTube Studio application), that software may update automatically on your device once a new version or feature is available, subject to your device settings. If we make material changes that negatively impact your use of the Service, we'll provide you with reasonable advance notice, except in urgent

situations such as preventing abuse, responding to legal requirements, or addressing security and operability issues. We'll also provide you with an opportunity to export your content from your Google Account using Google Takeout, subject to applicable law and policies.

## Your Content and Conduct

### Uploading Content

If you have a YouTube channel, you may be able to upload Content to the Service. You may use your Content to promote your business or artistic enterprise. If you choose to upload Content, you must not submit to the Service any Content that does not comply with this Agreement (including the YouTube Community Guidelines) or the law. For example, the Content you submit must not include third-party intellectual property (such as copyrighted material) unless you have permission from that party or are otherwise legally entitled to do so. You are legally responsible for the Content you submit to the Service. We may use automated systems that analyze your Content to help detect infringement and abuse, such as spam, malware, and illegal content.

### Rights you Grant

You retain ownership rights in your Content. However, we do require you to grant certain rights to YouTube and other users of the Service, as described below.

### License to YouTube

By providing Content to the Service, you grant to YouTube a worldwide, non-exclusive, royalty-free, sublicensable and transferable license to use that Content (including to reproduce, distribute, prepare derivative works, display and perform it) in connection with the Service and YouTube's (and its successors' and Affiliates') business, including for the purpose of promoting and redistributing part or all of the Service.

### License to Other Users

You also grant each other user of the Service a worldwide, non-exclusive, royalty-free license to access your Content through the Service, and to use that Content, including to reproduce, distribute, prepare derivative works, display, and perform it, only as enabled by a feature of the Service (such as video playback or embeds). For clarity, this license does not grant any rights or permissions for a user to make use of your Content independent of the Service.

### Duration of License

The licenses granted by you continue for a commercially reasonable period of time after you remove or delete your Content from the Service. You understand and agree, however, that YouTube may retain, but not display, distribute, or perform, server copies of your videos that have been removed or deleted.

### Right to Monetize

You grant to YouTube the right to monetize your Content on the Service (and such monetization may include displaying ads on or within Content or charging users a fee for access). This Agreement does not entitle you to any payments. Starting November 18, 2020, any payments you may be entitled to receive from YouTube under any other agreement between you and YouTube (including for example payments under the YouTube Partner Program, Channel memberships or Super Chat) will be treated as royalties. If required by law, Google will withhold taxes from such payments.

### Removing Your Content

You may remove your Content from the Service at any time. You also have the option to make a copy of your Content before removing it. You must remove your Content if you no longer have the rights required by these terms.

**Removal of Content By YouTube**

If any of your Content (1) is in breach of this Agreement or (2) may cause harm to YouTube, our users, or third parties, we reserve the right to remove or take down some or all of such Content in our discretion. We will notify you with the reason for our action unless we reasonably believe that to do so: (a) would breach the law or the direction of a legal enforcement authority or would otherwise risk legal liability for YouTube or our Affiliates; (b) would compromise an investigation or the integrity or operation of the Service; or (c) would cause harm to any user, other third party, YouTube or our Affiliates. You can learn more about reporting and enforcement, including how to appeal on the Troubleshooting page of our Help Center.

## Community Guidelines Strikes

YouTube operates a system of "strikes" in respect of Content that violates the YouTube Community Guidelines. Each strike comes with varying restrictions and may result in the permanent removal of your channel from YouTube. A full description of how a strike affects your channel is available on the Community Guidelines Strikes Basics page. If you believe that a strike has been issued in error, you may appeal here.

If your channel has been restricted due to a strike, you must not use another channel to circumvent these restrictions. Violation of this prohibition is a material breach of this Agreement and Google reserves the right to terminate your Google account or your access to all or part of the Service.

**Copyright Protection**

We provide information to help copyright holders manage their intellectual property online in our YouTube Copyright Center. If you believe your copyright has been infringed on the Service, please send us a notice.

We respond to notices of alleged copyright infringement according to the process in our YouTube Copyright Center, where you can also find information about how to resolve a copyright strike. YouTube's policies provide for the termination, in appropriate circumstances, of repeat infringers' access to the Service.

## Account Suspension & Termination

**Terminations by You**

You may stop using the Service at any time. Follow these instructions to delete the Service from your Google Account, which involves closing your YouTube channel and removing your data. You also have the option to download a copy of your data first.

**Terminations and Suspensions by YouTube**

YouTube reserves the right to suspend or terminate your Google account or your access to all or part of the Service if (a) you materially or repeatedly breach this Agreement; (b) we are required to do so to comply with a legal requirement or a court order; or (c) we reasonably believe that there has been conduct that creates (or could create) liability or harm to any user, other third party, YouTube or our Affiliates.

**Notice for Termination or Suspension**

We will notify you with the reason for termination or suspension by YouTube unless we reasonably believe that to do so: (a) would violate the law or the direction of a legal enforcement authority; (b) would compromise an investigation; (c) would compromise the integrity, operation or security of the Service; or (d) would cause harm to any user, other third party, YouTube or our Affiliates.

