**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| SARAH,<br><br>Plaintiff,<br><br>v.<br><br>Google LLC, YouTube LLC, James JACKSON, also known online as "ONISION," and LUCAS JACKSON, formerly known online as "LAINEYBOT," "LAINEY" and "KAI,"<br><br>Defendants. | CASE NO: 1:23-CV-00223-HYJ-SJB |

**REPLY IN FURTHER SUPPORT**
**OF MOTION TO DISMISS BY GOOGLE LLC AND YOUTUBE, LLC**

# TABLE OF CONTENTS

Page

ARGUMENT ..... 1

I. PLAINTIFF CANNOT SAVE HER §2255 CLAIMS. ..... 1

A. YouTube Did Not Criminally Violate §2422 or §1591. ..... 1

B. Congress Did Not Provide For Vicarious Liability Under Section 2255 ..... 2

C. The Jackson Defendants Were Not YouTube's Agents Or Partners. ..... 4

1. The Jackson Defendants Were Not YouTube's Agents. ..... 4

2. The Jackson Defendants Were Not YouTube's "Partners." ..... 6

3. The Jackson Defendants' Alleged Sexual Misconduct Was Outside The Scope Of Any Agency Or Partnership Relationship. ..... 7

D. Section 230 Bars Plaintiff's Claims under 2255. ..... 9

1. Plaintiff Seeks To Hold YouTube Liable As A Publisher ..... 9

2. Plaintiff's Agency/Partnership Theory Does Not Avoid Section 230 ..... 10

II. PLAINTIFF CANNOT SAVE HER CLAIM UNDER §1595. ..... 11

A. Without A Violation of §1591, Plaintiff Cannot Get Around Section 230 ..... 11

B. Plaintiff Has Failed to State a Viable §1595 Claim Against YouTube. ..... 11

CONCLUSION ..... 13

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Bartenwerfer v. Buckley*,
143 S. Ct. 665 (2023) ....7

*Blumenthal v. Drudge*,
992 F. Supp. 44 (D.D.C. 1998) ....11

*Boim v. Holy Land Found. for Relief & Dev.*,
549 F.3d 685 (7th Cir. 2008) (*en banc*) ....3

*Caraccioli v. Facebook, Inc.*,
167 F. Supp. 3d 1056 (N.D. Cal. 2016) ....11

*Daza v. Los Angeles Cmty. Coll. Dist.*,
247 Cal. App. 4th 260 (2016) ....8

*Delfino v. Agilent Techs., Inc.*,
52 Cal. Rptr. 3d 376 (2006) ....8, 11

*Doe No. 8 v. Royal Caribbean Cruises, Ltd.*,
860 F. Supp. 2d 1337 (S.D. Fla. 2012) ....3

*Doe v. City of Gauley Bridge*,
2022 U.S. Dist. LEXIS 150204 (S.D. W. Va. Aug. 22, 2022) ....4

*Doe v. Internet Brands*,
824 F.3d 846 (9th Cir. 2016) ....9, 10

*Doe v. Liberatore*,
478 F. Supp. 2d 742 (M.D. Pa. 2007) ....3, 8

*Doe v. Peterson*,
784 F.Supp.2d 831 (E.D. Mich. 2011) ....6

*Doe v. Red Roof Inns, Inc.*,
21 F.4th 714 (11th Cir. 2021) ....12, 13

*Doe v. Schneider*,
2013 U.S. Dist. LEXIS 140274 (E.D. Pa. Sept. 30, 2013) ....3

*Doe v. Twitter, Inc.*,
2023 U.S. App. LEXIS 10808 (9th Cir. May 3, 2023) ....13

*Does v. Reddit, Inc.*,
51 F.4th 1137 (9th Cir. 2022) ....2, 13

*Fleites v. MindGeek S.A.R.L.*,
617 F. Supp. 3d 1146 (C.D. Cal. 2022) ....13

*Gerritsen v. Warner Bros. Ent. Inc.*,
116 F. Supp. 3d 1104 (C.D. Cal. 2015) ....................5

*Herrick v. Grindr LLC*,
765 F. App'x 586 (2d Cir. 2019) ....................10

*In re DISH Network, LLC*,
28 FCC Rcd 6574 (F.C.C. May 9, 2013) ....................4

*In re Hotel TVPRA Litigation*,
2023 U.S. Dist. LEXIS 72454 (S.D. Ohio Apr. 25, 2023) ....................3

*ING Bank v. Ahn*,
758 F. Supp. 2d 936 (N.D. Cal. 2010) ....................5

*L.W. v. Snap Inc.*,
2023 U.S. Dist. LEXIS 97798 (S.D. Cal. June 5, 2023)....................10

