UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SARAH,

    Plaintiff,

v.

GOOGLE LLC, et al.,

    Defendants.
_____/

Case No. 1:23-cv-223

Hon. Hala Y. Jarbou

## OPINION

Plaintiff, who goes by Sarah for purposes of this litigation, brings this action against James and Lucas Jackson (collectively, the Jacksons or the Jackson defendants), as well as YouTube LLC and its parent company Google LLC (collectively, "YouTube"). Plaintiff Sarah alleges violations of federal sex trafficking laws by all defendants and alleges sexual assault and defamation by the Jacksons. Before the Court are the Jacksons' Motion to Dismiss or Transfer Venue (ECF No. 16), YouTube's Motion to Dismiss for Failure to State a Claim (ECF No. 40), and YouTube's Motion to Transfer Venue (ECF No. 42).

For the reasons stated below, this Court will transfer this case to the United States District Court for the Northern District of California.

## I. BACKGROUND

**A. Factual Background**

The following facts are drawn primarily from Plaintiff Sarah's complaint and are provided for context. James Jackson, using the online persona Onision, began posting videos to YouTube in 2007. James eventually amassed a large enough following to become a member of the YouTube Partner Program ("YPP"), YouTube's monetization platform. Through the YPP, YouTube pays

its content creators ("Partners") on a pay-per-view basis and agrees to share advertising revenue directed to the creator's page. YouTube also provides special tools to help further monetize a Partner's page. Partners agree to abide by the YouTube Terms of Service and Community Guidelines ("Community Guidelines") and can be demonetized for their failure to do so.

James amassed this large following by targeting underage girls. He produced, and was paid for, "content that appealed to that age group, such as comments on body image, appearance, self-identity, suicide ideology, and similar topics." (Compl. ¶ 104, ECF No. 1.) He would also directly interact with fans by "rat[ing] and comment[ing] on pictures of people and their bodies, often sent to him by young teen girls." (*Id.*) Despite concerns voiced by other YouTube users of inappropriate content that ran afoul of Community Guidelines and the YPP agreement, James remained a YouTube Partner.

In 2012, James, in his mid-twenties, began a romantic relationship with Lucas, a minor. At the time, Lucas used the online persona Lainey or "Laineybot" and identified as female.[1] The two married late that year and "began working together to groom and lure underage girls through [James's] online platforms[,]" including YouTube. (*Id.* ¶¶ 146-47.)

Plaintiff Sarah was one of those underage girls. The Jacksons pursued an increasingly intimate relationship with Sarah, who first reached out to the couple online when she was thirteen years old and dealing with "a troubled home life[,]" depression, and suicidal ideation. (*Id.* ¶¶ 175, 178.) The Jacksons were aware of Sarah's age.

Sarah first began visiting the Jacksons in their Washington State home when she was sixteen. Soon after, Sarah's mother awarded guardianship and medical and financial power of

---

[1] Lucas now uses male pronouns. Except when otherwise necessary for clarity's sake, this Court will use male pronouns to refer to Lucas, regardless of the pronouns he used at the relevant time.

attorney of Sarah to Lucas.  But Sarah never permanently moved in with the Jacksons.  She would ultimately stay with the Jacksons ten times over a period of three years, for periods ranging from a few days to a few months.

At least some of these visits were publicized on social media, including on YouTube.  With publicity came public criticism.  The Jacksons appeared cognizant of the optics and at least some legal ramifications, telling Sarah "it [would be] illegal for them to have sexual intercourse based on [her] age, but . . . they could just 'kiss' or 'make-out' instead."  (*Id.* ¶ 209.)

When Sarah turned eighteen, in response to public criticism, James and Lucas each created a video denying allegations of grooming.  They also forced Sarah to create a video addressing the allegations, where she "only . . . stated the literal truth" that she did not engage in sexual relations with the Jacksons while a minor.  (*Id.* ¶¶ 269-70.)  Sarah alleges that, shortly thereafter, James raped her while she was visiting the Jacksons' home.  Lucas was present.  The Jacksons demanded that Sarah sign a non-disclosure agreement the next morning.  Sarah continued visiting the Jacksons thereafter, but the "relationship" eventually devolved.

