BRIAN M. WILLEN (*Pro Hac Vice*)
BENJAMIN D. MARGO, SBN 348644
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue of the Americas, 40th Floor
New York, NY 10019-6022
Telephone: (212) 999-5800
Facsimile: (212) 999-5801
Email: bwillen@wsgr.com
bmargo@wsgr.com

Attorneys for Defendants
GOOGLE LLC and YOUTUBE, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

UNKNOWN PARTY and REGINA ALONSO,

Plaintiffs,

v.

GOOGLE LLC et al.

Defendants.

CASE NO: 3:23-cv-05523-VC

**NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT BY DEFENDANTS GOOGLE LLC AND YOUTUBE, LLC; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Before: Hon. Vince Chhabria
Place: Crtrm. 4, 17th Fl.
Date: April 4, 2024
Time: 10:00 a.m.

# TABLE OF CONTENTS

**Page**


NOTICE OF MOTION AND MOTION ... 1

STATEMENT OF REQUESTED RELIEF AND ISSUES TO BE CONSIDERED ... 1

MEMORANDUM OF POINTS AND AUTHORITIES ... 1

BACKGROUND ... 2

A. Background on YouTube and the Jackson Defendants. ... 2

B. Plaintiffs' Alleged Grooming By The Jackson Defendants. ... 2

C. Plaintiffs' Limited Allegations Concerning YouTube. ... 3

ARGUMENT ... 4

I. PLAINTIFFS HAVE NO VIABLE CLAIM AGAINST YOUTUBE UNDER § 2255 ... 4

A. YouTube Did Not Criminally Violate § 2422 or § 1591. ... 4

1. Plaintiffs Have Not Alleged That YouTube Violated § 2422. ... 5

2. Plaintiffs Have Not Alleged That YouTube Violated § 1591(a). ... 6

B. Section 230 Bars Plaintiffs' Claims Under § 2255. ... 7

1. Plaintiffs' Claims Seek to Hold YouTube Liable as a Publisher. ... 7

2. Plaintiffs Cannot State a Claim or Evade Section 230 By Suggesting That Onision Was YouTube's Agent or "Partner." ... 8

II. PLAINTIFFS FAIL TO STATE A CLAIM UNDER § 1595. ... 12

A. Plaintiffs' § 1595 Claims Fail to Get Through the FOSTA Gateway. ... 12

B. Plaintiff Fails to State a Claim Against YouTube Under § 1595. ... 12

CONCLUSION ... 15

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*A.B. v. Extended Stay Am. Inc*,
2023 U.S. Dist. LEXIS 162568 (W.D. Wash. Sept. 13, 2023)....................................14, 15

*A.B. v. Hilton Worldwide Holdings Inc*.,
484 F. Supp. 3d 921 (D. Ore. 2020)..........................................................................15

*A.B. v. Shiloh Inn, Salem, LLC*,
2023 U.S. Dist. LEXIS 143289 (D. Ore. Aug. 15, 2023)...........................................14, 15

*Alonso v. Google LLC et al.*,
4:23-cv-05127 (N.D. Cal.) ..........................................................................................4

*Alonso v. Google LLC et al.*,
5:23-cv-00091 (M.D. Fla.)...........................................................................................4

*Amy v. Curtis*,
U.S. Dist. LEXIS 163599 (N.D. Cal. Sept. 8, 2020) .......................................................5

*B.J. v. G6 Hosp., LLC*,
2023 U.S. Dist. LEXIS 88180 (N.D. Cal. May 19, 2023)...................................12, 14, 15

*Barnes v. Yahoo!, Inc.*,
570 F.3d 1096 (9th Cir. 2009) .......................................................................................8

*Bartenwerfer v. Buckley*,
143 S. Ct. 665 (2023)...................................................................................................10

*Blumenthal v. Drudge*,
992 F. Supp. 44 (D.D.C. 1998).....................................................................................11

*Caraccioli v. Facebook, Inc.*,
167 F.Supp.3d 1056 (N.D. Cal. 2016) ..........................................................................11

*Daza v. Los Angeles Cmty. Coll. Dist.*,
247 Cal. App. 4th 260 (2016) .......................................................................................10

*Delfino v. Agilent Techs., Inc.*,
145 Cal. App. 4th 790 (2006) ...................................................................................10, 11

*Doe #1 v. Twitter, Inc.*,
2023 U.S. App. LEXIS 10808 (9th Cir. May 3, 2023)................................................6, 8

*Doe II v. MySpace Inc*.,
175 Cal. App. 4th 561 (2009) .........................................................................................8

*Doe v. City of Gauley Bridge*,
2022 U.S. Dist. LEXIS 150204 (S.D. W. Va. Aug. 22, 2022) ..........................................5

*Doe v. Grindr*,
2023 U.S. Dist. LEXIS 230505 (C.D. Cal. Dec. 28, 2023) ....................................7, 8, 12

*Doe v. Hansen*,
2018 U.S. Dist. LEXIS 81453 (E.D. Mo. May 15, 2018)..................................................5

*Doe v. Red Roof Inns, Inc.*,
21 F.4th 714 (11th Cir. 2021) ...................................................................12, 13, 14

*Doe v Twitter, Inc.*,
2023 U.S. Dist. LEXIS 220387 (N.D. Cal. Dec. 11, 2023)................................6, 7, 8, 12

*Does v. Reddit, Inc.*,
51 F.4th 1137 (9th Cir. 2022) ......................................................................6, 7, 12

*Dyroff v. Ultimate Software Grp., Inc.*,
934 F.3d 1093 (9th Cir. 2019) ..............................................................................7

*E. Coast Test Prep LLC v. Allnurses.com, Inc.*,
971 F.3d 747 (8th Cir. 2020) ...............................................................................11

*Fair Hous. Council v. Roommates.com*,
521 F.3d 1157 (9th Cir. 2008) ..............................................................................8

*Geiss v. Weinstein Co. Holdings LLC*,
383 F. Supp. 3d 156 (S.D.N.Y. 2019)....................................................................13

