**THE HABA LAW FIRM, P.A.**
Lisa D. Haba (*Pro hac vice*)
*lisahaba@habalaw.com*
1220 Commerce Park Dr., Ste 207
Longwood, FL 32779
Telephone: (844) 422-2529

**MARSH LAW FIRM PLLC**
Robert Y. Lewis (SBN 153948)
*robertlewis@marsh.law*
Margaret E. Mabie (*Pro hac vice*)
*margaretmabie@marsh.law*
31 Hudson Yards, 11th Floor
New York, New York 10001
Telephone: (315) 296-9046

*Attorneys for Plaintiff "Sarah" a/k/a "Unknown Party"*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

SARAH and REGINA ALONSO,

Plaintiffs,

v.

GOOGLE LLC, YOUTUBE LLC, JAMES JACKSON, also known online as "ONISION," and LUCAS JACKSON, formerly known online as "LUCASBOT," "LUCAS" and "KAI,"

Defendants.

Case No. 3:23-CV-05523-VC

**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS GOOGLE LLC AND YOUTUBE, LLC'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

Judge: Hon. Vince Chhabria
Place: Crtrm. 4, 17th Floor
Date: April 4, 2024
Time: 10:00 a.m. PST

## TABLE OF CONTENTS

**TABLE OF CONTENTS** ........ **II**

**TABLE OF AUTHORITIES** ........ **III**

**FACTUAL ALLEGATIONS** ........ **1**

**ARGUMENT** ........ **3**

**I. THE MOTION TO DISMISS STANDARD** ........ **3**

**II. SECTION 230 IMMUNITY IS NOT APPLICABLE AND DOES NOT BAR PLAINTIFFS' CLAIMS** ........ **3**

**III. PLAINTIFFS HAVE PLAUSIBLY ALLEGED CLAIMS UNDER 18 U.S.C. § 2255** ........ **6**

**IV. PLAINTIFFS HAVE PLAUSIBLY ALLEGED CLAIMS UNDER 18 U.S.C. § 1595** ........ **8**

**CONCLUSION** ........ **15**

## TABLE OF AUTHORITIES

### Cases

*A.B. v. Extended Stay Am. Inc,* 2023 U.S. Dist. LEXIS 162568 (W.D. Wash. Sept. 13, 2023) .......... 10

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 3

*B.J. v. G6 Hosp'y, LLC,* No. 22-cv-03765-MMC, 2023 U.S. Dist. LEXIS 88180 (N.D. Cal. May 19, 2023) .......... 9

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......... 3

*Bostock v. Clayton County, Georgia,* 140 S. Ct. 1731 (2020) .......... 6

*C.S. v. Wyndham Hotels & Resorts, Inc.*, 538 F. Supp. 3d 1284 (M.D. Fla. 2021) .......... 4

*Doe v. Atascadero Unified Sch. Dist.*, No. CV 19-8636 DSF (Ex), 2022 U.S. Dist. LEXIS 211709 (C.D. Cal. Sep. 12, 2022) .......... 8

*Doe v. Boland*, 698 F.3d 877 (6th Cir. 2012) .......... 6

*Doe v. G6 Hosp'y, LLC*, No. 1:23-CV-2597-TWT, 2023 U.S. Dist. LEXIS 222360 (N.D. Ga. Dec. 14, 2023) .......... 9

*Doe v. Internet Brands,* 824 F.3d 846 (9th Cir. 2016) .......... 3

*Doe v. Liberatore,* 478 F.Supp.2d 742 (M.D.Pa. 2007) .......... 7

*Doe v. Peterson*, 784 F. Supp. 2d 831 (E.D.Mich. 2011) .......... 5

*Doe v. Schneider,* No. 08-3805, 2013 WL 5429229 (E.D. Pa. Sept. 30, 2013) .......... 6, 7

*Does v. Reddit, Inc.*, 51 F.4th 1137 (9th Cir. 2022) .......... 8

*Fleites v. MindGeek S.A.R.L.*, 617 F.Supp.3d 1146 (C.D. Cal. 2022) .......... 11, 12

*Franza v. Royal Caribbean Cruises, Ltd.*, 772 F.3d 1225 (11th Cir. 2014) .......... 7

*G.G. v. Salesforce.Com, Inc.*, 76 F.4th 544 (7th Cir. 2023) .......... 8

*Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp.3d 156 (S.D.N.Y. 2019) ................ 9

*H.G. v. Inter-Continental Hotels Corp*., 489 F. Supp. 3d 697 (E.D. Mich. 2020)........... 9

*Holmes v. Lerner*, 74 Cal. App. 4th 442, 88 Cal. Rptr. 2d 130 (1999) ........................... 5

*HomeAway.com, Inc. v. City of Santa Monica*, 918 F.3d 676 (9th Cir. 2019) ................. 3

