BRIAN M. WILLEN (*Pro Hac Vice*)
BENJAMIN D. MARGO, SBN 348644
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue of the Americas, 40th Floor
New York, NY 10019-6022
Telephone: (212) 999-5800
Facsimile: (212) 999-5801
Email: bwillen@wsgr.com
bmargo@wsgr.com

Attorneys for Defendants
GOOGLE LLC and YOUTUBE, LLC

*Additional counsel listed on signature page*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

SARAH and REGINA ALONSO,

Plaintiffs,

v.

Google LLC, YouTube LLC, James JACKSON, also known online as "ONISION," and LUCAS JACKSON, formerly known online as "LAINEYBOT," "LAINEY" and "KAI,"

Defendants.

CASE NO: 3:23-CV-05523-VC

**REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT BY DEFENDANTS GOOGLE LLC AND YOUTUBE, LLC**

Before: Hon. Vince Chhabria
Place: Crtrm. 4, 17th Fl.
Date: April 4, 2024
Time: 10:00 a.m.

## TABLE OF CONTENTS

**Page**


I. PLAINTIFFS CANNOT EVADE SECTION 230. .......... 1

A. Plaintiffs Seek To Hold YouTube Liable as a Publisher. .......... 1

B. Onision Was Not YouTube's "Agent" Or Legal "Partner" .......... 3

II. PLAINTIFFS CANNOT SAVE THEIR §2255 CLAIMS. .......... 6

A. YouTube Did Not Criminally Violate §2422 or §1591. .......... 6

B. Congress Did Not Provide For Vicarious Liability Under Section 2255. .......... 7

III. PLAINTIFFS CANNOT SAVE THEIR §1595 CLAIMS. .......... 8

CONCLUSION .......... 10

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*B.J. v. G6 Hosp., LLC*,
2023 U.S. Dist. LEXIS 88180 (N.D. Cal. May 19, 2023) ....................9

*Batzel v. Smith*,
333 F.3d 1018 (9th Cir. 2003) ....................4

*Boim v. Holy Land Found. for Relief & Dev.*,
549 F.3d 685 (7th Cir. 2008) (*en banc*) ....................7

*C.S. v. Wyndham Hotels & Resorts, Inc.*,
538 F. Supp. 3d 1284 (M.D. Fla. 2021) ....................4

*Doe 1 v. Apple Inc.*,
2024 U.S. App. LEXIS 5278 (D.C. Cir. Mar. 5, 2024) ....................8, 9

*Doe No. 8 v. Royal Caribbean Cruises, Ltd.*,
860 F. Supp. 2d 1337 (S.D. Fla. 2012) ....................7

*Doe v. 42 Hotel Raleigh, LLC*,
2024 U.S. Dist. LEXIS 26241 (E.D.N.C. Feb. 13, 2024) ....................10

*Doe v. City of Gauley Bridge*,
2022 U.S. Dist. LEXIS 150204 (S.D. W.Va. Aug. 22, 2022) ....................8

*Doe v. Internet Brands*,
824 F.3d 846 (9th Cir. 2016) ....................3

*Doe v. Liberatore*,
478 F. Supp. 2d 742 (M.D. Pa. 2007) ....................7

*Doe v. Red Roof Inns, Inc.*,
21 F.4th 714 (11th Cir. 2021) ....................8, 10

*Doe v. Schneider*,
2013 U.S. Dist. LEXIS 140274 (E.D. Pa. Sept. 30, 2013) ....................7

*Doe v. Twitter, Inc.*,
2023 U.S. App. LEXIS 10808 (9th Cir. May 3, 2023) ....................10

*Does v. Reddit, Inc.*,
51 F.4th 1137 (9th Cir. 2022) ....................1, 6, 8, 10

*Farmers Ins. Grp. v. Cnty. of Santa Clara*,
11 Cal. 4th 992 (1995) ....................6

*Fleites v. MindGeek S.A.R.L.*,
617 F. Supp. 3d 1146 (C.D. Cal. 2022) ....................10

*Fredianelli v. Jenkins*,
931 F. Supp. 2d 1001 (N.D. Cal. 2023) ....................4

