UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNKNOWN PARTIES,<br><br>        Plaintiffs,<br><br>    v.<br><br>GOOGLE LLC, et al.,<br><br>        Defendants. | Case No. 23-cv-05523-VC<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 112 |

    YouTube's motion to dismiss is granted. This order assumes the reader's familiarity with the facts, the applicable legal standard, and the arguments made by the parties.

    All the plaintiffs' claims against YouTube are controlled by Section 230, which shields websites from liability for content created and posted by third parties. *See* 47 U.S.C.A. § 230(c)(1); *see also Doe v. Internet Brands, Inc.*, 824 F.3d 846, 850 (9th Cir. 2016). The plaintiffs' arguments against the applicability of Section 230 are unpersuasive.

    First, it is clear from the complaint and the plaintiffs' theory of liability that they seek to treat YouTube as a publisher or speaker of third-party content. The plaintiffs allege that Onision "ran several YouTube channels" that "targeted minor audiences" and allowed Onision to "groom and lure underage girls." According to the plaintiffs, YouTube is liable because it provided a platform for Onision to reach young girls and because it shared advertising revenue with him. Such allegations clearly seek to treat YouTube as a "publisher" of Onision's content.

    Second, the YouTube Partnership Program does not create an agency or partnership relationship between YouTube and Onision. The YPP is simply a revenue-sharing agreement where YouTube pays content creators a percentage of advertising revenue generated by their

videos. There are no facts supporting the allegation that Onision acted on behalf of YouTube in posting his videos or that YouTube exercised any control over what video content Onision posted. Likewise, there are no facts suggesting YouTube and Onision were co-owners of a business for profit. *See* Cal. Corp. Code § 16202(a). The fact that they shared revenue is not enough to show that a partnership was formed. *See id.* at (c)(2).

There is an exception to Section 230 immunity for "civil child sex trafficking claims if the 'conduct underlying the claim' violates 18 U.S.C. § 1591." *Does 1-6 v. Reddit, Inc.*, 51 F.4th 1137, 1141-42 (9th Cir. 2022). But this exception only applies if the defendant-website itself engaged in some conduct indicating participation in a sex trafficking venture. *Id.* In other words, to get around Section 230 immunity, the plaintiffs must allege that a defendant-website's own conduct demonstrates that it knowingly benefitted from knowingly participating in child sex trafficking. *See id.* at 1145. "Mere association with sex traffickers is insufficient absent some knowing "participation" in the form of assistance, support, or facilitation." *Id.*

Here, the plaintiffs do not attempt to argue that this exception applies, and even if they did, all the plaintiffs have alleged is YouTube's "mere association with sex traffickers." The plaintiffs do not allege facts in support of YouTube's knowing participation in, or knowledge of, Onision's alleged child sex trafficking. Apart from the plaintiffs being introduced to Onision through his YouTube videos, none of the subsequent alleged interactions between the plaintiffs and Onision took place on YouTube. And there are no allegations that YouTube was ever made aware of any illegal conduct between the plaintiffs and Onision.

The plaintiffs rely heavily on the Seventh Circuit case, *G.G. v. Salesforce*, which held that Salesforce could be civilly liable for participating in a venture that violated Section 1591. 76 F.4th 544, 565. But the facts in *Salesforce* are readily distinguishable. There, Salesforce entered into a business relationship with the website Backpage—an online platform for adult advertisements that was also publicly described "as a hub of human trafficking, especially the trafficking of minors." *Id.* at 549. Salesforce was alleged to have sold "software designed specifically for Backpage and provided affirmative, personalized support" that "helped Backpage

2

operate its business, manage relationships with existing customers, market itself to new customers, and improve profitability." *Id.* at 549-50. Based on the "continuous business relationship" and extensive support Salesforce provided to Backpage, the court determined the allegations were "sufficient to show that Salesforce participated in Backpage's venture and knowingly benefitted from it." *Id.* At 565. By contrast, the plaintiffs here do not allege anything close to this type of business support between YouTube and Onision. The only allegation suggesting a business relationship between YouTube and Onision is the YPP, which is a standard advertising revenue agreement that YouTube offers to many content creators.

The court is skeptical that any amendment to the complaint would alter the applicability of Section 230 to the plaintiffs' claims. But, in an abundance of caution, the motion to dismiss is granted with leave to amend. If no amended complaint is filed within 14 days of this ruling, dismissal will be with prejudice.

**IT IS SO ORDERED.**

Dated: April 29, 2024

_____
VINCE CHHABRIA
United States District Judge