**THE HABA LAW FIRM, P.A.**
Lisa D. Haba (*Pro hac vice*)
*lisahaba@habalaw.com*
1220 Commerce Park Dr., Ste 207
Longwood, FL 32779
Telephone: (844) 422-2529

**MARSH LAW FIRM PLLC**
Robert Y. Lewis (SBN 153948)
*robertlewis@marsh.law*
Margaret E. Mabie (*Pro hac vice*)
*margaretmabie@marsh.law*
31 Hudson Yards, 11th Floor
New York, New York 10001
Telephone: (315) 296-9046

*Attorneys for Plaintiff "Sarah" a/k/a "Unknown Party"*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| SARAH and REGINA ALONSO,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE LLC, YOUTUBE LLC, JAMES JACKSON, also known online as "ONISION," and LUCAS JACKSON, formerly known online as "LUCASBOT," "LUCAS" and "KAI,"<br><br>Defendants. | Case No. 3:23-CV-05523-VC<br><br>**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS GOOGLE LLC AND YOUTUBE, LLC'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**<br><br>Judge: Hon. Vince Chhabria<br>Place: Crtrm. 4, 17th Floor<br>Date: September 26, 2024<br>Time: 10:00 a.m. PST |

# TABLE OF CONTENTS

**TABLE OF CONTENTS** ........ ii

**TABLE OF AUTHORITIES** ........ iii

**FACTUAL ALLEGATIONS** ........ 1

**ARGUMENT** ........ 3

**I. THE MOTION TO DISMISS STANDARD PURSUANT TO RULE 12(B)(6)** ........ 3

**II. SECTION 230 IMMUNITY DOES NOT BAR PLAINTIFFS' CLAIMS** ........ 4

A. Claims Do Not Seek to Treat YouTube as the Publisher or Speaker ........ 4

B. Plaintiffs have Plausibly Alleged an Agency Relationship ........ 8

C. Plaintiffs have Plausibly Alleged a Partnership Relationship ........ 9

**III. PLAINTIFFS HAVE PLAUSIBLY ALLEGED CLAIMS UNDER 18 U.S.C. § 2255** ...11

**IV. PLAINTIFFS HAVE PLAUSIBLY ALLEGED CLAIMS UNDER 18 U.S.C. § 1595** .. 12

**V. PLAINTIFFS HAVE PLAUSIBLY ALLEGED NEGLIGENCE PER SE** ........ 13

**CONCLUSION** ........ 13

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 3

*Barnes v. Yahoo!, Inc.*, 570 F.3d 1096 (9th Cir. 2009) .......... 4

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......... 3

*Calise v. Meta Platforms, Inc.*, 103 F.4th 732 (9th Cir. 2024) .......... 4, 6

*Conley v. Gibson*, 355 U.S. 41 (1957) .......... 3

*De Leonis v. Etchepare* (Cal. 1898), 120 Cal. 407, 52 P. 718, 1898 Cal. LEXIS 780 .......... 8

*Doe v. Boland*, 698 F.3d 877 (6th Cir. 2012) .......... 11

*Doe v. Internet Brands*, 824 F.3d 846 (9th Cir. 2016) .......... 4, 5

*Doe v. Peterson*, 784 F. Supp. 2d 831 (E.D.Mich. 2011) .......... 10

*Doe v. Schneider,* No. 08-3805, 2013 WL 5429229 (E.D. Pa. Sept. 30, 2013) .......... 11

*G.G. v. Salesforce.Com, Inc.*, 76 F.4th 544, 548 (7th Cir. 2023) .......... 12

*Gorman v. Wolpoff & Abramson*, No. C 04-04507 JW, 2005 U.S. Dist. LEXIS 58017 (N.D. Cal. Jan. 26, 2005) .......... 3

*Gray v. Toyota Motor Sales, U.S.A., Inc.*, 554 F. App'x 608 (9th Cir. 2014) .......... 3

*HomeAway.com v. City of Santa Monica,* 918 F.3d 676 (9th Cir. 2018) .......... 4, 5, 6

