BRIAN M. WILLEN (*Pro Hac Vice*)
BENJAMIN D. MARGO, SBN 348644
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue of the Americas, 40th Floor
New York, NY 10019-6022
Telephone: (212) 999-5800
Facsimile: (212) 999-5801
Email: bwillen@wsgr.com
bmargo@wsgr.com

Attorneys for Defendants
GOOGLE LLC and YOUTUBE, LLC

*Additional counsel listed on signature page*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

SARAH and REGINA ALONSO,

Plaintiffs,

v.

Google LLC, YouTube LLC, James JACKSON, also known online as "ONISION," and LUCAS JACKSON, formerly known online as "LAINEYBOT," "LAINEY" and "KAI,"

Defendants.

CASE NO: 3:23-CV-05523-VC

**GOOGLE LLC AND YOUTUBE, LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

Before: Hon. Vince Chhabria
Place: Courtroom 4, 17th Fl.
Date: September 26, 2024
Time: 10:00 a.m.

# TABLE OF CONTENTS

**Page**

I. PLAINTIFFS CANNOT EVADE SECTION 230. .......... 1

A. As This Court Has Already Found, Plaintiffs' Section 2255 and 1595 Claims Treat YouTube As A Publisher of Third-Party Content.......... 1

B. Plaintiffs' Agency and Partnership Theories Fail. .......... 5

C. Plaintiffs' § 1595 Claims Fail to Get Through the FOSTA Gateway.......... 6

II. PLAINTIFFS' 2255 AND 1595 CLAIMS FAIL EVEN WITHOUT SECTION 230.......... 7

III. PLAINTIFFS' NEW NEGLIGENCE *PER SE* CLAIM FAILS.......... 8

CONCLUSION.......... 9

Plaintiffs' Opposition confirms this Court's "skeptic[ism] that any amendment to the complaint would alter the applicability of Section 230 to the plaintiffs' claims." Order, Dkt. 118 ("MTD Order") at 3. Plaintiffs have now made clear they have no fresh allegations or arguments that would allow them to sidestep Section 230 or otherwise state a viable claim that YouTube participated in a sex-trafficking venture or otherwise violated federal criminal law. Indeed, Plaintiffs barely mention the arguments made in YouTube's Motion to Dismiss—much less this Court's order dismissing their claims. They instead largely repeat arguments that have already been resolved. Plaintiffs say that they do not seek to hold YouTube liable as a publisher; that YouTube and Onision had an agency or partnership relationship; and that this case is like *G.G. v. Salesforce*, 76 F.4th 544 (7th Cir. 2023). But this Court has rejected each of those arguments, and there is nothing new in the Second Amended Complaint ("SAC") or Opposition that could warrant a different result now. Finally, as to their new negligence *per se* claim, Plaintiffs offer no meaningful response to YouTube's arguments: Plaintiffs have not plausibly alleged that YouTube was required to report Onision to the National Center for Missing & Exploited Children ("NCMEC") in the first place, much less that YouTube's supposed failure to do so was done with sufficient scienter to overcome the statutory safe harbor (18 U.S.C. § 2258B(a)), or was the proximate cause of Plaintiffs' alleged injuries at the Jacksons' hands. Plaintiffs' claims should all be dismissed, this time with prejudice.

## I. PLAINTIFFS CANNOT EVADE SECTION 230.

### A. As This Court Has Already Found, Plaintiffs' Section 2255 and 1595 Claims Treat YouTube As A Publisher of Third-Party Content.

