James Jackson & Lucas Jackson
8702 123rd St E, Puyallup, WA 98373
253-286-8311
complexnucleus@gmail.com
*Pro Se*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| UNKNOWN PARTY<br><br>Plaintiff,<br><br>vs.<br>Google LLC, YouTube LLC, JAMES JACKSON, also known online as "ONISION," and LUCAS JACKSON, formerly known online as "LAINEYBOT," "LAINEY" and "KAI,"<br><br>Defendants. | Case Number: 3:23-cv-05523-VC<br><br>**REPLY TO PLAINTIFFS' OPPOSITION/RESPONSE TO DEFENDANTS' MOTION FOR SANCTIONS AGAINST PLAINTIFF SARAH FOR MALICIOUS DIRECT CONTACT AND HARASSMENT**<br><br>Hon. Vince Chhabria |

**To the Honorable Court,**

This reply addresses Plaintiffs' opposition to our motion for sanctions against Sarah, stemming from her malicious and harassing conduct that clearly demonstrates **bad faith**. Instead of confronting these serious allegations, Plaintiffs' counsel, Lisa Haba, has relied on procedural distractions, such as critiques of font sizes, and misinterpretations of legal principles to shift focus from Sarah's unethical and criminal actions. This reply will provide compelling arguments and legal citations, proving that the Jacksons' motion for sanctions is fully justified, while exposing

the Plaintiffs' persistent abuse of the legal process.[1]

**1. Defamation Allegations: Sarah's Lies and the Jacksons' Constitutional Right to Defend Themselves**

The Plaintiffs' claim that Sarah's August 7 phone call was merely to tell James Jackson to "leave her alone" is a gross distortion of the facts. James Jackson never contacted Sarah online or by phone or otherwise during this case; rather, Sarah stalked Jackson's efforts online to defend himself against years of harassment and defamation. Sarah's accusations of defamation are an attempt to obscure her own original campaign of slander against James and Lucas Jackson. Sarah appeared on international television, allegedly accepting payment to spread false and damaging lies, which devastated the Jacksons' lives. She even initially boasted to James that her smear campaign earned her enough for a down payment on a house, proving her true motive was financial gain, not correcting any record.

The Jacksons originally cut ties with Sarah after she confessed to illegal drug use, dealing illegally, assaulting Lucas, and sexually extorting both James and Lucas. Her subsequent lies and exploitation clearly show her intent to destroy their reputations out of spite (EXHIBIT 1).

Sarah's disregard for accountability extends beyond mocking serious crimes (EXHIBIT 2). Her bitterness over being rejected by the Jacksons, even well after turning 18, highlights her blatant misrepresentation of the Jacksons'. EXHIBIT 3 shows her admitting the Jacksons' refused to be with her further establishing their credibility and destroying hers.

[1] The filing of this reply is not intended to and does not constitute a waiver of the Jackson Defendants' right to contest the Court's jurisdiction. This submission is made solely to address the urgent need for sanctions and protective orders. All rights to challenge jurisdiction remain fully reserved.



U ni te

At one point in the middle of yet another documented lie, Sarah says, “burn in hell,” demonstrating her bad faith and wish for the worst kind of harm against the innocent Jacksons in regard to an issue she herself already debunked. This follows her earlier rants about being rejected, further revealing her inability to keep her story straight. (EXHIBIT 4).

Sarah’s disregard for the truth and her inconsistent narratives are glaring. She manipulates her story to suit her needs, offering one version of events when it benefits her, only to contradict herself later when it becomes advantageous. This shifting narrative mirrors cases like Anderson v. Bessemer City, 470 U.S. 564 (1985), where the Court emphasized the importance of credibility and consistency in testimony. In the previously submitted police reports, Sarah repeatedly vindicated the Jacksons when she thought no one was paying attention, only to tell a different story when seeking money &/or public attention.

This further validates the 6am phone call where Sarah wished cancer on James Jackson after confessing to sexually extorting him—events she tries to dismiss as "jokes" or "sarcasm," following her typical pattern. Her attempts to label this criminal behavior as a "joke" are clearly false, as debunked by her own public recorded Tweets (EXHIBIT 5).

