James Jackson & Lucas Jackson
8702 123rd St E, Puyallup, WA 98373
253-286-8311
complexnucleus@gmail.com
*Pro Se*

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| Sarah and Regina Alonso<br>Plaintiff,<br>vs.<br>Google LLC, YouTube LLC, JAMES JACKSON, also known online as “ONISION,” and LUCAS JACKSON, formerly known online as “LAINEYBOT,” “LAINEY” and “KAI,”<br>Defendants. | Case Number: 3:23-cv-05523-JD<br><br>**MOTION TO DISMISS PURSUANT TO RULE 12(b)(2) AND RULE 12(b)(6) FOR LACK OF PERSONAL JURISDICTION AND FAILURE TO STATE A CLAIM**<br><br>Hon. James Donato |

James and Lucas Jackson seek dismissal under Rule 12(b)(2) and (6), asserting no personal jurisdiction or viable claim. The Due Process Clause demands forum contacts (Int’l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)), absent here—all acts transpired in Washington, not California (Walden v. Fiore, 571 U.S. 277 (2014); Bristol-Myers Squibb Co. v. Superior Ct., 137 S. Ct. 1773 (2017)). General jurisdiction fits only where defendants are “at home” (Daimler AG v. Bauman, 571 U.S. 117 (2014)), not California. Dismissal is imperative.

**INTRODUCTION**

Sarah and Regina Alonso have improperly dragged Google, YouTube, and Washington residents James and Lucas Jackson into this Northern District of California action, despite

alleging events that occurred exclusively in Washington. The Jacksons move to dismiss, as this Court lacks personal jurisdiction, failing the fundamental requirements set forth in International Shoe Co. v. Washington, 326 U.S. 310 (1945), and Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985). No conduct was directed at California, and jurisdiction here is wholly unsupported.

Alternatively, the Jacksons demand severance from Google's claims or dismissal for improper venue, as this Court lacks any lawful basis under 28 U.S.C. § 1391(b) to adjudicate claims against them.

## SUMMARY OF ARGUMENT

**Regina Alonso's Allegations:** Regina Alonso, a stranger to James Jackson ("Onision"), credits his anti-suicide videos with saving her life, yet sues the man who is a stranger to her, James Jackson, and his spouse, Lucas Jackson. Regina contacted Lucas online but never met either, admitting "little to no contact" with James and no evidence of communication. She concedes Lucas, 20 to her 17, refused travel when she was a homeless minor, negating her trafficking claims (Exhibit 1). Her allegations' implausibility suggests fraud. Regina claims Lucas ("Lainey") had online talks, not James, and with no travel or meeting for either, Washington is the sole venue (Exhibit 2). In 2019, Regina lauded Lucas (Exhibits 3, 4, 9), fully contradicting her present position of being a victim seeking financial gain. Regina's past is marked by unfounded allegations and her own admission of distributing explicit content on a large scale (Exhibit 5)—effectively a self-confessed criminal act. Both Sarah and Regina are self-admitted criminals.

Evidence shows her and Sarah chasing fame and profit via a smear campaign (Exhibits 6, 7), with Regina defending Lucas (Exhibits 8, 9) and telling police no crimes occurred (Exhibit 10). These contradictions and lack of proof doom their claims. Plaintiffs allege illegal acts but

falter without evidence, while the Jacksons offer robust proof (Exhibits 1-36). Their inconsistencies, against the Jacksons' consistency, fail Ashcroft v. Iqbal

**Sarah's Allegations:** Sarah's complaint lacks facts linking the Jacksons to California jurisdiction or their alleged conduct to the Northern District of California, and it fails to state a claim. She confessed to sexually extorting the Jacksons, admitting on social media and in a Washington State police report to "blackmail" that led to her rejection by the Jacksons (Exhibit 11). To clarify, Lucas Jackson explicitly rejected Regina for multiple reasons, including her self-admitted illegal drug use (Exhibit 5), while both Lucas and James rejected Sarah due to her acknowledged criminal conduct, including acts against the Jacksons. In a July 19, 2019, conversation with Lucas, Sarah apologized twice to James for "raping you guys" after he rejected her, Sarah then left with her suitcase, only to return shortly after, where James continued to refuse to be with her, and eventually dropped her off at the airport where she continued to show remorse for her criminal acts against the Jacksons—all events in Washington (Exhibits 12, 13). Her lawyer's admission of Sarah's apology for raping James and Lucas Jackson, only to claim it was "sarcasm" lacks context or logic.

