BRIAN M. WILLEN (*Pro Hac Vice*)
BENJAMIN D. MARGO, SBN 348644
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue of the Americas, 40th Floor
New York, NY 10019-6022
Telephone: (212) 999-5800
Facsimile: (212) 999-5801
Email: bwillen@wsgr.com
bmargo@wsgr.com

AMIT Q. GRESSEL, SBN 307663
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
One Market Plaza
Spear Tower, Suite 3300
San Francisco, CA 94105-1126
Telephone: (415) 947-2000
Facsimile: (866) 974-7329
Email: agressel@wsgr.com

*Attorneys for Defendants*
GOOGLE LLC and YOUTUBE, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE YOUTUBE TRAFFICKING LITIGATION. | Case No.: 3:23-cv-05523-JD<br><br>**GOOGLE LLC AND YOUTUBE, LLC'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED THIRD AMENDED COMPLAINT**<br><br>Date: June 12, 2025<br>Time: 10:00 a.m.<br>Courtroom 11, 19th Floor<br><br>Before: Hon. James Donato |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION .......... 1

INTRODUCTION .......... 1

BACKGROUND .......... 2

A. YouTube's Motion to Dismiss Plaintiffs' First Amended Complaint .......... 2

B. Plaintiffs' Third Amended Complaint .......... 3

ARGUMENT .......... 4

I. PLAINTIFFS' NEW FACTUAL ALLEGATIONS DO NOT EVADE SECTION 230 .......... 4

A. Plaintiffs' Section 2255 and 1595 Claims Are Barred by Section 230 .......... 4

B. Plaintiffs Cannot Rehabilitate Their Agency or Partnership Theories .......... 9

C. Plaintiffs' New Allegations Do Not State A Plausible Claim That YouTube Itself Engaged in Criminal Sex Trafficking Under § 1591 .......... 12

II. PLAINTIFFS' 2255 AND 1595 CLAIMS FAIL EVEN WITHOUT SECTION 230 .......... 13

III. PLAINTIFFS' NEW NEGLIGENCE *PER SE* CLAIM FAILS .......... 13

CONCLUSION .......... 15

# TABLE OF AUTHORITIES

**Page(s)**

*B.J. v. G6 Hosp., LLC*,
2023 U.S. Dist. LEXIS 88180 (N.D. Cal. May 19, 2023) .......... 13

*Barnes v. Yahoo!, Inc.*,
570 F.3d 1096 (9th Cir. 2009) .......... 6, 7

*Bogard v. TikTok Inc.*, |
2025 U.S. Dist. LEXIS 32959 (N.D. Cal. Feb. 24, 2025) .......... 8

*Calise v. Meta Platforms, Inc.*,
103 F.4th 732 (9th Cir. 2024) .......... 6, 8, 11

*Caraccioli v. Facebook, Inc.*,
167 F. Supp. 3d 1056 (N.D. Cal. 2016),
*aff'd*, 700 F. App'x 588 (9th Cir. 2017) .......... 11

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*,
2013 U.S. Dist. LEXIS 70531 (N.D. Cal. May 17, 2013) .......... 9

*Delfino v. Agilent Techs., Inc.*,
145 Cal. App. 4th 790 (2006) .......... 11

*Doe #1 v. Twitter, Inc.*,
2023 U.S. App. LEXIS 10808 (9th Cir. May 3, 2023) .......... 12

*Doe (K.B.) v Backpage.com, LLC*,
2025 U.S. Dist. LEXIS 43884 (N.D. Cal. Mar. 3, 2025) .......... 8

*Doe (K.B.) v. Backpage.com, LLC*,
724 F. Supp. 3d 882 (N.D. Cal. 2024) .......... 6

*Doe v. City of Gauley Bridge*,
2022 U.S. Dist. LEXIS 150204 (S.D. W. Va. Aug. 22, 2022) .......... 11

*Doe v. Grindr*,
128 F.4th 1148 (9th Cir. 2025) .......... 6, 7, 8, 12, 13

*Doe v. Hansen*,
2018 U.S. Dist. LEXIS 81453 (E.D. Mo. May 15, 2018) .......... 11

*Doe v. Red Roof Inns, Inc.*,
21 F.4th 714 (11th Cir. 2021) .......... 13

*Doe v. Webgroup Czech Republic*, 2025 U.S. Dist. LEXIS 48343 (C.D. Cal.
February 21, 2025) .......... 6, 7, 9, 13

*Does 1-6 v. Reddit, Inc.*,
51 F.4th 1137 (9th Cir. 2022) .......... 2, 6, 12

*Dyroff v. Ultimate Software Grp., Inc.*,
934 F.3d 1093 (9th Cir. 2019) .......... 8, 9

*E. Coast Test Prep LLC v. Allnurses.com, Inc.*,
971 F.3d 747 (8th Cir. 2020) .......... 12

*Est. of Bride v. YOLO Tech., Inc.*,
112 F.4th 1168 (9th Cir. 2024) .......... 6

*Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*,
521 F.3d 1157 (9th Cir. 2008) .......... 8

*Fredianelli v. Jenkins*,
931 F. Supp. 2d 1001 (N.D. Cal. 2013) .......... 10

*ING Bank v. Ahn*,
758 F. Supp. 2d 936 (N.D. Cal. 2010) .......... 10

*Kimzey v. Yelp! Inc.*,
836 F.3d 1263 (9th Cir. 2016) .......... 9

*Lisa M. v. Henry Mayo Newhall Mem'l Hosp.*,
12 Cal. 4th 291 (1995) .......... 11

