**THE HABA LAW FIRM, P.A.**
Lisa D. Haba (*Pro hac vice*)
*lisahaba@habalaw.com*
1220 Commerce Park Dr., Ste 207
Longwood, FL 32779
Telephone: (844) 422-2529

**MARSH LAW FIRM PLLC**
Robert Y. Lewis (SBN 153948)
*robertlewis@marsh.law*
Margaret E. Mabie (*Pro hac vice*)
*margaretmabie@marsh.law*
31 Hudson Yards, 11th Floor
New York, New York 10001
Telephone: (315) 296-9046

*Attorneys for Plaintiff Regina Alonso*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE YOUTUBE TRAFFICKING LITIGATION. | Case No. 3:23-CV-05523-JD<br><br>**PLAINTIFFS' BRIEF IN OPPOSITION TO JACKSON DEFENDANTS MOTION TO DISMISS CONSOLIDATED THIRD AMENDED COMPLAINT FOR LACK OF JURISDICTION AND FAILURE TO STATE A CLAIM**<br><br>Judge: Hon. James Donato<br>Place: Telephonic Hearing<br>Date: July 24, 2025<br>Time: 10:00 AM |

## TABLE OF CONTENTS


**I. PROCEDURAL HISTORY .............................................. 1**

A. Alonso Action Filed and Transferred; Mtn to Transfer Denied....1

B. Sarah Action Filed and Transferred; Mtn to Transfer Moot .........1

C. Jackson Defendants' Bankruptcy and the Automatic Stay............2

D. Consolidation of Cases.................................................................2

**II. STATEMENT OF FACT.............................................. 2**

**III. MEMORANDUM OF LAW ........................................ 5**

A. Rule 12(b)(2) and (3) – Jurisdiction and Venue is Proper in this Court......................................................................................5

1.Law of the Case Determines Jurisdiction....................................5

2.The Jackson Defendants Agreed to Jurisdiction by Entering a Paid Partnership with YouTube ....................................................5

B. Rule 12(b)(6) – Claims were Plausibly Alleged..............................7

1. All Allegations Must be Construed in Favor of Plaintiffs ......7

2. The Jacksons Are Liable to Plaintiffs Pursuant to §2255 or Marsha's Law ..................................................................9

3. The Jackson Defendants Are Liable to Plaintiffs Pursuant to §1595 or the TVPRA ..........................................................10

4. Rule 9 is Not Applicable.......................................................12

C. Rule 11 Is Not Applicable ...........................................................12

**IV. CONCLUSION.................................................................12**

## TABLE OF AUTHORITIES

**Cases**

*Amy v. Curtis,* No. 19-CV-02184-PJH, 2021 WL 858399, at *4 (N.D. Cal. Mar. 8, 2021) .......... 9

*Ashcroft v. Iqbol*, 556 US 662, 679 (2009) .......... 8

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas,* 134 S. Ct. 568, 582 (2013) .......... 6

*Ayala v. Joy Mfg. Co.*, 877 F.2d 846, 847 (10th Cir. 1989) .......... 8

*Conley v. Gibson*, 355 U.S. 41 (1957) .......... 7

*Docksider, Ltd. v. Sea Tech., Ltd.*, 875 F.2d 762, 764 (9th Cir. 1989) .......... 6

*Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 723-24 (11th Cir. 2021) .......... 10

*Fleites v. MindGeek S.A.R.L.*, 617 F. Supp. 3d 1146 (C.D. Cal. 2022) .......... 11

*Jacobsen v. Hughes Aircraft Company*, 105 F.3d 1288 (9th Cir. 1997) .......... 7

*Jane Doe v. Aylo Glob. Ent. Inc. et al. Additional Party Names: Aylo Billing US Corp, Aylo USA Inc.,* No. CV2307488MWFAGRX, 2023 WL 8884400, at *1 (C.D. Cal. Nov. 29, 2023) .......... 9