**Effect of Account Suspension or Termination**

If your Google account is terminated or your access to the Service is restricted, you may continue using certain aspects

of the Service (such as viewing only) without an account, and this Agreement will continue to apply to such use. If you believe that the termination or suspension has been made in error, you can appeal using this form.

## About Software in the Service

### Downloadable Software

When the Service requires or includes downloadable software (such as the YouTube Studio application), unless that software is governed by additional terms which provide a license, YouTube gives you a personal, worldwide, royalty-free, non-assignable and non-exclusive license to use the software provided to you by YouTube as part of the Service. This license is for the sole purpose of enabling you to use and enjoy the benefit of the Service as provided by YouTube, in the manner permitted by this Agreement. You are not allowed to copy, modify, distribute, sell, or lease any part of the software, or to reverse-engineer or attempt to extract the source code of that software, unless laws prohibit these restrictions or you have YouTube’s written permission.

### Open Source

Some software used in our Service may be offered under an open source license that we make available to you. There may be provisions in an open source license that expressly override some of these terms, so please be sure to read those licenses.

## Other Legal Terms

### Warranty Disclaimer

OTHER THAN AS EXPRESSLY STATED IN THIS AGREEMENT OR AS REQUIRED BY LAW, THE SERVICE IS PROVIDED “AS IS” AND YOUTUBE DOES NOT MAKE ANY SPECIFIC COMMITMENTS OR WARRANTIES ABOUT THE SERVICE. FOR EXAMPLE, WE DON’T MAKE ANY WARRANTIES ABOUT: (A) THE CONTENT PROVIDED THROUGH THE SERVICE; (B) THE SPECIFIC FEATURES OF THE SERVICE, OR ITS ACCURACY, RELIABILITY, AVAILABILITY, OR ABILITY TO MEET YOUR

NEEDS; OR (C) THAT ANY CONTENT YOU SUBMIT WILL BE ACCESSIBLE ON THE SERVICE.

**Limitation of Liability**

EXCEPT AS REQUIRED BY APPLICABLE LAW, YOUTUBE, ITS AFFILIATES, OFFICERS, DIRECTORS, EMPLOYEES AND AGENTS WILL NOT BE RESPONSIBLE FOR ANY LOSS OF PROFITS, REVENUES, BUSINESS OPPORTUNITIES, GOODWILL, OR ANTICIPATED SAVINGS; LOSS OR CORRUPTION OF DATA; INDIRECT OR CONSEQUENTIAL LOSS; PUNITIVE DAMAGES CAUSED BY:

1. ERRORS, MISTAKES, OR INACCURACIES ON THE SERVICE;
2. PERSONAL INJURY OR PROPERTY DAMAGE RESULTING FROM YOUR USE OF THE SERVICE;
3. ANY UNAUTHORIZED ACCESS TO OR USE OF THE SERVICE;
4. ANY INTERRUPTION OR CESSATION OF THE SERVICE;
5. ANY VIRUSES OR MALICIOUS CODE TRANSMITTED TO OR THROUGH THE SERVICE BY ANY THIRD PARTY;
6. ANY CONTENT WHETHER SUBMITTED BY A USER OR YOUTUBE, INCLUDING YOUR USE OF CONTENT; AND/OR
7. THE REMOVAL OR UNAVAILABILITY OF ANY CONTENT.

THIS PROVISION APPLIES TO ANY CLAIM, REGARDLESS OF WHETHER THE CLAIM ASSERTED IS BASED ON WARRANTY, CONTRACT, TORT, OR ANY OTHER LEGAL THEORY.

YOUTUBE AND ITS AFFILIATES’ TOTAL LIABILITY FOR ANY CLAIMS ARISING FROM OR RELATING TO THE SERVICE IS LIMITED TO THE GREATER OF: (A) THE AMOUNT OF REVENUE THAT YOUTUBE HAS PAID TO YOU FROM YOUR USE OF THE SERVICE IN THE 12 MONTHS BEFORE THE DATE OF YOUR NOTICE, IN WRITING TO YOUTUBE, OF THE CLAIM; AND (B) USD $500.

**Indemnity**

To the extent permitted by applicable law, you agree to defend, indemnify and hold harmless YouTube, its Affiliates, officers, directors, employees and agents, from and against any and all claims, damages, obligations, losses, liabilities, costs or debt, and expenses (including but not limited to attorney's fees) arising from: (i) your use of and access to the Service; (ii) your violation of any term of this Agreement; (iii) your violation of any third party right, including without limitation any copyright, property, or privacy right; or (iv) any claim that your Content caused damage to a third party. This defense and indemnification obligation will survive this Agreement and your use of the Service.

**Third-Party Links**

The Service may contain links to third-party websites and online services that are not owned or controlled by YouTube. YouTube has no control over, and assumes no responsibility for, such websites and online services. Be aware when you leave the Service; we suggest you read the terms and privacy policy of each third-party website and online service that you visit.