*Lisa M. v. Henry Mayo Newhall Mem'l Hosp.*,
12 Cal. 4th 291 (1995) ....................8

*Little v. Howard Johnson Co.*,
183 Mich. App. 675 (1990)....................5

*McIntyre v. Kavanaugh*,
242 U.S. 138 (1916)....................6

*Miller v. Fed. Express Corp.*,
6 N.E.3d 1006 (Ind. App. 2014) ....................11

*N.S. v. Rockett*,
2018 U.S. Dist. LEXIS 223678 (D. Or. Oct. 19, 2018)....................3

*New York v. Ferber*,
458 U.S. 747 (1982)....................2

*Ocugiene, Inc. v. Thermamedx, LLC*,
2022 U.S. Dist. LEXIS 235934 (C.D. Cal. Dec. 8, 2022) ....................6

*Ramsbottom v. Ashton*,
2022 U.S. Dist. LEXIS 5152 (M.D. Tenn. Jan. 11, 2022)....................5, 12

*Ratha v. Phatthana Seafood Co.*,
2017 U.S. Dist. LEXIS 230292 (C.D. Cal. Dec. 21, 2017), *aff'd*, 26 F.4th 1029 (9th Cir. 2022)....................6

*Rogers v. J.B. Hunt Transp.*,
649 N.W.2d 23 (Mich. 2002)....................7

*Ross v. Ihrie*,
2006 U.S. Dist. LEXIS 90085 (E.D. Mich. Nov. 29, 2006) ....................6

*Smith v. Husband*,
376 F. Supp. 2d 603 (E.D. Va. 2005) ....................3

*Twitter, Inc. v. Taamneh*,
143 S. Ct. 1206 (2023) ... 3

*United States v. Afyare*,
632 F. App'x 272 (6th Cir. 2016) ... 2

*United States v. Copeland*,
820 F.3d 809 (5th Cir. 2016) ... 2

*van't Rood v. Cnty. of Santa Clara*,
113 Cal. App. 4th 549 (2003) ... 5

*Z.V. v. Cnty. of Riverside*,
238 Cal. App. 4th 889 (2015) ... 8

**STATUTES**

18 U.S.C. § 1591 ... 1, 2, 11

18 U.S.C. § 1594 ... 13

18 U.S.C. § 1595 ... 11, 12, 13

18 U.S.C. § 2255 ... 1, 2, 3, 4, 9

18 U.S.C. § 2422 ... 1, 2

47 U.S.C. § 230 ... 1, 9, 10, 11

Cal. Civ. Code § 2295 ... 5

Cal. Corp. Code § 16101 ... 6

Cal. Corp. Code § 16202 ... 6

Cal. Corp. Code § 16305 ... 7

Cal. Corp. Code § 16403 ... 7

Cal. Corp. Code § 16404 ... 7

Michigan's Uniform Partnership Act ... 6

Uniform Partnership Act § 305 (2013) ... 7

**MISCELLANEOUS**

Rest. 3d of Agency, § 7.07(1) ... 7

Plaintiff's Opposition exposes the glaring flaw in Plaintiff's case. Plaintiff tries to support her sex trafficking claims against YouTube by arguing that the videos James Jackson ("Onision") posted were part of his grooming scheme and that "YouTube had a duty to monitor the content" Onision posted and remove what was potentially harmful. PageID.636-638, 645. That underscores that Plaintiff's claims fall squarely within Section 230. Elsewhere however, trying to avoid that immunity, Plaintiff contradicts herself (and ignores her own Complaint) by insisting that her claims are not based on Onision's YouTube content at all. PageID.640-641. That only highlights YouTube's tenuous connection to the alleged "grooming" and that YouTube cannot be held responsible for Onision's alleged sex trafficking. Either way, the claims against YouTube fail under established law. Largely ignoring that precedent, Plaintiff asserts that YouTube should be held *vicariously* liable for the actions of the Jackson Defendants. But vicarious liability has no place here. That Onision accepted a standard-form revenue sharing agreement did not make him YouTube's all-purpose "agent" or a "partner" who co-owned YouTube's business. Nor is the Jacksons' alleged off-platform sexual misconduct within the scope of any conceivable agency relationship or partnership. And even if *respondeat superior* principles somehow applied, Section 230 still would bar Plaintiff's effort to hold YouTube liable for the misconduct of its users. The opposition, in short, confirms that Plaintiff's claims should be dismissed.