Despite public criticisms of the Jacksons, YouTube took no action to demonetize or deplatform them until a documentary about the incidents was released.  The documentary featured Sarah's story, as well as the stories of at least two other victims.  Following its release, in the beginning of 2012, YouTube demonetized the Jacksons—a year and a half after Sarah's last visit.  As of the time of this suit's filing, YouTube had not removed the Jacksons' videos.

Relevant to this case and the motions before the Court, both Sarah and the Jacksons agreed to YouTube's Terms of Service, which included a forum selection clause.  The forum selection clause purports to require litigation in the Northern District of California of "any claim or

dispute . . . that arises in whole or in part from" YouTube's service. (5/25/2018 Terms of Service ¶ 14, ECF No. 43-1.)

### B. Procedural Posture

Plaintiff Sarah brings this action under federal sex trafficking statutes, 18 U.S.C. §§ 1591, 1595, 2422, 2255; Michigan sexual assault statutes, Mich. Comp. Laws §§ 600.5805, 750.520b, 750.520c; and a Michigan defamation statute, Mich. Compl. Laws § 600.2911.  (ECF No. 1.)

The Jacksons move to dismiss for lack of personal jurisdiction, improper venue, and insufficient service of process under Federal Rules 12(b)(2), (3), and (5).  (ECF No. 16.)  In the alternative, the Jacksons move to transfer venue to the Western District of Washington under 28 U.S.C. § 1404(a).  (*Id.*)  YouTube opposes the Jacksons' venue transfer and moves instead to transfer venue to the Northern District of California.  (ECF Nos. 26, 42.)  YouTube also moves to dismiss for failure to state a claim as to them.  (ECF No. 40.)

## II. VENUE

This Court first examines the issue of venue transfer.  YouTube rests on a forum selection clause in its terms of service to which it avers both Sarah and the Jacksons are bound.  Because the Court ultimately agrees with YouTube, the other motions will remain pending for the appropriate court to consider or will be dismissed without prejudice, as appropriate.

### A. Legal Standards

When the parties raise both a personal jurisdiction question and a venue question, personal jurisdiction is typically decided first.  However, neither question "is fundamentally preliminary in the sense that subject-matter is, for both are personal privileges of the defendant, rather than absolute strictures on the court[.]"  *Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979).  Thus, "when there is a sound prudential justification for doing so . . . a court may reverse the normal order."  *Id.*

In the typical § 1404(a) *forum-non-conveniens* motion, a court will evaluate both public and private interests to determine "whether, on balance, a transfer would serve 'the convenience of the parties and witnesses' and otherwise promote 'the interest of justice.'" *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 62-63 (2013) (quoting 28 U.S.C. § 1404(a)). The presence of a valid forum-selection clause, however, changes this analysis. Three primary adjustments to the typical analysis must be made: first, "the plaintiff's choice of forum merits no weight"; second, a court "should not consider arguments about the parties' private interests"; and third, the original venue's choice-of-law rules do not travel to the new venue. *Id.* at 63-65.

Because a forum-selection clause alters the ultimate venue analysis, the Sixth Circuit first requires this Court to determine "whether a forum-selection clause is applicable to the claims at issue, mandatory, valid, and enforceable." *Lakeside Surfaces, Inc. v. Cambria Co.*, 16 F.4th 209, 215 (6th Cir. 2021) (citing *Wong v. PartyGaming Ltd.*, 589 F.3d 821, 830, 833 (6th Cir. 2009)). More specifically, with respect to enforceability, the Sixth Circuit asks whether a party

> can defeat the strong presumption in favor of enforceability by showing that (1) the clause was obtained by fraud, duress, or other unconscionable means; (2) the designated forum would ineffectively or unfairly handle the suit; (3) the designated forum would be so seriously inconvenient that requiring the plaintiff to bring suit there would be unjust; or (4) enforcing the forum selection clause would contravene a strong public policy of the forum state.