*H.G. v. Inter-Continental Hotels Corp.*,
489 F. Supp. 3d 697 (E.D. Mich. 2020).........................................................13, 15

*ING Bank v. Ahn*,
758 F. Supp. 2d 936 (N.D. Cal. 2010) ....................................................................9

*J.B. v. Craigslist, Inc.*,
2023 U.S. App. LEXIS 10806 (9th Cir. May. 3, 2023) ..........................................12

*J.B. v. G6 Hosp., LLC*,
2020 U.S. Dist. LEXIS 151213 (N.D. Cal. Aug. 20, 2020), aff'd, *J.B. v. Craigslist, Inc.,* 2023 U.S. App. LEXIS 10806 (9th Cir. Cal., May 3, 2023)......................8

*Jean-Charles v. Perlitz*,
937 F. Supp. 2d 276 (D. Conn. 2013).....................................................................5

*Kimzey v. Yelp! Inc.*,
836 F.3d 1263 (9th Cir. 2016) ............................................................................11

*L.W. v. Snap Inc.*,
2023 U.S. Dist. LEXIS 97798 (S.D. Cal. June 5, 2023).............................................8

*Lisa M. v. Henry Mayo Newhall Mem'l Hosp.*,
12 Cal. 4th 291 (1995) ...................................................................................10, 11

*Miller v. Fed. Express Corp.*,
6 N.E.3d 1006 (Ind. App. 2014) ..........................................................................11

*Noble v. Weinstein*,
335 F. Supp. 3d 504 (S.D.N.Y. 2018)....13

*Ramsbottom v. Ashton*,
2022 U.S. Dist. LEXIS 5152 (M.D. Tenn. Jan. 11, 2022)....9, 14

*Ratha v. Phatthana Seafood Co.*,
2017 U.S. Dist. LEXIS 230292 (C.D. Cal. Dec. 21, 2017) *aff'd*, 26 F.4th 1029 (9th Cir. 2022)....9

*Ratha v. Phatthana Seafood Co.*,
35 F.4th 1159 (9th Cir. 2022)....12, 14

*Records v. Juarez*,
2014 WL 346674 (C.D. Cal. Jan. 30, 2014)....5

*S.J. v. Choice Hotels Int'l, Inc.*,
473 F. Supp. 3d 147 (E.D.N.Y. 2020)....15

*Singleton v. Clash*,
951 F. Supp. 2d 578 (S.D.N.Y. 2013)....5

*United States v. Afyare*,
632 F. App'x 272 (6th Cir. 2016)....6

*United States v. Bailey*,
228 F.3d 637 (6th Cir. 2000)....5

*Unknown Party v. Google LLC et al.*,
1:23-cv-00223 (W.D. Mich.)....4

*Upton v. Vicknair*,
2021 U.S. Dist. LEXIS 118756 (E.D. La. June 25, 2021)....5

*Van't Rood v. Cnty. of Santa Clara*,
113 Cal App. 4th 549 (2003)....9

*Z.V. v. Cnty. of Riverside*,
238 Cal. App. 4th 889 (2015)....10

**STATUTES**

18 U.S.C. § 1591.... *passim*

18 U.S.C. § 1595....4, 12, 13

18 U.S.C. § 2255....4, 5, 7

18 U.S.C. § 2422....4, 5

47 U.S.C. § 230.... *passim*

Cal. Civ. Code § 2295....9

Cal. Corp. Code § 16101 ........ 9

Cal. Corp. Code § 16202 ........ 9

Cal. Corp. Code § 16305 ........ 10

Cal. Corp. Code § 16403 ........ 10

Cal. Corp. Code § 16404 ........ 10

**RULES**

Fed. R. Civ. P. 8 ........ 1

Fed. R. Civ. P. 12(b)(6) ........ 1

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on April 4, 2024 at 10am, before the Honorable Vince Chhabria of the U.S. District Court for the Northern District of California, Defendants Google LLC and YouTube, LLC (collectively, "YouTube") shall and hereby do move for an order dismissing with prejudice Plaintiffs' First Amended Complaint (Dkt. No. 111, "FAC").

## STATEMENT OF REQUESTED RELIEF AND ISSUES TO BE CONSIDERED

Pursuant to Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure and Section 230 of the Communications Decency Act, 47 U.S.C. § 230(c) ("§ 230"), YouTube seeks dismissal of Plaintiffs' FAC without further leave to amend.

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs Sarah and Regina Alonso make allegations against Defendants James Jackson ("Onision") and Lucas Jackson ("Lucas") (the "Jacksons") that, if true, are troubling. Sarah alleges that as a minor, she was "groomed" by the Jacksons through an extended series of online communications that led her to visit the Jacksons' home in Washington, where she was eventually raped by Onision. Alonso claims that as a minor, she was "groomed" by the Jacksons, who solicited nude photographs from her and tried (unsuccessfully) to entice her to visit their home. These allegations may give Plaintiffs viable causes of action against the Jacksons, who have now declared bankruptcy, staying the claims against them. But Plaintiffs have also sued YouTube. As to YouTube, their Complaint is legally deficient and must be dismissed.

Plaintiffs do not allege that YouTube was involved in the Jacksons' alleged grooming efforts or that it knew anything about them—or even that they were groomed by the Jacksons on YouTube. Instead, they seek to hold YouTube liable for the Jacksons' alleged sexual misconduct on the theory that YouTube hosts an online platform that allowed Onision to become a well-known content creator by posting viral videos and (for a time) to earn ad revenue from those videos. Plaintiffs' allegations are not remotely enough to state a claim against YouTube for sex trafficking or violating the other federal criminal laws Plaintiffs invoke, and any claims would be barred by § 230. Plaintiffs' claims against YouTube should be dismissed without further leave to amend.