*In re Hotel TVPRA Litig.,* No. 2:22-CV-1924, 2023 WL 3075851 (S.D.Ohio Apr. 25, 2023) ........................................................................................................................ 6

*Jane Doe No. 8 v. Royal Caribbean Cruises*, *Ltd*., 860 F.Supp.2d 1337 (S.D.Fla. 2012) ................................................................................................................... 6, 7

*Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365 (6th Cir. 2015)........................... 7

*M.A. ex rel. P.K. v. Village Voice Media Holdings*, LLC, 809 F.Supp.2d 1041 (E.D. Mo. 2011)........................................................................................................................ 6

*M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959 (S.D. Ohio 2019) ......... 14

*Mavrix Photographs, Ltd. Liab. Co. v. LiveJournal, Inc*., 873 F.3d 1045 (9th Cir. 2017) . 4

*McCandless Grp., LLC v. Coy Coll., Inc*., No. 2:21-cv-02069-DOC-KES, 2022 U.S. Dist. LEXIS 54450 (C.D. Cal. Feb. 14, 2022). ............................................................ 5

*McIntyre v. Kavanaugh*, 242 U.S. 138 (1916) ........................................................... 5

*N.S. v. Rockett*, No. 3:16-CV-2171-AC, 2018 U.S. Dist. LEXIS 223678 (D. Or. Oct. 19, 2018) ............................................................................................................ 8

*Prewett v. Weems*, 749 F.3d 454 (6th Cir. 2014)........................................................ 8

*Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159 (9th Cir. 2022) ................................. 10

*Sarcuni v. bZx DA*, 664 F. Supp. 3d 1100 (S.D. Cal. 2023) ......................................... 5

*Sedima S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479 (1985)............................................. 8

Smith v. Husband, 376 F.Supp.2d 603 (E.D.Va. 2005) ............................................ 7, 8

*Stockwell v. U.S.*, 80 U.S. 531 (1871) ..... 5

**Statutes**

18 U.S.C. § 2255 ..... 5

18 USC §1595 ..... 7

**Rules**

Rule 12(b)(6) ..... 3

**FACTUAL ALLEGATIONS**

Google is the parent company of YouTube (collectively the "YouTube Defendants") and both monetized the YouTube platform. (FAC ¶ 78). YouTube offers eligible creators that meet specific criteria the opportunity to join its YouTube Partnership Program ("YPP"). (Id. ¶¶ 81-82). The YPP their partners to enter contractual relationship and agree to abide by the YouTube Terms of Service and Community Guidelines ("TOS"), while the YouTube Defendants monetize the relationship by managing and promoting all the matching of videos with advertisers, advertising placements and adjustments, monitoring of traffic/views to page, monitoring of ad responses, and revenue collection. (Id. ¶¶ 83-85, 88). YouTube helps its partners individually grow, expand, and increase profitability. (Id. ¶ 86). YouTube designed its algorithm to "recommend" and promote certain partners and drive the activity on YouTube. (Id. ¶¶ 89, 93). Both YouTube and the creator share profits earned from this joint-venture and partnership program. (Id. ¶¶ 85, 94, 99-100).

Defendant James Jackson ("Onision") joined the YPP and YouTube monetized their relationship. (Id. ¶¶ 116-17). Around 2012, Onision and his spouse ("Lucas") (collectively the "Jackson Defendants") used the YPP to groom and lure underage girls through the Onision YouTube channels and forums, and they targeted engagement from minor girls and teens (Id. ¶¶118, 136-38). The YouTube Defendants were independently monitoring Onision's content as a YPP creator in order to match and place advertisements that were most appealing to his content viewers. (Id. ¶¶ 83-85). The YouTube Defendants received actual and constructive knowledge about the Jackson Defendants and their luring and enticing of children through numerous means. Such notice includes: (1) in 2012, YouTube was notified by numerous people that Onision violated their TOS and should terminate Onision from the YPP (id. ¶¶ 120-21); (2) a change.org petition was sent to YouTube asking that Onision be demonetized based on violations of the TOS (id. ¶

122); (3) viewers reported Onision's violations of the TOS and grooming tactics to AdSense, which is one of the Google programs that matches ads to the individual YouTube website based on content and visitors to maximize monetization, (id. ¶¶ 123-24); and (4) multiple viewers flagged his videos that were offensive and violated the TOS through YouTube's video reporting feature, (id. ¶ 125). YouTube nonetheless continued the profit–sharing relationship with Onision and facilitated the dangerous environment on its platform. (Id. ¶¶ 128, 130). By contrast, when VidCon received similar feedback, it was alarming enough that they removed him as a speaker and banned his attendance at their conference. (Id. ¶ 129).