*G.G. v. Salesforce.com, Inc.*,
76 F.4th 544 (7th Cir. 2023) ....................1, 8, 9, 10

*Geiss v. Weinstein Co. Holdings LLC*,
383 F. Supp.3d 156 (S.D.NY. 2019)....................9

*Gonzalez v. Google LLC*,
2 F.4th 871 (9th Cir. 2021) *vacated and remanded*, 598 U.S. 617 (2023) ....................2

*H.G. v. Inter-Continental Hotels Corp.*,
489 F. Supp. 3d 697 (E.D. Mich. 2020)....................9

*Herrick v. Grindr LLC*,
765 F. App'x 586 (2d Cir. 2019) ....................3

*HomeAway.com, Inc. v. City of Santa Monica*,
918 F.3d 676 (9th Cir. 2019) ....................2

*In re Hotel TVPRA Litigation*,
2023 U.S. Dist. LEXIS 72454 (S.D. Ohio Apr. 25, 2023) ....................7

*Mavrix Photographs, LLC v. LiveJournal, Inc.*,
873 F.3d 1045 (9th Cir. 2017) ....................4

*McCandless Grp., LLC v. Coy Collective, Inc.*,
2022 U.S. Dist. LEXIS 54450 (C.D. Cal. Feb. 14, 2022)....................5

*N.S. v. Rockett*,
2018 U.S. Dist. LEXIS 223678 (D. Ore. Oct. 19, 2018) ....................7

*Ratha v. Phatthana Seafood Co.*,
2017 U.S. Dist. LEXIS 230292 (C.D. Cal. Dec. 21, 2017), *aff'd*, 26 F.4th 1029 (9th Cir. 2022)....................4

*Sarcuni v. bZx DAO*,
664 F. Supp. 3d 1100 (S.D. Cal. 2023)....................5

*Smith v. Husband*,
376 F. Supp. 2d 603 (E.D. Va. 2005) ....................7

*Sperske v. Rosenberg*,
2013 U.S. Dist. LEXIS 103121 (C.D. Cal. July 23, 2013) ....................5

*Toretto v. Donnelley Fin. Sols., Inc.*,
583 F. Supp. 3d 570 (S.D.N.Y. 2022)....................5

*Trenz v. Sirius XM Radio, Inc.*,
2015 U.S. Dist. LEXIS 180811 (S.D. Cal. July 13, 2015) ....................4

*Twitter, Inc. v. Taamneh*,
598 U.S. 471 (2023).................... 7-8

*Wozniack v. YouTube LLC*,
2024 Cal. App. LEXIS 189 (Cal. Ct. App. March 15, 2024) ....................................2, 3

**STATUTES**

18 U.S.C. § 1591....................................................................................1, 6, 8

18 U.S.C. § 1595....................................................................................1, 8, 9, 10

18 U.S.C. § 2255....................................................................................1, 6, 7, 8

18 U.S.C. § 2422....................................................................................6

47 U.S.C. § 230....................................................................................1, 2, 3, 6, 8

Cal. Corp. Code § 16202....................................................................................5

Cal. Corp. Code § 16305....................................................................................5

The Opposition brief only underscores the glaring flaws in Plaintiffs' case. Plaintiffs' allegations—which at bottom fault YouTube for publishing Onision's channel and thus are precluded by Section 230—do not remotely amount to the kind of criminal wrongdoing by YouTube that would allow a claim under 18 U.S.C. §2255 or §1595. And Plaintiffs' efforts to hold YouTube vicariously liable for the Jacksons' alleged wrongdoing fail because the Jacksons were neither YouTube's agent nor co-owners of a partnership under established law. Trying to save their §1595 claim, Plaintiffs rely on the divided Seventh Circuit decision in *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544 (7th Cir. 2023). That ruling is irrelevant here: it was premised on the court's conclusion that Section 230 did not apply because Salesforce was not a publisher—it neither hosted nor published any objectionable content. *Id.* at 567. But YouTube plainly *is* a publisher, its sole connection to this case is publishing activity: YouTube provided Onision with a platform to post his videos and, for a time, allowed him to earn revenue from ads on some of those videos. Because the allegations against YouTube fall within Section 230, Plaintiffs' claim is governed by *Does v. Reddit, Inc.*, 51 F.4th 1137 (9th Cir. 2022), which holds that YouTube can be liable under §1595 only if it itself criminally violated §1591—a standard Plaintiffs do not even try to meet. YouTube's motion to dismiss should be granted.