*In re Hotel TVPRA Litig.,* No. 2:22-CV-1924, 2023 WL 3075851 (S.D.Ohio Apr. 25, 2023) .......... 11

*In re Soc. Media Adolescent Addiction/Personal Inj. Prods. Liab. Litig.*, No. 4:22-md-03047-YGR, 2023 U.S. Dist. LEXIS 203926 (N.D. Cal. Nov. 14, 2023) .......... 13

*In re Tracht Gut, LLC*, 836 F.3d 1146 (9th Cir. 2016) .......... 4

*Inglewood Teachers Assn. v. Public Employment Relations Bd.* (1991) 227 Cal.App.3d 767, 278 Cal. Rptr. 228 .......... 8

*Jane Doe No. 8 v. Royal Caribbean Cruises, Ltd.*, 860 F.Supp.2d 1337 (S.D.Fla. 2012) .......... 11

*M.A. ex rel. P.K. v. Village Voice Media Holdings*, LLC, 809 F.Supp.2d 1041 (E.D. Mo. 2011) .. 11

*McCandless Grp., LLC v. Coy Coll., Inc.*, No. 2:21-cv-02069-DOC-KES, 2022 U.S. Dist. LEXIS 54450 (C.D. Cal. Feb. 14, 2022) ........ 9

*McIntyre v. Kavanaugh*, 242 U.S. 138 (1916) ........ 10

*Quality Foods de Centro Am. v. Latin Am. Agribusiness Dev. Corp.*, 711 F.2d 989 (11th Cir.1983) ........ 3

*Stockwell v. U.S.*, 80 U.S. 531 (1871) ........ 10

*Strang v. Bradner*, 114 U.S. 555 (1885) ........ 10

*Valentine v. Plum Healthcare Grp.*, LLC, 37 Cal. App. 5th 1076, 249 Cal. Rptr. 3d 905 (2019) .. 8

*Violette v. Shoup* (1993) 16 Cal.App.4th 611 20 Cal. Rptr. 2d 358 ........ 8

*Wickham v. Southland Corp.* (1985) 168 Cal.App.3d 49, 213 Cal. Rptr. 825 ........ 8

**Statutes**

18 U.S.C. § 2258A ........ 13

47 U.S.C. §230(c)(1) ........ 4, 5

Cal. Civ. Code § 2295 ........ 8

Cal. Civ. Code § 2298 ........ 8

Cal. Civ. Code § 2299 ........ 8

Cal. Civ. Code § 2300 ........ 8

Cal. Corp. Code § 16202 ........ 9

**Rules**

Fed. R. Civ. P. 8(a)(2) ........ 3

Rule 12(b)(6) ........ 3

## FACTUAL ALLEGATIONS

Google is the parent company of YouTube (collectively "YouTube") and both entities monetized the YouTube platform. (FAC ¶ 87). YouTube offers eligible creators that meet specific criteria the opportunity to join its YouTube Partnership Program ("YPP"). (Id. ¶¶ 90-91). The YPP partners enter into a contractual relationship and agree to abide by the YouTube Terms of Service and Community Guidelines ("TOS"), while YouTube monetize the relationship by managing and promoting all the matching of videos with advertisers, advertising placements and adjustments, monitoring of traffic/views to page, monitoring of ad responses, and revenue collection. (Id. ¶¶ 91-93, 96). YouTube helps its paid partners individually grow, expand, and increase profitability. (Id. ¶ 93-94). YouTube deliberately and specifically designed its algorithm to "recommend" and promote certain partners and drive the activity of its paid partners on YouTube. (Id. ¶¶ 94, 98). Both YouTube and the YPP creator share profits earned from this joint-venture and partnership program. (Id. ¶¶ 92, 103, 110-111). YouTube's own actions in monetizing certain YPP creators give rise to Plaintiffs claims.

Defendant James Jackson ("Onision") joined the YPP and YouTube monetized their relationship. (Id. ¶¶ 20, 29, 162, 138). Around 2012, Onision and his spouse ("Lucas") (collectively the "Jackson Defendants") used the YPP to groom and lure underage girls through the Onision YouTube channels and forums, and they targeted engagement from minor girls and teens (Id. ¶¶ 40, 152, 158-59).