As explained in YouTube's Motion to Dismiss (at 6), Plaintiffs' SAC did nothing to meaningfully respond to this Court's ruling dismissing the prior complaint. The theory of liability underlying Plaintiffs' renewed claims under 18 U.S.C. § 2255 and § 1595 remains the same: that "YouTube is liable because it provided a platform for Onision to reach young girls and because it shared advertising revenue with him." MTD Order at 1. As this Court found, those claims "seek

to treat YouTube as the publisher or speaker of third-party content" and are thus barred by Section 230. *Id.*

In Opposition, Plaintiffs spend several pages repeating the pleading standard under Fed. R. Civ. P. 12(b)(6)—incorrectly invoking the outdated standard of *Conley v. Gibson*, 355 U.S. 41 (1957)—and discussing the basic structure of Section 230. Opp. at 3-6. Tellingly, Plaintiffs do not argue that they have any new theories or factual allegations that this Court did not previously consider or that would change the result the Court reached. They offer no response to YouTube's discussion of why the few new facts alleged in the SAC only reinforce that Plaintiffs' claims fall within Section 230. Mot. to Dismiss ("MTD"), Dkt. 127 at 6-9. Instead, Plaintiffs suggest that this Court somehow "fail[ed] to conduct the full analysis" to apply Section 230 to their claims. Opp. at 6. This disguised request for reconsideration of the Court's prior order is baseless.

Plaintiffs seem to believe that all they need to do to avoid Section 230 is to characterize their claims as involving a "duty" different from that of a publisher—a duty "not to profit from the grooming of children for sexual purposes." Opp. at 6-7. *Id.* As an initial matter, Plaintiffs' formulation only underscores why their claims fail as a matter of law. YouTube has already explained that none of Plaintiffs' allegations point to any instance in which YouTube earned money from content that involved the "grooming" of children, and certainly not the Jacksons' alleged exploitation of Plaintiffs, which supposedly took place on other platforms or at the Jacksons' home. MTD at 3-4. Plaintiffs do not argue otherwise. But the fact that the content Onision allegedly posted on YouTube was not unlawful—and that Onision's alleged sex-trafficking efforts all took place away from YouTube's platform—is further reason why Plaintiffs have no viable claim against YouTube, even apart from Section 230.

Even more fundamentally, however, Plaintiffs' argument misunderstands Section 230. As this Court recognized, the question is not what Plaintiffs *name* the duty, but rather "what the 'the duty at issue [actually] requires.'" Opp. at 4 (quoting *Homeaway.com v. City of Santa Monica*, 918 F.3d 676, 682 (9th Cir. 2019)). Thus, "any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230." *Fair*

*Hous. Council v. Roommates.com*, 521 F.3d 1157, 1170-71 (9th Cir. 2008); *accord Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1102 (9th Cir. 2009) ("publication involves reviewing, editing and deciding whether to publish or to withdraw from publication third-party content"). And Plaintiffs cannot circumvent "section 230 through the creative pleading of barred claims … to accomplish indirectly what Congress has clearly forbidden them to achieve directly." *Murphy v. Twitter, Inc.*, 60 Cal. App. 5th 12, 26-27 (2021) (cleaned up).

That is why courts have repeatedly applied Section 230 to bar beneficiary-liability claims under Section 1595, which, as here, are premised on third-party content that allegedly facilitated a purported sex trafficking enterprise—including in a case decided after YouTube's motion was filed that expressly involved allegations of revenue sharing from exploitative user-created videos. *See Doe v. WebGroup Czech Republic, A.S.*, 2024 U.S. Dist. LEXIS 131697, at *10-29 (C.D. Cal. July 24, 2024) ("*WGCZ*") (dismissing Section 1595 claim against pornography websites that allegedly earned ad revenue from third-party videos depicting minor plaintiff engaged in sex acts); *accord Does v. Reddit, Inc.*, 51 F.4th 1137, 1146 (9th Cir. 2022); *Doe K.B. v. Backpage.Com, LLC*, 2024 U.S. Dist. LEXIS 101530, at *2 (N.D. Cal. Mar. 20, 2024); *M.H. v. Omegle.com, LLC*, 2022 U.S. Dist. LEXIS 4543, at *12-14 (M.D. Fla. Jan. 10, 2022); *Doe v. Kik Interactive, Inc.*, 482 F. Supp. 3d 1242, 1249 (S.D. Fla. 2020); *Doe v. Backpage.com, LLC*, 817 F.3d 12, 24 (1st Cir. 2016).