Sarah’s public lies devastated the Jacksons' employment—both James and Lucas lost their jobs, threatening their family’s livelihood. Lucas was diagnosed with PTSD from the trauma from Sarah raping him and destroying Lucas’s life as Sarah promised she would if he didn’t give her what she wanted. The Jacksons had every right to defend themselves once Sarah followed through on her threats, and their public statements were a legitimate exercise of their First Amendment rights to protect their reputations from Sarah’s abhorrently false claims.

Far from defamation, the Jacksons’ responses were necessary to counter Sarah’s false allegations. In New York Times Co. v. Sullivan, 376 U.S. 254 (1964), the Court held that speech

defending one's reputation is highly protected. Lisa Haba's claim that the Jacksons should remain silent contradicts their right to self-defense and disrespects the first amendment. Conversely, Sarah's 6am threat wishing James' cancer to return constitutes harassment, not protected speech, and violates criminal law. Haba is abusing the legal system by shielding self-evident wrongdoing.

Additionally, Sarah's admission of threatening to destroy the Jacksons' lives, and her apology, shows her malicious motives. Her illegal phone call and ongoing disrespect for the law reflect a dangerous pattern of abuse. (EXHIBIT 6). This admission further underscores the Jacksons' need to defend themselves, both legally and publicly, against the destruction Sarah fraudulently caused.

**2. Misapplication of the Safe Harbor Rule: Lisa Haba's Baseless Argument**

Plaintiffs' counsel, Lisa Haba, incorrectly asserts that the Jackson Defendants failed to provide the mandatory safe harbor notice under Rule 11(c)(2). Haba either misunderstands or misinterprets the rule, which applies to improper legal filings, not to harassment, threats, or personal attacks outside the formal legal process. The safe harbor provision is irrelevant when addressing conduct like Sarah's abusive phone call, where she wished for James Jackson's cancer to return—a personal attack that cannot be corrected through procedural means.

Haba's misrepresentation of the rule is an attempt to divert attention from Sarah's violent and hostile behavior. Suggesting that Sarah should have been given 21 days to "correct" her malicious threats is absurd, impossible and beyond the scope of safe harbor protections.

**3. Affidavits and Sworn Statements: Addressing Haba's Procedural Distraction**

U ni te

Haba’s focus on the absence of an affidavit is nothing more than a procedural distraction from the real issue: Sarah’s egregious misconduct. While Local Rule 7-2(d) requires factual contentions to be supported by affidavits, this is secondary to the broader principle that all motions are filed under penalty of perjury. By submitting the motion, the Jacksons have implicitly sworn to the truth of the facts, making an additional affidavit unnecessary. Ironically, the very document Haba challenges does in fact conclude with a sworn statement, further affirming the truthfulness of its contents and the meaningless nature of Haba’s argument (EXHIBIT 12).

This further underscores Lisa Haba’s disregard for reality as she falsely implies that the Jacksons did not swear to their statements under penalty of perjury, despite the fact that they explicitly did. To completely discredit Haba’s position, an affidavit will be submitted covering both this and the previous filing, rendering a significant portion of her argument moot.

The Jacksons' account of events—supported by a recorded phone call where Sarah wishes for James' cancer to return—has been extensively backed by documentary evidence. Even more, Lisa Haba has, in various ways, confirmed that the call occurred, astonishingly attempting to defend the indefensible nature of this criminal-level conduct. Haba’s argument against the transcript, stating it included notes, is rendered moot by simply removing the notes: EXHIBIT 7.

Courts have consistently held that minor procedural defects do not invalidate motions, particularly when the gravity of the misconduct is as severe as it is here. In Foman v. Davis, 371 U.S. 178 (1962), the Supreme Court ruled that procedural missteps should not defeat substantial justice, especially where correcting the defect would not prejudice the opposing party. Similarly, in Harlan v. Lewis, 982 F.2d 1255 (8th Cir. 1993), the court noted that procedural gaps should not overshadow the need for substantive justice when addressing **bad faith conduct**.