Sarah now claims victimhood in Washington but told an interviewer she was not a victim, aligning with repeated vindications of the Jacksons (Exhibit 15). She signed an NDA/Anti-Defamation contract in Washington, admitting she demanded sex from the Jacksons in exchange for signing, later bragging about consensual encounters after blackmailing them as an adult (Exhibits 15, 16, 19, 21, 22). Sarah's adult acts (Exhibits 18, 20) negate Cal. Pen. Code § 243.4 claims, as no minor contact occurred, and California law doesn't apply extraterritorially here. Her stay with the Jacksons was to escape Michigan domestic violence as the Jacksons felt sympathy for her claims against her own household, not for illicit purposes (Exhibit 17). Washington police

found no crime based on her statements (Exhibit 25). Her friend Lane and a timeline corroborate consensual acts and James's eventual rejection of her blackmail (Exhibits 23, 24). Per Ashcroft v. Iqbal (556 U.S. 662), her contradictory, unsupported claims warrant dismissal under Rule 12(b)(6).

**Combined Context for Jurisdiction Argument:** Plaintiffs' YouTube terms tie Google to California, but the Jacksons face no negligence per se duty under § 2258A. Their allegations involve Washington State events, distinct from claims against Google, and shouldn't be tried together. The Jacksons have no relevant California ties, making trial there improper.

**Extreme Hardship Context:** Plaintiffs' suit imposes severe burdens on James and Lucas Jackson, recently emerged from Chapter 13 bankruptcy, with no resources for California litigation—travel costs (~$1,000/trip), lost work, and childcare strain them unduly. All events occurred in Washington, where they reside and evidence lies, distinct from Google's role. Forcing trial in California inflicts extreme hardship, violating fairness principles (Asahi Metal Indus. Co., 480 U.S. 102 (1987)).

**Lack of Personal Jurisdiction:** Under Rule 12(b)(2), a court may dismiss for lack of personal jurisdiction. California jurisdiction violates due process; all events occurred in Washington, where the Jacksons reside, with no California contacts. Per Daimler AG v. Bauman (571 U.S. 117, 2014), general jurisdiction applies only where defendants are 'at home'—here, Washington.

**No Binding Agreement:** The Plaintiffs lack a contract subjecting the Jacksons to California jurisdiction. Per Burger King Corp. v. Rudzewicz (471 U.S. 462, 1985), contracts require minimum forum contacts, which the Jacksons lack. Their NDA/Anti-Defamation contract

with Sarah, signed in Washington, prohibits lying—violated by her false claims—and ties disputes to Washington jurisdiction.

**Appropriate Venue:** Under 28 U.S.C. § 1391(b), venue is proper where defendants live or events occurred—here, Washington, where the Jacksons reside, and is the location of all the falsely alleged events. Leroy v. Great Western United Corp. (443 U.S. 173, 1979) confirms this, making California venue unjust.

**Legal Ethics:** Defendants should face trial where they have strong ties; forcing them to defend in a minimally connected jurisdiction violates due process. World-Wide Volkswagen Corp. v. Woodson (444 U.S. 286, 291, 1980) ties foreseeability to a defendant's state connections. Under Rule 12(b)(2), dismissal is allowed for lack of jurisdiction, guided by state law (Daimler AG v. Bauman, 571 U.S. 117, 125, 2014) and California's long-arm statute (Posner v. Essex Ins. Co., 178 F.3d 1209, 1214, 11th Cir. 1999)). Ford Motor Co. v. Mont. Eighth Judicial Dist. Ct. (141 S.Ct. 1017, 2021) requires purposeful availment and claims linked to forum contacts, unmet here.

**Intent to File Counterclaims in Washington:** James and Lucas Jackson intend to countersue Regina Alonso and Sarah in Washington for emotional and financial harm from their fraud, backed by evidence and Sarah's NDA breach barring lies. Washington provides jurisdiction, local counsel, and avoids Google trial bias. Under 28 U.S.C. § 1391(b), venue suits their residence and event location. M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1 (1972), enforces the NDA's forum clause, while Asahi Metal Indus. Co. v. Superior Ct., 480 U.S. 102 (1987), finds California unreasonable due to scant contacts, favoring Washington.

**The Washington State NDA/Anti-Defamation Contract:** The NDA (Exhibit 27), signed by Lucas and Sarah, names 'Gregory' (James Jackson). Its anti-lying clause (Point #8) addressed

Sarah's history of false claims and threats to ruin the Jacksons, aiming to prevent such harm. The NDA doesn't shield lawbreakers, allowing crime reports, showing the Jacksons' lawful intent (Exhibit 26).