*Ratha v. Phatthana Seafood Co.*,
2017 U.S. Dist. LEXIS 230292 (C.D. Cal. Dec. 21, 2017) .......... 11

*Ratha v. Phatthana Seafood Co.*,
35 F.4th 1159 (9th Cir. 2022) .......... 13

*Rood v. Cnty of Santa Clara*,
113 Cal. App. 4th 549 (2003) .......... 11

*Safari Club Int'l v. Rudolph*,
862 F.3d 1113 (9th Cir. 2017) .......... 14

*Toretto v. Donnelley Fin. Sols., Inc.*,
583 F. Supp. 3d 570 (S.D.N.Y. 2022) .......... 10

*United States v. Stevenson*,
727 F.3d 826 (8th Cir. 2013) .......... 14

*Upton v. Vicknair*,
2021 U.S. Dist. LEXIS 118756 (E.D. La. June 25, 2021) .......... 11

**STATUTES**

18 U.S.C § 1591 .......... 12, 13, 14, 15

18 U.S.C § 1595 .......... *passim*

18 U.S.C § 2255 .......... 4

18 U.S.C § 2258A .......... 2, 4, 14

18 U.S.C § 2258B .......... 14

47 U.S.C. § 230(c)(1) .......... 1, 2, 6

Cal. Corp. Code § 16101 ........ 10

Cal. Corp. Code § 16202 ........ 9, 10

Cal. Corp. Code § 16305 ........ 11

Cal. Corp. Code § 16403 ........ 10

Cal. Corp. Code § 16404 ........ 10

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE that on June 12, 2025 at 10 a.m., before the Honorable James Donato of the U.S. District Court for the Northern District of California, Defendants Google LLC and YouTube, LLC (collectively, "YouTube") shall and hereby do move to dismiss Plaintiffs' Consolidated Third Amended Complaint ("TAC") (Dkt. No. 193) pursuant to Federal Rule of Civil Procedure 12(b)(6).

YouTube seeks an order dismissing the TAC with prejudice.

## INTRODUCTION

The Third Amended Complaint solves none of the substantive problems that led Judge Chhabria to dismiss all of Plaintiffs' claims against YouTube. What little Plaintiffs have added about YouTube only confirms that the claims are barred by Section 230 and fail as a matter of law.

Plaintiffs allege that they were the victims of sexual misconduct by Defendants James Jackson ("Onision") and Lucas Jackson. But none of the Jacksons' allegedly unlawful activities occurred on YouTube. Instead, the only connection between Plaintiffs' alleged victimization and YouTube is Plaintiffs' assertion that YouTube "provided a platform for Onision to reach young girls," Order, Dkt. 118 ("MTD Order") 1, whom the Jacksons then communicated with and "groomed" elsewhere. But, as Judge Chhabria held, "[s]uch allegations clearly seek to treat YouTube as a 'publisher' of Onision's content," and therefore "are controlled by Section 230, which shields websites from liability for content created and posted by third parties." *Id.* (citing 47 U.S.C. § 230(c)(1)). Plaintiffs' new allegations merely double down on their bid to impose publisher liability, faulting YouTube for failing to remove Onision's content and for allowing his YouTube channels to operate by publishing and monetizing videos.

Moreover, as Judge Chhabria has also already explained, Plaintiffs' efforts to use a standard revenue-sharing arrangement for user-generated content as a basis for transforming Onision into YouTube's all-purpose agent or co-owner, vicariously viable for Onision's alleged off-platform wrongdoing, is baseless. Unsupported legal conclusions from a purported "expert" change nothing, and certainly offer Plaintiffs no basis for evading Section 230. And the only claim that Judge Chhabria did not previously consider—a new cause of action for negligence per se

based on YouTube's supposed failure to report Onision to federal authorities, in purported violation of federal law (18 U.S.C. § 2258A)—is frivolous.

In short, the TAC only confirms that Judge Chhabria was right to be "skeptical that any amendment to the complaint would alter the applicability of Section 230 to the plaintiffs' claims." MTD Order 3. Plaintiffs' claims against YouTube should be dismissed with prejudice.

## BACKGROUND

### A. YouTube's Motion to Dismiss Plaintiffs' First Amended Complaint

This case started over two years ago in separate lawsuits filed in Michigan and Florida. YouTube transferred both actions to the Northern District of California, and Plaintiffs consolidated their claims against YouTube in a First Amended Complaint in the *Alonso* case assigned to Judge Chhabria (Dkt. 111 ("FAC")). *See* Stipulation of Dismissal, Dkt. 89, Case No. 23-cv-05127.