*Lee v. City of Los Angeles*, 250 F. 3d 668, 679 (9th Cir.2001) .......... 8

*Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 515 (9th Cir. 1988) .......... 6

*McLain v. Real Estate Bd. of New Orleans*, 444 U.S. 232 (1980) .......... 7

*Mollett and Hellwig v. Netflix, Inc.,* 705 F.3d 1062 (9th Cir. 2015) .......... 8

*Paroline v. United States,* 572 U.S. 434, 457 (2014) .......... 9

*Porter v. Jones*, 319 F.3d 483, 393 (9th Cir. 2003) .......... 8

*Prewett v. Weems*, 749 F.3d 454, 458 (6th Cir. 2014) .......... 10

*Richardson v. United States*, 841 F.2d 993 (9th Cir. 1988) .......... 5

*Sedima S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479 (1985) .......... 10

*Skilstaf, Inc. v. Caremark Corp.*, 669 F.3d 1005, 1014 (9th Cir. 2012)...............8
*Smith v. Husband*, 376 F. Supp. 2d 603, 613 (E.D. Va. 2005).........................10
*Stewart Org., Inc. v. Ricoh Corp.*, 108 S. Ct. 2239, 2244 (1988)..........................7
*The Bremen v. Zapata Off–Shore Co.*, 92 S.Ct. 1907 (1972) ................................6
*United States v. Jingles*, 702 F.3d 494 (9th Cir. 2012)........................................5
*United States v. Laney*, 189 F.3d 954, 965–66 (9th Cir.1999)..........................11
*United States v. Mortenson*, 306 F. App'x 385, 387 (9th Cir. 2009).................10
*United States v. Vasquez*, 654 F.3d 880, 885 (9th Cir. 2011)............................10
*Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1091 (9th Cir. 2018)..........................................................................................6

# I. PROCEDURAL HISTORY

## A. Alonso Action Filed and Transferred; Mtn to Transfer Denied

On February 8, 2023, Plaintiff Alonso filed a lawsuit against Defendants Google LLC, YouTube LLC, (collectively "the YouTube Defendants") James Jackson ("Onision"), and Lucas Jackson ("Lainey") (collectively "the Jackson Defendants") in the Middle District of Florida (case no. 5:23-cv-91-JA-PRL) pursuant to Masha's Law's national jurisdiction and venue. 18 U.S.C. § 2255(c).

Both the YouTube LLC and Google LLC (the "YouTube Defendants") and the Jackson Defendants filed Motions to Transfer Venue. The YouTube Defendants sought to transfer to the Northern District of California based on a forum selection clause in the YouTube user agreement. The Jackson Defendants made forum non-convenience arguments. On September 28, 2023, the District Court Judge granted YouTube's Motion to Transfer, and the case was transferred to the Northern District of California. The Jackson Defendant's Motion to Transfer Venue to the Western District of Washington was denied.

## B. Sarah Action Filed and Transferred; Mtn to Transfer Moot

On March 2, 2023, Sarah ("Sarah"), another victim of the Jackson Defendants' sex trafficking and grooming scheme, filed a lawsuit against the Jackson Defendants and the YouTube Defendants in the Western District of Michigan (case no. 1:23-cv-223) pursuant to Masha's Law's national jurisdiction and venue. 18 U.S.C. § 2255(c).

The YouTube Defendants sought to transfer to the Northern District of California based on a forum selection clause in the YouTube user agreement. The Jackson Defendants made forum non-convenience arguments. On October 11, 2023, the District Court Judge granted YouTube's Motion to Transfer, and the case was transferred to the Northern District of California. The Jackson Defendant's

Motion to Transfer Venue to the Western District of Washington was deemed to be moot.