## About this Agreement

**Changing this Agreement**

We may change this Agreement, for example, (1) to reflect changes to our Service or how we do business - for example, when we add new products or features or remove old ones, (2) for legal, regulatory, or security reasons, or (3) to prevent abuse or harm.

If we materially change this Agreement, we'll provide you with reasonable advance notice and the opportunity to review the changes, except (1) when we launch a new product or feature, or (2) in urgent situations, such as preventing ongoing abuse or responding to legal requirements. If you don't agree to the new terms, you should remove any Content you uploaded and stop using the Service.

**Continuation of this Agreement**

If your use of the Service ends, the following terms of this Agreement will continue to apply to you: "Other Legal Terms", "About This Agreement", and the licenses granted by you will continue as described under "Duration of License".

**Severance**

If it turns out that a particular term of this Agreement is not enforceable for any reason, this will not affect any other terms.

**No Waiver**

If you fail to comply with this Agreement and we do not take immediate action, this does not mean that we are giving up any rights that we may have (such as the right to take action in the future).

**Interpretation**

In these terms, "include" or "including" means "including but not limited to," and any examples we give are for illustrative purposes.

**Governing Law**

All claims arising out of or relating to these terms or the Service will be governed by California law, except California's conflict of laws rules, and will be litigated exclusively in the federal or state courts of Santa Clara County, California, USA. You and YouTube consent to personal jurisdiction in those courts.

**Limitation on Legal Action**

YOU AND YOUTUBE AGREE THAT ANY CAUSE OF ACTION ARISING OUT OF OR RELATED TO THE SERVICES MUST COMMENCE WITHIN ONE (1) YEAR AFTER THE CAUSE OF ACTION ACCRUES. OTHERWISE, SUCH CAUSE OF ACTION IS PERMANENTLY BARRED.

**Effective as of January 5, 2022 (view previous version)**

# Exhibit B

# YouTube Partner Program Terms

Together with the YouTube Terms of Service and the YouTube Partner Program Policies (each of which may be updated from time to time and are incorporated herein by reference), the following YouTube Partner Program Terr apply to your participation in the YouTube Partner Program (the "Terms"). Please read the Terms carefully. If you do not understand or accept any part of these Terms, you should not upload Content for monetization on YouTube.

1. Monetization Revenues. YouTube will pay you as follows:
    1. Advertising Revenues. YouTube will pay you 55% of net revenues recognized by YouTube from ads displayed or streamed by YouTube or an authorized third party on your Content watch pages or in or on the YouTube video player in conjunction with the streaming of your Content. YouTube is not obligated to display any advertisements alongside your videos and may determine the type and format of ads available on the YouTube Service. For clarity, YouTube reserves the right to retain all other revenues derived from the YouTube service, including any revenues relating to ads on search result pages.
    2. Subscription Revenues. YouTube will pay you 55% of the total net revenues recognized by YouTube from subscription fees that are attributable to the monthly views or watchtime of your Content as a percentage of the monthly views or watchtime of all or a subset of participating content in the relevant subscription offering (as determined by YouTube). If your Content is included in and viewed by a user in multiple subscription offerings, YouTube will pay you based on the subscription offering with the highest amount of net revenues recognized by YouTube, as calculated by YouTube.
2. Payment Account Requirement. In order to earn or receive payment of any revenues hereunder, you must at all times have an active AdSense account associated with your YouTube user account(s) (or such other payment method as required by YouTube). YouTube does not owe you for any revenues that may be associated with your Content during any period in which you do not have a valid method of payment.
3. Payment Terms, Limitations and Taxes. YouTube will pay you for any revenues due within approximately sixty (60) days after the end of any calendar month, so long as your earned balance is at least US $100 (or its equivalent in local currency) at the time payment is due. You are not entitled to earn or receive any revenues in connection with your Content in any of the following circumstances: (a) if one or more third parties claim rights to certain elements of your Content except in cases where YouTube's policies or systems support sharing a portion of the revenues with you, as determined by YouTube; (b) if monetization is disabled on your Content by either you or YouTube; or (c) your participation in the YouTube Partner Program is suspended or terminated pursuant to Section 4 below. YouTube will use reasonable efforts to notify you if any of these circumstances should occur.
4. Termination. Either party may terminate these Terms for convenience with 30 days prior written notice to the other (including via electronic means). YouTube may either suspend or terminate your

participation in the YouTube Partner Program immediately upon written notice (including via electronic means) if YouTube reasonably determines or suspects that you have violated these Terms. For clarity, in the event of any termination of these Terms the YouTube Terms of Service will survive and continue to apply to your use of the YouTube service.

5. Governing Law. The governing law and dispute resolution provisions of the YouTube Terms of Service will also apply to these Terms.
6. Miscellaneous. Capitalized terms used but not defined in these Terms will have the meanings given to such terms in the YouTube Terms of Service. These Terms replace all previous or current agreements between you and YouTube relating to the YouTube Partner Program, including any prior monetization agreements that are in effect between you and YouTube as of the effective date. Except as modified by these Terms, the YouTube Terms of Service remain in full force and effect. YouTube's right to modify or revise the Terms of Service (as described in the YouTube Terms of Service) will also apply to these Terms.