## ARGUMENT

### I. PLAINTIFF CANNOT SAVE HER §2255 CLAIMS.

#### A. YouTube Did Not Criminally Violate §2422 or §1591.

Plaintiff's claims under 18 U.S.C. § 2255 fail because there is no plausible allegation that YouTube violated either of the criminal statutes this claim is based on: §2422 and §1591. Mot., PageID.467-473, ECF No. 41 (citing cases).

As for §2422, Plaintiff does not argue that YouTube "knowingly persuade[d], induce[d], entice[d], or coerce[d]" her to engage in unlawful sexual activity, or attempted to do so. 18 U.S.C. § 2422(a) & (b). While the opposition references §2422 in subject heading II.B (PageID.650), Plaintiff does not address (or mention) the statute in the body of her brief, conceding that she has no basis for a claim against YouTube based on this provision.

As for §1591, it is well-established (Mot., PageID.470-473) that to "hold a defendant criminally liable as a beneficiary of sex trafficking," "the defendant must have actually 'engaged in some aspect of the sex trafficking.'" *Does v. Reddit, Inc.*, 51 F.4th 1137, 1145 (9th Cir. 2022); *accord United States v. Afyare*, 632 F. App'x 272, 286 (6th Cir. 2016). Plaintiff offers no substantive response. Opp'n, PageID.650-651. She does not cite *Reddit* or *Afyare*, or any of the other cases similarly applying §1591, much less identify alleged facts suggesting that YouTube violated that statute.[1]

### B. Congress Did Not Provide For Vicarious Liability Under Section 2255.

The opposition makes clear that Plaintiff's claims depend on holding YouTube *vicariously* liable for the alleged wrongdoing of the Jackson Defendants. But Plaintiff ignores the authority in YouTube's opening brief confirming that §2255 does not authorize vicarious liability (Mot., PageID.467-469). She instead argues that because §2255(a) "is silent on who may be sued," it

[1] Plaintiff cites *New York v. Ferber*, 458 U.S. 747, 758 (1982), which upheld the constitutionality of a state law outlawing child pornography. Opp'n, PageID.650-651. That has nothing to do with this case, which does not seek to hold YouTube liable for such material. Similarly off-point is *United States v. Copeland*, 820 F.3d 809 (5th Cir. 2016), which concerns the provision of §1591 that relieves the government of its burden of proving the defendant's knowledge of the victim's age where "the defendant had a reasonable opportunity to observe the person" trafficked. 18 U.S.C. § 1591(c). Even if it applied here, that provision would be irrelevant. The problem here is not knowledge of Plaintiff's age, but the lack of any allegation that YouTube knew who Plaintiff was at all, much less knew or recklessly disregarded that she would "be caused to engage in a commercial sex act." Mot., PageID.473. That scienter requirement is unaffected by Section 1591(c)—as *Copeland* makes clear. 820 F.3d at 814.

"does not limit who can be liable for such a violation." (Opp., PageID.647-648). This unsupported and unbounded application of §2255 flouts the established principle that, under federal law, "statutory silence on the subject of secondary liability means there is none." *Boim v. Holy Land Found. for Relief & Dev.*, 549 F.3d 685, 689 (7th Cir. 2008) (*en banc*).

Plaintiff's cases do not suggest otherwise. Opp., PageID.646-649. *Doe No. 8 v. Royal Caribbean Cruises, Ltd.*—the *only* case cited by Plaintiff to ever allow a vicarious claim under §2255 to proceed—relied on the "principle of federal maritime law" that makes a cruise ship carrier strictly liable for an assault by its crew against its passengers. 860 F. Supp. 2d 1337, 1339 (S.D. Fla. 2012). That principle does not apply here. *In re Hotel TVPRA Litigation* says only that §2255(a) "does not require a defendant to be criminally convicted of the predicate offense." 2023 U.S. Dist. LEXIS 72454, at *28 (S.D. Ohio Apr. 25, 2023); *accord N.S. v. Rockett*, 2018 U.S. Dist. LEXIS 223678, at *13 (D. Or. Oct. 19, 2018) (same). YouTube has not argued otherwise, and the *Hotel TVPRA* court's observation that the plaintiff must "prove by a preponderance of the evidence that the *defendant* violated the enumerated statute," *id.* (emphasis added), is precisely what is missing from Plaintiff's Complaint. *See also Smith v. Husband*, 376 F. Supp. 2d 603, 613 (E.D. Va. 2005) (§2255 remedies "available to any victim able to show … that the defendant committed the acts described in any of the listed offenses").