*Id.* at 219-20. If the forum selection clause survives this first step, "Atlantic Marine's modified *forum-non-conveniens* analysis applies and the plaintiff bears the burden of showing that the public factors weigh heavily against dismissal." *Id.* at 216.

**B. Discussion**

First, this Court finds it prudent to decide the competing motions to transfer venue ahead of the Jacksons' motion to dismiss for lack of personal jurisdiction, improper venue, and improper service of process. Plaintiff Sarah makes the point that not only do courts in Michigan have

5

personal jurisdiction over the Jacksons, but *every* federal court has personal jurisdiction over the Jacksons because the federal sex trafficking laws under which she sues confer nationwide service of process *and* nationwide personal jurisdiction via 18 U.S.C. § 2255. *See Med. Mut. of Ohio v. deSoto*, 245 F.3d 561, 567 (6th Cir. 2001) (affirming nationwide personal jurisdiction for an analogous ERISA provision, 29 U.S.C. § 1132(e)(2)); *see also Ramsbottom v. Ashton*, No. 3:21-CV-00272, 2022 WL 106733, at *13 (M.D. Tenn. Jan. 11, 2022) ("[I]f § 2255 did apply to the plaintiff's claims . . . , then they would be subject to personal jurisdiction in this court because there is no dispute that they are 'at home' in the United States.") That may be so, but this case presents a simpler solution. The same forum selection clause that YouTube seeks to enforce also includes a provision that the parties agree to submit to the forum's personal jurisdiction. Thus, deciding whether to transfer to YouTube's preferred venue may also decide whether personal jurisdiction exists. At the very least, it may put what could be a deeper question of law and statutory interpretation into the hands of the proper court.

Venue is thus the critical preliminary question. The existence of a relevant, mandatory, valid, and enforceable forum selection clause will make Sarah's opposition to YouTube's transfer motion and the Jacksons' own motion to transfer more difficult. The Court begins with Sarah's arguments.

### 1. Sarah

Sarah argues that the forum selection clause is unenforceable against her because she initially agreed to it when she was a minor and did not ratify it upon reaching the age of majority. Critically, though, Sarah does not dispute that she agreed to *a* forum selection clause when she reached eighteen; rather, she argues that *this* forum selection clause applies only to litigation about *prospective* activity. Said another way, the bulk of Sarah's allegations deal with Defendants' actions while she was a minor, before she had the legal capacity to agree to the clause, and any

6

new agreement covers only actions that arise after it. Thus, the forum selection clause is unenforceable against her for the events giving rise to the dispute.

The problem for Sarah is a textual one. The relevant version of the clause states, quite plainly, "[a]ny claim or dispute between you and YouTube that arises in whole or in part from the Service shall be decided exclusively by a court of competent jurisdiction in Santa Clara County, California." (5/25/2018 Terms of Service ¶ 14.) Courts have interpreted similarly worded provisions in arbitration clauses as having retroactive effect. *See, e.g.*, *Watson Wyatt & Co. v. SBC Holdings, Inc.*, 513 F.3d 646, 652 (6th Cir. 2008) (giving retroactive effect to an arbitration clause that applied to all claims "arising from or in connection with . . . the services provided") *Cf. Beck v. Park W. Galleries, Inc.*, 878 N.W.2d 804, 808 (Mich. 2016) (refusing to give retroactive effect to an arbitration clause contained in a later, discrete art sale to apply to an earlier, discrete art sale because "the plain language of the invoices that contained the arbitration clause [did] not refer to previous transactions," and the invoices related to the previous transaction contained no similar arbitration clause). And arbitration clauses are "in effect, a specialized kind of forum-selection clause." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974). Indeed, other courts that have examined similar terms of service used by Defendant Google have found the applicable forum selection clause to have retroactive effect. *See TradeComet.com LLC v. Google, Inc.*, 435 F. App'x 31, 35 (2d Cir. 2011).