# BACKGROUND

## A. Background on YouTube and the Jackson Defendants.

Google owns and operates YouTube, an online video service with billions of users and millions of user-created "channels" offering a vast array of video content. ¶¶ 9-11.[1] YouTube users can create and post videos to their channels, which other users can view.

James Jackson, also referred to as "Onision," is a video content creator with a large following on YouTube. ¶¶ 8, 13-14. He was part of the YouTube Partner Program ("YPP"), which gave content creators a share of advertising revenue associated with the videos they post on YouTube. ¶ 116.[2] Onision also maintained separate forums—not on YouTube—for communicating with his fans (the "Onision Forums"). ¶¶ 32, 36, 136, 139-144, 147-153, 165-168. YouTube had no role in these Forums. ¶ 144. Onision's spouse Lucas Jackson (previously known as "Lainey") appeared in many of Onision's videos and allegedly maintained communication with Plaintiffs through channels outside YouTube. ¶¶ 31-33, 36-42, 144-148, 159-228. Though Plaintiffs identify two YouTube channels associated with Lucas, ¶ 26, neither of these is alleged to have ever been monetized or used to post violative content.

## B. Plaintiffs' Alleged Grooming By The Jackson Defendants.

**Sarah**: Sarah alleges that the Jackson Defendants "groomed" her when she was a minor, via online communications and trips to visit the Jacksons' home, culminating in her alleged rape by Onision when she was 18 years old. ¶¶ 41-46, 193-334. None of the communications or alleged grooming activity took place on YouTube. Instead, they occurred on the Onision Forums, Twitter, Instagram, Skype, Apple's Messages app, a group chat on the app Kik, and "a group chat called 'The Three Musketeers.'" ¶¶ 36, 144, 146-153, 159, 165-168, 179-189, 197-198, 202-221, 292.

YouTube's purported connection to Sarah's claims is limited: Sarah alleges that as a depressed minor she "found Onision's channel on Youtube and was attracted to the topics, as they spoke about self-harm and self-image." ¶ 195. And she came to know Lucas "when Lainey was introduced as Onision's significant other on "the Onision Speaks channel." ¶¶ 196-197. The

---

[1] Citations with only paragraph symbols (¶) are record citations to Plaintiffs' FAC.

[2] The standard YPP contract, referred to and fairly incorporated in the FAC (*id.* ¶¶22, 82, 99) is attached as Exhibit A to the Declaration of Amit Gressel.

Amended Complaint identifies no specific videos, let alone any illegal videos, that Sarah saw on Onision's YouTube channels. Instead, Sarah alleges that she was a "fan" of Onision's channel, and she "reached out to Onision and Lainey on their Twitter page" and through the Onision Forums. ¶ 197. Eventually, the Jacksons invited Sarah to visit them in Washington, and she did so multiple times before Onision allegedly raped her in January of 2019. ¶¶ 43-46, 226-317.

**Alonso:** Alonso alleges that the Jackson Defendants, primarily Lucas, groomed her when she was a minor. ¶ 163. As with Sarah, none of this alleged grooming activity took place on YouTube. Instead, it took place on other internet services, including Instagram, the Onision Forums, Skype, Twitter, and Kik. ¶¶ 159, 168, 179-180, 183, 198. Alonso alleges that she first became aware of Onision in 2012 via YouTube, at which time she felt a "connection" with him. ¶¶ 156-157. Alonso first reached out to the Jacksons through Instagram. ¶ 159. In 2012, Alonso began "speaking with [Lucas]" via "frequent[]" video "Skype calls." ¶ 183. Through these (non-YouTube) communications, Lucas allegedly attempted to lure Alonso across state lines to engage in sexual acts with the Jacksons. Alonso refused the Jackson's entreaties and never traveled to the Jacksons' home. ¶ 192.

### C. Plaintiffs' Limited Allegations Concerning YouTube.

Despite YouTube's limited connections to these events, Plaintiffs have sued YouTube, alleging that "Onision used his fame and platform to objectify children, to form relationships with underage girls, to entice them, [and] groom them." ¶ 28. While Plaintiffs vaguely suggest that Onision leveraged his YouTube persona to gain attention, there are no allegations that Onision engaged in any illegal activity on YouTube. Nor do Plaintiffs allege that YouTube encouraged, took part in, or benefitted (financially or otherwise) from Onision's off-platform behavior.

Plaintiffs allege that "YouTube was receiving value and profit-sharing with Onision on … content" that he posted on his YouTube channel. ¶ 35. But the Complaint does not identify any YouTube content, much less any monetized content, that *was* unlawful, that depicted Plaintiffs, or that was intended to lure anyone into improper sexual activity. Indeed, much of what Onision posted seems like generic, even silly, online fare—like his well-known video "Banana Song" (https://www.youtube.com/watch?v=kSt2QDu2FaA). *Id.* ¶¶ 18, 112. At most, Plaintiffs assert that

some of Onision's content was "controversial" (*id.* ¶¶ 13, 17, 104), and say without elaboration that by allowing his videos to remain on the platform, YouTube "enable[d] … his harmful and volatile content" (¶ 128). They acknowledge that YouTube demonetized Onision in early 2021 (¶¶ 351-352). Onision has publicly denied Plaintiffs' allegations of grooming and sexual abuse.

Despite the lack of meaningful connection between YouTube and Plaintiffs' injuries, the Amended Complaint asserts the following claims against YouTube: (1) claims under 18 U.S.C. § 1595 ("TVPRA") for allegedly benefitting from participating in a "sex trafficking venture' in violation of 18 U.S.C. § 1591(a) (Counts I, V); and (2) claims under 18 U.S.C. § 2255 based on alleged sex trafficking in violation of 18 U.S.C. § 1591(a) and criminal enticement of unlawful sexual activity under 18 U.S.C. § 2422 (Counts II, III, VI, VII, ).