12-year-old Regina Alonso discovered Onision's channels after she googled "How to Kill Yourself" and the Google algorithm suggested Onision's monetized YouTube content. (Id. ¶ 156). Onision's channel and content lured and enticed this young child to watch more and more of his videos. (Id. ¶ 157). Ultimately, Lucas ended up sending and soliciting child pornography from Alonso and the Jackson's lured and enticed her to visit the Jackson's at the their home for the purpose of engaging in sexual activity with her while she was still a minor. (Id. ¶¶ 161-91).

Starting at age 16, Sarah began traveling to visit the Jackson's numerous times, where she was groomed by the Jackson's. (Id. ¶¶ 44-45). After Onision raped Sarah, began posting numerous videos on YouTube to attack, humiliate and silence Sarah, furthering the harm to Sarah. (Id. ¶¶ 336-339). Only after being repeatedly publicly exposed, YouTube demonetized Onision in or about 2021. (Id. ¶ 351). YouTube stated that "Onision violated the Partner Program's Creator Responsibility guidelines. These mandate that partners not engage in behavior (either on- or off-platform) that can cause widespread harm to the YouTube community, and potentially damage the trust among creators, users, and advertisers." (Id. ¶ 352).

# ARGUMENT

## I. THE MOTION TO DISMISS STANDARD

In deciding a motion to dismiss pursuant to Rule 12(b)(6), all of the allegations in the complaint must be accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint needs to present only "a short and plain statement" of the basis for a claim. Fed. R. Civ. P. 8(a)(2). Plaintiffs only need to show only that the claim is "plausible on its face" and entitle Plaintiff relief. *Twombly*, 550 U.S. at 570.

## II. SECTION 230 IMMUNITY IS NOT APPLICABLE AND DOES NOT BAR PLAINTIFFS' CLAIMS

The YouTube Defendants claim that Plaintiff's claims should be dismissed because they have immunity pursuant to Section 230 of the Communications Decency Act ("CDA 230"). Plaintiff's claims fall outside of CDA 230 for three reasons: (1) Plaintiffs do not seek to treat the YouTube Defendants as a publisher or speaker, (2) the YPP creates an agency relationship with YouTube, and (3) the YPP creates a profit–sharing partnerships relationship with YouTube.

**Not a Publisher or Speaker.** CDA 230 only provides immunity from claims that seek to treat an ICS as a publisher or speaker of third–party content. 47 U.S.C. §230(c) s*ee also HomeAway.com, Inc. v. City of Santa Monica*, 918 F.3d 676, 682 (9th Cir. 2019) (city ordinance did not require the online platforms to monitor third–party content and thus fell outside of CDA 230 immunity); *Gonzalez v. Google LLC*, 2 F.4th 871, 898–99 (9th Cir. 2021), *cert. vacated and remanded*, 143 S. Ct. 1191 (2023) (plaintiff's revenue–sharing allegations were not directed to any third–party content that Google should have allegedly removed and therefore CDA 230 is not applicable); *Doe v. Internet Brands,* 824 F.3d 846, 851 (9th Cir. 2016) (Internet Brands did not get

CDA 230 immunity because using information found from source other than monitoring posts online meant they were not treated as a publisher or speaker of content when they failed to warn plaintiff of harm).

Here, Plaintiffs' claims do not treat the YouTube Defendants as the publisher or speaker of any content. Plaintiffs do not contend that any specific content or channel(s) required moderation by the YouTube Defendants. Like *Internet Brands*, Google and YouTube were made aware of Onision's risky and harmful conduct through alternative means—complaints made directly to the company, which means their conduct falls outside of CDA 230.

**Agency Relationship:** An agency relationship exists where an agent has authority to act on behalf of the principal and the principal has a right to control the actions of the agent. *Mavrix Photographs, Ltd. Liab. Co. v. LiveJournal, Inc.*, 873 F.3d 1045, 1054 (9th Cir. 2017) (citing Restatement (Third) Of Agency § 1.01). Onision became an agent and contractor in a profit-sharing, contractual relationship with YouTube for two reasons. ***First***, the YPP acknowledged that Onision would act on its behalf, posting content of his own creation, but within the confines of the TOS; in exchange, YouTube agreed to profit share for the ad revenue generated from that content. ***Second***, YouTube has the contractual right to control Onision's conduct, both on and offline, and consequently, this right gives rise to an agency relationship. *See C.S. v. Wyndham Hotels & Resorts, Inc.*, 538 F. Supp. 3d 1284, 1299 (M.D. Fla. 2021) (franchisee was an agent of the franchisor because franchisor exercised control over the means and methods of how those defendants conducted business, such as by profit sharing, standardized training, standardized rules of operation, regular inspection, and price fixing).