## I. PLAINTIFFS CANNOT EVADE SECTION 230.

Recognizing that Section 230 would defeat their claims against YouTube, Plaintiffs make two arguments trying to evade the statute's protections, but neither works.

### A. Plaintiffs Seek To Hold YouTube Liable as a Publisher.

First, Plaintiffs argue that they do not "treat the YouTube Defendants as the publisher or speaker of any content." Opp. 4. According to Plaintiffs they "do not contend that any specific content or channel(s) required moderation by the YouTube Defendants." *Id.* That ignores their own Amended Complaint, which specifically allege that YouTube should have "remove[d] [Onision] from the platform." ¶353. Indeed, the only link Plaintiffs identify between YouTube and the Jacksons' alleged sex trafficking is Onision's content on YouTube—his allegedly "objectifying, offensive, and controversial" videos (Am. Compl., ECF No. 111 ¶14), including

those discussing self-harm and depression that first introduced Plaintiffs to Onision (¶¶156, 195), which allowed him to "use[] his fame and platform" to lure Plaintiffs (¶28). The FAC alleges that the popularity of Onision's YouTube channel provided him with the means "to form relationships with underage girls" (¶28), and that he used that channel to "target[] teen users" (¶118). *See also* ¶¶136-38, 141.[1] While these connections are highly attenuated from any supposed sex trafficking, they clearly seek to hold YouTube liable as a publisher, whether for giving Onision a platform for his content in the first place or failing to remove or limit his content thereafter. That is precisely what Section 230 precludes. *See* Mot. 7-8.

With little argument or explanation, Plaintiffs cite a handful of cases in which Section 230 immunity did not apply (Opp. 3-4), but none fit here. In *HomeAway.com, Inc. v. City of Santa Monica*, 918 F.3d 676, 682 (9th Cir. 2019), the challenged city ordinance, which prohibited brokering transactions for short-term rentals of *real-world properties* not on a city registry, did not require Defendants to monitor or remove third-party content from its platform. *Id*. at 682. This case, in contrast, alleges that YouTube should have better policed content on its website to avoid giving Onision a platform he allegedly used (indirectly) to harm minors.

The Ninth Circuit's (now vacated) decision in *Gonzalez* is similarly inapplicable. There, Section 230 did not bar a claim of revenue sharing with ISIS because it is independently illegal to give money to a designated terrorist group—liability had nothing whatsoever to do with the content that was posted. *Gonzalez v. Google LLC*, 2 F.4th 871, 898 (9th Cir. 2021) *vacated and remanded*, 598 U.S. 617 (2023); *accord Wozniack v. YouTube LLC*, 2024 Cal. App. LEXIS 189, at *35 (Cal. Ct. App. March 15, 2024) (explaining that *Gonzalez* "did not hold that profiting from third-party advertisements is beyond the scope of Section 230" but instead "distinguished between activity that depended on the particular content placed on YouTube, and activity that did not, such as directly providing material support to ISIS by giving them money"). Here, in contrast, it was not

[1] Plaintiffs assert that Lucas Jackson "sen[t] and solicit[ed] child pornography from Alonso," referring to photos they apparently exchanged via a messaging app. Opp. 2 (citing ¶¶161-191). But there is no allegation that any such material was ever on YouTube or sent via YouTube.

per se illegal to share ad revenue with Onision; instead, Plaintiffs' theory is that YouTube's hosting and monetization of his videos was actionable because of the allegedly "offensive" nature of his "channel and content," which "lured and enticed [a] young child" (Opp. 2)—a claim that squarely accuses YouTube of publishing harmful content. As in the recent *Wozniack* decision, which rejected the argument that "financial entanglement" falls outside Section 230, there "is no allegation of wrongdoing that is not dependent on the content of the third-party information." 2024 Cal. App. LEXIS 189, at *34-35.