YouTube was independently regulating, altering, monetizing, and ratifying Onision's content as a YPP creator in order to match and place advertisements that were most appealing to his content viewers. (Id. ¶¶ 94-95). YouTube received actual and constructive knowledge about the Jackson Defendants and their luring and enticing of children through numerous means. Such

notice includes: (1) in 2012, YouTube was notified by numerous people that Onision violated their TOS by grooming and preying on children and the sexual exploitation of minors (id. ¶¶ 36-39, 41-42, 142); (2) a change.org petition was sent to YouTube asking that Onision be demonetized based on violations of the TOS (id. ¶ 143); (3) viewers reported Onision's violations of the TOS and grooming tactics to AdSense, which is one of the Google programs that matches ads to the individual YouTube website based on content and visitors to maximize monetization, (id. ¶¶ 144-45); and (4) multiple viewers flagged his videos that were offensive and violated the TOS through YouTube's video reporting feature, (id. ¶ 147). YouTube did not demonetize Onision and instead continued the profitable partnership relationship with Onision, electing to profit from sex trafficking and grooming. (Id. ¶¶ 149-50, 152).

12-year-old Regina Alonso discovered Onision's channels after she googled "How to Kill Yourself" and the Google algorithm suggested Onision's monetized YouTube content. (Id. ¶ 178). Onision's channel and content lured and enticed this young child to watch more and more of his videos. (Id. ¶ 42, 138, 159). Ultimately, Lucas ended up sending and soliciting child pornography from Alonso and the Jackson's lured and enticed her to visit the Jackson's at their home for the purpose of engaging in sexual activity with her while she was still a minor. (Id. ¶¶ 48, 210-213, 390, 405).

Starting at age 16, Sarah began traveling to visit the Jackson's numerous times, where she was groomed by the Jacksons. (Id. ¶¶ 53-54). After Onision raped Sarah, began posting numerous videos on YouTube to attack, humiliate and silence Sarah, furthering the harm to Sarah. (Id. ¶¶ 56, 357-69). Only after being repeatedly publicly exposed, YouTube demonetized Onision in or about 2021. (Id. ¶ 373). YouTube stated that "Onision violated the Partner Program's Creator Responsibility guidelines. These mandate that partners not engage in behavior (either on- or off-

platform) that can cause widespread harm to the YouTube community, and potentially damage the trust among creators, users, and advertisers." (Id. ¶ 374).

## ARGUMENT

### I. THE MOTION TO DISMISS STANDARD PURSUANT TO RULE 12(B)(6)

In deciding a motion to dismiss pursuant to Rule 12(b)(6), all of the allegations in the complaint must be accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint needs to present only "a short and plain statement" of the basis for a claim. Fed. R. Civ. P. 8(a)(2). Plaintiffs only need to show only that the claim is "plausible on its face" and entitle Plaintiff relief. *Twombly*, 550 U.S. at 570.

"The threshold of sufficiency that a complaint must meet to survive a motion to dismiss is exceedingly low." *Gorman v. Wolpoff & Abramson*, No. C 04-04507 JW, 2005 U.S. Dist. LEXIS 58017, at *2 (N.D. Cal. Jan. 26, 2005) (citing *Quality Foods de Centro Am. v. Latin Am. Agribusiness Dev. Corp*., 711 F.2d 989, 995 (11th Cir.1983)). A complaint should not be dismissed under Rule 12(b)(6) unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Moore v. City of Costa Mesa*, 886 F. 2d 260, 262 (9th Cir. 1989). "A well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable." *Twombly,* 550 U.S. at 556. To proceed to discovery, the allegations must only be "plausible." *Id.* at 547.