This case is no different. Plaintiffs say their claims focus on YouTube's "business decisions" rather than its "editorial decisions" (Opp. at 7), but that is a distinction without a difference here. A purported duty not to earn revenue from allegedly objectionable or harmful third-party videos is a duty to *monitor* those videos, determine which ones are sufficiently problematic, and block or remove third-party ads from appearing adjacent to them. That is precisely the kind of publication duty that Section 230 precludes. *See Calise v. Meta Platforms, Inc.*, 103 F.4th 732, 742 (9th Cir. 2024) (if the duty "obliges the defendant to 'monitor third-party content'—or else face liability—then that too is barred by § 230(c)(1)"); *accord WGCZ*, 2024 U.S. Dist. LEXIS 131697, at *22 ("if a website simply provides neutral tools specifically designed to accomplish a benign objective—e.g., posting videos and allowing for monetization based on

views—the website cannot be said to be a co-developer of illicit content”). That is especially so in this case, as the entire premise of Plaintiffs’ claims against YouTube—the only asserted link between YouTube’s alleged wrongdoing and Plaintiffs’ injuries—is the “platform” YouTube provided Onision to post content that helped him engage with young people, including Plaintiffs. SAC ¶¶ 13-17, 36-45. As this Court recognized, that theory seeks to hold YouTube liable as a publisher of Onision’s speech, as it faults YouTube for allowing Onision’s channel to exist, letting his videos be published, be paired with advertising, and reach an audience. MTD Order at 1.[1]

The cases Plaintiffs cite only confirm that result. *Doe v. Internet Brands, Inc.*, 824 F.3d 846, 851 (9th Cir. 2016), involved a claim that a website failed to warn its users (models) about criminals who stalked and sexually assaulted the models offline. *Id.* at 848. This case does not involve a failure to warn claim, but more importantly, in *Internet Brands* the *wrongdoers had not posted any content on the defendants’ website*. *Id.* The plaintiffs thus did not “claim to have been lured by any posting that Internet Brands failed to remove”—and so the warnings at issue would not have required the website “to remove any user content or otherwise affect how it publishes or monitors such content.” *Id.* at 851. Here, in contrast, Plaintiffs’ claims arise directly from the third-party content posted on YouTube, and Plaintiffs expressly demand that “YouTube should have suspended or demonetized Onision so as to not benefit from his venture.” Opp. at 7. That theory has everything to do with YouTube’s “efforts, or lack thereof, to edit, monitor, or remove user generated content.” *Internet Brands*, 824 F.3d at 852.

Plaintiffs also assert that in *Calise v. Meta,* the Ninth Circuit allowed claims that “Meta knowingly and actively solicited, encouraged, and assisted scammers that were defrauding Meta users because it produced profit.” Opp. at 6 (citing 103 F.4th 732). That is incorrect. *Calise* applied Section 230 to *bar* claims for negligence, unjust enrichment, and unfair competition based on allegations that Meta made money by soliciting and assisting fraudulent third-party advertisers. In

---

[1] Plaintiffs do not even try to argue that their claims arise from anything other than third-party content or that YouTube was the creator or developer of the Jacksons’ content—offering no response to YouTube’s arguments on this point. *See* MTD at 8-9.

particular, the Ninth Circuit held that claims seeking to compel Meta to return profits "obtained through an alleged scheme of knowingly permitting third parties to advertise on their website" would require Meta "to actively vet and evaluate third party ads"—exactly what Section 230 forecloses. *Calise*, 103 F.4th at 743-44 (further explaining that "if Plaintiffs are correct that they can recover for Meta's third-party advertising, then § 230(c)(1) is a dead letter"). The court went on to hold that Meta's alleged "'solicitation' or 'assistance' for advertisers—a fundamental part of Meta's business model and that of countless other internet companies—does not undo §230(c)(1)'s protections just because it could be misused by third parties." *Id.* at 745. *Calise* thus confirms this Court's holding that Plaintiffs' effort to hold YouTube liable for allegedly assisting and benefitting from Onision's alleged sex trafficking activities is barred by Section 230.[2]