If the Court declines to impose sanctions against Sarah, it will send the message that her behavior—including harassment, threats, the abusive call in April 29, 2023 at 9pm and the abusive phone call August 7, 2024 at 6am, wishing cancer upon James Jackson—has no consequences. Such an outcome would embolden Sarah and her associates to further abuse the Court, the Jacksons, and the legal system. Not punishing Sarah for directly abusing James by saying to him at 6am **"I hope that the skin cancer comes back and eats your dick off"** would remove the Jacksons' ability to have a just and fair court process as the unchecked psychological warfare committed by the other side would render the Jacksons' further afraid for their wellbeing and weaken their faith in the justice system to protect them, as it should anyone, from this vile kind of abuse. Justice requires that there be consequences for those who abuse the law and Court as reaffirmed in Chambers v. NASCO, Inc., 501 U.S. 32 (1991), where the Supreme Court upheld the imposition of sanctions to protect the integrity of the legal process. In a just society, there must be accountability for such egregious conduct regardless of color, age or gender.

**4. Protective Orders: Clearly Justified by Sarah's Malicious Conduct**

Plaintiffs claim the Jackson Defendants provided no basis for a protective order, which is blatantly false. The protective order was requested to prevent further harassment by Sarah, who has a clear pattern of malicious behavior. In April 29, 2023, her intoxicated friend called James late at night to harass him, and on August 7, 2024, Sarah wished for James' cancer to return, taunting and abusing him throughout the conversation. Haba's claim that there is no basis for a protective order is disingenuous. If roles were reversed, any court would grant such protection. The Jacksons are law-abiding, while Sarah is a self-admitted drug dealer, sexual extorter, and rapist, who has a long history of violence not just against the Jacksons' but others as well, to

include her a man who accused her of giving him an STD. The need for a protective order is clear. In a fair Court, all parties must be held to the same standard.

**5. Rule 11(b): Courts Can Sanction Misconduct Related to Litigation**

Plaintiffs claim Rule 11(b) does not apply to out-of-court conduct, but this is a misrepresentation of the rule's intent. While Rule 11 primarily addresses court filings, courts are empowered to sanction litigation-related misconduct, including behavior outside formal filings that impacts the fairness and integrity of the case. Courts have broad discretion to sanction conduct that undermines the judicial process, including harassment and threats.

Lisa Haba's claims that conduct outside litigation cannot be sanctioned, yet she previously attempted to sanction the Jacksons for posting a video where James Jackson exposed perjury committed by Haba, Sarah, and Regina in their fraudulent abuse of the Court. This contradiction highlights Haba's **bad faith** tactics. Haba herself failed to provide James Jackson with the 21-day period to respond, despite now arguing that such a period is required. This inconsistency further demonstrates that Haba only invokes the rules when it benefits her and will willfully ignore the rules when they aren't convenient (EXHIBIT 8).

Courts have held that such egregious behavior as wishing cancer on the opposing parties, even outside formal filings, is subject to Rule 11 sanctions. In Patriot Cinemas, Inc. v. General Cinema Corp., 834 F.2d 208 (1st Cir. 1987), the court sanctioned actions intended to harass during litigation, even outside the courtroom. Similarly, in Chambers v. NASCO, Inc., 501 U.S. 32 (1991), the Supreme Court upheld sanctions for **bad faith conduct beyond formal litigation**. Haba's argument is a deliberate misinterpretation of Rule 11, designed to protect reprehensible conduct that undermines the judicial process.

**6. Legality of the Recording Under Washington Law**

Lisa Haba’s claim that the recording of Sarah's call is illegal and inadmissible blatantly misrepresents Washington law, specifically RCW 9.73.030. While Washington typically requires two-party consent for recording conversations, RCW 9.73.030 provides exceptions when there is a reasonable belief that the conversation will capture evidence of a crime. Sarah’s call includes admissions of rape, despite her later attempts to dismiss them as “sarcastic,” while she actively completely reinvents the past series of events, along with her issuing threats of emotional and physical harm, such as wishing cancer upon James Jackson. This clearly constitutes criminal behavior, making the recording both legal and admissible.