**The Washington State Police Reports:** Sarah and Regina fall under Washington jurisdiction, having told police there that the Jacksons committed no crimes, as supported by McGee v. Int'l Life Ins. Co. (355 U.S. 220, 1957) and Hanson v. Denckla (357 U.S. 235, 1958), tying jurisdiction to substantial state activity. Police reports (Exhibits 28, 29) confirm no crime, contradicting their current claims. Under 28 U.S.C. § 1391(b) and Shaffer v. Heitner (433 U.S. 186, 1977), Washington is the proper venue for their fraudulent allegations, bolstered by Sarah's police interactions and the need to countersue her there for defamation.

**Legal Standards for Due Process in California:** Under 28 U.S.C. § 1391(b), venue belongs where the Jacksons reside and events unfolded—Washington, not California. California's long-arm statute, Cal. Code Civ. Proc. § 410.10, demands constitutional jurisdiction, but due process forbids stretching it to ensnare these Washington defendants absent any California nexus.

**THREE-PART TEST FOR SPECIFIC JURISDICTION**

The Ninth Circuit's three-part test for specific jurisdiction under due process requires: (1) the defendant purposefully directs activities at, or avails themselves of, the forum; (2) the claim arises from or relates to those forum activities; and (3) exercising jurisdiction is reasonable, aligning with fair play and substantial justice (Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004)).

**I. Purposeful Availment:** Lucas and James Jackson, Washington residents with scant California

U ni te

ties, never targeted this forum. Their actions transpired exclusively in Washington, not California. The Supreme Court demands "minimum contacts" for jurisdiction (Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)), unmet here—YouTube Partner Program ties fall short (Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985)). The Ninth Circuit's "effects test" requires intentional acts aimed at California, causing harm there (Calder v. Jones, 465 U.S. 783 (1984)), yet no such conduct occurred. Walden v. Fiore, 571 U.S. 277 (2014), rejects jurisdiction via plaintiffs' links alone; the Jacksons' lack of substantial California connection—where no party resides—demands dismissal.

**II. Claims Arising from Forum Activities:** The claims against the Jacksons arise solely from Washington, not California, providing no jurisdictional foothold. Litigating in California unduly burdens the Jacksons, recently bankrupt and resource-strapped—a critical reasonableness factor (Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797 (9th Cir. 2004); World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286 (1980)). Bristol-Myers Squibb Co. v. Superior Court, 137 S. Ct. 1773 (2017), requires a direct forum-claim nexus, absent here. Plaintiffs rely on alleged Twitter, iMessage, and other non-YouTube screenshots, none tied to YouTube communication. Dragging YouTube into this California suit—despite no party's relevance or YouTube-based acts—suggests a bad-faith attempt to exploit an improper forum.

**III. Reasonableness and Fair Play:** Even if contacts existed, jurisdiction must be reasonable (Asahi Metal Indus. Co. v. Superior Ct., 480 U.S. 102 (1987)). Five factors compel rejection: (1) crushing burden on the bankrupt Jacksons (Exhibit 33); (2) California's minor interest in YouTube yields to Washington's stake in its residents' dispute; (3) plaintiffs' preference, eclipsed

by due process; (4) efficiency demands Washington, where all acts allegedly occurred; and (5) Washington's paramount authority over its laws and events.

**Application to the Northern District of California**

In the Northern District of California, the Due Process Clause mandates that plaintiffs plead a federal claim with a clear forum nexus. Here, the plaintiffs assert the Trafficking Victims Protection Reauthorization Act (TVPRA), 18 U.S.C. § 1595, requiring specific allegations of a trafficking venture linked to interstate commerce or substantial California ties. The complaint against James and Lucas Jackson fails this standard abysmally. It offers no credible, evidenced claims—relying on debunked memes from the era, publicly dismissed as jest by Regina and Sarah (Exhibits 9, 30), yet now fraudulently proffered as serious, per Doe v. Red Roof Inns, Inc., 21 F.4th 714, 724 (11th Cir. 2021). Nor does it show any California nexus like commercial acts or purposeful contact. Instead, all events occurred in Washington, as the Jacksons' filings and plaintiffs' prior statements to police affirm (Exhibits 28, 29). This void of California linkage and factual basis demands dismissal under Rule 12(b)(6) for failing to state a plausible claim (Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

Further, exercising jurisdiction here would defy the Fourteenth Amendment's fair play and substantial justice principles, per Asahi Metal Industry Co. v. Superior Court of California, 480 U.S. 102, 113 (1987). That precedent insists on weighing defendants' burden against forum interest test tipping sharply toward dismissal, given the Jacksons' nil California ties and the severe hardship of defending afar from Washington, where all evidence and witnesses lie.