In April 2024, Judge Chhabria granted YouTube's motion to dismiss because "[a]ll the plaintiffs' claims against YouTube are controlled by Section 230." MTD Order at 1. "According to the plaintiffs, YouTube is liable because it provided a platform for Onision to reach young girls and because it shared advertising revenue with him. Such allegations clearly seek to treat YouTube as a 'publisher' of Onision's content." *Id.* Judge Chhabria rejected Plaintiffs' arguments that Onision's participation, via a standard revenue-sharing agreement, in "the YouTube Partnership Program" ("YPP") supposedly made YouTube vicariously liable for all of his actions, holding that the YPP agreement "does not create an agency or partnership relationship between YouTube and Onision." *Id.* at 1-2. As Judge Chhabria explained: "There are no facts supporting the allegation that Onision acted on behalf of YouTube in posting his videos or that YouTube exercised any control over what video content Onision posted. Likewise, there are no facts suggesting YouTube and Onision were co-owners of a business for profit." *Id.*

As for Plaintiffs' sex trafficking claims under 18 U.S.C. § 1595, Judge Chhabria held that Plaintiffs could not avail themselves of the limited exception to Section 230 for such claims (*see* 47 U.S.C. § 230(e)(5)). Under Ninth Circuit law, "this exception only applies if the defendant-website itself engaged in some conduct indicating participation in a sex trafficking venture." *Id.* at 2 (citing *Does 1-6 v. Reddit, Inc.*, 51 F.4th 1137, 1145 (9th Cir. 2022)). Plaintiffs did not allege

that YouTube did anything of the sort. Judge Chhabria gave Plaintiffs leave to amend "in an abundance of caution," but he was "skeptical that any amendment to the complaint would alter the applicability of Section 230 to the plaintiffs' claims." *Id.* at 3.

Plaintiffs subsequently filed a Second Amended Complaint. While YouTube's Motion to Dismiss the SAC was pending, both matters were related and transferred to this Court and consolidated. Dkts. 161, 162. This Court then ordered Plaintiffs to file a single Third Amended Complaint asserting all their claims against all defendants. Dkt. 175.

**B. Plaintiffs' Third Amended Complaint**

The Third Amended Complaint offers little that is new—and nothing that avoids Judge Chhabria's prior ruling. The TAC offers the same story of Plaintiffs' alleged abuse at the hands of the Jacksons and YouTube's limited relationship to the Jacksons' alleged misconduct. All the alleged harmful grooming interactions between Plaintiffs and the Jacksons occurred off of YouTube's platform; YouTube's role was limited to allegedly hosting certain content by the Jacksons that supposedly appealed to young people and helped make Onision a minor celebrity. ¶¶ 13-20, 33, 41-50, 150-178, 180-203, 205-237.[1] Plaintiffs fault YouTube for giving Onision a platform for such content, allowing him to earn advertising revenue from his videos, and declining to remove certain of his content in the face of vague concerns or complaints. ¶¶ 20-27, 43, 46-47, 106-107, 112, 120, 144, 148, 175-176, 178. Plaintiffs do not point to any content that the Jacksons posted on YouTube that was supposedly illegal or that solicited illegal activity or amounted to sex-trafficking content, nor do they offer any facts suggesting that YouTube played a role in the Jacksons' supposed grooming efforts beyond allowing the operation of his YouTube channel.

Plaintiffs now offer three limited clusters of new allegations: (1) allegations (unrelated to Plaintiffs) that YouTube was generally warned that Onision was posting offensive videos and allowing girls to upload (non-nude) pictures to online forums separate from YouTube, and that YouTube did not restrict Onision's YouTube channel or report him to federal authorities (¶¶ 42-44, 46-47, 187-188, 192, 196-203; *see also* ¶¶ 138-148 (allegations about YouTube's "Trusted

---

[1] References to "¶¶" are to paragraphs in the TAC.

Flagger" program); (2) general advantages supposedly received by content creators who participated in the YPP (none relating to Onision specifically, much less to sex trafficking or grooming) (¶¶ 24-28 (search engine optimization and monitoring), ¶ 46 (alleged motivation not to report YPP members), ¶¶ 146-147 (YPP members' content allegedly less likely to be flagged for policy violations); and (3) purported "expert testimony" alleging that the YPP Agreement (a standard-form revenue sharing agreement that YouTube has with countless third-party creators) somehow created a legal "agency" or "partnership" relationship with Onision (¶¶ 22-26, 99-102, 105-115, 127, 142-143 *citing* Ex. A (Branagan Report)). As discussed below, none of these new allegations avoid Section 230—or help Plaintiffs state a viable claim.

Beyond repleading the federal claims that Judge Chhabria dismissed, Plaintiffs now also assert a state-law cause of action against YouTube for negligence *per se*, based on the theory that YouTube violated a federal criminal statute, 18 U.S.C. § 2258A, by supposedly failing to report Onision's purported sex trafficking to the National Center for Missing & Exploited Children ("NCMEC"). ¶¶ 579-584. Plaintiffs offer the conclusory, and wholly unsupported, assertion that YouTube was "notified that Onision was using his YouTube channel to traffic children." ¶ 583. But the only factual allegations Plaintiffs offer concern the parent of a *different* child who claimed on Reddit to have warned YouTube about Onision's "harmful behaviors." ¶¶ 41-44. This apparently refers to the parent's concern that girls posted (non-pornographic) photographs of themselves to separate forums run by Onision, not any YouTube channels. ¶ 42. Neither that allegation, nor anything else in the TAC, plausibly suggests that YouTube had actual knowledge of facts indicating that the Jacksons were engaged in *sex trafficking*, much less with respect to Plaintiffs, much less that there is any causal link between YouTube's supposed failure to report Onision to NCMEC and the harms that Plaintiffs claim to have suffered. ¶ 584.