**C. Jackson Defendants' Bankruptcy and the Automatic Stay**

On October 5, 2023, the Jackson Defendants filed a Petition for a Chapter 13 Bankruptcy in the Western District of Washington. *In re. James and Lucas Jackson*, Case No. 23-41711 (W.D. Wash. 2023). On October 24, 2023, the Jackson Defendants filed a Suggestion of Bankruptcy in the Alonso case (Doc. 77 in Alonso Action). On November 15, 2023, the Jackson Defendants filed a Suggestion of Bankruptcy in the Sarah Action (Doc. 100 in Sarah Action).

The Jackson Defendants voluntarily dismissed their bankruptcy claims on May 6, 2024. Notice of the dismissal of the bankruptcy claims was filed in the Joint Status Report on July 18, 2024 (Doc. 93 in Alonso Action).

**D. Consolidation of Cases**

On October 30, 2024, this Court issued an Order relating both the Alonso Action and the Sarah Action. (Doc. 161 in Sarah Action; Doc. 101 in Alonso Action). On March 13, 2025, the Court ordered that the cases were to be consolidated (Doc. 189). The Consolidated Third Amended Complaint was filed on April 4, 2025 (Doc. 193).

## II. STATEMENT OF FACT

Onision became a YouTube partner and was running multiple YouTube channels that were monetized through the YouTube Partnership Program. (Doc. 193 ¶137). Onision's YouTube channels targeted underage girls and provided content that appealed to that age group, such as body image, appearance, self-identity, suicide ideology, and similar topics. (Id. ¶ 152). Onision married Lainey in 2012. (Id. ¶183). Soon after, Onision and Lainey began working together to groom and lure underage girls through the Onision YouTube channels and Onision

online forums (Id. ¶184). Onision promoted and drove viewers to his Onision Forums in almost every YouTube video. (Id. ¶¶ 187-90). In the Forums, Onision and Lainey would post forum topics that appealed to vulnerable, young people and would invite and encourage the viewers to reach out and communicate with Onision and Lainey, who were seen to their viewers as online celebrities. (Id. ¶¶ 187-95).

Regina Alonso first began watching Onision's YouTube channel at the age of twelve and became a fam. (Id. ¶ 204). When she was 14-years-old, she began speaking with Lainey. (Id. ¶ 207). Alonso turned 15-years-old approximately one month after meeting Lainey. (Id. ¶ 208). For the next two years, Lainey, working in coordination with Onision, began grooming Alonso with highly sexualized commentary, flirtations, graphicly sexually commentary, lewd, sexual and flirtatious photos, and proclamations of love. (Id. ¶¶ 210-235).

In 2015, the Jackson Defendants lured and enticed Alonso to travel across state lines from Florida to Washington while she was a minor for the purpose of engaging in sexual contact with her. (Id. ¶¶236-39). Thankfully, Alonso's mother intervened and prevented her from travelling to meet them. (Id. ¶240). When the Jackson Defendants realized that Alonso would not be able to travel to engage in sexual conduct with them, the Jackson Defendants began honing their grooming focus on another child: Sarah. (Id. ¶241).

While living in Michigan as a young child, Sarah had access to a computer and used her computer to view Onision and Lainey's channels and forums. (Id. ¶ 217). Sarah became a fan of first Onision, and then Lainey. (Id. ¶¶ 242-43). Around the time that Plaintiff turned 14-years-old, Lainey befriended this minor child online and began talking with her. (Id. ¶ 251). From the next two or three years, Lainey, working in coordination with Onision, began grooming Sarah with

highly sexualized commentary, flirtations, sexual and flirtatious photos, and proclamations of love. (Id. ¶¶ 253-332).

Lainey engaged in flirtatious and sexualized conversations with both Sarah and Alonso together. Lainey began a group chat with the children called "The Three Musketeers" (id. ¶256). Both children were witness to Lainey's grooming as she desensitized them to sex through highly sexualized conversations (id. ¶¶ 257-61), and she expressed her desire to engage in sexual activity with both Alonso and Sarah.