Plaintiff cites two cases that opened the door to civil claims under §2255 against defendants alleged to have violated the criminal *aiding and abetting* statute, though both cases rejected the claims at issue. *Doe v. Liberatore*, 478 F. Supp. 2d 742, 756-57 (M.D. Pa. 2007); *Doe v. Schneider*, 2013 U.S. Dist. LEXIS 140274, at *34 (E.D. Pa. Sept. 30, 2013). But Plaintiff does not claim that YouTube aided and abetted the Jackson Defendants. Nor could she, because such liability requires that the defendant "knew the offense was being committed" and "acted with the intent to facilitate

it." *Liberatore*, 478 F. Supp. 2d at 756-757; *accord Twitter, Inc. v. Taamneh*, 143 S. Ct. 1206, 1223 (2023) (aiding and abetting "refers to a conscious, voluntary, and culpable participation in another's wrongdoing"). Moreover, the possibility that "secondary liability may attach under 18 U.S.C. § 2255 … with respect to aiding and abetting" does *not* authorize civil claims based on theories of *vicarious* liability. *Doe v. City of Gauley Bridge*, 2022 U.S. Dist. LEXIS 150204, at *33 (S.D. W. Va. Aug. 22, 2022)).

Plaintiff also attempts to impute vicarious liability based on general "federal common law principles of agency." Opp'n (PageID.649). But Plaintiff's only support is an *FCC* regulatory decision interpreting a differently worded federal statute. *See In re DISH Network, LLC*, 28 FCC Rcd 6574, 6584 (F.C.C. May 9, 2013). The FCC's action says nothing about the application of §2255—much less justifies departing from the consensus that vicarious liability is not available under that statute. *See, e.g.*, *City of Gauley Bridge*, 2022 U.S. Dist. LEXIS 150204, at *33-34.

### C. The Jackson Defendants Were Not YouTube's Agents Or Partners.

Even if vicarious liability were available, Plaintiff's claims would fail. The Jacksons were not YouTube's "agents" or "partners" and they certainly were not acting within the scope of any such relationship when they allegedly sexually abused Plaintiff.

#### 1. <u>The Jackson Defendants Were Not YouTube's Agents.</u>

Plaintiff claims that Onision became YouTube's "agent" by entering into a standard-form revenue sharing agreement for videos he posted on YouTube. (Plaintiff does not even try to argue that Lucas Jackson ("Lainey") was YouTube's agent or that YouTube could be vicariously liable for Lainey's actions.) Plaintiff also ignores the explanation in YouTube's opening brief that nothing in the relevant agreement created an agency relationship between Onision and YouTube. Mot., PageID.468 n.3, 503-505. Instead, Plaintiff's agency theory reduces to the assertion that YouTube and Onision had a contractual business relationship. But it is well-settled that a

"preexisting relationship is not sufficient to make one party the agent for the other," *van't Rood v. Cnty. of Santa Clara*, 113 Cal. App. 4th 549, 572 (2003).[2]

Plaintiff also does not allege any facts suggesting that Onision "represent[ed]" YouTube "in dealings with third persons," Cal. Civ. Code § 2295, or satisfied any of the other requirements of agency, *van't Rood*, 113 Cal. App. 4th at 570-73; *accord Ramsbottom v. Ashton*, 2022 U.S. Dist. LEXIS 5152, at *57 (M.D. Tenn. Jan. 11, 2022) (rejecting vicarious liability in sex trafficking case where plaintiffs did "not allege facts suggesting that [the perpetrator] was the 'agent' … or acting within the scope of any apparent authority") (cited in Opp'n, PageID.649). YouTube had no "right to control the conduct of the [putative] agent [Onision] with respect to matters entrusted to him." *Gerritsen v. Warner Bros. Ent. Inc.*, 116 F. Supp. 3d 1104, 1146 (C.D. Cal. 2015). The "right to control" requires "a comprehensive and immediate level of 'day-to-day' authority." *ING Bank v. Ahn*, 758 F. Supp. 2d 936, 941 (N.D. Cal. 2010). There is nothing like that here.