This Court is satisfied that the language "[a]ny claim or dispute . . . that arises in whole or in part from the Service" is broad enough to apply retroactively. Thus, when Sarah agreed to the terms and conditions as an adult, she agreed to litigate the claims arising out of any prior activity related to the service according to the forum selection clause. This conclusion is bolstered by the

fact that when she agreed to the terms as an adult, she agreed to terms that were nearly identical to those she agreed to as a minor, before the events giving rise to this litigation occurred.

Note, neither Sarah nor any of the Defendants analyze the enforceability of the forum selection clause in the form of the Sixth Circuit's *Wong* analysis. Sarah alludes to the *Wong* factors relating to the ineffectiveness or unfairness of the designated forum, the inconvenience of litigating outside of her home forum, and the contravention of public policy of the forum state in her *Atlantic Marine* analysis, but none of these persuade the Court. Because these issues are relevant to *Atlantic Marine's* public interest factors as well, and because the parties discuss them in the context of that case's framework, this Court will further discuss these issues below. Regardless, this Court finds the forum selection clause to be enforceable against Sarah.

The forum selection clause is also relevant to the claims Sarah raises. She alleges she met and fostered a relationship with the Jacksons via YouTube's services; that the Jacksons were paid by YouTube during the time the events occurred; that YouTube failed to act on knowledge of the Jacksons' actions; and that Defendant YouTube benefitted from the Jacksons' actions. Sarah explicitly refers to the terms of service multiple times throughout her complaint as central to understanding both the Jacksons' conduct and YouTube's failure to act. (*See, e.g.*, Compl. ¶¶ 25, 35, 86, 126, 410.) In short, YouTube's role as enabler and facilitator of the alleged abuse via its service platform is central to Sarah's claims.

Sarah does not challenge the forum selection clause as not mandatory or otherwise invalid. Thus, with a relevant, mandatory, valid, and enforceable forum selection clause, *Atlantic Marine's* YouTube-friendly *forum-non-conveniens* analysis applies. *Lakeside Surfaces,* 16 F.4th at 216. Sarah first attempts to loosen this framework by arguing that the forum selection clause was not a central part of the bargain, which was lopsided to begin with, and thus is distinguishable from

*Atlantic Marine*. The point is well taken, but unpersuasive. Courts regularly hold similarly situated litigants to these "clickwrap" agreements.[2] This distinction from dicta in *Atlantic Marine* regarding relative bargaining power does not make that case inapplicable.

Under *Atlantic Marine,* private interest factors are irrelevant, and it is Plaintiff Sarah's burden to show that the public interest factors weigh heavily in her favor. She does not make this showing. She asserts two public interest factors—the comparative congestion of the two forums and the "local interest in having localized controversies decided at home." (Pl.'s Br. in Opp'n to YouTube's Mot. to Transfer 15-16, ECF No. 45.)

Sarah does not convince this Court that the Northern District of California is so congested in comparison to this District that it warrants overcoming a forum selection clause. The Northern District of California may have a larger number of civil cases pending, but Plaintiff does not explain how this necessarily translates to the sort of congestion that would prevent a timely resolution of this case. In fact, her only suggestion of the impact of this congestion is that the Northern District of California takes 1.6 more months, on average, to dispose of civil cases. This falls short of a public interest factor that weighs heavily in her favor.

This Court is also not convinced that it has any greater interest "in having localized controversies decided at home" than the Northern District of California. Plaintiff Sarah alleges facts that localize this controversy in three separate fora: Michigan, California, and Washington