Sarah and Alonso initially filed separate cases in the Western District of Michigan and the Middle District of Florida. YouTube moved to dismiss both cases, or in the alternative to transfer. Both courts granted YouTube's transfer motions without addressing the motions to dismiss. *See Unknown Party v. Google LLC et al.*, 1:23-cv-00223 (W.D. Mich.), Dkt. 88 (Transfer Order); *Alonso v. Google LLC et al.*, 5:23-cv-00091 (M.D. Fla.), Dkt., 66 (Transfer Order). Alonso subsequently dismissed her case against YouTube, *Alonso v. Google LLC et al.*, 4:23-cv-05127 (N.D. Cal.), Dkt. 89 (Stipulation of Dismissal). The Amended Complaint added Alonso as a plaintiff without otherwise changing the factual allegations or legal claims. Dkt. 111 (FAC).

## ARGUMENT

## I. PLAINTIFFS HAVE NO VIABLE CLAIM AGAINST YOUTUBE UNDER § 2255

### A. YouTube Did Not Criminally Violate § 2422 or § 1591.

Section 2255 authorizes victims of certain crimes relating to sexual abuse to bring civil claims. 18 U.S.C. § 2255(a). Plaintiffs' theory for asserting these claims against YouTube appears to be that YouTube was in an "agency and/or profit-sharing relationship" with Onision and therefore is vicariously liable for his alleged criminal violations. This theory fails as a matter of law: § 2255 does not provide for vicarious or other secondary liability.[3] *See, e.g.*, *Doe v. City of*

[3] Even if vicarious liability were available, it would make no difference because there is no legally viable allegation that the Jacksons were acting as YouTube's "agents" (or that YouTube is otherwise vicariously responsible for their alleged criminal behavior). *See infra* at 8-11.

*Gauley Bridge*, 2022 U.S. Dist. LEXIS 150204, at *33-34 (S.D. W. Va. Aug. 22, 2022) ("[T]he Court finds that . . . Congress did not intend to permit a theory of vicarious liability under § 2255"); *Upton v. Vicknair*, 2021 U.S. Dist. LEXIS 118756, at *13 (E.D. La. June 25, 2021) ("a claim under § 2255 is limited to a defendant [who] committed the acts described in any of the listed offenses") (cleaned up); *Doe v. Hansen*, 2018 U.S. Dist. LEXIS 81453, at *14, (E.D. Mo. May 15, 2018) ("the civil remedy provision of [§ 2255] does not permit claims for secondary or vicarious liability"); *Jean-Charles v. Perlitz*, 937 F. Supp. 2d 276, 281-82 (D. Conn. 2013) ("§ 2255 does not provide for secondary liability"). Instead, to pursue a claim against YouTube under § 2255, Plaintiff would have to allege that YouTube *itself* "violated at least one of the criminal statutes listed in Section 2255." *Singleton v. Clash*, 951 F. Supp. 2d 578, 584 (S.D.N.Y. 2013) (cleaned up); *accord Amy v. Curtis*, U.S. Dist. LEXIS 163599, at *5-7 (N.D. Cal. Sept. 8, 2020) (same). Plaintiff's claims are premised on two such statutes, but nothing in the Amended Complaint comes close to alleging that YouTube's conduct amounted to a criminal violation of either one.

1. <u>Plaintiffs Have Not Alleged That YouTube Violated § 2422.</u>

Section 2422 makes it unlawful to "knowingly persuade[], induce[], entice[], or coerce[]" a person in connection with "prostitution" or "any sexual activity for which any person can be charged with a criminal offense" "or attempts to do so." 18 U.S.C. § 2422(a) & (b). Plaintiffs do not allege that YouTube did anything to induce, entice, or coerce them to engage in unlawful sexual activity. Nor could they. Plaintiffs allege only that "YouTube was notified that Onision was using their platform to groom, lure, persuade, induce, entice, or coerce children with his platform, but continued to profit-share with him and did not curtail his harmful abuse." ¶ 481. That allegation, even taken as true, clearly does not constitute a violation of § 2422 by YouTube. Plaintiffs do not allege that YouTube had any knowledge that the Jacksons were trying to or had lured Sarah or Regina to Washington for unlawful sexual activity (*id.* ¶ 411). And even if YouTube had such knowledge, that would not amount to an allegation that YouTube *itself* did not knowingly entice or induce Plaintiffs in violation of § 2422. *Cf. United States v. Bailey,* 228 F.3d 637, 639 (6th Cir. 2000) (§ 2422(b) "only affects those who intend to target minors"); *Records v. Juarez*, 2014 WL 346674, at *10 (C.D. Cal. Jan. 30, 2014) (same).

2. Plaintiffs Have Not Alleged That YouTube Violated § 1591(a).

Plaintiffs also fail to allege that YouTube violated § 1591(a), which imposes criminal liability on anyone who "knowingly … recruits, entices, harbors, transports, provides, obtains, or maintains by any means a person" knowing or in reckless disregard of the fact that "the person has not attained the age of 18 years and will be caused to engage in a commercial sex act." 18 U.S.C. § 1591(a)(1). The beneficiary liability provision of § 1591 creates liability where defendant (1) "knowingly" "benefits" (2) from "participation in a venture" (defined as "knowingly assisting, supporting, or facilitating a violation of subsection (a)(1)" (§ 1591(e)(4)) while (3) knowing or in reckless disregard of the fact that "the person" who was trafficked was under 18 and "will be cause[d] to engage in a commercial sex act." *Id.* § 1591(a)(2).