**Profit-Sharing Partnership Relationship:** "Generally, partners are individually liable for torts committed by their firm or other partners when they are acting within the scope of its business

whether they personally participate or not." *Doe v. Peterson*, 784 F.Supp.2d 831, 844–45 (E.D.Mich. 2011) (citing *McIntyre v. Kavanaugh*, 242 U.S. 138, 139 (1916)); *see also Stockwell v. U.S.*, 80 U.S. 531, 547-48 (1871). "This is true even if the defendant has no knowledge of his partner's wrongdoing." *See McIntyre*, 242 U.S.at 140 (holding defendant personally liable for fraud his partners committed without his authority, knowledge, or consent).

Several factors are considered in determining whether two parties are in a partnership. Profit sharing alone is prima-facie evidence that two parties are partners. *Sarcuni v. bZx DA*, 664 F. Supp. 3d 1100, 1116 (S.D. Cal. 2023) (citing *Holmes v. Lerner*, 74 Cal. App. 4th 442, 457, 88 Cal. Rptr. 2d 130, 141 (1999)). The partnership is also demonstrated by each of the partners sharing some degree of management and control of the business. *McCandless Grp., LLC v. Coy Coll., Inc.*, No. 2:21-cv-02069-DOC-KES, 2022 U.S. Dist. LEXIS 54450, at *28 (C.D. Cal. Feb. 14, 2022).

There is no question that the YouTube Defendants and Onision were acting as partners as they each shared profits, Onision agreed to post content within the restrictions of the TOS Agreement, and Google matched the content Onision created with advertisers, and decided what ad appeared, tracked the views, and recommended content through their algorithm. (Id. ¶¶ 83-88, 116). Furthermore, Google's non–neutral algorithm was designed to help its paid content creators, like Onision, maximize their shared profit by recommending videos and driving viewers to their pages. (Id. ¶96). In other words, Onision created the content and was the labor or talent in the partnership, and Google placed ads on his YouTube page, driving viewers to the page with ads thereby monetizing the content as the investment side of the partnership.

Most importantly, because this was a partnership, the normal CDA 230 caveat that YouTube does not need to monitor the content of its website does not apply. Onision was not an unknown,

third–party posting on YouTube's website; rather, he was YouTube's business partner, was in a business venture with the YouTube Defendants, and YouTube and Google have liability for their partner's tortious conduct since it was committed in the ordinary course of business.

### III. PLAINTIFFS HAVE PLAUSIBLY ALLEGED CLAIMS UNDER 18 U.S.C. § 2255

Section 2255 provides remedy to any person who can show by a preponderance of the evidence that, while a minor, they were victim of a predicate criminal act. *Doe v. Boland*, 698 F.3d 877, 880 (6th Cir. 2012). As Plaintiffs properly alleged, the YouTube Defendants themselves violated two predicate statutes, 18 U.S.C. §§2242 and 1591, against Plaintiffs entitling them to relief under 18 U.S.C. §§2255 (hereinafter "Masha's Law"). The YouTube Defendants claim that section 2255 does not permit vicarious or secondary liability and therefore the claims must be dismissed.[1] The YouTube Defendants' argue against secondary liability, but courts nationwide that have held it is proper.[2] Statutory construction clearly permits such secondary liability. Looking at the plain text, Masha's Law is silent on *who* may be sued and notably fails to restrict claims. YouTube Defendants ultimately asked this Court to rewrite Masha's Law to suit their purpose and limit who may be sued. Had Congress intended such a limitation on who could be sued, it would have codified the same. *Bostock v. Clayton County, Georgia,* 140 S. Ct. 1731, 1738 (2020) (courts must interpret a statute based on the ordinary meaning and not add or subtract words through judicial interpretation); *Royal Caribbean*, 860 F.Supp.2d at 1341 (to limit liability to only the direct

---

[1] The YouTube Defendants gloss over the fact that the YouTube Defendants were not only in a secondary liability role; they were also partners and were profit–sharing with Onision.

[2] *See Jane Doe No. 8 v. Royal Caribbean Cruises*, *Ltd.*, 860 F.Supp.2d 1337, 1340 (S.D.Fla. 2012) ; *In re Hotel TVPRA Litig.*, No. 2:22-CV-1924, 2023 WL 3075851, at *7 (S.D.Ohio Apr. 25, 2023); *Doe v. Schneider,* No. 08-3805, 2013 WL 5429229, at *11 (E.D. Pa. Sept. 30, 2013); *M.A. ex rel. P.K. v. Village Voice Media Holdings*, LLC, 809 F.Supp.2d 1041, 1053-55 (E.D. Mo. 2011).

perpetrators of the predicate acts underlying §2255 would add language to the statute not codified by Congress).