As for *Doe v. Internet Brands*, 824 F.3d 846, 851 (9th Cir. 2016), it involved a claim that a website failed to warn its users (models) about criminals who stalked and sexually assaulted the models offline. *Id*. at 848. The key point in *Internet Brands* is that the ***wrongdoers had not posted any content at all on the defendants' website***—such that the failure to warn had nothing to do with hosting or monitoring harmful content. The plaintiffs did not "claim to have been lured by any posting that Internet Brands failed to remove." *Id.* at 851. This case is entirely different. It does not involve a failure-to-warn claim, and Plaintiffs specifically claim to have been "lured" by Onision's content, which they fault YouTube for failing to better moderate (¶¶28, 32-36, 118, 127-128, 130, 176). That brings this case squarely within Section 230. Mot. 8; *accord Wozniack*, 2024 Cal. App. LEXIS 189, at *30-31 (distinguishing *Internet Brands* and applying Section 230 to bar "claim [] predicated on the third-party content, of which [plaintiffs] assert defendant had a duty to warn"); *Herrick v. Grindr LLC*, 765 F. App'x 586, 591 (2d Cir. 2019) (similar).

### B. Onision Was Not YouTube's "Agent" Or Legal "Partner"

Second, Plaintiffs try to sidestep Section 230 by claiming that there was an "agency relationship" or "partnership" between YouTube and Onision. Opp. 4. This does not work as an initial matter because, as explained in YouTube's opening brief, even if there were an otherwise viable vicarious liability theory, Section 230 still would apply. Mot. 11-12. Plaintiffs offer no argument or authority to suggest otherwise, and they do not even try to argue that YouTube was responsible for the "creation or development" (47 U.S.C. § 230(f)(3)) of any content that the Jacksons posted. But even if Plaintiffs' theory offered some potential way around Section 230,

there simply is no actual agency or partnership relationship here, and the Jacksons' alleged sexual misconduct is far outside the scope of any conceivable such relationship.

***No agency.*** The only purported basis for an agency relationship here is YouTube's revenue-sharing agreement with Onision (ECF No. 112-2 ("YPP Terms"))—a textbook example of the kind of "arms-length commercial relationship" that "does not create an agency relationship." *Ratha v. Phatthana Seafood Co.*, 2017 U.S. Dist. LEXIS 230292, at *20 (C.D. Cal. Dec. 21, 2017), *aff'd*, 26 F.4th 1029 (9th Cir. 2022) (cleaned up); *accord Trenz v. Sirius XM Radio, Inc.*, 2015 U.S. Dist. LEXIS 180811, at *6 (S.D. Cal. July 13, 2015) ("[a]n allegation of a beneficial contractual relationship alone is insufficient to establish agency").

Beyond ignoring the cases cited in YouTube's motion, Plaintiffs offer no authority for finding an agency relationship based on anything like what is alleged here. This case is nothing like the alleged franchisor-franchisee relationships in *C.S. v. Wyndham Hotels & Resorts, Inc.*, 538 F. Supp. 3d 1284, 1299 (M.D. Fla. 2021), or the relationship between a platform and the content monitors that policed and enforced editorial policies on its behalf in *Mavrix Photographs, LLC v. LiveJournal, Inc.*, 873 F.3d 1045, 1055 (9th Cir. 2017). Plaintiffs' assertion that "YouTube has the contractual right to control Onision's conduct, both on and offline" (Opp. 4) is wholly baseless. Plaintiffs do not cite any allegations in their Complaint, or any provisions in YouTube's standard-form agreements, to support such wild conjecture—and none exist. YouTube did not dictate to Onision what videos to create or post, much less control what he did off the platform, and YouTube's role in placing ads with Onision's videos, and collecting and paying ad revenue, does not make Onision YouTube's agent. Mot. 9; *accord Batzel v. Smith*, 333 F.3d 1018, 1036 (9th Cir. 2003) ("The fact that Mosler provided Cremers with financial support does not support an inference that Mosler possessed practical control of Cremers's editorial content.").