A court must construe the complaint's allegations "in the light most favorable to the nonmoving party." *Gray v. Toyota Motor Sales, U.S.A., Inc.*, 554 F. App'x 608, 608–09 (9th Cir. 2014). A court also "must accept as true all facts alleged in the complaint and draw all reasonable

inferences in favor of the plaintiff." *In re Tracht Gut, LLC*, 836 F.3d 1146, 1150 (9th Cir. 2016). Yet in its MTD, YouTube demands that this Court draw all reasonable inferences in YouTube's favor. This is the incorrect standard at the pleading stage of the litigation.

## II. SECTION 230 IMMUNITY DOES NOT BAR PLAINTIFFS' CLAIMS

YouTube claimed that Plaintiffs' claims should be dismissed because they have immunity pursuant to Section 230 of the Communications Decency Act ("CDA 230"). Plaintiffs' claims fall outside of CDA 230 for three reasons: (1) Plaintiffs do not seek to treat YouTube as a publisher or speaker, (2) the YPP creates an agency relationship with YouTube, and (3) the YPP creates a partnerships relationship with YouTube.

### A. Claims Do Not Seek to Treat YouTube as the Publisher or Speaker

CDA 230 only provides immunity for claims that seek to treat an internet service provider as a publisher or speaker of third–party content. 47 U.S.C. §230(c)(1); *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1100-01 (9th Cir. 2009). But CDA 230 immunity is not so broad that it "attaches any time a legal duty might lead a company to respond with monitoring or other publication activities." *HomeAway.com v. City of Santa Monica,* 918 F.3d 676, 682 (9th Cir. 2018) (referencing *Doe v. Internet Brands*, 824 F.3d 846, 851 (9th Cir. 2016)).

The Ninth Circuit has rejected a "but-for" test – i.e. the cause of action would not otherwise have accrued "but-for" the third-party content – and instead found that the proper test focuses on what the "duty at issue [actually] requires." *Homeaway,* 918 F.3d at 682 (citing *Internet Brands,* 824 F.3d at 851, 853). The Court must first identify the underlying duty in the cause of action. *Calise v. Meta Platforms, Inc.*, 103 F.4th 732, 741 (9th Cir. 2024). To invoke CDA 230 immunity, the duty at issue must require an internet company to monitor third-party content. *Homeaway,* 918 F.3d at 682. In other words, if the cause of action originated because of third-party content, but

does not require an internet service provider to monitor third-party content, CDA 230 immunity does not apply. *Id.* The Ninth Circuit has helped develop this nuanced distinction.

In *Doe v. Internet Brands* (2016), two criminals used the defendant's website, Model Mayhem, to communicate with and lure victims to sham auditions where they were then drugged, raped, and the videos of each rape was sold or distributed as pornography. *Internet Brands,* 824 F.3d at 848. The complaint alleged that the defendant company knew about the criminal conduct through Model Mayhem, yet they failed to warn their website users of the danger, which resulted in the plaintiff falling prey to the same scheme. *Id.* at 849. Plaintiffs' claims against the defendant company are that it breached its duty to warn her about information obtained from an outside source (other than monitoring of their own platform). Such a duty to warn would not require Internet Brands "to remove any user content or otherwise affect how it publishes or monitors such content." *Id.* at 851. "Though the defendant did, in its business, act as a publisher of third-party content, the underlying legal duty at issue did not seek to hold the defendant liable as a "publisher or speaker" of third-party content." *Homeaway,* 918 F.3d at 682 (citing *Id*. at 853); *see* 47 U.S.C. § 230(c)(1).

In *Homeaway* (2018), Homeaway.com and Airbnb were internet websites that engaged in short-term home and vacation rentals on their website. *Homeaway,* 918 F.3d. at 679. A local city passed an ordinance which created regulations surrounding "home-sharing" in its jurisdiction by authorizing licensed "home-sharing" but prohibited unlicensed "home-sharing." *Id.* The internet companies filed suit, alleging that the ordinance violated CDA 230 because it requires them to monitor third-party listings and compare it to the City's registry before allowing a booking to proceed. *Id.* at 682. The internet platforms claim that CDA immunity applies whenever "a legal duty 'affects' how an internet company 'monitors' a website." *Id.* But the Ninth Circuit rejected

this interpretation, instead finding that "[t]he [o]rdinance prohibits processing transactions for unregistered properties. It does not require the Platforms to review the content provided by the hosts of listings on their websites. Rather, the only monitoring that appears necessary in order to comply with the [o]rdinance relates to incoming requests to complete a booking transaction—content that, while *resulting from* the third-party listings, is distinct, internal, and nonpublic." *Id.*