**B. Plaintiffs' Agency and Partnership Theories Fail.**

Next, Plaintiffs reassert their argument that because Onision was YouTube's agent or partner, Section 230 does not bar their claims. This of course runs straight into this Court's prior holding. MTD Order at 1-2. YouTube's opening brief explained that the SAC offers no new facts that could change the Court's conclusion rejecting Plaintiffs' agency and partnership theories. MTD at 9-10. Plaintiffs offer essentially no response. They neither engage with YouTube's arguments nor identify any facts alleged in the SAC that support vicarious liability here.

Instead, Plaintiffs simply assert that they have done enough to allege a plausible agency relationship or partnership agreement, effectively relying merely on the fact that Onision for a time participated in YouTube's advertising revenue-sharing program for content creators. *Compare* Opp. at 8-11 *with* MTD Order at 1-2. But this Court has already found that "the YouTube Partnership Program does not create an agency or partnership relationship between YouTube and Onision." MTD Order at 1. That conclusion was correct: nothing in California law made Onision

[2] The only claims that *Calise* allowed were for breach of contract, relying on *Barnes'* prior holding that contract-based claims are outside Section 230(c)(1) because the duty arises from a promise affirmatively made by the website—not from the website's status as a publisher. *Id.* at 743 (applying *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096 (9th Cir. 2009)). That does not help Plaintiffs here, who assert no contract-based claims.

into YouTube's all-purpose agent or a co-owner of its business merely because he—like countless other creators—accepted a standard-form agreement allowing him to monetize some of the videos he uploaded to YouTube. *Cf. Toretto v. Donnelley Fin. Sols., Inc.*, 583 F. Supp. 3d 570, 587 (S.D.N.Y. 2022) ("[C]alling an organization a partnership does not make it one.").

Plaintiffs also ignore that their claims would fail even if there was an agency or partnership relationship. MTD at 10-11. Plaintiffs do not even try to explain how Onision was supposedly acting within the scope of any such relationship when he allegedly trafficked Plaintiffs—nor could they. *See, e.g.*, *Daza v Los Angeles Cmty. Coll. Dist.*, 247 Cal. App. 4th 260, 268 (2016) (collecting cases and explaining that California courts have repeatedly rejected claims that an *employee's* "sexual assault or sexual harassment of a third party falls within the scope of employment"); *Bartenwerfer v. Buckley*, 598 U.S. 69, 82 (2023) ("[I]f one partner takes a wrongful act without authority or outside the ordinary course of business, then the partnership—and by extension, the innocent partners—are generally not on the hook.").

Moreover, the law is clear that Section 2255 does not provide for vicarious liability, and none of the cases Plaintiffs cite suggests otherwise. As YouTube has explained, *see* Reply in Support of Mot. to Dismiss First Am. Compl. ("Reply ISO MTD FAC"), Dkt No. 116 at 7, those cases (at most) say that Section 2255 "does not require a defendant to be *criminally convicted* of the predicate offense." *In re Hotel TVPRA Litig.*, 2023 U.S. Dist. LEXIS 72454, at *28 (S.D. Ohio Apr. 25, 2023) (emphasis added). That is beside the point, and the requirement that § 2255 plaintiffs must "prove by a preponderance of the evidence that *the defendant* violated the enumerated statute," *id.* (emphasis added), is precisely what is missing here.