The circumstances of the April 29, 2023 and August 7, 2024 calls further support the legality of the recording under RCW 9.73.030(2). Sarah initiated the August 2024 call at an inconvenient time—6:39 am, deliberately harassing James Jackson, while the April 29, 2023 call occurred at 9:36 pm, similarly disruptive. (EXHIBIT 9). Both calls meet the “inconvenient hour” exception under RCW 9.73.030. This law also allows recording when part of a pattern of harassment, as seen here with Sarah’s repeated, increasingly hostile contact between April 29, 2023 and August 9, 2024. The repeated harassment and threats fully justified James Jackson recording the August call.

**Haba’s attempt to suppress evidence** is baseless and ignores Washington law. RCW 9.73.030 permits recordings made in the presence of threats, crimes, or repeated harassing communications at inconvenient times—exactly the case here. The evidence is crucial in proving Sarah’s malicious intent, and the Court should reject Haba’s flawed arguments.

**7. The Absurdity of Procedural Nitpicking: Font Sizes and Page Limits**

It is astonishing that Lisa Haba argues that font size and page limits should undermine the Jacksons' motion for sanctions. Courts have held that substantial justice outweighs trivial procedural defects, as in Torres v. Oakland Scavenger Co., 487 U.S. 312 (1988), where the Court emphasized that technicalities should not impede justice.

**8. The Broader Pattern of Misconduct: A Serial Offender**

Sarah's conduct is part of a disturbing pattern of violent behavior, not an isolated incident. Her statement about wanting to be a "serial killer of men" reveals her mindset and intent, contextualizing her August 7th call, where she wished cancer upon James Jackson. Under Rule 404(b), prior bad acts can show intent and motive, and Sarah's repeated expressions of violent intent are crucial to understanding her threats. Far from being a victim, Sarah's behavior reveals her as a violent aggressor, as shown in her 2019 livestream, where she challenged James Jackson to a physical fight after he rejected her (EXHIBIT 10). Her intent to harm the Jacksons has been clear since she threatened to destroy their lives unless she got what she wanted (EXHIBIT 1).

The original motion provided extensive evidence of Sarah's violent history, yet Lisa Haba continues to defend her actions, raising serious ethical concerns. In Nix v. Whiteside, 475 U.S. 157 (1986), the Supreme Court emphasized that lawyers must not assist clients in presenting false evidence. Haba's defense ignores these critical facts, focusing on irrelevant procedural issues, exposing her lack of ethics. Sarah's statement to James—"Just wait until I get off work. You do NOT scare me, pussy"—(EXHIBIT 11) further proves she is not a victim but a relentless serial aggressor, extending her threats and harassment back to September 2019.

**Conclusion: The Need for Sanctions and Further Action**



U ni te

Sarah's conduct reflects a clear, ongoing pattern of malicious harassment and abuse, violating both ethical and legal standards. The Jacksons' motion for sanctions is backed by overwhelming evidence of Sarah's misconduct. Her actions are not isolated but part of a broader pattern of harassment, manipulation, and exploitation. The Court must impose sanctions and consider further penalties for the Plaintiffs' **bad faith** litigation tactics, which have abused the legal system and caused serious harm to the Jacksons.

Decisive action is necessary to protect the Jacksons and uphold the integrity of the judicial process. This kind of abuse must not be tolerated, or it will continue at the hands of Sarah and people like her. Appropriate consequences must be enforced to ensure justice, respect for the Court and the emotional/physical safety of all parties.

**I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.**

Respectfully submitted,

*/s/ Lucas Jackson*
Lucas Jackson (Pro se)
8702 123rd St E
Puyallup, WA 98373
Telephone: (253) 286-8311
Email: complexnucleus@gmail.com
Date: 10/12/24

*/s/ James Jackson*
James Jackson (Pro se)
8702 123rd St E
Puyallup, WA 98373
Telephone: (253) 286-8311
Email: complexnucleus@gmail.com
Date: 10/12/24