**"Arises Out Of or Relates To":** Specific jurisdiction requires claims to "arise out of or relate to" a defendant's forum contacts, a "but-for" link per Ford Motor Co. v. Montana Eighth

Judicial District Court, 141 S. Ct. 1017, 1026 (2021). The Ninth Circuit agrees, tying claims to forum conduct (Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004)). No such tie exists here. The plaintiffs' claims against Lucas and James Jackson—rooted in Washington interactions—lack any California connection. This fatal flaw is cemented by Regina and Sarah's own statements to police and public (Exhibits 9, 15, 20, 30), affirming no trafficking or misconduct, gutting the complaint's credibility and jurisdictional ground. Fairness bars liability for acts plaintiffs disavowed under oath. Walden v. Fiore

**FAILURE TO STATE A CLAIM**

The Plaintiffs' claims under the Trafficking Victims Protection Reauthorization Act (TVPRA), 18 U.S.C. § 1595, fail under Federal Rule of Civil Procedure 12(b)(6) for lack of a plausible cause of action. Under Doe v. Red Roof Inns, Inc., 21 F.4th 714, 724 (11th Cir. 2021), a valid TVPRA civil claim must plausibly allege that (1) the defendant knowingly benefited, financially or otherwise, from a trafficking venture, and (2) the defendant had actual or constructive knowledge of the trafficking violation. Plaintiffs fail to meet either requirement, as there is no evidence that the Jacksons knowingly benefited—financially or otherwise—from any alleged trafficking, nor do they provide any facts suggesting that the Jacksons had actual or constructive knowledge of trafficking activity. Furthermore, the claim lacks any connection to California, further invalidating jurisdiction and venue. Because there is no factual basis supporting a claim under the TVPRA, it is legally insufficient.

No evidence links the Jacksons to trafficking. Plaintiffs provide no factual basis connecting them to any trafficking venture, and there are no allegations supporting a California-

based trafficking scheme, further demonstrating the legal insufficiency of the claim. Because these defects are fundamental, the claim cannot be sustained in any jurisdiction.

Additionally, the defamation claims against James Jackson fail as well. Sarah's own admissions contradict her allegations, including her blackmail attempt, police reports confirming the Jacksons' innocence, and multiple public statements aligning with the Jacksons' version of events. Under California Civil Code § 46, a statement is not actionable as defamation if it is true or an opinion, and James Jackson's statements fall within these protections. Furthermore, Sarah's contradictory sworn statements establish perjury and fraud rather than a valid defamation claim (Exhibits 28, 29, 30).

The Supreme Court's standard in Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), seals this outcome. A complaint must offer sufficient factual detail, taken as true, to state a claim plausible on its face—not merely conceivable. Here, plausibility evaporates under the weight of the plaintiffs' prior statements. Sarah and Regina Alonso, in recorded statements to Washington police (Exhibits 28, 29) and public affirmations from 2019-2020 (Exhibits 15, 16, 20, 30), consistently declared the Jacksons innocent of trafficking or sexual misconduct. **Sarah swore under perjury Lucas Jackson's complete vindication was "the literal truth" (Exhibit 30),** and Regina professed "all" her love for Lucas and praised Lucas long after the timeframe she now conveniently falsely claims she was victimized (Exhibits 4, 9, 10). These pre-litigation admissions, aligned with police conclusions, flatly contradict their current narrative of trafficking acts or benefits, belying any attempt to recast history with unsubstantiated claims.

This is no trivial discrepancy; it fatally undermines their credibility and legal footing. Iqbal permits courts to reject "naked assertions" lacking factual support (556 U.S. at 678), particularly when overshadowed by the plaintiffs' own exonerations. The complaint's failure to

U
ni
te

specify trafficking acts or knowing profit falls below plausibility. Permitting it to advance would erode judicial integrity, favoring baseless litigation over truth. Dismissal under Rule 12(b)(6) is compelled by precedent and justice, protecting against such contradictory accusations.