## ARGUMENT

## I. PLAINTIFFS' NEW FACTUAL ALLEGATIONS DO NOT EVADE SECTION 230

### A. Plaintiffs' Section 2255 and 1595 Claims Are Barred by Section 230

Plaintiffs' federal claims against YouTube in the TAC are the same as in the FAC, which Judge Chhabria dismissed based on Section 230: civil claims under 18 U.S.C. § 2255 and § 1595

seeking to hold YouTube secondarily liable for the Jacksons' alleged sexual misconduct. ¶¶ 418-431, 446-483, 498-565 (Counts II, IV-V, VII-IX). As before, these claims impermissibly "seek to treat YouTube as a publisher or speaker of third-party content." MTD Order 1.

To begin, nearly all of Plaintiffs' factual allegations about YouTube are unchanged from the FAC that Judge Chhabria dismissed. Plaintiffs claim that YouTube offered a platform to Onision, on which he posted various videos that made him popular with young people, particularly adolescent girls, and helped him forge relationships with his fans. ¶¶ 11-20, 33, 151-154, 159, 165, 185, 203. Plaintiffs allege that they became aware of Onision because of his YouTube channel and were interested in communicating with him for that reason. ¶¶ 49, 204-205, 243-244, 253. But all of Plaintiffs' actual communications with the Jacksons—and all of their purported "grooming" efforts—occurred outside of YouTube. ¶¶ 207, 216, 231, 245, 246, 250, 256, 269. As in the FAC, Plaintiffs do not allege that YouTube was involved in the Jacksons' alleged grooming. Nor do they identify any content posted by the Jacksons on YouTube that was unlawful, that indicated some illegal sexual relationship with Plaintiffs (or anyone else), or that was intended to lure anyone into improper sexual activity. Instead, as before, Plaintiffs allege that some of the videos Onision posted on YouTube were offensive or provocative, that such content helped Onision gain a following, and that YouTube was generally warned that Onision was suspicious or offensive but did not remove or restrict his channels. ¶¶ 39-48, 171-175, 178.

In short, Plaintiffs' theory of liability—however tenuous—is that YouTube failed to exercise sufficient control over its publishing function: that it allowed Onision to publish and monetize videos to which Plaintiffs object. ¶ 45 ("YouTube continued to allow their partner, Onision to post his content…"). As Judge Chhabria found, this theory—that "YouTube is liable because it provide[s] a platform for Onision to reach young girls and because it shared advertising revenue with him"—is squarely barred by Section 230. MTD Order 1.

That ruling, and the extensive line of case law supporting it, dispense with the contention (previously advanced by Plaintiffs) that Section 230 does not apply because their claims supposedly involve a "duty" not to profit from Onision's alleged sex-trafficking activities. Under Section 230, "what matters is not the name of the cause of action," but "whether the cause of action

inherently requires the court to treat the defendant as the 'publisher or speaker' of content provided by another." *Est. of Bride v. YOLO Tech., Inc.*, 112 F.4th 1168, 1176 (9th Cir. 2024) (quoting *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1101-02 (9th Cir. 2009)). That is why the Ninth Circuit, and courts within this Circuit, have repeatedly—including since Judge Chhabria's original ruling—applied Section 230 to bar claims under § 1595 against online platforms based on the theory that they benefitted from participating in an alleged sex-trafficking venture. *See Doe v. Grindr*, 128 F.4th 1148, 1152-54 (9th Cir. 2025) (claims that *Grindr* facilitated matches between minor plaintiff and adult predators); *Reddit*, 51 F.4th at 1139-40 (claims that *Reddit* "earns substantial advertising revenue from subreddits that feature child pornography"); *Doe (K.B.) v. Backpage.com, LLC*, 724 F. Supp. 3d 882, 884 (N.D. Cal. 2024) (claims alleging that Meta financially benefitted from facilitating a "trafficking hub" on Instagram); *Doe v. Webgroup Czech Republic, a.s.*, __ F. Supp. 3d __, 2025 U.S. Dist. LEXIS 48343 (C.D. Cal. February 21, 2025) ("WGCZ") (claims that pornography websites profited from hosting CSAM images of Plaintiffs).

As in those cases, Plaintiffs here seek to hold YouTube liable in its capacity as a publisher of third-party content—for allowing Onision to maintain a channel on YouTube through which he posted and earned revenue on videos that allegedly helped him gain the attention of young women. To avoid liability, YouTube would have had to *monitor* Onision's channel and *moderate* the content within it, whether by blocking or removing videos or third-party ads. Those are precisely the publication duties Section 230 precludes. *See Grindr*, 128 F.4th at 1153 ("discharging the alleged duty would require Grinder to monitor-third party content and prevent adult communications to minors"); *Est. of Bride*, 112 F.4th at 1180 (Section 230 bars claims faulting online app "for not moderating content in some way, whether through deletion, change, or suppression"); *Calise v. Meta Platforms, Inc.*, 103 F.4th 732, 742 (9th Cir. 2024) (Meta immune from claims based on publishing third-party ads because if the duty "obliges the defendant to 'monitor third-party content'—or else face liability—then that too is barred by § 230(c)(1)").

The TAC makes only token efforts to respond to Judge Chhabria's ruling applying these principles to dismiss the prior version of Plaintiffs' claims. But Plaintiffs' limited new factual allegations only double down on the theories of liability that Section 230 precludes.