On multiple occasions from 2016 to 2019, the Jackson Defendants lured and enticed Sarah to travel across state lines from Michigan to Washington while she was a minor for the purpose of grooming and manipulation of this minor child. (Id. ¶¶ 270-332). Whenever the Jackson Defendants became upset with Sarah, they would send her back to Michigan as a punishment. Lainey obtained power of attorney and guardianship over Sarah, which was obtained and authorized by Sarah's mother. (Id. ¶¶ 285, 491). When Sarah finally turned 18-years-old, after being groomed for the past four years, the Jackson Defendants finally attempted to engage in sexual activity with Sarah. (Id. ¶¶ 344-63). Ultimately, Onision raped Sarah. (Id. ¶¶ 364-65).

Over the years, the Jackson Defendants have continued to attempt to silence Plaintiffs. In an effort to shame Sarah into silence, Onision released defamatory statements against Sarah, claiming that Sarah had raped him and was a criminal, amongst other false and defamatory things. (Id. ¶ 387-98).

# III. MEMORANDUM OF LAW

## A. Rule 12(b)(2) and (3) – Jurisdiction and Venue is Proper in this Court

### a. Law of the Case Determines Jurisdiction

"Under the law of the case doctrine, a court is ordinarily precluded from reexamining an issue previously decided by the same court, or a higher court, in the same case." *United States v. Jingles*, 702 F.3d 494, 499 (9th Cir. 2012) (citing *Richardson v. United States*, 841 F.2d 993, 996 (9th Cir. 1988)).

This case was lawfully transferred from the Western District of Michigan to the Northern District of California after Motions to Transfer were filed and fully briefed by the parties, including the Jacksons on October 11, 2023. (Dkt. 87). As the District Court Judge in the Western District of Michigan held, "a relevant, mandatory, valid, and enforceable forum selection clause exists as to all parties. The Court will honor the parties' choice of forum and will grant YouTube's motion to transfer venue to the Northern District of California." (Dkt. 87). As such, transference of this case has already been addressed in this matter and after review of all briefing, the Court determined that California was the proper forum.

Likewise, in Florida, not only did the Court YouTube's Motion to Transfer to the Northern District of California, but the District Court Judge in the Middle District of Florida affirmatively granted YouTube's Motion to Transfer, and denied the Jackson Defendants' Motion to Transfer. This ruling, as well as the ruling in Michigan, lays this issue to rest and precludes re-litigation of the same issue.

### b. The Jackson Defendants Agreed to Jurisdiction by Entering a Paid Partnership with YouTube

The Jacksons clearly agree to YouTube's Forum selection clause and consented to jurisdiction in this Court through their partnership with YouTube.

YouTube's Paid Partnership Program (hereinafter "YPP") encouraged, enabled, and funded the abuse of Plaintiffs by James Jackson (hereinafter Onision) and Lucas Jackson (hereinafter "Lainey"). Indeed, the YPP program was a profit-sharing agreement between the Jackson defendants and the YouTube Defendants wherein Onision received a portion of advertising revenue generated by his YouTube channel. The Jackson Defendants clearly waived their right to challenge jurisdiction by agreeing to YouTube's forum selection clause. Where the parties have agreed to a forum-selection clause, they "waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas,* 134 S. Ct. 568, 582 (2013). A court must dismiss a suit filed "in a forum other than the one specified in a valid forum-selection clause," *Yei A. Sun v. Advanced China Healthcare, Inc.,* 901 F.3d 1081, 1091 (9th Cir. 2018). "Whatever 'inconvenience' [the parties] would suffer by being forced to litigate in the contractual forum as [they] agreed to do was clearly foreseeable at the time of contracting." *The Bremen v. Zapata Off–Shore Co.,* 92 S.Ct. 1907 (1972).