Plaintiff asserts that YouTube "controlled all ad placement, revenue collection, and distribution of money to Onision." Opp'n, PageID.649-650. Even if true, that would not establish an agency relationship, as it does not point to any control over Onision's actions. Plaintiff does not suggest that YouTube in any way directed Onision to create or post any videos, or had any say in the content of those videos, other than that they were subject to the same content guidelines that apply to all YouTube users. Nor is there any allegation that YouTube gave Onision any direction whatsoever about who he could interact or communicate with—or what he could say or do on his "Onision forums" or elsewhere. ECF 41-1, PageID.503-505 (Ex. B). YouTube's alleged role in placing ads with the videos Onision chose to post, and in collecting and paying money owed, does

[2] California law applies here. Mot., ECF 41-1, PageID.501 (TOS), PageID.505 (YPP). But the result under Michigan law would be the same. *See, e.g.*, *Little v. Howard Johnson Co.*, 183 Mich. App. 675, 680 (1990) ("to establish an agency relationship," principal must "have the right to control the day-to-day operations").

not make Onision YouTube's agent. To the contrary, this is exactly the kind of "arms-length commercial relationship" that "does not create an agency relationship." *Ratha v. Phatthana Seafood Co.*, 2017 U.S. Dist. LEXIS 230292, at *20 (C.D. Cal. Dec. 21, 2017), *aff'd*, 26 F.4th 1029 (9th Cir. 2022); *accord Ocugiene, Inc. v. Thermamedx, LLC*, 2022 U.S. Dist. LEXIS 235934, at *7-8 (C.D. Cal. Dec. 8, 2022) ("providing information and a purported price floor fall far short of the control needed to establish agency").

2. The Jackson Defendants Were Not YouTube's "Partners."

Nor were the Jacksons and YouTube in a partnership. Opp'n, PageID.644. Colloquial uses of the term "partner" do not matter; a "partnership" that makes one partner liable for the wrongdoing of another is a legal relationship defined as "an association of two or more persons … to carry on as *coowners* a business for profit." Cal. Corp. Code § 16101 (emphasis added).[3]

There is no allegation that Onision is a co-owner of YouTube or that he receives a share of YouTube's profits. The partnerships in the cases cited by Plaintiff are entirely different. *See McIntyre v. Kavanaugh*, 242 U.S. 138 (1916) (partners of the jointly held T.A. McIntyre and Company); *Doe v. Peterson*, 784 F.Supp.2d 831 (E.D. Mich. 2011) (father and son co-founded a business). *See* Opp'n PageID.644-645. Plaintiff inaccurately refers to YouTube and Onision's supposed "profit-sharing relationship," Opp'n, PageID.634, 641-643, 653-655, 661, even as she acknowledges that YouTube merely paid Onision a portion of "ad revenue generated from the content he posted." Opp'n, PageID.643. Such limited *revenue*-sharing is not *profit*-sharing, and it does not make Onision YouTube's partner with a stake in the overall business. *See* Cal. Corp. Code § 16202(c)(2) ("The sharing of gross returns does not by itself establish a partnership."). Unsurprisingly, Plaintiff does not even try to suggest that the revenue-sharing agreement imbued

[3] Michigan's Uniform Partnership Act uses essentially the same definition. *See Ross v. Ihrie*, 2006 U.S. Dist. LEXIS 90085, at *20 (E.D. Mich. Nov. 29, 2006) (cited in Opp'n, PageID.645).

Onision with any of the rights of partnership, such as access to "books and records," Cal. Corp. Code § 16403, or any fiduciary duties, Cal. Corp. Code § 16404(b)-(c). Plaintiff does not cite any authority suggesting that Onision could be considered a "partner" on these facts. Onision is no more a co-owner or legal partner of YouTube than is a musician who receives a share of the gate for his performance at a nightclub.

3. The Jackson Defendants' Alleged Sexual Misconduct Was Outside The Scope Of Any Agency Or Partnership Relationship.

But even if Onision was somehow YouTube's "agent" or "partner," YouTube could only be vicariously liable for his conduct if he "act[ed] within the scope" of the relevant agency or employment relationship, Rest. 3d of Agency, § 7.07(1), or "act[ed] in the ordinary course of business of the partnership or with authority of the partnership," Cal. Corp. Code § 16305(a); *accord Bartenwerfer v. Buckley*, 143 S. Ct. 665, 676 (2023) ("[I]f one partner takes a wrongful act without authority or outside the ordinary course of business, then the partnership—and by extension, the innocent partners—are generally not on the hook.") (citing Uniform Partnership Act §305 (2013)).[4] That is not the case here.