---

[2] "A clickwrap agreement is one that 'require[s] the user to manifest assent to the terms by clicking an icon[,]'" as distinguished from "'[a] browsewrap agreement [which] discloses terms on a website that offers a product or service to the user, and the user assents by visiting the website to purchase the product or enroll in the service.'" *Traton News, LLC v. Traton Corp.*, 528 F. App'x 525, 526 n.1 (6th Cir. 2013). Clickwrap agreements are generally more favored by courts than browsewrap agreements because the terms to which a party is agreeing are more likely to be conspicuous enough to place the user on inquiry notice. *See, e.g.*, *Lee v. Panera Bread*, No. 1:22-CV-11958, 2023 WL 2606611 (E.D. Mich. Mar. 6, 2023), *report and recommendation adopted*, No. 1:22-CV-11958, 2023 WL 2603934 (E.D. Mich. Mar. 22, 2023); *Vernon v. Qwest Commc'ns Int'l, Inc.*, 857 F. Supp. 2d 1135 (D. Colo. 2012); *Sellers v. JustAnswer LLC*, 289 Cal. Rptr. 3d 1, 17 (Cal. Ct. App. 2021). Here, the agreement is properly considered a clickwrap agreement. Users were required to click an icon to the accept the terms of service and a hyperlink navigating the user to the terms of service appeared on the same screen. (Decl. of Raquel Small ¶ 7, ECF No. 53-1)

State. While Michigan certainly has an interest in harm done to its citizens, California also has an interest in resolving disputes that arise from its citizens' actions and platforms. And the Jacksons argue that since most of their alleged conduct occurred in Washington State, a district court in that forum is appropriate. (*See* Jackson's Mot. to Transfer 19-20, ECF No. 16-1.) In short, multiple districts have a plausible localized interest in this litigation, and Sarah has done no more than assert that this District's is stronger. This, too, falls short of a public interest factor that weighs heavily in her favor.

Sarah has not asserted strong enough public interest factors to overcome the forum selection clause's applicability. This is not abnormal—"[b]ecause [public interest] factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Atl. Marine*, 571 U.S. at 64. This is not that unusual case.

The Court also acknowledges, but does not rely upon, a related case with the same result. The Middle District of Florida recently granted YouTube's motion to transfer a similar case to the Northern District of California. *Alonso v. Google*, No. 5:23-cv-91, 2023 WL 6313930, at *3 (M.D. Fla. Sept. 28, 2023). That case, while featuring a different plaintiff, involves the same defendants (both YouTube and the Jacksons), similar claims, and the same forum selection clause. *Id.* at *1. The court in *Alonso* also found the forum selection clause to have retroactive effect and was also unpersuaded that asserted public interest factors could defeat transfer. *Id.* at *2-3.

### 2. The Jackson Defendants

The Jacksons argue that this case should be transferred to the Western District of Washington. They did not respond to YouTube's motion, although they indicated to YouTube that they "do not concur in the relief sought[.]" (YouTube's Mot. to Transfer 1, ECF No. 42.) The Jacksons also agreed to YouTube's terms of service (Compl. ¶¶ 8, 27, 102; Decl. of Raquel Small

¶ 7, ECF No. 53-1.) and have not challenged the applicability or enforceability of the forum selection clause. Thus, *Atlantic Marine* remains the appropriate framework.

Although not directed to YouTube's motion and the *Atlantic Marine* analysis, the Jacksons' motion evinces no substantial public interest factors strong enough to overcome the forum selection clause they agreed to with YouTube. The only arguments they make for transfer are based in trial efficiency and private interest factors such as convenience and affordability. These are largely irrelevant in the *Atlantic Marine* framework. Once again, this is not the unusual case that warrants a defeat of the forum selection clause.

### III. CONCLUSION

For the reasons stated above, this Court finds that a relevant, mandatory, valid, and enforceable forum selection clause exists as to all parties. The Court will honor the parties' choice of forum and will grant YouTube's motion to transfer venue to the Northern District of California. YouTube's motion to dismiss for failure to state a claim will remain pending upon transfer of this case. The Jacksons' motion to dismiss for want of personal jurisdiction, improper venue, and improper service; or, in the alternative, to transfer venue, will also remain pending upon transfer of this case.

An order will enter consistent with this Opinion.

Dated: October 11, 2023                    /s/Hala Y. Jarbou
                                                            HALA Y. JARBOU
                                                            CHIEF UNITED STATES DISTRICT JUDGE