This provision is strict. To "hold a defendant criminally liable as a beneficiary of sex trafficking, the defendant must have actually 'engaged in some aspect of the sex trafficking.'" *Does v. Reddit, Inc.*, 51 F.4th 1137, 1145 (9th Cir. 2022) ("establishing criminal liability requires that a defendant knowingly benefit from knowingly participating in child sex trafficking") (quoting *United States v. Afyare*, 632 F. App'x 272, 286 (6th Cir. 2016)). Under § 1591, therefore, "[m]ere association with sex traffickers" is not enough, *id.* at 1145, nor is alleging an ongoing "business relationship" between the defendant and a sex trafficker, *Doe #1 v. Twitter, Inc.*, 2023 U.S. App. LEXIS 10808, at *1 (9th Cir. May 3, 2023); *accord Doe v Twitter, Inc.*, 2023 U.S. Dist. LEXIS 220387, at *18-21 (N.D. Cal. Dec. 11, 2023) (applying *Reddit* to dismiss claim against Twitter under § 1591 based on conduct that "amounts to 'turning a blind eye' rather than 'active participation' in sex trafficking"). Instead, an alleged beneficiary defendant must actively and knowingly support the criminal sex trafficking violation, and (in the case of a minor victim) must know that the victim "has not attained the age of 18" and would be caused to be "engage[d] in a commercial sex act." *Reddit*, 51 F.4th at 1145.

The Amended Complaint does not meet these strict requirements. There are no allegations that YouTube had any knowledge of Plaintiffs' alleged trafficking, much less that YouTube "actively participated" in such abuse and received a benefit from "affirmative conduct furthering the sex-trafficking venture." *Id*. Indeed, courts have repeatedly dismissed § 1591 claims against

online service providers based on much more substantial allegations. *See, e.g.*, *id.*, 51 F.4th at 1139-40, 1145 (allegations that Reddit allowed the sale of advertising on pages featuring child pornography and failed to remove such material "even when users report it" not enough to state a claim); *Twitter, Inc.*, 2023 U.S. Dist. LEXIS 220387, at *18-21 (N.D. Cal. Dec. 11, 2023) (same, for allegations that Twitter knew about but failed to remove CSAM, including CSAM depicting the plaintiffs); *Doe v. Grindr*, 2023 U.S. Dist. LEXIS 230505, at *17-19 (C.D. Cal. Dec. 28, 2023) (allegations that Grindr "had constructive knowledge of lawsuits or media accounts concerning sexual predators using the Grindr App" or "derived revenue from all users through the sale of ads" failed to state a beneficiary liability claim under § 1591). These cases make clear that a "complaint against a website that merely alleges sex trafficking by the website's users—without the participation of the website"—does not state a claim for violation of § 1591. *Reddit*, 51 F.4th at 1142 (cleaned up). That dooms Plaintiffs' beneficiary-liability claims against YouTube.

**B. Section 230 Bars Plaintiffs' Claims Under § 2255.**

Plaintiff's § 2255 claims are also barred by § 230. Section 230(c)(1) protects "interactive computer service provider[s]" from claims that seek to treat them as "publisher[s]" of third-party content—including in civil cases involving alleged violations of sexual abuse laws. *Reddit*, 51 F.4th at 1140. § 230 applies where (1) the defendant is a "provider ... of an interactive computer service"; (2) the allegedly harmful content at issue was "provided by another information content provider," not the defendant; and (3) the claim seeks to hold the defendant liable as a "publisher or speaker" of that content. 47 U.S.C. § 230(c)(1); *see, e.g.*, *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1097 (9th Cir. 2019).

1. Plaintiffs' Claims Seek to Hold YouTube Liable as a Publisher.

It is indisputable that YouTube "is an interactive computer service, . . . [an entity] that provides 'access by multiple users to a computer server,'" § 230(f)(2), and that all of the information at issue (videos posted by the Jackson Defendants) was created and provided by third-parties. Plaintiffs' claims seek to hold YouTube liable as a publisher of that third-party content. Plaintiffs' claims are that YouTube should have removed or made less prominent Onision's content, prevented him from monetizing it, and terminated or limited the reach of his channels

because they were posted videos that were "objectifying, offensive, and controversial." ¶ 104. These are core publishing decisions. Imposing liability on this basis strikes at the heart of what § 230(c)(1) prohibits. "[A]ny activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230." *Fair Hous. Council v. Roommates.com*, 521 F.3d 1157, 1170-1171 (9th Cir. 2008); *accord Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1102 (9th Cir. 2009) ("publication involves reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content"); *Doe II v. MySpace Inc.*, 175 Cal. App. 4th 561, 573 (2009) (claims demanding that online service "ensure that sexual predators do not gain access to (*i.e.*, communicate with) minors on its Web site" involve activity "expressly covered by section 230").

Courts have consistently applied § 230 to bar similar claims that online service providers are liable for supporting sex trafficking or other sexual abuse by allowing the posting of, or failing to adequately monitor, regulate, or remove, third-party content that allegedly helped facilitate such misconduct. *See, e.g.*, *Twitter*, 2023 U.S. App. LEXIS 10808, at *6 (possession of CSAM); *Twitter*, 2023 U.S. Dist. LEXIS 220387, at *18, n.4 (beneficiary liability under § 1591); *Grindr*, 2023 U.S. Dist. LEXIS 230505, at *5-7 (same); *J.B. v. G6 Hosp., LLC*, 2020 U.S. Dist. LEXIS 151213 (N.D. Cal. Aug. 20, 2020) (same), *aff'd, J.B. v. Craigslist, Inc.,* 2023 U.S. App. LEXIS 10806 (9th Cir. Cal., May 3, 2023); *L.W. v. Snap Inc.*, 2023 U.S. Dist. LEXIS 97798, at *25 (S.D. Cal. June 5, 2023) (same); *cf. Doe II*, 175 Cal. App. 4th at 565 (negligence and products liability claims based on alleged failure to "implement reasonable, basic safety precautions with regard to protecting young children from sexual predators"). So, too, here, Plaintiffs' efforts to hold YouTube liable for "failing to regulate third-party content"—for allowing Onision to post content that allegedly contributed (albeit in a highly indirect and tangential way) to his alleged grooming efforts—is barred by Section 230. *Grindr*, 2023 U.S. Dist. LEXIS 230505, at *12-13.