The YouTube Defendants wish to treat the criminal predicate acts as equivalent to 18 U.S.C. § 2255 by demanding only the perpetrator of the underlying criminal act can be liable civilly. This argument again fails because Congress created the predicate criminal offenses and §2255 for different purposes and created Masha's law for remedial purposes. *Paroline v. United States,* 572 U.S. 434, 457 (2014). Symmetry in criminal and civil liability is not required. *Royal Caribbean*, 860 F.Supp.at 1340. "[W]hile §2255 requires that the victim sustain an injury "as a result" of a predicate criminal violation, that causation requirement does not mean that only the criminal offender may be held liable." *Id.* at 1343. Masha's Law only requires that the plaintiff prove, by a preponderance of the evidence, that a violation of the predicate act occurred – and it does not limit who can be liable for such a violation. *Smith v. Husband,* 376 F.Supp.2d 603, 613 (E.D.Va.2005), *Liberatore,* 478 F.Supp.2d at 756; *Schneider,* No. 08-3805 at *11; *Village Voice*, 809 F.Supp.2d at 1053-55. Vicarious liability need not require a formal agency relationship; it may also be based on principals of apparent authority and ratification. *Franza v. Royal Caribbean Cruises, Ltd.*, 772 F.3d 1225, 1251 (11th Cir. 2014); *Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 372 (6th Cir. 2015). The YouTube Defendants had an agency relationship with Onision and apparent authority over his activity since they held the purse strings. The YouTube Defendants argue that Plaintiff's allegations should be dismissed because they did not commit the criminal acts enumerated in §2422 or 1591(a). This argument fails. The YouTube Defendants were party to multiple violations of Masha's Law predicate offenses. "Masha's Law does not require a defendant to have been criminally convicted of the predicate offense — a civil claimant need only prove by a preponderance of the evidence that the defendant violated the enumerated statute." *Doe v.*

*Atascadero Unified Sch. Dist.*, No. CV 19-8636 DSF (Ex), 2022 U.S. Dist. LEXIS 211709, at *7 (C.D. Cal. Sep. 12, 2022) (citing *Prewett v. Weems*, 749 F.3d 454, 458 (6th Cir. 2014)); *see also N.S. v. Rockett*, No. 3:16-CV-2171-AC, 2018 U.S. Dist. LEXIS 223678, at *5 (D. Or. Oct. 19, 2018); *Husband*, 376 F. Supp. 2d at 613 (citing *Sedima S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479 (1985).

The FAC plausibly alleges sufficient facts to support a civil allegation that the YouTube Defendants engaged in participant sex trafficking liability, 18 U.S.C. § 1591(a)(2), as explained *infra* IV, and a civil allegation that the YouTube Defendants engaged in by continuing to fund Onision's platform as he and his spouse, working together, used it to induce, entice and coerce both Plaintiffs (at separate times) to travel across state lines to engage in sexual activity with Onision and Lucas. YouTube was notified of this harm, but still chose to profit-share until the public exposure shamed the YouTube Defendants into demonetizing Onision. (Id. ¶¶ 351-52).

## IV. PLAINTIFFS HAVE PLAUSIBLY ALLEGED CLAIMS UNDER 18 U.S.C. § 1595

The YouTube Defendants erroneously argue that Plaintiff's claims do not plausibly allege that YouTube violated the TVPRA, 18 U.S.C. §1595. Section 1595 creates two kinds of civil liability: perpetrator liability and participant liability. *G.G. v. Salesforce.Com, Inc.*, 76 F.4th 544, 548 (7th Cir. 2023); see also *Does v. Reddit, Inc.*, 51 F.4th 1137, 1141 (9th Cir. 2022). To bring a claim for civil perpetrator liability under Section 1595, Plaintiffs must allege that (1) a venture has engaged in a violation of the TVPRA, (2) the defendant(s) knew or should have known that the venture had violated the TVPRA, (3) the defendants(s) participated in the venture, and (4) the defendants knowingly benefitted from their participation. *Salesforce*, 76 F.4th at 553 (the court reorganized the elements for logical sequence); 18 U.S.C. § 1595(a).