***No Partnership.*** Plaintiffs' suggestion that YouTube should be liable for everything Onision supposedly did because they were in a "partnership" is equally baseless. A legal partnership involves the *co-ownership* of a business and some sharing of the business' *profits*. *E.g.*, *Fredianelli v. Jenkins*, 931 F. Supp. 2d 1001, 1020 (N.D. Cal. 2023). "[C]alling an organization a

partnership does not make it one." *Toretto v. Donnelley Fin. Sols., Inc.*, 583 F. Supp. 3d 570, 587 (S.D.N.Y. 2022) (citation omitted) (no partnership without "agree[ment] to share profits and losses") (cleaned up). That is not what exists here. A standard-form agreement to share *revenue* from videos posted on an online platform (an agreement YouTube has with countless independent creators) does not make Onision a *co-owner* of YouTube's business, sharing profits and losses and liable for one another's wrongdoing. To the contrary, California law is clear that sharing revenues does not establish a partnership. *See* Cal. Corp. Code § 16202(c)(2); Mot. 9.

Indeed, even "profit sharing is not sufficient to demonstrate partnership if such sharing could just as easily constitute wages for employment," *Sperske v. Rosenberg*, 2013 U.S. Dist. LEXIS 103121, at *6 (C.D. Cal. July 23, 2013), and nothing in the Complaint "demonstrat[es]" that "each of the partners shar[e] some degree of management and control of the business," *McCandless Grp., LLC v. Coy Collective, Inc.*, 2022 U.S. Dist. LEXIS 54450, at *25 (C.D. Cal. Feb. 14, 2022) (cited at Opp. 5). Here again, Plaintiffs do not engage with governing law, and the cases they cite are no help. *Sarcuni v. bZx DAO*, 664 F. Supp. 3d 1100, 1116 (S.D. Cal. 2023) addressed whether crypto-currency token holders could be considered in a general partnership. Among other things, *Sarcuni* emphasizes that legal partnership involves the sharing of "profits *and losses*." *Id.* at 1116-17 (emphasis added). Plaintiffs do not allege that the YPP agreement allocates *losses* between YouTube and Onision. *McCandless* is equally off-point. 2022 U.S. Dist. LEXIS 54450, at *25. The plaintiff there alleged that the defendants approached them about forming a joint partnership based on plaintiffs' technology and subsequently did so for several months. Nothing of the sort happened here. Onision was no more YouTube's co-owner than was any other independent content creator—or than countless third-party vendors who sell items on Etsy or eBay, people who list their apartments on Airbnb, or musicians who earn revenue on Spotify.

***Outside the Scope.*** Beyond all that, Plaintiffs do not respond to YouTube's argument that Onision's alleged sexual misconduct was outside the scope of any conceivable agency or partnership. Mot. 10 (citing Rest. 3d of Agency, § 7.07(1); Cal. Corp. Code § 16305(a)). California law (which Plaintiffs ignore) could hardly be clearer in rejecting agency liability in sexual assault

cases far more difficult than this one, which involve assaults committed by *actual employees* that occurred *on the employer's property*. Mot. 10-11 (citing cases); *accord Farmers Ins. Grp. v. Cnty. of Santa Clara*, 11 Cal. 4th 992, 1006 (1995) ("vicarious liability is deemed inappropriate where the misconduct does not arise from the conduct of the employer's enterprise but instead arises out of a personal dispute … or is the result of a personal compulsion"). Here, Onision was not YouTube's employee, and his alleged sexual misconduct did not take place on YouTube's premises, had nothing to do with his revenue-sharing agreement, and did not arise from any work he even arguably did for YouTube's benefit. Thus, even if Onision had somehow been an agent or legal partner of YouTube, Plaintiffs' allegations still would create no basis for vicarious liability.

## II. PLAINTIFFS CANNOT SAVE THEIR §2255 CLAIMS.

Even apart from Section 230, Plaintiffs' claims under § 2255 fail because YouTube did not violate either of the criminal statutes that underlie those claims: §2422 and §1591. *See* Mot. 4-7.