In *Calise v. Meta Platforms, Inc.* (2024), it was alleged that Meta collects user data and sells it to third-party advertisers, who in turn post ads on Meta based on Meta's targeted advertising software. *Calise,* 103 F.4th at 736. Meta gets its primary source of revenue from advertising. *Id.* Despite Meta's policies claiming they prohibit deceptive and misleading advertising, plaintiff alleges that Meta knowingly and actively solicited, encouraged, and assisted scammers that were defrauding Meta users because it produced profit. *Id.* at 737. The Ninth Circuit allowed the breach of contract claims to proceed to discovery because its contract liability "does not come from its publishing conduct, but from its manifest intention to be legally obligated to do something." *Id.* at 743.

This case is similarly situated. The Court, in its Order dismissing the First Amended Complaint ("FAC"), states that Plaintiffs' claims seek to treat YouTube as the publisher of Onision's content and hold YouTube liable for sharing advertising revenue with him. (Doc. 118). But this fails to conduct the full analysis. The first step is to identify the underlying duty in the cause of action. *Calise*, 103 F.4th at 741.

Plaintiffs' sex trafficking claims (Counts I, II, V, and VI) impose the duty on YouTube to not benefit from participation in a venture which it knew or should have known had engaged in a violation of the TVPRA. Like *Internet Brands* where the defendant learned of what was happening from an outside source, Plaintiffs allege YouTube learned of Onision's conduct from numerous

complaints outside of monitoring his platform. (SAC ¶¶ 37-39, 41-42, 44-45, 145-147, 149-50, 152). This knowledge gained from an outside source plausibly shows that YouTube was benefiting from a venture that it should have known was engaged in a violation of the TVPRA and does not require YouTube to monitor Onision's channel or content. The duty raised in Counts I, II, V, and VI allege that YouTube should have suspended or demonetized Onision so as not to benefit from his venture; it does not require YouTube to monitor his content.

Plaintiffs' grooming claims (Counts III and VII) impose the duty on YouTube not to profit from the grooming of children for sexual purposes, which again stemmed from knowledge provided by outside sources. YouTube need not remove Onision's content in order to demonetize it. This case is not about YouTube's editorial decisions, but rather its' business decisions. Plaintiffs believed the Onision page to be trusted and safe given that YouTube was monetizing the page and he was deemed "trusted" by YouTube. (SAC ¶ 117). The duty raised in Counts III and VII allege that YouTube should have suspended or demonetized Onision so as not to benefit from his grooming of children; it does not require YouTube to monitor his content.

Plaintiffs' negligence per se claim (Count IX) imposes the duty on YouTube to report apparent violations of § 1591 to NCMEC. In 2021, YouTube demonetized Onision because he "violated the Partner Program's Creator Responsibility guidelines" which "mandate that partners not engage in behavior (either on-or off-platform) that can cause widespread harm to the YouTube community, and potentially damage the trust among creators, users, and advertisers." (SAC ¶ 374). Based on the same information that enabled YouTube to demonetize Onision, YouTube also had a duty to report Onision's conduct to NCMEC yet failed to do so. This duty requires a report to be issued; it does not require YouTube to monitor his content.

As such, Plaintiffs' claims do not treat YouTube as a publisher or speaker and therefore are not immune from liability pursuant to CDA 230.

**B. Plaintiffs have Plausibly Alleged an Agency Relationship**

"An agent is one who represents another, called the principal, in dealings with third persons." Cal. Civ. Code § 2295. The relation between a principal and agent is founded on contract. *De Leonis v. Etchepare* (Cal. 1898), 120 Cal. 407, 52 P. 718, 1898 Cal. LEXIS 780. In California, an agency is either actual or ostensible. Cal. Civ. Code § 2298. Actual agency means the principle employed the agent. Cal. Civ. Code § 2299. Ostensible agency means that "the principal intentionally, or by want of ordinary care, causes a third person to believe another to be his agent who is not really employed by him." Cal. Civ. Code § 2300.