### C. Plaintiffs' § 1595 Claims Fail to Get Through the FOSTA Gateway.

Plaintiffs concede by their silence that their claims under Section 1595 cannot be saved by the narrow exception to Section 230 created by FOSTA—as this Court found in dismissing the prior complaint. MTD Order at 2 ("all the plaintiffs have alleged is YouTube's 'mere association with sex traffickers'") (quoting *Reddit*, 51 F.4th at 1145). YouTube's motion explained that the

SAC alleges nothing that could change that conclusion (MTD at 11-12), and Plaintiffs offer no response.

## II. PLAINTIFFS' 2255 AND 1595 CLAIMS FAIL EVEN WITHOUT SECTION 230.

YouTube's motion further explained that, while the Court need go no further, Plaintiffs' claims under Section 2255 and Section 1595 fail even without regard to Section 230. MTD at 12-13. Plaintiffs reincorporate their prior briefing on these points, as does YouTube. *See* MTD FAC, Dkt. 112 at 4-7; Reply ISO MTD FAC at 6-8. Plaintiffs principally rely on *Salesforce*, 76 F.4th at 548, to support their § 1595 claims, arguing that "both Salesforce and YouTube provided the necessary tool belt to enable their business partners … to conduct their trade." Opp. at 12. But the Seventh Circuit's decision does not suggest that merely providing tools allegedly misused by a trafficker gives rise to a viable claim under Section 1595. Instead, as this Court explained in distinguishing *Salesforce* from this case, "Salesforce was alleged to have sold 'software designed specifically for Backpage and provided affirmative, personalized support'"—allegations that have no analogue here. Order at 2 (quoting *Salesforce*, 76 F.4th at 549-50). Nothing in the SAC remotely suggests that YouTube provided "direct support" or "specific business advice" to Onision to enhance his ability to groom underage girls. *E.g.*, *Doe 1 v. Apple, Inc.*, 96 F.4th 403, 416 (D.C. Cir. 2024) (distinguishing *Salesforce* by explaining that plaintiffs "have not alleged a factual basis to infer a common purpose, shared profits and risk, or control … nor do they allege the Tech Companies and the cobalt suppliers had the type of direct and continuous relationship that existed between the parties in *Salesforce*"). Beyond that, Plaintiffs have no good response to the fact that the SAC does not plead core requirements of a Section 1595 claim: (1) YouTube did not participate in a "venture" engaged in sex trafficking simply by allowing Onision to post and monetize videos that were themselves not unlawful; and (2) YouTube did not have the requisite knowledge that the Jacksons were alleged in sex trafficking, and certainly not as to Plaintiffs themselves. *See, e.g.*, *Doe v. Red Roof Inns, Inc.*, 21 F.4th 714 (11th Cir. 2021).

### III. PLAINTIFFS' NEW NEGLIGENCE *PER SE* CLAIM FAILS.

Finally, Plaintiffs cannot save their new claim for negligence *per se,* which is based on an alleged violation of 18 U.S.C. § 2258A. Opp. at 13-14. While Plaintiffs do not explain why it would be proper to premise a state-law negligence *per se* claim on a federal criminal statute that is not privately enforceable, they (even more fundamentally) do nothing to establish that YouTube was obligated under Section 2258A to report Onision to NCMEC in the first place. Plaintiffs concede that a duty to report is only triggered by relevant "actual knowledge" of an "apparent" violation of federal sex-trafficking laws. Opp. at 13; 18 U.S.C. § 2258A(a)(1)(A)(i). YouTube explained that the facts alleged in the SAC do not establish such knowledge. MTD at 14-15. At most, the SAC suggests that YouTube was warned about Onision publishing offensive content—not material that was *unlawful*, much less that indicated he was engaged in a deliberate effort to entice a minor into a "commercial sex act" proscribed by 18 U.S.C. § 1591.