**Inadequate Allegations Under the Trafficking Victims' Protection Reauthorization Act (TVPRA):** Regina Alonso's TVPRA claim under 18 U.S.C. § 1591(a)(1) demands interstate commerce ties, yet her complaint lacks factual basis—no tickets, payments, or profits are alleged. She admits Lucas Jackson, her only link, rejected her as a minor citing homelessness, showing no § 2422 enticement intent (Exhibit 8), confining claims to Washington, not California.
Doe v. Red Roof Inns, 21 F.4th 714, 724 (11th Cir. 2021), requires plausible evidence of knowing benefit and violation awareness; Regina's baseless assertions show no such gain or intent by the Jacksons, failing § 1595(a)'s civil threshold.

**Failure to State a Cause of Action Under the Statutes Cited:** Regina's claims under 18 U.S.C. § 2255 and § 2422, which addresses enticing interstate travel for illegal sexual acts, falter. Her earlier statements affirm the Jacksons refused to meet or traffic her, negating intent or action required by U.S. v. McDowell, 250 F.3d 1354, 1365 (11th Cir. 2011), and U.S. v. Yost

**Baseless Allegations:** In the Northern District of California, plaintiffs must show the Jacksons' actions tied to California for jurisdiction under 18 U.S.C. § 2255 or § 2422—no such evidence exists. Police reports and statements confirm no illegal acts or trafficking occurred. Regina's claim of potential victimhood in Washington lacks proof and contradicts Sarah's denial of any misconduct with minors, suggesting fabricated allegations despite prior knowledge.

**Vindication by Sarah:** Sarah, an adult, exonerated Lucas (Kai) in a video, refuting misconduct and debunking tweets plaintiffs now misrepresent as credible—knowingly advancing debunked jests as evidence despite Sarah and Regina's prior dismissals (Exhibits 9, 30), a clear

abuse of process—swearing under perjury in her complaint that it's "the literal truth" (Exhibit 30). This dismantles trafficking allegations and reveals bad faith. Texts prior urged her honesty, bolstering James's integrity (Exhibit 31). The plaintiffs' reliance on discredited claims undermines their case's legitimacy, warranting dismissal.

**Internet Activity and Lack of Personal Jurisdiction:** Plaintiffs claim James's YPP links him to California, but this global profit-sharing lacks intent to target the forum per Walden v. Fiore, 571 U.S. 277 (2014). His non-California contract lacks control over viewership or broadcast, mirroring countless global YPP users. Per Perkins v. Mohasco Indus. Co. (342 U.S. 437, 445, 1952) and Southern Mach. Co. v. Mohasco Indus. (401 F.2d 374, 383, 1968), jurisdiction requires purposeful state impact—unmet here. Forcing Washington-based Jacksons to defend in California, where Google's distinct claims dominate, violates fairness and due process. Their broad social media use didn't target California, negating purposeful availment.

**FORUM NON CONVENIENS**

Under 28 U.S.C. § 1391, venue is proper where defendants reside or events occurred. Neither Jacksons nor plaintiffs reside in California, and YouTube's role isn't a substantial event under § 1391(b)(2); Washington fits, per Leroy v. Great Western United Corp. (443 U.S. 173, 1979). Defendants seek dismissal for improper venue (28 U.S.C. § 1391(b)(1); Daniel v. Am. Bd. of Emergency Med., 428 F.3d 408, 431, 2d Cir. 2005)). Sarah's Washington visits in the complaint, plus witnesses and evidence there, make it the logical venue, avoiding undue burden (Piper Aircraft Co. v. Reyno, 454 U.S. 235, 1981)).

**In Sibaja v. Dow Chemical Company, 757 F.2d 1215 (11th Cir. 1985), the Court stated:** The doctrine of forum non conveniens allows a court to decline jurisdiction when the

convenience of the parties, the court, and justice favor another forum. This power is derived from the court's authority under Article III of the Constitution to prevent abuse and injustice in litigation. **In Leon v. Million Air, Inc., 251 F.3d 1305, 1310-11 (11th Cir. 2001),** the Court held that to dismiss a case under this doctrine, a defendant must show: (1) An adequate alternative forum is available, (2) Public and private factors favor dismissal, (3) The plaintiff can reinstate the suit in the alternative forum without undue inconvenience or prejudice. This applies completely.