*First*, Plaintiffs allege that "[m]embers of the YouTube community urged YouTube to take action against Onision's channels but YouTube refused to do so." ¶ 42. In support, Plaintiffs allege (1) that a parent of a different minor "reported Onision's harmful behaviors to YouTube and then proceeded to warn other parents about the foreseeable dangers of YouTube's platform to other children (¶¶ 42, 44); and (2) that a Twitter user encouraged people to report an unidentified Onision video to YouTube, but "YouTube ignored these reports." ¶ 48. While these allegations have no connection to the Jacksons' alleged misconduct towards Plaintiffs, they are all paradigmatic examples of efforts to impose liability on YouTube for allegedly failing to remove or moderate third-party content—the heartland of Section 230 immunity. *See Barnes*, 570 F.3d at 1103 (cleaned up) ("section 230 protects from liability any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online"); *Grindr*, 128 F.4th at 1153 ("claims that Grindr had a duty to suppress matches and communications between adults and children, so as to prevent the harmful sharing of messages between users that could lead to illegal activity … necessarily implicate Grindr's role as a publisher of third-party content"); *WGCZ*, 2025 U.S. Dist. LEXIS 48343, at *5, 10-11 (claims that defendants "fail[ed] to moderate and cull out illegal content, profiting from CSAM, and revenue-sharing with uploaders of CSAM … are inevitably tethered to Defendants' statuses as publishers.").

*Second*, Plaintiffs vaguely suggest that processes for allowing users to flag potentially objectionable content were inadequate. ¶¶ 138-148. While unclear, the gist of these allegations seems to be that YouTube was reluctant to moderate content from certain channels, including YPP participants like Onision (¶¶ 139, 146-147), or generally made it difficult for users to report objectionable content for removal (¶ 148).[2] Either way, these allegations run squarely into Section

[2] Plaintiffs do not point to any actual content on Onision's channel that reflected the purported grooming or sexual abuse. The videos identified in the TAC ranged from silly to vaguely inappropriate, but none of it was CSAM or any other illegal content. ¶¶ 150-154, 159-161, 165-167. Nevertheless, the TAC adds a wholly conclusory and unexplained assertion that "Onision's channel contain[s] significant material depicting the sexual exploitation, grooming, and abuse of Plaintiffs." ¶ 144. But the only YouTube content from Onision's channel relating to Plaintiffs identified in the TAC are videos that Onision posted in September 2022, years after the alleged misconduct, in which Onision vehemently *denied* Sarah's allegations of sexual exploitation (¶¶ 388-398).

230, which was "enacted to protect websites against the evil of liability for failure to remove offensive content." *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1174 (9th Cir. 2008). Recent cases have repeatedly held Section 230 bars claims, no matter how styled, that seek to hold platforms liable for failing to implement effective content-flagging systems. *See Doe (K.B.) v Backpage.com, LLC*, 2025 U.S. Dist. LEXIS 43884, at *18-19 (N.D. Cal. Mar. 3, 2025) (Section 230 barred claims alleging that Meta facilitated sex trafficking by failing to "provide a reasonable tool … to report sex trafficking" because alleged duty was to "monitor and act on those reports"); *Bogard v. TikTok Inc.*, 2025 U.S. Dist. LEXIS 32959, at *52-53 (N.D. Cal. Feb. 24, 2025) (Section 230 barred claims that platforms "failed to design effective reporting tools" because the "duty alleged is Defendants' failure to remove reported videos").

*Third*, Plaintiffs allege that YouTube suggested certain of Onision's videos to users, ¶ 17, or more generally makes user content (especially from YPP participants) easier to find, *e.g.*, ¶¶ 24, 101 ("YouTube Partners are optimized in the Google search engine for maximum audience exposure"); ¶¶ 25, 102 (YouTube "uses its algorithm to connect user search terms with videos"); ¶ 104 ("Google creates a thumbnail of the video which is what is promoted and shared with the user."). This theory too is barred under established Ninth Circuit law. *See Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1098 (9th Cir. 2019) ("[b]y recommending user groups and sending email notifications, [the website] was acting as a publisher of others' content"); *Grindr*, 128 F.4th at 1153 (claims that Grindr was liable for "matching users based on geographic data it extracted from them" barred); *K.B.*, 2025 U.S. Dist. LEXIS 43884, at *9-11 (same for claim that Meta's "algorithms facilitated her sex trafficking by 'creating, suggesting and encouraging connections between sex traffickers and vulnerable persons'").

Finally, insofar as Plaintiff tries to suggest that YouTube materially contributed to the Jacksons' content because it provided Onision with various "training and development programs," "guidance," "incentives" or otherwise promoted his content (¶ 137), these token efforts to plead around Section 230 fail under established law. *See Calise*, 103 F.4th at 745 (Meta's alleged "'solicitation' or 'assistance' for advertisers—a fundamental part of Meta's business model and that of countless other internet companies—does not undo § 230(c)(1)'s protections just because

it could be misused by third parties"); *Dyroff*, 934 F.3d 1099 (algorithmic "recommendation and notification functions … did not materially contribute, as Plaintiff argues, to the alleged unlawfulness of the content"); *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1271 (9th Cir. 2016) ("proliferation and dissemination of content does not equal creation or development of content"); *WGCZ*, 2025 U.S. Dist. LEXIS 48343, at *10, 19 ("revenue-sharing" and "standard online tools, without more, do not materially contribute to the unlawful content's development").