Not only did the Jacksons clearly agree to YouTube's Forum selection clause, but judicial efficiency and a timely adjudication of these matters require that this Court exercise its lawful jurisdiction over the Jacksons. *Docksider, Ltd. v. Sea Tech., Ltd.*, 875 F.2d 762, 764 (9th Cir. 1989). The Jacksons clearly agreed to the YouTube Terms of Service Agreement and its forum selection clause which brings Plaintiffs, and all parties' claims here to the Northern District of California. *See Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 515 (9th Cir. 1988). Particularly given the lengthy and complicated posture of this action, Plaintiffs should not be forced to litigate their claims against YouTube and their claims against the Jacksons in two separate jurisdictions particularly where these claims

are highly related in fact and law. "The district court must weigh in the balance the convenience of the witnesses and those public-interest factors of systemic integrity and fairness that, in addition to private concerns, come under the heading of 'the interest of justice.'" *Stewart Org., Inc. v. Ricoh Corp.,* 108 S. Ct. 2239, 2244 (1988).

All of Defendants' cases address where jurisdiction has distinguishable factual scenarios. But Defendants argue that there is a lack of minimum contacts, which is not at issue since jurisdiction was previously decided and the Jackson Defendants neither moved for reconsideration, nor did they seek to appeal.

**B. Rule 12(b)(6) – Claims were Plausibly Alleged**

**1. All Allegations Must be Construed in Favor of Plaintiffs**

In *Jacobsen v. Hughes Aircraft Company*, 105 F.3d 1288 (9th Cir. 1997), the Ninth Circuit Court of Appeals, evaluating the District Court's dismissal of a plaintiff's lawsuit, wrote:

> It is axiomatic that a complaint should not be dismissed unless 'it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); See 5 C. Wright & A. Miller, Federal Practice & Procedure §§ 1202, 1205-1207, 1215-1224, 1228 (1969*)." McLain v. Real Estate Bd. of New Orleans*, 444 U.S. 232, 246 (1980). (emphasis added).
>
> . . .
>
> Thus, a court's role at the 12(b)(6) stage is not to decide winners and losers or evaluate the strength or weakness of claims. *See Everest and Jennings,* 23 F.3d at 228; *Abramson v. Brownstein*, 897 F.2d 389, 391 (9th Cir.1990). Nor can a court resolve factual questions at the 12(b)(6) stage. We must accept as true the allegations in the complaint and decide *only* whether plaintiff has advanced *potentially* viable claims.

*Jacobsen, supra* at 1292.

Plaintiffs must only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim -- in order to survive a motion to dismiss. *Porter v. Jones*, 319 F.3d 483, 393 (9th Cir. 2003). In deciding the instant motion all allegations in the complaint must be taken as true and construed in the light most favorable to the non-moving party. *Skilstaf, Inc. v. Caremark Corp.,* 669 F.3d 1005, 1014 (9th Cir. 2012); *Lee v. City of Los Angeles*, 250 F. 3d 668, 679 (9th Cir.2001).

The reviewing court is "to draw on its judicial experience and common sense." *Ashcroft v. Iqbol*, 556 US 662, 679, 129 S. Ct. 1937 (2009). Where the complaint, on its face, contains sufficient facts which, when taken as true, state a claim for relief which is plausible on its face, the complaint is sufficient. *Mollett and Hellwig v. Netflix, Inc.,* 705 F.3d 1062 (9th Cir. 2015), citing *Ashcroft v. Iqbol, supra,* 556 US 662, 678. Through their Second Amended Complaint, Plaintiffs have alleged facts that when accepted as true provide that Plaintiffs, while minors, were victims of the Jackson Defendants' criminal actions.

Additionally, Plaintiffs have alleged that as a result of the Defendant's actions they have suffered injury. The facts in the Complaint provide a detailed account of the types of personal injury that both Plaintiffs suffer from and suffered through in the past as minor and young adults. Dismissal of a plaintiff's claim at this early stage of litigation is a drastic remedy and the "Federal Rules of Civil Procedure erect a powerful presumption against rejecting pleadings for failure to state a claim." *Ayala v. Joy Mfg. Co.*, 877 F.2d 846, 847 (10th Cir. 1989).