The conduct at issue is the Jacksons' efforts to groom Plaintiff and entice her to visit their home. That is far removed from Onision's monetized videos. And, as the Complaint makes clear, all of the grooming-related communications between the Jacksons and Plaintiff took place on other platforms and in the Jacksons' home—not on YouTube. Compl. ¶¶ 178-315, PageID.30-48; Mot., PageID.463-65. Those acts had no meaningful connection to the videos Onision posted or the advertising revenue he received. The idea that Onision or Lainey acted on YouTube's behalf, for YouTube's benefit, and subject to YouTube's direction and control when they were purportedly

[4] Michigan, like California, requires agents and partners to act within the ordinary course of the agency or partnership relationship for vicarious liability to apply. Opp'n, PageID.644-645; *accord Rogers v. J.B. Hunt Transp.*, 649 N.W.2d 23, 26 (Mich. 2002).

manipulating Plaintiff into an unlawful sexual relationship is not just unsupported; it is fantastical. *See Delfino v. Agilent Techs., Inc.*, 52 Cal. Rptr. 3d 376, 396 (2006) ("sending threatening e-mails and postings through the Internet" was "plainly outside the scope of [the perpetrator's] employment with Agilent," even if he "used Agilent's computer system").

California courts have repeatedly rejected efforts to hold employers vicariously liable for sexual misconduct committed by their employees. In *Lisa M. v. Henry Mayo Newhall Mem'l Hosp.*, 12 Cal. 4th 291, 298 (1995), the California Supreme Court held that a hospital was not vicariously liable when its employee, an ultrasound technician, sexually molested a patient *at the hospital during an examination*. *Id.* Even though the technician was performing his assigned duties, his tortious actions were not "*engendered by the employment*" because his motivation for the molestation was not "fairly attributable to work-related events or conditions" and was not a "generally foreseeable consequence" of the technician's employment. *Id.* at 301, 303. Accordingly, "Courts have rarely held [that] an employee's sexual assault or sexual harassment of a third party falls within the scope of employment." *Daza v. Los Angeles Cmty. Coll. Dist.*, 247 Cal. App. 4th 260, 268 (2016) (collecting cases); *accord Z.V. v. Cnty. of Riverside*, 238 Cal. App. 4th 889, 899 (2015) (applying *Lisa M.*; county not liable when employee assaulted minor during transport to foster home); *Liberatore*, 478 F. Supp. 2d at 758 (priest's "sexual molestation of Plaintiff was not within the scope or nature of his employment").

This case is even more straightforward. Onision's sexual misconduct did not take place on YouTube's premises; it was not "engendered" by his revenue sharing agreement; and had no causal and "foreseeable" nexus with any work that he even arguably performed for YouTube's benefit. *Lisa M.*, 12 Cal. 4th at 298. Plaintiff cites no authority imposing vicarious liability on facts like these. If a hospital is not vicariously liable when its own employees sexually assault a patient

during a medical examination at the hospital, YouTube is certainly not liable for Onision's off-platform sexual misconduct.

**D. Section 230 Bars Plaintiff's Claims under 2255.**

Plaintiff also cannot overcome Section 230's protections. Plaintiff does not dispute that YouTube is the provider of an "interactive computer service" or that the content posted by Onision on YouTube was not "created or developed" by YouTube. Mot., PageID.474-476. Instead, she makes two arguments for trying to evade Section 230, both of which fail.

1. Plaintiff Seeks To Hold YouTube Liable As A Publisher.

First, Plaintiff relies on *Doe v. Internet Brands*, 824 F.3d 846, 848-49 (9th Cir. 2016), and argues that she does not seek to hold YouTube liable for publishing content. Opp'n, PageID.640-641. *Internet Brands* does not help Plaintiff. That case involved a claim that a website failed to warn its users (models) about wrongdoers who used the site to obtain models' contact information, and stalked and sexually assaulted them. *Id.* at 848. The Ninth Circuit found the claim outside Section 230 because the wrongdoers had not posted *any* content on the defendants' website—and thus liability had nothing to do with hosting potentially harmful content. The plaintiff did not "claim to have been lured by any posting that Internet Brands failed to remove"—or that the defendant should have "remove[d] any user content." *Id.* at 851.

This case is entirely different. It does not involve a failure-to-warn claim. Plaintiff asserts that YouTube provided a platform for Onision, where he published videos that attracted Plaintiff (and other users) to him, supposedly as the first step in an elaborate grooming scheme. Mot., PageID.474. Plaintiff insists that she does not "contend that specific content or channel(s) should have been edited or removed by the YouTube Defendants." Opp'n, PageID.641. That ignores the Complaint, which specifically alleges that the popularity of Onision's YouTube videos provided him with the means "to form relationships with underage girls" (Compl. ¶ 29, PageID.6), and

expressly asserts that YouTube should have "remove[d] him from the platform" (Compl. ¶ 336, PageID.52). Elsewhere in her Opposition, Plaintiff confirms that she seeks to hold YouTube liable for publishing Onision's content, faulting YouTube for supposedly allowing Onision to post videos that "created a dangerous environment for children online in which he was luring, enticing, and recruiting them through the YouTube platform." Opp'n, PageID.636; *see also* PageID.656-57 ("Onision's channels … were used as a tool that lured and enticed young children"; Onision promoted his forums "in almost every video posted on YouTube").