2. <u>Plaintiffs Cannot State a Claim or Evade Section 230 By Suggesting That Onision Was YouTube's Agent or "Partner."</u>

Plaintiffs have suggested that Section 230 does not apply because Onision supposedly was acting as YouTube's "agent" or legal "partner." This fails. *First*, there is no relationship that makes

YouTube legally responsible for Onision's alleged sexual abuse. (Plaintiffs do not claim that there was an agency or partnership relationship between YouTube and Lucas.) Plaintiffs' argument is based entirely on the revenue-sharing agreement between YouTube and Onision. Nothing in that agreement creates an agency relationship. *See* Ex. A. And it is well-settled that an "arms-length commercial relationship" "does not create an agency relationship." *Ratha v. Phatthana Seafood Co.*, 2017 U.S. Dist. LEXIS 230292, at *20 (C.D. Cal. Dec. 21, 2017) *aff'd*, 26 F.4th 1029 (9th Cir. 2022) (cleaned up); *accord Van't Rood v. Cnty. of Santa Clara*, 113 Cal App. 4th 549, 572 (2003) (a "preexisting relationship is not sufficient to make one party the agent for the other").

Nor do Plaintiffs allege any facts suggesting that Onision "represent[ed]" YouTube "in dealings with third persons," Cal. Civ. Code § 2295, or satisfied any of the requirements of agency, *Van't Rood*, 113 Cal. App. 4th at 570-73. In particular, the "right to control" requires "a comprehensive and immediate level of 'day-to-day' authority." *ING Bank v. Ahn*, 758 F. Supp. 2d 936, 941 (N.D. Cal. 2010). But the FAC does not point to *any* control that YouTube exercised over Onision's off-platform activity—or even that Onision was acting at YouTube's direction in posting content on the service. *See, e.g.*, *Ramsbottom v. Ashton*, 2022 U.S. Dist. LEXIS 5152, at *57 (M.D. Tenn. Jan. 11, 2022) (rejecting vicarious liability in sex trafficking case where plaintiffs did "not allege facts suggesting that [the perpetrator] was the 'agent' … or acting within the scope of any apparent authority").

Nor were the Jacksons and YouTube in a legal partnership. Colloquial uses of the term "partner" are irrelevant: a "partnership" that carries liability for the wrongdoing of another is a legal relationship defined as "an association of two or more persons … to carry on as *coowners* [of] a business for profit." Cal. Corp. Code § 16101 (emphasis added). Plaintiffs do not (and could not) allege that Onision is a co-owner of YouTube or that he receives a share of YouTube's profits. The FAC inaccurately refers to YouTube and Onision's "profit-sharing relationship" (¶ 21), but the agreement clearly states that YouTube paid Onision a portion of ad revenue generated from the content he posted. *See* Ex. A. Such limited *revenue*-sharing is not *profit*-sharing, and it does not make Onision YouTube's partner with a stake in YouTube's overall business. *See* Cal. Corp. Code § 16202(c)(2) ("The sharing of gross returns does not by itself establish a partnership.").

Plaintiffs do not even try to suggest that the agreement gave Onision any of the rights of partnership, such as access to "books and records," Cal. Corp. Code § 16403, or any fiduciary duties, Cal. Corp. Code § 16404(b)-(c). Simply put, Onision is no more a co-owner or legal partner of YouTube than a musician who receives a share of the gate for his performance at a club—or any of the other creators who earn revenue from videos on YouTube.

*Second*, even if Onision was somehow YouTube's "agent" or "partner," YouTube would not be vicariously liable for his conduct unless he "act[ed] within the scope" of the agency or employment relationship, Rest. 3d of Agency, § 7.07(1), or "act[ed] in the ordinary course of business of the partnership or with authority of the partnership," Cal. Corp. Code § 16305(a); *see Bartenwerfer v. Buckley*, 143 S. Ct. 665, 676 (2023) ("[I]f one partner takes a wrongful act without authority or outside the ordinary course of business, then the partnership—and by extension, the innocent partners—are generally not on the hook."). That is not the case here.

The conduct at issue is the Jacksons' alleged efforts to sexually groom Plaintiffs. But none of the alleged grooming-related communications between the Jacksons and Plaintiff took place on YouTube. ¶¶ 36, 139-153, 159, 165-168, 179-189, 197-198, 202-221, 292. Those acts had no meaningful connection to the videos Onision posted or the advertising revenue he received. The idea that the Jacksons acted on YouTube's behalf, for YouTube's benefit, and subject to YouTube's direction and control when they were purportedly manipulating Plaintiffs into sexual relationships via off-platform communications is not just unsupported; it is fantastical. *E.g. Delfino v. Agilent Techs., Inc.*, 145 Cal. App. 4th 790, 813 (2006) ("sending threatening e-mails and postings through the Internet" was "plainly outside the scope of [the perpetrator's] employment with Agilent," even if he "used Agilent's computer system").

Indeed, California courts have repeatedly rejected claims that an *employee's* "sexual assault or sexual harassment of a third party falls within the scope of employment." *Daza v. Los Angeles Cmty. Coll. Dist.*, 247 Cal. App. 4th 260, 268 (2016) (collecting cases); *accord Z.V. v. Cnty. of Riverside*, 238 Cal. App. 4th 889, 899 (2015) (county not liable when employee assaulted minor during transport to foster home). In *Lisa M. v. Henry Mayo Newhall Mem'l Hosp.*, 12 Cal. 4th 291, 298 (1995), for example, the California Supreme Court held that a hospital was not

vicariously liable when its employee, an ultrasound technician, sexually molested a patient *at the hospital during an examination*. *Id.* Even though the technician was performing his assigned duties, his actions were not "*engendered by the employment*" because his motivation for the molestation was not "fairly attributable to work-related events or conditions" and was not a "generally foreseeable consequence" of the technician's employment. *Id.* at 301, 303. This case is even more straightforward. Onision was not an employee of YouTube; his alleged sexual misconduct did not take place on YouTube's premises and was not "engendered" by his revenue sharing agreement; and his actions had no causal and "foreseeable" nexus with any work he arguably performed for YouTube's benefit. *Id*. at 298. If a hospital is not vicariously liable when its own employee sexually assaults a patient during an exam, YouTube is certainly not liable for Onision's off-platform sexual misconduct.