**<u>Element 1</u>: A Venture has Engaged in a Violation of the TVPRA.** The first element requires the Plaintiffs to plead that a venture exists. "Under the TVPRA, a 'venture' is 'any group of two or more individuals associated in fact.'" *Doe v. Mindgeek USA Inc.*, 558 F. Supp. 3d 828, 837 (C.D. Cal. 2021) (citing 18 U.S.C. § 1591(e)(6)). Defendants argue that the "venture" itself must directly engage in sex crimes to face liability; this is not the law. In support of this notion, Defendants rely on *H.G. v. Inter-Continental Hotels Corp*., which does not apply the participant or beneficiary liability standard. *H.G. v. Inter-Continental Hotels Corp*., 489 F. Supp. 3d 697, 704 (E.D. Mich. 2020). Defendants' reliance on *B.J. v. G6 Hosp'y, LLC,* No. 22-cv-03765-MMC, 2023 U.S. Dist. LEXIS 88180 (N.D. Cal. May 19, 2023)[3] is also misguided. The legal analysis in *B.J.* about the nature of the venture addressed a conflict between the plaintiff's opposition brief and their complaint but it did not hold that the "venture" must directly engage in known sex trafficking. *Id.* at *14. Finally, Defendants relied on *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp.3d 156 (S.D.N.Y. 2019) which is again, distinguishable. In *Geiss,* the court dismissed the beneficiary liability claims because the benefits had *nothing* to do with the trafficking. *Id.* at 169. This is inapposite, where the venture was directly related to the benefit received for the trafficking.

Rather, in August of 2023, the Seventh Circuit held that "a 'venture' need not be primarily a *sex-trafficking* venture." *Salesforce,* 76 F.4th at 556; *Doe v. G6 Hosp'y, LLC*, No. 1:23-CV-2597-TWT, 2023 U.S. Dist. LEXIS 222360, at *15 (N.D. Ga. Dec. 14, 2023) ("the Seventh Circuit has considered this venture theory and provided a well-reasoned explanation for concluding that § 1595(a) does not require the 'venture' to be a sex-trafficking venture.") (referencing *id.*). Onision and the YouTube Defendants were in a contractual, profit-sharing relationship through the YPP,

[3] Defendants cite to *5 within this case, which is merely a recitation of facts within the case and does not offer the legal analysis stated.

which lured, enticed, and recruited young, vulnerable children. (FAC ¶ 101, 116). Onision and Lucas collaborated with YouTube to lure, entice, and then groom these children to engage in commercial sex acts and exchange child pornography. (FAC ¶ 3). Plaintiffs have plausibly alleged the existence of a venture that violated the TVPRA.

**Element 2: Knew or Should Have Known.** It is well-settled that the *mens rea* for participant liability is a negligence standard.[4] Plaintiffs have plausibly alleged that the YouTube Defendants had actual or constructive knowledge that the venture violated the TVPRA as to the plaintiff. The YouTube Defendants incorrectly argue that Plaintiffs only made "general allegations" about Defendants' knowledge and claim that the law requires that knowledge to extend to specific instances of sex trafficking with these specific Plaintiffs. The Seventh Circuit again did a thorough analysis of this issue and stated "[i]f Congress had meant in Section 1595 that the participant must have had actual or constructive knowledge of the specific victim, it could have simply said so. It did not." *Salesforce,* 76 F.4th at 556.

To support their position, Defendants rely on *A.B. v. Extended Stay Am. Inc,* 2023 U.S. Dist. LEXIS 162568, at *14 (W.D. Wash. Sept. 13, 2023) and *Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159, 1177 (9th Cir. 2022). Unlike this case, both of those cases only contained general allegations so broad that a no cause of action could be formed. As articulated previously (*see*

---

[4] See *Red Roof,* 21 F.4th at 725; *Lundstrom v. Choice Hotels Int'l, Inc.*, No. 21-cv-00619-PAB-SKC 2021 U.S. Dist. LEXIS 228651, at *5 (D. Colo. Nov. 30, 2021); *Mindgeek*, 558 F. Supp. 3d at 839; *M.L. v. Craigslist Inc.*, No. C19-6153 BHS-TLF, 2020 U.S. Dist. LEXIS 166334, 2020 WL 5494903, at *5-6 (W.D. Wash. Sept. 11, 2020); *B.M. v. Wyndham Hotels & Resorts, Inc.*, No. 20-cv-00656-BLF, 2020 U.S. Dist. LEXIS 135494, 2020 WL 4368214, at *5-6 (N.D. Cal. July 30, 2020); *S.J. v. Choice Hotels Int'l, Inc.,* 473 F. Supp. 3d 147, 154 (E.D.N.Y. 2020); *S.W. v. Lorain-Elyria Motel, Inc.,* No. 2:19-CV-1194, 2020 U.S. Dist. LEXIS 44961, at *15 (S.D. Ohio Mar. 16, 2020); *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 965-68 (S.D. Ohio 2019).

Factual Allegations *supra*), the FAC in this case give sufficient specificity to meet the pleading standard and do not rely on mere generalities.