### A. YouTube Did Not Criminally Violate §2422 or §1591.

Plaintiffs do not even try to argue that YouTube itself violated §2422. The most they say is that YouTube "continu[ed] to fund Onision's platform" as *Onision* engaged in sex trafficking (Opp. 8), which effectively concedes that YouTube did *not* "knowingly persuade[], induce[], entice[], or coerce[]" Plaintiffs to engage in unlawful sexual activity or attempt to do so. 18 U.S.C. § 2422(a) & (b). As for §1591, Plaintiffs do not dispute that to "hold a defendant criminally liable as a beneficiary of sex trafficking," "the defendant must have actually 'engaged in some aspect of the sex trafficking.'" *Reddit*, 51 F.4th at 1145 (citation omitted). But the Opposition identifies no facts suggesting that YouTube engaged in any such activity. Plaintiffs' vague suggestion that YouTube received notice that its users were concerned that Onision's content violated YouTube's terms of service (Opp. 1-2) is worlds' away from establishing that YouTube "knowingly benefit[ted] from knowingly participating in child sex trafficking." *Reddit*, 51 F.4th at 1145-46 (no liability under §1591 based on allegations that "Reddit fails to remove child pornography even when users report it").

**B. Congress Did Not Provide For Vicarious Liability Under Section 2255.**

With direct liability unavailable, Plaintiffs try on vicarious liability. But even beyond the fatal flaws with Plaintiffs' agency and partnership arguments, it is well settled that §2255 does not provide for vicarious liability. Mot. 4-5. Plaintiffs argue that because §2255(a) "is silent on *who* may be sued," it does not limit who can be liable for such a violation. Opp. 6. This flouts the established principle that "statutory silence on the subject of secondary liability means there is none." *Boim v. Holy Land Found. for Relief & Dev.*, 549 F.3d 685, 689 (7th Cir. 2008) (*en banc*).

Plaintiffs' cases (Opp. 7-8) do not suggest otherwise. *Doe No. 8 v. Royal Caribbean Cruises, Ltd.* relied on the "principle of federal maritime law" that makes a cruise ship carrier strictly liable for an assault by its crew against its passengers. 860 F. Supp. 2d 1337, 1340 (S.D. Fla. 2012). Maritime principles have no application to this case, which arose on dry land. Cases like *In re Hotel TVPRA Litigation* hold merely that §2255(a) "does not require a defendant to be *criminally convicted* of the predicate offense." 2023 U.S. Dist. LEXIS 72454, at *28 (S.D. Ohio Apr. 25, 2023) (emphasis added). YouTube has not argued otherwise, and the requirement that §2255 plaintiffs must "prove by a preponderance of the evidence that *the defendant* violated the enumerated statute," *id.* (emphasis added), is precisely what is missing here. *See also Smith v. Husband*, 376 F. Supp. 2d 603, 613 (E.D. Va. 2005) remedies under §2255 are "available to any victim able to show … that the defendant committed the acts described in any of the listed offenses"); *N.S. v. Rockett*, 2018 U.S. Dist. LEXIS 223678, at *13 (D. Ore. Oct. 19, 2018) (same). Whether or not that means that only the "criminal offender may be held liable," Opp. 7, it certainly rules out liability on the (baseless) agency or partnership theories Plaintiffs invoke.

Plaintiffs also cite cases that suggest the possibility for claims under §2255 against defendants alleged to have violated the criminal *aiding and abetting* statute, though those cases *rejected* the actual claims at issue. *See Doe v. Liberatore*, 478 F. Supp. 2d 742, 756-57 (M.D. Pa. 2007); *Doe v. Schneider,* 2013 U.S. Dist. LEXIS 140274, at *34 (E.D. Pa. Sept. 30, 2013). But Plaintiffs do not claim, much less plausibly allege, that YouTube aided and abetted the Jacksons—nor could they. *See Twitter, Inc. v. Taamneh*, 598 U.S. 471, 493-494 (2023) (aiding and abetting

"refers to a conscious, voluntary, and culpable participation in another's wrongdoing"). And the possibility that "secondary liability may attach under 18 U.S.C. § 2255 … with respect to aiding and abetting" does *not* authorize civil claims based on theories of *vicarious* liability. *Doe v. City of Gauley Bridge*, 2022 U.S. Dist. LEXIS 150204, at *33 (S.D. W.Va. Aug. 22, 2022).