"The existence of an agency relationship is a factual question for the trier of fact." *Valentine v. Plum Healthcare Grp.*, LLC, 37 Cal. App. 5th 1076, 1086, 249 Cal. Rptr. 3d 905, 912 (2019) (citing *Violette v. Shoup* (1993) 16 Cal.App.4th 611, 619 [20 Cal. Rptr. 2d 358]; *Inglewood Teachers Assn. v. Public Employment Relations Bd.* (1991) 227 Cal.App.3d 767, 780 [278 Cal. Rptr. 228]; *Wickham v. Southland Corp.* [(1985) 168 Cal.App.3d 49,] 55 [213 Cal. Rptr. 825].))

When the allegations are taken in a light most favorable to Plaintiffs, the allegations raised are sufficient to plausibly state an ostensible agency relationship – the full breadth of that relationship will be further developed through discovery. The SAC alleges that YouTube gets a huge amount of its revenue from advertising (SAC ¶ 88). The YPP Program contract requires YPP Partners, like Onision, to abide by the TOS or they can lose monetization, which plausibly gives YouTube the right of control over a YPP Partner and what they post and how they act offline. (Id. ¶¶ 92, 96, 97, 100, 110, 374). Indeed, YouTube de-monetized Onision in 2021 because he "violated the Partner Program's Creator Responsibility guidelines" which "mandate that partners not engage

in behavior (either on-or off-platform) that can cause widespread harm to the YouTube community, and potentially damage the trust among creators, users, and advertisers." (Id. ¶ 374). YouTube further offers exclusively YPP Partners special tools to improve and further monetize their page. (Id. ¶ 95). YouTube promotes and recommends YPP Partners content through a non-neutral algorithm, again helping those limited accounts gain more visibility, followers, and money. (Id. ¶¶ 104-105).

Plaintiff has plausibly alleged that the principal – YouTube – monetized Onision, learned through outside sources of Onision's conduct in violation of the YPP Agreement and TOS, and continued to monetize him and share profit with him. In doing so, Plaintiff has plausibly alleged an ostensible agency relationship between Onision and YouTube for the time that he was a YPP Partner. As such, the existence of this relationship must go to the trier of fact.

**C. Plaintiffs have Plausibly Alleged a Partnership Relationship**

Multiple factors are considered in determining whether two parties are in a partnership – the parties should share profit, and each of the partners should share some degree of management and control of the business. *McCandless Grp., LLC v. Coy Coll., Inc.*, No. 2:21-cv-02069-DOC-KES, 2022 U.S. Dist. LEXIS 54450, at *28 (C.D. Cal. Feb. 14, 2022); *see also* Cal. Corp. Code § 16202. YouTube and Onision shared management and control of their joint business. The parties were contractually bound through the YPP Agreement. The YPP Partners create and post content which brings viewers to the website and allows YouTube to obtain profitable advertising contracts. (SAC ¶¶ 90, 92-93). Without such content, YouTube would have no viewers or advertisers; the YPP Partners form a necessary and valuable part of the business, and exercise "management and control" over content creation within the contractual confines of the YPP Agreement.

YouTube provides the platform, contracts with the advertisers, handles advertising placement, monitors traffic and ad responses, collects/distributes revenue, and provides tools to YPP Partners to improve and enhance their content. (Id. ¶¶ 93-95). YouTube is a necessary and valuable part of the business, and exercises "management and control" over the monetization and advertising of content on the platform. Without YPP Partners, YouTube would not have sufficient content to entice advertisers and make profit, and without YouTube, content creators would not have the ability to monetize their work; each requires the other, and each exercises management and control over their respective parts of the business.