Plaintiffs only response is to say that they "plausibly" alleged that YouTube had "actual knowledge … on or before *January 21, 2021*." Opp. at 13 (emphasis added). This appears to be a reference to the January 2021 release of a documentary about Onision on Discovery Plus—years after Plaintiffs' alleged contact with the Jacksons ended. ¶¶ 372-73 & n.37. But beyond the independently fatal causation problem discussed below, it makes no sense to suggest that YouTube was required to report to NCMEC based on the *public airing* of a documentary film on an entirely separate platform. That movie does not create actual knowledge of an apparent violation of the sex trafficking laws—and certainly not one that took place on YouTube itself. YouTube had no more obligation to respond with a NCMEC report to such a documentary than did any other online service provider.

Nor can Plaintiffs' overcome Section 2258A's safe harbor, which provided a "grant of immunity" against civil claims arising from a provider's Section 2258A reporting responsibilities, *United States v. Stevenson*, 727 F.3d 826, 830 (8th Cir. 2013). 18 U.S.C. § 2258B(a). Plaintiffs do not dispute that a claim for negligence, including a claim that an internet provider negligently "failed to act" to make a report to NCMEC, would be barred. *See* 18 U.S.C. § 2258B(b)(2); *accord*

*Doe v. Twitter, Inc.*, 555 F. Supp. 3d 889, 926 (N.D. Cal. 2021), *rev'd on other grounds*, 2023 U.S. App. LEXIS 10808 (9th Cir. May 3, 2023). Instead, Plaintiffs argue that their negligence claim should survive because it is not really a *negligence* claim at all, but somehow based on "*reckless disregard* to a substantial risk of causing physical injury without legal justification." Opp. at 13 (emphasis added) (citing 18 U.S.C. § 2258B(b)(2)(B)). This conclusory assertion has no support in the SAC. Plaintiffs do not allege—much less identify any facts remotely indicating—that YouTube acted with a reckless disregard to any substantial risk of physical injury in purportedly failing to report Onision's behavior to NCMEC. Nor could they, as there is nothing in the SAC that gives rise to any supposed awareness by YouTube that Plaintiffs were in physical danger from Onision at the time they allegedly failed to report him to NCMEC.

Finally, Plaintiffs not only fail to respond to YouTube's showing that the SAC alleges no causal link between YouTube's supposed failure to report and Plaintiffs' alleged injuries (MTD at 15), the Opposition only undermines any such connection. As discussed above, Plaintiffs' theory seems to be that YouTube should have reported Onision in January 2021. Opp. at 13. But Plaintiffs allege that their contacts with the Jacksons lasted only from approximately 2012 through July of 2019. ¶¶ 154-356; *accord* ¶ 53 (alleging Sarah's last in-person contact with the Jacksons at their home occurred in July 2019); ¶¶ 49-50 (alleging Regina was prevented from visiting the Jacksons' home prior to the Jacksons victimizing Sarah). Thus, even on Plaintiffs' theory, YouTube failed to report Onision *a year and a half after* the alleged grooming efforts ended. This timing rules out any theory by which YouTube's purported failure to report could have caused Plaintiffs' injuries from the Jacksons' alleged sex-trafficking activity, which alone suffices to defeat any negligence *per se* claim on this basis.

## CONCLUSION

For these reasons, Plaintiffs claims against YouTube should be dismissed with prejudice.

Respectfully submitted,

Dated: August 15, 2024

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: *\/s\/ Brian M. Willen*
Brian M. Willen
bwillen@wsgr.com

BRIAN M. WILLEN (*Pro Hac Vice*)
BENJAMIN D. MARGO, SBN 348644
1301 Avenue of the Americas, 40th Floor
New York, NY 10019-6022
Telephone: (212) 999-5800
Facsimile: (866) 974-7329
Email: bwillen@wsgr.com
bmargo@wsgr.com

AMIT Q. GRESSEL, SBN 307663
One Market Plaza
Spear Tower, Suite 3300
San Francisco, CA 94105-1126
Telephone: (415) 947-2000
Facsimile: (866) 974-7329
Email: agressel @wsgr.com

Attorneys for Defendants
GOOGLE LLC and YOUTUBE, LLC