U ni te

**ADDITIONAL GROUNDS FOR DISMISSAL**

**Misconduct and Lack of Jurisdictional Basis:** The plaintiffs' counsel has engaged in misconduct, further supporting the argument for dismissal. In Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co., 324 U.S. 806 (1945), the Supreme Court emphasized that courts must ensure their processes are not abused by fraudulent conduct. The documented attempts by plaintiffs' counsel to extort the Jacksons and manipulate the legal process, as evidenced by communications seeking to leverage false claims for financial gain, constitute an abuse of the legal system. Such unethical behavior further undermines the plaintiffs' credibility and supports the dismissal of their claims in the interests of justice.

**Email Evidence of Extortion Attempts:** The numerous failures in the plaintiff's handling of this entire lawsuit do not stop at improper jurisdiction, perjury, failures to state claims or the other unethical behavior described before. Instances of misconduct by the Plaintiffs' legal team, including extortion attempts, further undermine the legitimacy of this case. On May 3, 2024, an email to Brett L. Wittner, the Jackson's bankruptcy lawyer, from a lawyer representing Lisa Haba and the Plaintiffs' interests, stated, 'the plaintiffs don't really care too much about your

bankruptcy; they are really only interested in getting money from Google.' This email demonstrates that the primary motivation of the Plaintiffs is to extract a financial settlement from Google, rather than to pursue genuine claims against James and Lucas Jackson. (Exhibit 32)

**Phone Call Notes Indicating Financial Motives:** Notes from a call on March 12, 2023, between Plaintiff Sarah and Defendant Lucas Jackson include statements where Sarah indicated, "the lawyers told her there was money in it from YouTube and that they might settle." This clearly shows the Plaintiffs' financial motivation driven by potential settlements from Google. Sarah's failure to state a claim further likely stems from the fact she doesn't even want to be a part of this lawsuit and is being forced to continue by Lisa Haba due to Lisa threatening to pursue Sarah for legal fee costs if she does not continue (according to Sarah): (Exhibit 33)

**Extortion Tactics by Lisa Haba:** Lisa Haba's extortion tactics aim for Google payouts, not justice against the Jacksons, making California an improper venue. A May 15, 2024, email from Brett L. Wittner shows Haba pressuring James to falsely claim a Google partnership (Exhibit 34), part of years of harassment, including 2021 hush money demands. The Court should dismiss this case in California, allowing the Jacksons to counterclaim for damages in Washington.

**CONCLUSION**

The Northern District of California lacks personal jurisdiction over James and Lucas Jackson, as Plaintiffs fail to establish any meaningful connection to California. Under Int'l Shoe Co. v. Washington, 326 U.S. 310 (1945), Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985), and Walden v. Fiore, 571 U.S. 277 (2014), jurisdiction requires deliberate contacts with the forum state, which Plaintiffs have not demonstrated. All alleged events took place in Washington, not California, making jurisdiction improper.



U ni te

Plaintiffs' Trafficking Victims Protection Reauthorization Act (TVPRA) claims fail under Doe v. Red Roof Inns, 21 F.4th 714 (11th Cir. 2021), as there is no evidence that the Jacksons knowingly benefited from or had knowledge of any alleged trafficking. Plaintiffs' own 2019-2020 statements contradict their claims, rendering them implausible under Ashcroft v. Iqbal, 556 U.S. 662 (2009).

Venue is also improper under 28 U.S.C. § 1391(b) and Leroy v. Great Western United Corp., 443 U.S. 173 (1979), as Washington is the proper venue given that all relevant parties, witnesses, and evidence are located there. Litigating in California imposes extreme financial hardship on the Jacksons, who, post-bankruptcy, face unjust burdens defending themselves in an unrelated jurisdiction. Given these circumstances, forcing them to litigate in California raises serious due process concerns, as recognized in Gideon v. Wainwright, 372 U.S. 335 (1963).

Accordingly, this Court should dismiss this case for lack of jurisdiction or improper venue. In the alternative, the Court should sever the claims against James and Lucas Jackson from those against Google and transfer them to Washington, where venue is proper and litigation would be fair, as established in Asahi Metal Indus. Co. v. Superior Ct., 480 U.S. 102 (1987).

Respectfully submitted,

*/s/ Lucas Jackson*
Lucas Jackson (Pro se)
8702 123rd St E
Puyallup, WA 98373
Telephone: (253) 286-8311
Email: complexnucleus@gmail.com
Date: 3/1/25

*/s/ James Jackson*
James Jackson (Pro se)
8702 123rd St E
Puyallup, WA 98373
Telephone: (253) 286-8311
Email: complexnucleus@gmail.com
Date: 3/1/25