**B. Plaintiffs Cannot Rehabilitate Their Agency or Partnership Theories**

Plaintiffs also cannot evade Section 230 by framing their claims around a theory of partnership or agency. Judge Chhabria explained that the "YouTube Partnership Program [YPP] does not create an agency or partnership relationship between YouTube and Onision." MTD Order 1. The TAC does nothing to overcome that holding—or support Plaintiffs' baseless theory that YouTube is somehow vicariously liable for Onision's alleged off-platform wrongdoing. As before, the YPP is "simply a revenue-sharing agreement where YouTube pays content creators a percentage of advertising revenue generated by their videos"—an arrangement that does not remotely mean that "YouTube and Onision were co-owners of a business for profit." MTD Order at 2 (citing Cal. Corp. Code § 16202(a)).

The TAC adds conclusory allegations, largely attributed to an "expert" report by a professor of "Digital Media Entrepreneurship" who believes "YouTube engaged in a business partnership with Onision." TAC Exh. A (Report of John P. Branagan) at 7. Plaintiffs' supposed "expert" does not even define the term "partner" before arriving at this "professional opinion" (TAC Exh. A at 7), but in any event this is plainly a legal issue as to which "expert" allegations carry no weight. See, e.g., *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 2013 U.S. Dist. LEXIS 70531, at *23-25 (N.D. Cal. May 17, 2013) ("it is inappropriate to consider an expert affidavit on a motion to dismiss"). And insofar as Plaintiffs allege facts, they fail as a matter of law. Plaintiffs summarily assert that YouTube is a "managing business partner" that controls "market access, customer relationships… and money flows" (¶ 99 citing Exh. A) and helps creators like Onision "gain visibility and popularity/notoriety" (¶¶ 111, 113, 115). Plaintiffs further

allege that YouTube had "oversight" of Onision because he was required to adhere "to the YouTube community guidelines" and "the terms of service agreement" (¶ 143).

Even taken as true, these allegations would not establish a "partnership" under California law, which is a legal relationship defined as "an association of two or more persons … to carry on as coowners [of] a business for profit." Cal. Corp. Code § 16101 (emphasis added); MTD Order at 2 (explaining that the fact that YouTube and Onision "shared revenue is not enough to show that a partnership was formed"). Plaintiffs do not allege that any *profits* were shared here, much less that YouTube and Onision shared any other attributes of legal partnership, such as "books and records" and other fiduciary duties. Cal. Corp. Code § 16403, 16404(b)-(c); *accord* Cal. Corp. Code § 16202(c)(2) ("the sharing of gross returns does not by itself establish a partnership"). Simply put, a legal partnership involves the co-ownership of a business, *Fredianelli v. Jenkins*, 931 F. Supp. 2d 1001, 1020 (N.D. Cal. 2013), and "calling an organization a partnership does not make it one," *Toretto v. Donnelley Fin. Sols., Inc.*, 583 F. Supp. 3d 570, 587 (S.D.N.Y. 2022) (no partnership without agreement to share profits and losses") (cleaned up). Nothing like that is alleged here. Indeed, on Plaintiffs' view, any creator that posts content on a platform like YouTube and receives a share of advertising revenue pursuant to a standard-form revenue sharing agreement[3] becomes an all-purpose co-owner of the platform's business with each potentially vicarious liable for the others' wrongdoing. That has never been the law, and it would have profound consequences for a host of online services and content creators. Judge Chhabria was right to reject this theory, and Plaintiffs offer no basis for resurrecting it.

Nor is there any basis for Plaintiffs to claim that Onision acted as YouTube's agent. Plaintiffs say that YouTube controlled monetization and ad placement for Onision's videos, but they still offer "no facts supporting the allegation that Onision acted on behalf of YouTube in posting his videos or that YouTube exercised any control over what video content Onision posted." MTD Order at 2; *accord ING Bank v. Ahn*, 758 F. Supp. 2d 936, 941 (N.D. Cal. 2010) (the "right

---

[3] The standard YPP agreement, fairly incorporated in the TAC (¶¶ 21-23, 26-28, 32, 94-102, 105-106) is attached as Exhibit A to the Declaration of Amit Gressel.

to control" requires "a comprehensive and immediate level of day-to-day authority"). Plaintiffs' allegations amount to YouTube offering resources to content creators, which Onision may have used. That is not enough. *See Ratha v. Phatthana Seafood Co.*, 2017 U.S. Dist. LEXIS 230292, at *20 (C.D. Cal. Dec. 21, 2017) ("arms-length commercial relationship" does not create agency); *van't Rood v. Cnty of Santa Clara*, 113 Cal. App. 4th 549, 572 (2003) ("a preexisting relationship is not sufficient to make one party the agent for the other").

But even if Plaintiffs could allege an actual partnership or agency relationship, their claims premised on vicarious liability would still fail. *First*, vicarious liability requires that the partner or agent was "act[ing] within the scope" of the agency or employment relationship, Rest. 3d of Agency, § 7.07(1), or "in the ordinary course of the business of the partnership or with authority of the partnership," Cal. Corp. Code § 16305(a). Here, however, there is no theory by which Onision was acting within the scope of any conceivable agency or partnership relationship with YouTube when he allegedly engaged in improper sexual activity directed at Plaintiffs—entirely off of YouTube's platform. Courts have repeatedly rejected vicarious liability claims based on sexual misconduct committed by actual employees and agents on the employers' premises. See, e.g., *Lisa M. v. Henry Mayo Newhall Mem'l Hosp.*, 12 Cal. 4th 291, 298 (1995) (hospital not liable when ultrasound technician employee sexually molested a patient at the hospital during an examination); *accord* MTD FAC (Dkt. 112) at 10-11 (citing cases).