The Jackson Defendants' statements of facual dispute are best handed in discovery, not at the pleading stage.

**2. The Jacksons Are Liable to Plaintiffs Pursuant to §2255 or Marsha's Law**

As Plaintiffs properly alleged, the Jackson Defendants themselves committed violations of at least two predicate statutes, 18 U.S.C. §§2242 and 1591, against Plaintiffs entitling them to relief under 18 U.S.C. §§2255 (hereinafter "Masha's Law"). Plaintiffs are thus entitled to proceed to discovery to determine the extent, duration, breadth, and depth of the Jackson Defendants' knowledge and participation in the harms committed against them.

The Jackson Defendants are clearly liable to Plaintiffs pursuant to Masha's law because Masha's law is no ordinary tort statute. "Section 2255's purpose and provision of statutory damages differentiates it from an ordinary tort" and but-for causation is not required for liability. *Amy v. Curtis,* No. 19-CV-02184-PJH, 2021 WL 858399, at *4 (N.D. Cal. Mar. 8, 2021). The Jackson defendants' arguments fall short in acknowledging the clear congressional intent behind Section 2255 to provide robust remedies to child victims.

Here, "it is indisputable that [the Jacksons were] a part of the overall phenomenon that caused [Plaintiffs'] general losses. Just as it undermines the purposes of tort law to turn away plaintiffs harmed by several wrongdoers, it would undermine the remedial" purposes of section 2255 to dismiss Plaintiffs' claims in this case. *Paroline v. United States,* 572 U.S. 434, 457, 134 S. Ct. 1710, 1726, 188 L. Ed. 2d 714 (2014). The United States Supreme Court's decision in *Paroline* entitles victims of child pornography to seek remedies from all defendants who play any causal role in the harms underlying their losses. The Jackson Defendants are two of many actors which can be held liable for Plaintiff's harms caused by the Jackson's paid partnership with the YouTube Defendants which both parties monetized and profited from for years.

Further, no criminal conviction is necessary to prove or plead a legally cognizable claim under Masha's Law. *See Smith v. Husband*, 376 F. Supp. 2d 603, 613 (E.D. Va. 2005) *citing Sedima S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479 (1985) (finding that private action based on violation of a criminal predicate can proceed without a criminal conviction). The Jackson Defendants' long-winded and largely illogical chronology of events in their motion fail to actually argue or refute that Plaintiffs sufficiently plead that the Jacksons committed criminal violations. Plaintiffs have adequately plead such violations by the Jacksons and their claims against the Jacksons should prevail based on the allegations taken as true with all reasonable inferences in Plaintiffs favor.

Indeed, the word "violation" in Section 2255 does not mean "conviction" and "the predicate acts" required for civil liability need not "be established beyond a reasonable doubt" to establish liability. *See Prewett v. Weems*, 749 F.3d 454, 458 (6th Cir. 2014). The Jackson Defendants themselves profited from and monetized the grooming, sexual abuse, and exploitation of Plaintiffs on YouTube. *See United States v. Vasquez*, 654 F.3d 880, 885 (9th Cir. 2011); *United States v. Mortenson,* 306 F. App'x 385, 387 (9th Cir. 2009).

**3. The Jackson Defendants Are Liable to Plaintiffs Pursuant to §1595 or the TVPRA**

The Eleventh Circuit held that to prevail on a civil claim under §1595, a plaintiff must plausibly alleged facts that a defendant (1) knowingly benefited (2) from participation in a venture, (3) that venture violated the TVPRA as to the plaintiff, and (4) that the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA as to the plaintiff. *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 723-24 (11th Cir. 2021). Plaintiffs have clearly and sufficiently alleged that the Jacksons knowingly benefitted and profited from their

participation in an online sex trafficking venture victimizing Plaintiffs and that they had knowledge that this behavior violated sex trafficking statutes as to both Plaintiffs individually for years.