In sum, while it fails to state a viable claim, Plaintiffs' supposed hook for suing YouTube is directly linked to the content Onision posted. Plaintiff's theory is that YouTube published potentially alluring videos created by Onision and that YouTube's failure to monitor and remove that material helped cause the injuries Plaintiff claims to have suffered. Compl. ¶¶ 177-78, PageID.30. That distinguishes this case from *Internet Brands* and brings it into Section 230's heartland. Mot., PageID.475-76; *accord Herrick v. Grindr LLC*, 765 F. App'x 586, 591 (2d Cir. 2019) (distinguishing *Internet Brands* applying Section 230 to bar failure to warn claim "inextricably linked to Grindr's alleged failure to edit, monitor, or remove the offensive content provided by [plaintiff's] ex-boyfriend"); *L.W. v. Snap Inc.*, 2023 U.S. Dist. LEXIS 97798, at *23-25 (S.D. Cal. June 5, 2023) (same).

2. Plaintiff's Agency/Partnership Theory Does Not Avoid Section 230.

Plaintiff also makes the novel—and wholly unsupported—argument that "because this was a partnership," Section 230 does not apply. Opp'n, PageID.645. While Onision was not YouTube's agent or partner, even if he was, there is no vicarious liability exception to Section 230. No matter whether it could trigger application of *respondeat superior* under state law, the fact that Onision received a portion of the revenue from videos he posted on YouTube does not make YouTube the

"creator" or "developer" of that content under Section 230. *E.g.*, *Blumenthal v. Drudge*, 992 F. Supp. 44, 51-53 (D.D.C. 1998) (applying Section 230 despite payments by website to author of allegedly defamatory material). Indeed, a core purpose of Section 230 is to protect websites against efforts to hold them secondarily liable for the wrongdoing of their users. *See, e.g.*, *Miller v. Fed. Express Corp.*, 6 N.E.3d 1006 (Ind. App. 2014) (claims for publishing third-party content barred by Section 230 despite plaintiff's reference to *respondeat superior*); *Delfino*, 52 Cal. Rptr. 3d at 389 (same, for claims against employer based on actions of employee); *Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056, 1066 (N.D. Cal. 2016) ("Liability based on that sort of vicarious responsibility, however, is exactly what § 230(c) seeks to avoid.").

## II. PLAINTIFF CANNOT SAVE HER CLAIM UNDER §1595.

### A. Without A Violation of §1591, Plaintiff Cannot Get Around Section 230.

Plaintiff does not dispute that the narrow exception to Section 230 for claims under §1595 is available only where the service provider *itself* committed a criminal violation of §1591. Mot., PageID.476-78. But YouTube did not violate §1591, and Plaintiff does not seriously argue otherwise. *Infra*, Section I.C.2. That alone defeats any §1595 claim here.

### B. Plaintiff Has Failed to State a Viable §1595 Claim Against YouTube.

While the Court need not address the issue, even apart from Section 230, Plaintiff has no viable claim under §1595. *First*, even if YouTube entered into a "venture" with Onision, it was not a "sex trafficking venture." *Second*, Plaintiff has not alleged that YouTube had knowledge of the Jacksons' alleged effort to traffic her. PageID.478-482. Plaintiff's Opposition only confirms that she cannot meet these elements.

As to the former, Plaintiff points to no authority suggesting that a standard-form agreement to share ad revenue transforms into a "sex trafficking venture" merely because a user engaged in off-platform sexual misconduct. That is not a "common undertaking of sex trafficking." *Doe v.*

*Red Roof Inns, Inc.*, 21 F.4th 714, 726-27 (11th Cir. 2021). Plaintiff argues that because YouTube's involvement with the Jacksons was supposedly in service of their identifying and recruiting potential targets—rather than the exploitation of victims—a relaxed standard is warranted. Opp'n, PageID.654. In this scenario, Plaintiff argues, she need only show that YouTube engaged in a "long-term, continuous business relationship" with Onision (PageID.658) despite being "put on notice" that he was creating "a dangerous environment" that "continue[d] to lure in young teens" (PageID.656).