*Third*, beyond all that, even if there were a relevant agency or partnership relationship, there is no vicarious liability exception to Section 230. The point of the statute was to protect online services against secondary liability claims based on the activities of their users. *See Caraccioli v. Facebook, Inc.*, 167 F.Supp.3d 1056, 1066 (N.D. Cal. 2016) ("Liability based on that sort of vicarious responsibility, however, is exactly what § 230(c) seeks to avoid."); *Delfino*, 145 Cal. App. 4th at 805 (§ 230 barred claims against employer based on actions of employee); *Miller v. Fed. Express Corp.*, 6 N.E.3d 1006 (Ind. App. 2014) (§ 230 barred claims, despite plaintiff's reference to *respondeat superior*). Allowing websites to be liable for defamatory or other allegedly unlawful content posted by users because they *might* have received revenue would contradict that purpose—as courts have repeatedly held. *See E. Coast Test Prep LLC v. Allnurses.com, Inc.,* 971 F.3d 747, 752 (8th Cir. 2020) (allegations that users "were paid to post and were 'volunteers, employees, servants, contractors or agents of [website defendant]'" insufficient to make website responsible for "creating or developing" those users' posts under § 230); *Blumenthal v. Drudge*, 992 F. Supp. 44, 51-53 (D.D.C. 1998) (applying § 230 to website despite contract paying author for allegedly defamatory material). What matters under § 230 is who "created or developed" the relevant content (*Kimzey v. Yelp! Inc*., 836 F.3d 1263, 1269 & n.4 (9th Cir. 2016)). Here, there is

no allegation that YouTube contributed in any way to Onision's content or his allegedly unlawful activities. Plaintiffs' baseless agency theory cannot evade Section 230.

## II. PLAINTIFFS FAIL TO STATE A CLAIM UNDER § 1595.

Plaintiffs also assert a claim under 18 U.S.C. § 1595, which allows civil claims based on violations of federal criminal statutes relating to sex trafficking. This claim is also based on a purported violation of § 1591, and it too fails both under Section 230 and on its own terms.

### A. Plaintiffs' § 1595 Claims Fail to Get Through the FOSTA Gateway.

Certain civil claims under § 1595 are exempted from § 230 protection. 47 U.S.C. § 230(e)(5)(A). But this carve-out, created in 2018 as part of the Fight Online Sex Trafficking Act ("FOSTA"), is narrow. The Ninth Circuit has expressly held that "for a plaintiff to invoke FOSTA's immunity exception, she must plausibly allege that the website's own conduct violated section 1591." *Reddit*, 51 F.4th at 1141; *accord J.B. v. Craigslist, Inc.*, 2023 U.S. App. LEXIS 10806 (9th Cir. May. 3, 2023) (same). This defeats Plaintiffs' claim because, as discussed above (Section I.A.2), Plaintiffs do not allege that YouTube itself violated § 1591. *See Reddit*, 51 F.4th at 1141, *Twitter,* 2023 U.S. Dist. LEXIS 220387, at *18-19); *Grindr,* 2023 U.S. Dist. LEXIS 230505, at *15-19.

### B. Plaintiff Fails to State a Claim Against YouTube Under § 1595.

While the Court need go no further, Plaintiffs' § 1595 claims fail even without regard to § 230. To bring a standard civil claim under § 1595, a plaintiff must allege facts plausibly establishing that the defendant(s) "(1) knowingly benefitted (2) from participation in a venture (3) that they knew or should have known has engaged in trafficking the plaintiff." *B.J. v. G6 Hosp., LLC*, 2023 U.S. Dist. LEXIS 88180, at *9 (N.D. Cal. May 19, 2023); *accord Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159, 1175 (9th Cir. 2022); *Doe v. Red Roof Inns, Inc.*, 21 F.4th 714, 719 (11th Cir. 2021). Plaintiffs fall well short of pleading these elements as to YouTube.[4]

[4] Plaintiffs also cannot try to fashion a claim for vicarious liability under § 1595. As discussed above, *supra* 8-11, there are no plausible allegations that the Jacksons acted as YouTube's agents. *See, e.g.*, *B.J. v. G6*, 2023 U.S. Dist. LEXIS 88180, at *19-28 (rejecting vicarious liability claims under § 1595 where Plaintiff failed to adequately allege agency relationship).

*First*, even assuming YouTube entered into some "venture" with Onision by monetizing his YouTube channel, that was not a "sex trafficking" venture. Section 1595 requires that the "venture" from which the defendant allegedly benefitted itself violate sex trafficking laws. Entering a venture with third parties unrelated to sex trafficking does not give rise to liability—even if those third parties were separately engaged in illegal activity. *See, e.g.*, *B.J. v. G6*, 2023 U.S. Dist. LEXIS 88180, *5 (question under § 1595 is whether defendants "took part in the common undertaking of sex trafficking"); *H.G. v. Inter-Continental Hotels Corp.*, 489 F. Supp. 3d 697, 704 (E.D. Mich. 2020) (the "particular venture in which the defendant allegedly participated" must have been engaged in sex trafficking); *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 169 (S.D.N.Y. 2019) ("The participation giving rise to the benefit must be participation in a sex-trafficking venture, not participation in other activities engaged in by the sex traffickers that do not further the sex-trafficking aspect of their venture.").

Plaintiffs allege nothing like that here. The YPP agreement is a standard-form agreement between YouTube and content creators to share advertising revenue from their videos. It has nothing to do with sex trafficking. And Plaintiffs make no allegation that any of the videos Onision monetized on YouTube included sex trafficking content or were how the Jacksons groomed the Plaintiffs. Instead, Plaintiffs' allegations are that Onision grew his public persona via videos on YouTube that were perhaps offensive or in bad taste, but were not alleged to be illegal in any way—and then that Onision engaged in or attempted to engage in sexual misconduct on *other* online services or in the real world. The Amended Complaint makes clear, the Jacksons' alleged efforts to groom Plaintiffs occurred *off* YouTube. Plaintiffs do not allege, nor could they, that the YPP agreement played any role in those communications. There are, in short, simply no "plausible allegations that [YouTube] took part in the common undertaking of sex trafficking." *Red Roof Inns, Inc.,* 21 F.4th at 727.