In a more comparable case – *Fleites v. MindGeek S.A.R.L.*, 617 F.Supp.3d 1146 (C.D. Cal. 2022) – the plaintiff sued a website run by Mindgeek and the credit card company, Visa, arguing that Visa's was liable for their participation in the Mindgeek sex trafficking operation. In regard to knowledge, the Court stated that Mindgeek was rife with child pornography Visa regularly placed ads along side its videos and gave Mindgeek access to its payment network. It was held that this was enough to draw the plausible inference that Visa knew or should have known that the Mindgeek venture was in violation of Section 1591. *Id.* at 1163. Like Visa, the YouTube Defendants were matching Onision's video content with advertisers, were doing all the advertising placements and adjustments, were monitoring the traffic to Onision's channels, were monitoring the ad responses, and collecting revenue from the advertising efforts. (Id. ¶¶ 83-85, 88). The YouTube Defendants were notified repeatedly that Onision was violating the TOS yet continued to allow him to remain a part of YPP program. (Id. ¶¶ 120-25, 127-28). Onision's YouTube channel videos invited his young teenage followers to send pictures of their bodies to him so he could "rate" them, he invited these children to message him, and he would promote his forums which had highly sexualized and inappropriate content. (Id. ¶¶ 139-148). Onision would also comment on what was said in the forums or to him directly on his YouTube channel videos, which made his fans more eager to reach out and increased his victim pool. (Id. ¶¶ 154-55). Like Visa, this plausibly alleges that at the YouTube Defendants should have known their YPP Partner's activity.

Additionally, the YouTube Defendants maintained expansive control over Onision. YouTube Defendants held the power to demonetize any YPP Partner that broke their TOS. (Id. ¶¶

88, 91). Likewise, the *Fleites* court found that Visa has substantial control over Mindgeek because Visa determines what type of content is "fair game for its payment network." *Fleites,* 617 F.Supp.3d at 1156. After Mindgeek was publicly outed for knowingly hosting illegal content, Visa suspended Mindgeek's merchant privileges, resulting in Mindgeek's removal of a substantial number of illegal videos. *Id.* Specifically, the Court stated "[w]hen MindGeek crosses the line . . . Visa crack[ed] the whip and MindGeek respond[ed] vigorously.[] Yet, here is Visa, standing at and controlling the valve, insisting that it cannot be blamed for the water spill because someone else is wielding the hose." *Id.* at 1156-57. Likewise, after public outcry and a documentary exposed YouTube's negligence, the YouTube Defendants finally did demonetize Onision in 2021. The YouTube Defendants, like Visa, controlled the money flow for the Jackson Defendants, demonetized him, but claim they cannot be blamed for the environment they paid him to create and helped to foster because the Jackson defendants are "wielding" the proverbial "hose." Plaintiff plausibly alleged that the YouTube Defendants knew or should have known that Onision and Lucas both lured and enticed children, including Plaintiffs, on and offline and nonetheless continued to profit-share with them.

**Element 3: Participation in the Venture.** In the context of a civil suit, the meaning of "participation" in a venture in the civil context does *not* require more than "assisting, supporting, or facilitating a venture" that violates the TVPRA. *Salesforce,* 76 F.4th at 558-59. A civil defendant that participated in a venture also does *not* need to commit a criminal violation of the TVPRA to have "participated in" that venture. *Id.* A participant liability defendant "need not involve direct participation in the sex trafficking itself. It is the venture that must violate Section 1591, and not the participant." *Id.* Thus, "participation" in a venture only requires "a desire to promote the wrongful venture's success" understanding that this does not require actual knowledge

of criminal wrongdoing." *Id.* (citing *Doe v. GTE Corp.*, 347 F.3d 655, 659 (7th Cir. 2003)).[5] The YouTube Defendants argue that although they engaged in a profit-sharing contractual relationship with Onision, they argue that this agreement is not a venture to engage in sex trafficking. (Doc. 112, p. 13). This argument fails to properly apply the TVPRA or account for all of Plaintiff's well-plead facts and reasonable inferences from those facts. A sex trafficking scheme is not a simple criminal act; like racketeering, it is a complex and multi-step process to locate, groom, and exploit a person and uses legitimate businesses in the process to execute the scheme. ***Step one***, the trafficker needs to find, lure, entice, recruit, and solicit the potential victim(s). Frequently, online websites and platforms are used for this step – in part, because it provides the trafficker with a larger pool of potential victims to choose from, and in part, because conducting this step online provides the trafficker with more anonymity to avoid getting caught. ***Step two***, the trafficker will groom and coerce the selected target to become their victim. This can involve promises, threats, violence, love, fraud, deceit, controlled substances, or any other means to prey on that victim's vulnerabilities. Children are particularly susceptible to grooming. ***Step three***, the trafficker will exploit their victim. Frequently, hotels and motels are used for this step – the buyers of sex want the security of going to a hotel/motel instead of a private residence where they might get attacked, and the trafficker wants a location that can change easily if the police become aware of what is occurring. At any stage of this scheme, a business can elect to profit by participating in that portion of the venture. Lawsuits have been brought against internet companies who engage in step one,

---

[5] While Plaintiffs hold that the Seventh Circuit's interpretation of this issue, put forth in August of 2023, should be the standard, Plaintiffs acknowledge that the Eleventh Circuit held in December of 2021 that "participation in a venture" means that the defendants "took part in a common undertaking or enterprise involving risk and potential profit." *Red Roof,* 21 F.4th at 725.

and separately, lawsuits have been brought against hospitality businesses, such as hotels and motels, that engage in step three.