**III. PLAINTIFFS CANNOT SAVE THEIR §1595 CLAIMS.**

That leaves Plaintiffs' claims under §1595. Plaintiffs' inability to sidestep Section 230 means that these claims fail because, under settled Ninth Circuit law, the Section 230 exception for claims under §1595 (*see* 47 U.S.C. § 230(e)(5)(A)) "requires that a defendant-website's own conduct violate 18 U.S.C. § 1591." *Reddit*, 51 F.4th at 1145; *see* Mot. 12. Plaintiffs offer no argument that YouTube's alleged conduct violated §1591 or make any attempt to invoke the exception provided by §230(e)(5)(A). All the arguments Plaintiffs make in defense of their TVPRA claim (Opp. 8-15) thus are irrelevant because they all assume that Section 230 does not apply. There is no need for the Court to engage with those arguments to dismiss the §1595 claim.

But even putting Section 230 aside, Plaintiffs' claim still would fail, for at least two separate reasons. *First*, Plaintiffs have not plausibly alleged that YouTube "participated in a venture" with Onision that engaged in sex trafficking. *See* Mot. 13-14. *Doe 1 v. Apple Inc.*, 2024 U.S. App. LEXIS 5278 (D.C. Cir. Mar. 5, 2024), is illustrative. The D.C. Circuit affirmed dismissal of claims that Apple "participat[ed] in an unlawful venture" under §1595 with cobalt suppliers that allegedly used forced labor to mine for cobalt. 2024 U.S. App. LEXIS 5278, at *26. As the court explained, "there is no shared enterprise between the Companies and the suppliers who facilitate forced labor…. Although a formal business relationship is not necessary to be a participant in a venture, something more than engaging in an ordinary buyer-seller transaction is required to establish 'participation' in an unlawful venture." *Id.* Instead, a venture requires "plausible allegations that [defendant] took part in the common undertaking of sex trafficking." *Doe v. Red Roof Inns, Inc.*, 21 F.4th 714, 727 (11th Cir. 2021). There is nothing like that here.

Plaintiffs rely heavily on *G.G. v. Salesforce*, but that case is readily distinguishable. The "alleged 'business relationship'" there involved "direct support, specific business advice, and

productivity enhancing software to Backpage.com, which hosted prostitution ads, thereby 'facilitating the growth of a business whose business model was built upon systematic and widespread violations of [federal sex trafficking law].'" *Doe 1*, 2024 U.S. App. LEXIS 5278, at *26 (citing *G.G.*, 76 F.4th at 560-61). Here, in contrast, YouTube did not provide "direct support" or "specific business advice" to Onision to enhance his ability to groom underage girls—and whatever relationship YouTube had with Onision by allowing him to post and monetize videos was not participation in any sort of unlawful venture. Plaintiffs argue that because Onision supposedly used his YouTube channel to help identify and recruit potential grooming targets, rather than for any actual sex trafficking activities, a relaxed standard is warranted, such that it is sufficient that YouTube was, supposedly, put on notice that Onision was creating a "dangerous environment." Opp. 2, 13. That has it backwards: the fact that Plaintiffs' only basis for trying to connect YouTube to the Jacksons' alleged wrongdoing is so indirect and speculative is hardly reason to make it *easier* to state a claim. Plaintiffs' theory reduces to the claim that YouTube had a standard-form agreement with Onision allowing him to earn ad revenue on videos; that Plaintiffs enjoyed some of those videos (though none contained unlawful content); and that *outside of YouTube*, Onision engaged in unlawful efforts to groom Plaintiffs. This is not a plausible theory that YouTube benefitted from "participation in a venture" that was engaged in sex trafficking.[2]

*Second*, Plaintiffs have not met the knowledge requirements of §1595 because they fail to plausibly allege that YouTube knew or should have known that the supposed "venture" engaged in sex trafficking at all—much less as to them. Again relying on *G.G.*, Plaintiffs argue they are not