YouTube had the choice to name its relationship with content creators anything it wanted – it elected to name its program the "YouTube Partnership Program." (SAC ¶¶ 90, 92). In the choice of names alone, YouTube publicly states that its YPP Partners are in a partnership with YouTube, and contractually enter into a "Partnership Agreement" with the YouTube members, including Onision.

"Generally, partners are individually liable for torts committed by their firm or other partners when they are acting within the scope of its business whether they personally participate or not." *Doe v. Peterson*, 784 F.Supp.2d 831, 844–45 (E.D.Mich. 2011) (citing *McIntyre v. Kavanaugh*, 242 U.S. 138, 139 (1916)); *see also Stockwell v. U.S.*, 80 U.S. 531, 547-48 (1871). "This is true even if the defendant has no knowledge of his partner's wrongdoing." *See McIntyre*, 242 U.S.at 140 (holding defendant personally liable for fraud his partners committed without his authority, knowledge, or consent); *Strang v. Bradner*, 114 U.S. 555 (1885) (partners can bind each other in liability if they commit wrongful acts within the scope of their partnership business).

When the allegations are taken in a light most favorable to Plaintiffs, the SAC has plausibly alleged a partnership relationship between YouTube and Onision. As a partner, YouTube is liable

for the content created by Onision and the claims are not barred by CDA 230, allowing Plaintiffs to engage in discovery.

## III. PLAINTIFFS HAVE PLAUSIBLY ALLEGED CLAIMS UNDER 18 U.S.C. § 2255

YouTube argues that Plaintiffs' § 2255 (hereinafter "Masha's Law") claims fail to state a cause of action. Plaintiffs rely on and incorporate by reference their previous arguments in response to this issue, explained in detail in Plaintiffs' Opposition Brief filed in response to YouTube's MTD FAC at 6-8 (Doc. 114).

YouTube is wrong that Masha's Law does not authorize secondary liability. Masha's Law provides remedy to any person who can show by a preponderance of the evidence that, while a minor, they were a victim of a predicate criminal act. *Doe v. Boland*, 698 F.3d 877, 880 (6th Cir. 2012). YouTube Defendants violated two predicate statutes, 18 U.S.C. §§ 2242 and 1591, against Plaintiffs entitling them to relief under Masha's Law. So too, courts nationwide have found Masha's Law allows secondary liability.[1]

For the reason stated here, as well as those detailed in Plaintiffs' Opposition Brief filed in response to YouTube's MTD FAC at 6-8 (Doc. 114), Motion should be denied as to Plaintiffs' Masha's Law claims.

---

[1] *See Jane Doe No. 8 v. Royal Caribbean Cruises*, *Ltd*., 860 F.Supp.2d 1337, 1340 (S.D.Fla. 2012) ; *In re Hotel TVPRA Litig.*, No. 2:22-CV-1924, 2023 WL 3075851, at *7 (S.D.Ohio Apr. 25, 2023); *Doe v. Schneider,* No. 08-3805, 2013 WL 5429229, at *11 (E.D. Pa. Sept. 30, 2013); *M.A. ex rel. P.K. v. Village Voice Media Holdings*, LLC, 809 F.Supp.2d 1041, 1053-55 (E.D. Mo. 2011).

## IV. PLAINTIFFS HAVE PLAUSIBLY ALLEGED CLAIMS UNDER 18 U.S.C. § 1595

YouTube argues that Plaintiffs' § 1595 claims fail to state a cause of action. Plaintiffs rely on and incorporate by reference their previous arguments in response to this issue, explained in detail in Plaintiffs' Opposition Brief filed in response to YouTube's MTD FAC at 8-15 (Doc. 114).