*Second*, Section 2255 does not authorize liability based on vicarious liability. *See, e.g., Doe v. City of Gauley Bridge*, 2022 U.S. Dist. LEXIS 150204, at *33-34 (S.D. W. Va. Aug. 22, 2022); *Upton v. Vicknair*, 2021 U.S. Dist. LEXIS 118756, at *13 (E.D. La. June 25, 2021); *Doe v. Hansen*, 2018 U.S. Dist. LEXIS 81453, at *14 (E.D. Mo. May 15, 2018)), *aff'd*, 920 F.3d 1184 (8th Cir. 2019).

*Third*, Section 230 is not defeated by a claim of vicarious liability. The core purpose of the statute is to protect online services against secondary liability claims based on the activities of their users. *See Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056, 1066 (N.D. Cal. 2016) ("Liability based on that sort of vicarious responsibility, however, is exactly what Section 230(c) seeks to avoid."), *aff'd*, 700 F. App'x 588 (9th Cir. 2017); *Delfino v. Agilent Techs., Inc.*, 145 Cal. App.

4th 790, 805 (2006) (Section 230 barred claims against employer based on actions of employee). Allowing websites to be liable for content posted by users merely because they received revenue for that content would contradict that purpose—as courts have repeatedly held. *See, e.g.*, *Calise*, 103 F.4th at 746; *E. Coast Test Prep LLC v. Allnurses.com, Inc.*, 971 F.3d 747, 752 (8th Cir. 2020).

**C. Plaintiffs' New Allegations Do Not State A Plausible Claim That YouTube Itself Engaged in Criminal Sex Trafficking Under § 1591**

Because Section 230 applies, Plaintiffs' claims under § 2255 are categorically barred, and they can state a claim under § 1595 only by offering plausible allegations that YouTube's "own conduct violated section 1591." *Does v. Reddit, Inc.*, 51 F.4th 1137, 1141 (9th Cir. 2022); MTD Order at 2. To violate this provision, "the defendant must have actually engaged in some aspect of the sex trafficking." *Reddit*, 51 F.4th at 1145 (citation omitted). "Mere association with sex traffickers" is not enough, *id.* at 1145, nor is it enough to allege an ongoing "business relationship" between the defendant and a sex trafficker, *Doe #1 v. Twitter, Inc.*, 2023 U.S. App. LEXIS 10808, at *1 (9th Cir. May 3, 2023); *accord Grindr*, 128 F.4th at 1155 ("An interactive computer services provider is not liable as a beneficiary if it merely turns a blind eye to the source of its revenue"). Rather, "[n]ot only must the defendant have actual knowledge of the sex trafficking, but there must be 'a causal relationship between affirmative conduct furthering the sex-trafficking venture and receipt of a benefit.'" *Id.* (quoting *Reddit*, 51 F.4th at 1145).

As Judge Chhabria explained, Plaintiffs' allegations in the FAC fell well short of these requirements: "[a]part from the plaintiffs being introduced to Onision through his YouTube videos, none of the subsequent alleged interactions between the plaintiffs and Onision took place on YouTube. And there are no allegations that YouTube was ever made aware of any illegal conduct between the plaintiffs and Onision." MTD Order 2. The same is true in the TAC. None of Plaintiffs' sparse new allegations come close to showing that YouTube had actual knowledge of the Jackson's alleged wrongdoing, much less that YouTube itself "actually 'engaged in some aspect of the sex trafficking.'" *Reddit*, 51 F.4th at 1145. The Ninth Circuit has repeatedly rejected § 1591 claims against online platforms based on much more substantial allegations. *Id.* at 1139-40, 1145 (allegations that Reddit allowed the sale of advertising on pages featuring child

pornography and failed to remove such material "even when users report it"); *Grindr*, 128 F.4th at 1153-54 (allegations that *Grindr* affirmatively matched minor plaintiff with adult rapists); accord *WGCZ*, 2025 U.S. Dist. LEXIS 48343, at *25 (allegations that defendants "revenue amasses from a targeted focus or knowing participation in CSAM development").

## II. PLAINTIFFS' 2255 AND 1595 CLAIMS FAIL EVEN WITHOUT SECTION 230

While this Court need go no further to dismiss Plaintiffs' federal claims, those claims independently fail, as explained in YouTube's previous motion to dismiss. MTD FAC at 4-7.

*First*, § 2255 does not authorize vicarious or other secondary liability, *supra* at 4, and Plaintiffs do not allege that YouTube itself committed a criminal violation of any of the predicate statutes (§ 1591 and § 2241), as would be required for a civil claim under § 2255.