The Jackson Defendants, through their business relationship with YouTube, profited from and monetized their own abuse of Plaintiffs. Both the Jacksons and YouTube are liable to Plaintiffs. In *Fleites v. Mindgeek*, where the plaintiff sued a website run by Mindgeek and the credit card company, Visa, arguing that Visa's was liable for their participation in the Mindgeek sex trafficking operation. In regard to knowledge, the Court stated:

> If Visa knew MindGeek's sites contained a wealth of child porn and that MindGeek regularly placed ads alongside its videos, facts that are either expressly alleged or clearly implied in the [complaint], then it knew that MindGeek was regularly committing violations of section 1591(a)(2) by participating in hundreds or thousands of sex trafficking ventures and financially benefiting from such participation. With such knowledge, Visa continued to grant MindGeek the means to financially benefit from its participation in sex trafficking ventures: the Visa payment network. It does not matter that Visa did not know who the eventual victims or primary traffickers would be or whether Visa interacted with or knew of Plaintiff, her videos, or her traffickers. MindGeek's violation of section 1591(a)(2), and Plaintiff's resulting harm, were natural consequences of Visa's alleged ***knowing decision*** to provide the means through which MindGeek could monetize child porn videos, like those featuring Plaintiff.

*Fleites v. MindGeek S.A.R.L.*, 617 F. Supp. 3d 1146, 1163 (C.D. Cal. 2022) (emphasis added). Like Visa, the Jackson Defendants were both on notice of the ongoing luring and enticing of children through their own channels. Here, the Jackson Defendants could reasonably foresee the Jackson Defendants committing child sex trafficking crimes involving the Plaintiff. *United States v. Laney,* 189 F.3d 954, 965–66 (9th Cir.1999).

For these reasons, Plaintiff sufficiently alleged that Jackson Defendants knowingly committed violations of 18 U.S.C. §§ 2242 and 1591 and are thus liable under §§2255 and 1595. Plaintiffs also sufficiently alleged that the Jackson Defendants knowingly conspired each other together as well as with the YouTube Defendants to knowingly violate both 18 U.S.C. §§1595 and 2252.

#### 4. Rule 9 is Not Applicable

The Jackson Defendants attempt to attribute the Rule 9 pleading standard creatively to these claims. But Plaintiffs have not alleged any cause of action that would necessitate the Rule 9 pleading standard.

### C. Rule 11 Is Not Applicable

Defendants attempt to seek Rule 11 sanctions. Neither a safe harbor letter, nor the requisite legal standards are met. Without legal authority to justify such a request, nor compliance with the pre-filing requirements, Plaintiffs are unable to respond based on the merits and procedurally, Defendants' request must fail.

## IV. CONCLUSION

The Defendant's instant Motion to Dismiss is nothing more than an attempt to circumvent the liability imposed upon him under Section 2255 and 1595. Simply put, Plaintiffs are victims of the Jackson Defendants' criminal violations, and therefore, the Jackson Defendants are civilly liable under Section 2255 and 1595. A plain reading of Plaintiffs' Complaint clearly demonstrates that they have sufficiently pleaded a cause of action under Section 2255 and 1595 sufficient to survive a motion to dismiss.

In light of the foregoing, Plaintiffs' respectfully request that this Court enter an Order Denying the Jackson Defendants' Motion to Dismiss in its entirety and, in the alternative, grant Plaintiffs leave to amend the Second Amended Complaint in light of the Jackson Defendants' recent withdrawal of their Bankruptcy filing.

DATED: April 21, 2025

Respectfully Submitted,

*/s/ Lisa D. Haba*
Lisa D. Haba (*Pro hac vice)*
**THE HABA LAW FIRM, P.A.**

Margaret E. Mabie (*Pro hac vice)*
Robert Y. Lewis
**MARSH LAW FIRM PLLC**

*Attorneys for Plaintiffs*