That is doubly misguided. There is no support for the idea that it should be *easier* to bring a claim against a defendant that had no direct connection to any sexual abuse. If anything, the opposite should be true, and Plaintiff has no answer to cases that found no trafficking venture under §1595 even in the face of long-term business dealings. Mot., PageID.478-480; *accord Ramsbottom*, 2022 U.S. Dist. LEXIS 5152, at *58-64 (dismissing §1595 claim based on "wholly conclusory allegations" that the defendants "had a continuous business relationship with Bassnectar [the alleged trafficker] that enabled Bassnectar to engage in predatory behavior against underage girls"). But even Plaintiff's artificially diluted standard is not satisfied here. The Complaint alleges, at most, that YouTube was on notice that Onision's videos were vaguely "offensive" to some users—*not* that YouTube had notice those videos were being used to recruit targets for grooming or that the supposedly "dangerous environment" the videos created had anything to do with sex trafficking. Opp'n, PageID.656 (citing Compl. ¶¶ 118-24, PageID.21-23). Such allegations do not support a claim that, by allowing Onision to post and monetize videos, YouTube participated in any step of a sex trafficking venture.

As for scienter, Plaintiff cannot establish that YouTube knew or should have known that the Jacksons' supposed venture engaged in sex trafficking at all—much less as to her. Plaintiff

does not engage with the case law making clear that §1595 requires "actual or constructive knowledge that the venture … violated the TVPRA *as to the plaintiff*." Mot., PageID.480-481 (quoting *Red Roof Inns*, 21 F.4th at 725). She instead relies on *Fleites v. MindGeek S.A.R.L.*, 617 F. Supp. 3d 1146 (C.D. Cal. 2022) (Opp'n, PageID.658-660), a case that does not help her at all—even assuming (dubiously) that it remains good law following more recent Ninth Circuit decisions. *See Reddit*, 51 F.4th at 1141, 1145-46; *Doe v. Twitter, Inc.,* 2023 U.S. App. LEXIS 10808, at *5 (9th Cir. May 3, 2023).

The plaintiff in *Fleites* sued MindGeek (a pornography website) and Visa, which helped MindGeek monetize that illegal content. The court allowed a beneficiary claim against MindGeek based on allegations that it knowingly monetized specific instances of child pornography depicting the plaintiff, even after "Plaintiff quite literally told MindGeek herself that she was a minor in her videos." 617 F. Supp. 3d at 1160-61. Plaintiff alleges nothing like that. Moreover, *Fleites* dismissed the §1595 beneficiary claim against Visa because the allegations "do not reflect that Visa had any knowledge—constructive or otherwise—of Plaintiff, her videos, or her age in the videos." *Id*. at 1161-62.[5] So too here, Plaintiff points to no allegations plausibly suggesting that YouTube had any reason to know that the Jacksons were engaged in sex trafficking, much less trying to illegally groom her. Without that, she has no claim under §1595.

## CONCLUSION

Plaintiff's claims against YouTube fail as a matter of law and should be dismissed.

[5] While *Fleites* allowed a *conspiracy* claim against Visa under Section 1594(c), Plaintiff has not even tried to make such an allegation here. Nor could she.

Respectfully submitted,

**Clark Hill PLC**

By: */s/ Christopher M. Trebilcock*
Christopher M. Trebilcock
500 Woodward Avenue, Suite 3500
Detroit, Michigan 48226
ctrebilcock@clarkhill.com
(313) 965-8300

DATE: July 14, 2023

**Wilson Sonsini Goodrich & Rosati Professional Corporation**

By: */s/ Brian M. Willen*_________
Brian M. Willen
Benjamin Margo
1301 Avenue of the Americas, 40th Floor
New York, NY 10019-6022
(212) 999-5800
bwillen@wsgr.com
bmargo@wsgr.com

Amit Quint Gressel
One Market Plaza
Spear Tower, Ste. 3300
San Francisco, CA 94105
(415) 947-2087
agressel@wsgr.com

DATE: July 14, 2023

Attorneys for Defendants
GOOGLE LLC and YOUTUBE, LLC

**CERTIFICATE OF COMPLIANCE WITH LCivR 7.2(b)(i)**

This document complies with the limitation set forth in W.D. Mich. L. Civ. R 7.3(b)(i) because the brief contains 4293 words, excluding parts of the brief exempted by Local Rule 7.3(b)(ii) and (c). This word count was generated using Microsoft Word for Microsoft 365.

By:*/s/ Christopher M. Trebilcock*_
Christopher M. Trebilcock

**CERTIFICATE OF SERVICE**

I hereby certify that on July 14, 2023, I caused the foregoing paper to be electronically filed with the Clerk of Court using the ECF system, which will send notification to counsel of record.

By: */s/ Christopher M. Trebilcock*
Christopher M. Trebilcock