Unsurprisingly, courts have repeatedly rejected beneficiary claims under § 1595 where the defendant's alleged relationship with the sex trafficker was similarly disconnected from any trafficking activity. *E.g.*, *Noble v. Weinstein*, 335 F. Supp. 3d 504, 524 (S.D.N.Y. 2018) (allegations that defendant "benefited financially from Harvey Weinstein's promotion of films and

other business-related activities in foreign commerce" insufficient to state a claim"); *B.J. v. G6*, 2023 U.S. Dist. LEXIS 88180, at *15 (allegations that hotel staff provided additional supplies such as extra linens, complied with trafficker to locate plaintiff, and provided extra room key "d[id] not suggest hotel employees engaged in conduct outside the scope of their ordinary responsibilities, let alone any kind of 'tacit agreement' with [plaintiff's] trafficker to engage in the allege sex trafficking venture"); *A.B. v. Shiloh Inn, Salem, LLC*, 2023 U.S. Dist. LEXIS 143289, at *13 (D. Ore. Aug. 15, 2023) ("Plaintiff has failed to allege facts sufficient to establish a tacit agreement between Defendant and Plaintiff's trafficker, that the venture would involve commercial sex activity"); *Ramsbottom*, 2022 U.S. Dist. LEXIS 5152, at *64 (dismissing claim based on "wholly conclusory allegations" that the defendants "had a continuous business relationship with [the alleged trafficker] that enabled [him] to engage in predatory behavior against underage girls.").

*Second*, Plaintiffs fail to allege YouTube's *knowledge* of their alleged trafficking. "[A] plaintiff may not rely solely on general allegations that a defendant was aware of sex trafficking to establish actual or constructive knowledge of specific instances of sex trafficking." *A.B. v. Extended Stay Am. Inc*, 2023 U.S. Dist. LEXIS 162568, at *14 (W.D. Wash. Sept. 13, 2023); *accord Ratha*, 35 F.4th at 1177 ("[s]weeping generalities" about reporting of abuses generally are "too attenuated to support an inference that [defendant] knew or should have known of the specifically alleged TVPRA violations."); *Red Roof Inns,* 21 F.4th at 725 ("the defendant must have either actual or constructive knowledge that the venture—in which it voluntarily participated and from which it knowingly benefited—violated the TVPRA as to the plaintiff"). Here, there are no plausible allegations that YouTube had actual or constructive knowledge of the Jacksons' purported efforts to groom or otherwise sexually abuse either Sarah or Alonso.

The Complaint does not allege that YouTube knew or had any reason to know about the Jacksons' communications with Plaintiffs, all of which happened off of YouTube. The allegation that YouTube users complained about unrelated content posted by Onision, which had nothing to do with Plaintiffs and did not discuss unlawful sexual relationships with minors (¶¶ 124, 349) does not plausibly suggest that YouTube should have known the Jacksons were engaged in efforts to traffic Plaintiffs (or anyone else). Likewise, the vague suggestion that some unnamed YouTube

users were "not comfortable" that Sarah moved in with the Jacksons (¶ 348) cannot charge YouTube with knowledge even of that fact—much less actual or constructive knowledge that the Jacksons were trying to "groom" her to engage in a "commercial sex act."[5]

Here too, courts have consistently rejected more substantial knowledge allegations than Plaintiffs'. *E.g., A.B. v. Shiloh*, 2023 U.S. Dist. LEXIS 143289, at *16-18 (allegations of general knowledge of the "intersection of sex trafficking and the hotel industry" and reviews mentioning crime onsite fail to "plausibly allege Defendant's actual or constructive knowledge of its participation in a venture engaged in sex trafficking"); *A.B. v. Extended Stay*, 2023 U.S. Dist. LEXIS 162568, at *14-19 (similar); *B.J. v. G6 Hosp., LLC*, 2023 U.S. Dist. LEXIS 88180, at *14-19 (absent allegations that hotel employees witnessed plaintiff's alleged abuse, plaintiff "fails to plausibly establish defendants 'should have known' of [her] trafficking"); *H.G.*, 489 F. Supp. 3d at 705-06 (plaintiff failed to "identif[y] specific facts, known to these Defendants, that would have or should have put them on notice of any unlawful activity—much less sex trafficking—by those particular ventures"); *A.B. v. Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d 921, 938 (D. Ore. 2020) ("although Plaintiff's allegations indicate that Defendants had notice of sex trafficking generally occurring at their hotels, Plaintiff has not alleged facts which sufficiently link notice of Plaintiff A.B.'s sex trafficking to any of these Defendants"); *S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 154 (E.D.N.Y. 2020) ("Because plaintiff has not alleged that the franchisor defendants had the requisite knowledge of a specific sex trafficking venture, they cannot be held directly liable under the TVPRA.").

## CONCLUSION

Plaintiffs' claims against YouTube should be dismissed with prejudice.

---

[5] Plaintiffs also point to a documentary featuring Sarah's allegations about Onision, which was released several years *after* the relevant events. ¶ 350. But Plaintiffs acknowledge that shortly after the documentary was released, YouTube demonetized Onision's channels. ¶ 351. That cannot create knowledge retrospectively. Likewise, the videos that Onision allegedly posted on YouTube in which he *denies* the allegations and accused *Plaintiffs* of extortion and rape (¶¶ 340-344), cannot be turned on their head to somehow create actual or constructive knowledge on YouTube's part that Onision engaged in sex trafficking.

Dated: February 23, 2024

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: */s/ Brian M. Willen*
Brian M. Willen

Attorneys for Defendants
GOOGLE LLC and YOUTUBE, LLC