It is well-established that "in the absence of a direct association," Plaintiffs may allege "a showing of a continuous business relationship between the trafficker and the [defendant] such that it would appear that the trafficker and the [defendant] have established a pattern of conduct or could be said to have a tacit agreement." *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 970 (S.D. Ohio 2019); *Salesforce.com*, 76 F.4th at 559; *J.B. v. G6 Hosp'y, LLC*, 2021 U.S. Dist. LEXIS 170338, at *47 (N.D. Cal. Sep. 8, 2021); *B.J. v. G6 Hosp'y, LLC*, 2023 U.S. Dist. LEXIS 88180, at *12 (N.D. Cal. May 19, 2023). Plaintiffs have plausibly alleged that the YouTube Defendants had a continuous business relationship, which could be deemed to be a tacit agreement through its contractual relationship for the YPP. The Defendants seek to rely on hotel-based cases to show the meaning of "participation in a venture," attempting to compare YouTube's involvement to a hotel franchisor. This is misplaced and a far more analogous case is *Salesforce*. In *Salesforce*, the plaintiff alleged that Salesforce sold Backpage custom-tailored software, provided personalized support, and helped it grow its business. In response to the defendant's MTD on similar claims, the Seventh Circuit stated:

> Plaintiffs are seeking, as Section 1595(a) allows, to hold Salesforce liable for its own conduct in facilitating the success of Backpage's business, which engaged in uncounted acts in violation of Section 1591, including those that harmed G.G. Based on the repeated and allegedly lucrative contracts between Salesforce and Backpage, we draw the reasonable inference in plaintiffs' favor that Salesforce participated with Backpage in the venture of Backpage's sex-trafficking business by helping it grow. *Salesforce.Com*, 76 F.4th at 564.

Like *Salesforce*, Plaintiffs have alleged that YouTube had an individual contractual relationship with Onision which put him into a specialty class of content creators, that his YouTube forum was customize with advertisements, that YouTube offered specialty incentives to creators,

and that the monetary gain for YouTube and Onision were contingent upon Onision's individual content posted. Not just anyone could become a content creator; as the YouTube platform advertises, once the threshold requirements are met, there is still a vetting process. At this stage in the litigation, Plaintiff is seeking to hold YouTube accountable for its own conduct in facilitating the success of Onision's business, which engaged in numerous violations of the TVPRA, including those that harmed Sarah and Alonso. Further, Onision and YouTube's contractual relationship created a long-term and continuous business relationship that lasted multiple years and showed the YouTube Defendant's desire to promote the wrongful venture's (Onision's YouTube channel) success. *See id.* at 559.[6] They established a pattern of conduct that could be said to be a tacit agreement. Plaintiffs have adequately pled that Defendants participated in a venture.

**Element 4: Knowing Benefit.** The fourth element requires the Court to address if the YouTube Defendants *knowingly benefited by receiving some value* for participation in the alleged venture, which is not disputed. *Red Roof,* 21 F.4th at 723. Plaintiff has plainly alleged that "Google monetizes its YouTube platform." (FAC ¶ 78). YouTube offers its creators the ability to join the YPP which allows creators, like Onision, to enter into a contractual, profit-sharing relationship with YouTube and Google for the ad revenue generated from their YouTube channel(s). (Id. ¶¶ 21-23, 81-94, 116-17).

## CONCLUSION

For all the above reasons, Plaintiffs respectfully request that this court Deny the Defendant's Motion to Dismiss and, in the alternative, grant Plaintiffs leave to amend.

[6] Even if this Court held that the Eleventh Circuit's "common undertaking or enterprise involving risk and potential profit" were the standard, Plaintiff has still plausibly pled facts to meet this standard as well.

DATED: March 13, 2024

Respectfully Submitted,

*/s/ Lisa D. Haba*
Lisa D. Haba
**THE HABA LAW FIRM, P.A.**
1220 Commerce Park Dr., Suite 207
Longwood, FL 32779
Telephone: (844) 422-2529
lisahaba@habalaw.com

*/s/ Margaret E. Mabie*
Margaret E. Mabie
Robert Y. Lewis
**MARSH LAW FIRM PLLC**
31 Hudson Yards, 11th Floor
New York, New York 10001
Telephone: (212) 372-3030
margaretmabie@marsh.law
robertlewis@marsh.law

*Attorneys for Plaintiff*