---

[2] Plaintiffs try without success to distinguish the cases cited in YouTube's motion. Opp. 9. *H.G. v. Inter-Continental Hotels Corp.*, 489 F. Supp. 3d 697, 704 (E.D. Mich. 2020), applied the same statutory provision at issue here—"the 'financial beneficiary prong'" of § 1595(a)—to hold that the "particular venture in which the defendant allegedly participated" must have been engaged in sex trafficking for a claim to lie. *B.J. v. G6 Hosp., LLC*, 2023 U.S. Dist. LEXIS 88180, at *13-14 (N.D. Cal. May 19, 2023), similarly held that the complaint failed to "plausibly allege[] that [defendants] 'took part in the common undertaking of sex trafficking'" as required to state a §1595 claim. *Id.* at *13. Plaintiffs argue that in *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp.3d 156 (S.D.NY. 2019), the benefits received "had *nothing* to do with the trafficking." Opp. 9. But the same is true here. Plaintiffs have no theory by which YouTube's revenue-sharing agreement caused it to benefit from Onision's alleged *sex trafficking*.

required to show that YouTube knew about the "specific victim[s]." Opp. 10. But the better rule, supported by the Eleventh Circuit's decision in *Red Roof Inns*, and other cases (as well as Judge Kirsch's persuasive dissent in *Salesforce*), *does* require victim-specific knowledge. *See* Mot. 14-15 (citing cases); *G.G.*, 76 F.4th at 568 (Kirsch, J., dissenting). This Court need not resolve this debate, however, because Plaintiffs have not plausibly alleged that YouTube had knowledge about the Jacksons' alleged sex trafficking activities *at all*. Plaintiffs allege, at most, that YouTube was on notice that Onision's videos were "offensive" (¶125) or created a "dangerous environment" (Opp. 2) and that people on "social media" had unspecified concerns about the Jacksons' behavior (¶256). This is not an allegation that YouTube had reason to know about unlawful sexual activities the Jacksons supposedly engaged in, all of which happened at their home or via other online services. Courts have rejected knowledge allegations under §1595 far more robust than those here, and Plaintiffs have no response to that authority. *See* Mot. 14-15; *accord Doe v. 42 Hotel Raleigh, LLC*, 2024 U.S. Dist. LEXIS 26241, at *10 (E.D.N.C. Feb. 13, 2024) (negligence requires more than that defendant "might have been able to guess about sex trafficking") (citation omitted).

Finally, *Fleites v. MindGeek S.A.R.L.*, 617 F. Supp. 3d 1146 (C.D. Cal. 2022), does not help Plaintiffs, even assuming it remains good law following recent Ninth Circuit decisions. *See Reddit*, 51 F.4th at 1141, 1145-46; *Doe v. Twitter, Inc.*, 2023 U.S. App. LEXIS 10808, at *5 (9th Cir. May 3, 2023). The court there allowed a beneficiary claim against MindGeek (a pornography website) based on allegations that it knowingly monetized specific instances of child pornography, even after "Plaintiff quite literally told MindGeek herself that she was a minor in her videos." 617 F. Supp. 3d at 1160-61. Plaintiffs do not allege anything like that here. And the court *dismissed* a beneficiary claim against Visa (MindGeek's credit card processor) under §1595 because the allegations "do not reflect that Visa had any knowledge—constructive or otherwise—of Plaintiff, her videos, or her age in the videos." *Id.* at 1161-62.

**CONCLUSION**

Plaintiffs' claims against YouTube fail as a matter of law and should be dismissed.

Respectfully submitted,

Dated: March 25, 2024

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: *\/s\/ Brian M. Willen*
Brian M. Willen
bwillen@wsgr.com

BRIAN M. WILLEN (*Pro Hac Vice*)
BENJAMIN D. MARGO, SBN 348644
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue of the Americas, 40th Floor
New York, NY 10019-6022
Telephone: (212) 999-5800
Facsimile: (866) 974-7329
Email: bwillen@wsgr.com
bmargo@wsgr.com

AMIT Q. GRESSEL, SBN 307663
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
One Market Plaza
Spear Tower, Suite 3300
San Francisco, CA 94105-1126
Telephone: (415) 947-2000
Facsimile: (866) 974-7329
Email: agressel @wsgr.com

Attorneys for Defendant
GOOGLE LLC and YOUTUBE, LLC