In its Order dismissing the MTD FAC (Doc. 118), the Court factually distinguished *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 548 (7th Cir. 2023) from this case, pointing out that in that case, it was alleged that Salesforce entered into a continuous business relationship with Backpage and offered extensive support in its business operation, management of client relationships, marketing to new customers, and improving profitability. The SAC allegations plausibly raise a similar type of relationship. Onision engaged in a contractual relationship with YouTube, which created a continuous business relationship for many years. YouTube offered support to Onision by providing the means to profit, advertisements that were selectively paired with the content on his channel, the monitoring of traffic and ad responses, the collection of revenue, and offered special tools to help him (as a YPP Partner) to improve and enhance his content. (SAC ¶¶ 93-95). Both relationships carry a similar theme – both Salesforce and YouTube provided the necessary tool belt to enable their business partners (Onision and Backpage) to conduct their trade. Just as Backpage could not have grown, developed, and profited in the way it did without Salesforce, Onision likewise could not have done the same without YouTube. With these similarities, *Salesforce* is analogous and instructive on the interpretation of § 1595 in the context of an internet company.

For the reason stated here, as well as those detailed in Plaintiffs' Opposition Brief filed in response to YouTube's MTD FAC at 8-15 (Doc. 114), this Motion should be denied as to Plaintiffs'§ 1595 claims.

## V. PLAINTIFFS HAVE PLAUSIBLY ALLEGED NEGLIGENCE PER SE

Congress codified 18 U.S.C. § 2258A to both reduce and prevent the proliferation of online sexual exploitation, especially of children. 18 U.S.C. § 2258A(a)(1)(A)**Error! Bookmark not defined.**. When an internet company receives actual knowledge of any facts or circumstances which constitute apparent violations of § 1591, they are duty bound to report that violation to NCMEC. 18 U.S.C. § 2258A(a). *See In re Soc. Media Adolescent Addiction/Personal Inj. Prods. Liab. Litig*., No. 4:22-md-03047-YGR, 2023 U.S. Dist. LEXIS 203926, at *57 (N.D. Cal. Nov. 14, 2023)**Error! Bookmark not defined.** (CDA 230 did not immunize platform against negligence per se claims stemming from violations of failing to report to NCMEC pursuant to 18 U.S.C. § 2258A and 2258B).

Plaintiffs have plausibly alleged that YouTube had received ample notice that Onision was engaged in a venture that was subjecting children to exploitation. (SAC ¶¶ 37-39, 41-42, 44-45, 145-147, 149-50, 152). While the knowledge was constructive knowledge at the time the reports were generated, the knowledge plausibly became either actual knowledge or an apparent violation on or before January 21, 2021. On this date, YouTube demonetized Onision because he "violated the Partner Program's Creator Responsibility guidelines" which "mandate that partners not engage in behavior (either on-or off-platform) that can cause widespread harm to the YouTube community, and potentially damage the trust among creators, users, and advertisers." (Id. ¶ 374). When YouTube demonetized Onision, they should have reported to NCMEC, yet they failed to do so.

Further, YouTube's conduct in failing to report Plaintiffs' abuse to NCMEC acted or failed to act "with reckless disregard to a substantial risk of causing physical injury without legal justification" and unrelated to their reporting responsibilities. Thus, YouTube is not entitled to the limited liability protections available pursuant to 18 U.S.C. § 2258B.

When the allegations are taken in a light most favorable to Plaintiffs, as of January 21, 2021, YouTube had actual knowledge of facts or circumstances which constitute an apparent violation of Onision's conduct trafficking and exploiting Plaintiffs (both on and offline) and failed to report this to NCMEC, breaching their duty to adhere to federal law. For the reason stated, the MTD should be denied as to the negligence per se claim.

**CONCLUSION**

For all the above reasons, Plaintiffs respectfully request that this court deny YouTube's MTD the SAC.

DATED: July 26, 2024

Respectfully Submitted,

*/s/ Lisa D. Haba*
Lisa D. Haba
**THE HABA LAW FIRM, P.A.**
1220 Commerce Park Dr., Suite 207
Longwood, FL 32779
Telephone: (844) 422-2529
lisahaba@habalaw.com

*/s/ Margaret E. Mabie*
Margaret E. Mabie
Robert Y. Lewis
**MARSH LAW FIRM PLLC**
31 Hudson Yards, 11th Floor
New York, New York 10001
Telephone: (212) 372-3030
margaretmabie@marsh.law
robertlewis@marsh.law

*Attorneys for Plaintiffs Regina Alonso and Sarah*