*Second*, Plaintiffs fail to state a claim for beneficiary liability under § 1595 (even unmodified by Section 230) because they still do not allege facts plausibly establishing that YouTube "(1) knowingly benefitted (2) from participation in a venture (3) that they knew or should have known has engaged in trafficking the plaintiff." *B.J. v. G6 Hosp., LLC*, 2023 U.S. Dist. LEXIS 88180, at *9 (N.D. Cal. May 19, 2023); *accord Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159, 1175 (9th Cir. 2022); *Doe v. Red Roof Inns, Inc.*, 21 F.4th 714, 719 (11th Cir. 2021); MTD FAC at 12-15. Even if the YouTube Partner Program—which "is simply a revenue-sharing agreement" regarding video advertising (MTD Order 1)—could be considered a "venture," it is not a venture that was engaged in sex trafficking. *See, e.g.*, *B.J. v. G6*, 2023 U.S. Dist. LEXIS 88180, at *5. Nor does the TAC plausibly allege that YouTube knew or should have known that the Jacksons were engaged in sex trafficking, certainly not as to the Plaintiffs (as required by *Red Roof Inns*), but even more generally. *See, e.g.*, *Ratha*, 35 F.4th at 1177; *Red Roof Inns*, 21 F.4th at 725. Plaintiffs' scattered allegations of generalized complaints to YouTube about Onision (¶¶ 41-49, 171) do not establish a basis for any such knowledge.

## III. PLAINTIFFS' NEW NEGLIGENCE *PER SE* CLAIM FAILS

Finally, while not previously considered by Judge Chhabria, Plaintiffs' state-law negligence per se claim also fails for multiple reasons. This claim seeks to hold YouTube liable

for its alleged "fail[ure] to meet the requirements of 18 U.S.C. § 2258A by not reporting to NCMEC the apparent violation by Onision of 18 U.S.C. § 1591 involving Plaintiffs." ¶ 583.

*First*, even assuming that a violation of a federal statute that has no private right of action could be enforced via a state-law negligence *per se* claim (and that such a claim could skirt Section 230), Congress created a safe harbor that *expressly* bars any "civil claim … against a [] provider" like YouTube "arising from the performance of the reporting … responsibilities of such [] provider … under … section 2258A" from being "brought in any Federal or State court." 18 U.S.C. § 2258B(a); accord *United States v. Stevenson*, 727 F.3d 826, 830 (8th Cir. 2013) (§ 2258B provides a "grant of immunity" related to a provider's performance of its reporting obligation). Section 2258B immunity applies whether the provider is alleged to have "acted, or failed to act." *Id.* § 2258B(b)(2). Exceptions are limited to "intentional misconduct," "actual malice," "reckless disregard to a substantial risk of causing physical injury without legal justification," or "purpose unrelated to the performance of any responsibility or function under" the statute. *Id.* § 2258B(b)(1), (2)(A)-(C). Plaintiffs do not allege that YouTube acted with any such culpable mental state. To the contrary, they assert a negligence claim—seeking to hold YouTube liable simply for alleged non-compliance with the reporting requirements.

Second, even apart from the safe harbor, Plaintiffs fail to state a viable claim. Under California law (which we assume for present purposes applies here), negligence *per se* is an evidentiary doctrine that entitles a plaintiff to a presumption that the defendant failed to exercise due care, if she establishes, *inter alia*, that (1) the defendant violated a statute, and (2) that violation proximately caused injury to the plaintiff. *Safari Club Int'l v. Rudolph*, 862 F.3d 1113, 1126 (9th Cir. 2017). Plaintiffs satisfy neither of those elements.

To begin, the TAC fails to plausibly allege that YouTube violated § 2258A at all. Service providers are required by § 2258A to report to NCMEC when they have "actual knowledge" of "facts or circumstances from which there is an apparent violation of" various provisions of federal criminal law relating to CSAM and sex trafficking, including § 1591. 18 U.S.C. § 2258A(a). But Plaintiffs come nowhere close to alleging that YouTube was actually aware of such facts as to the Jacksons. The only allegations even nodding in this direction appear in ¶¶ 42, 44, and 144, but

these are insufficient. As discussed above, Plaintiffs allege that a Reddit user complained to YouTube about photos posted on the Onision Forums. Beyond the fact that this complaint had nothing to do with Plaintiffs, it does not establish an apparent violation of the sex trafficking provision of § 1591—much less one happening on YouTube. Section 1591 makes it unlawful to entice someone under 18 to engage in a "commercial sex act" (18 U.S.C. § 1591(a)). The photos referenced in ¶¶ 42 and 44 may be distasteful and objectionable, but they are not criminal sex trafficking, and did not trigger a NCMEC reporting requirement. As to the conclusory allegation in ¶ 144, there is nothing alleged to support that YouTube had actual knowledge of what was posted on Onision's channels, but the only material on those channels referencing Plaintiffs that is identified in the TAC are videos posted by Onision (years after the fact) vehemently *denying* Sarah's allegations. ¶¶ 388-398; *see supra* n.3. Such material could not possibly establish an apparent violation of § 1591.

While this alone defeats Plaintiffs' claim, the TAC also fails to plausibly allege that any purported reporting failure was the proximate cause of Plaintiffs being injured by the Jacksons. The allegations in ¶ 44 certainly create no causal link, as those have nothing to do with Plaintiffs. Likewise, the allegations in ¶ 144 appear to relate to videos posted several years *after* the alleged grooming activity, and failing to report Onision to NCMEC at that time could not have played any role in causing Plaintiffs' alleged injuries.

## **CONCLUSION**

Plaintiffs' claims against YouTube fail as a matter of law, and those claims should again be dismissed, this time with prejudice.

Respectfully submitted,

Dated: April 18, 2025

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: *\/s/ Brian M. Willen*
Brian M. Willen
E-mail: bwillen@wsgr.com

*Attorney for Defendants*
GOOGLE LLC and YOUTUBE, LLC