**THE HABA LAW FIRM, P.A.**
Lisa D. Haba (*Pro Hac Vice*)
1220 Commerce Park Dr., Suite 207
Longwood, FL 32779
Telephone: (844) 422-2529
lisahaba@habalaw.com

***Counsel for Plaintiffs***

**MARSH LAW FIRM, PLLC**
Robert Y. Lewis (SBN 153948)
Margaret E. Mabie (*Pro Hac Vice*)
31 Hudson Yards, 11th Floor
New York, NY 10001
Telephone: (212) 372-3030
robertlewis@marsh.law
margaretmabie@marsh.law

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

IN RE YOUTUBE TRAFFICKING LITIGATION

Case No. 3:23-CV-05523-JD

**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS GOOGLE LLC AND YOUTUBE, LLC'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED THIRD AMENDED COMPLAINT**

Judge: Hon. James Donato
Place: Courtroom 11, 19th Floor
Date: June 12, 2025
Time: 10:00 AM

## TABLE OF CONTENTS

FACTUAL ALLEGATIONS ........ 1

ARGUMENT ........ 2

I. THE MOTION TO DISMISS STANDARD ........ 2

II. SECTION 230 IMMUNITY IS NOT APPLICABLE AND DOES NOT BAR PLAINTIFFS' CLAIMS ........ 3

III. PLAINTIFFS HAVE PLAUSIBLY ALLEGED CLAIMS UNDER 18 U.S.C. § 2255 7

IV. PLAINTIFFS HAVE PLAUSIBLY ALLEGED CLAIMS UNDER 18 U.S.C. § 1595 9

V. YOUTUBE DEFENDANTS HAVE CONVERTED THEIR 12 (b) (6) MOTION TO A RULE 56 MOTION ........ 13

CONCLUSION ........ 14

## TABLE OF AUTHORITIES

**Cases**

*Adams v. Johnson*, 355 F.3d 1179 (9th Cir. 2004) .......... 3

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .......... 18

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) .......... 3

*Barnes v. Yahoo!, Inc.,* 570 F.3d 1100 (9th Cir. 2009) .......... 4

*Barron v. Reich,* 13 F.3d 1370 (9th Cir.1994) .......... 17

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......... 3

*Bostock v. Clayton County, Georgia,* 140 S. Ct. 1731 (2020) .......... 9

*C.S. v. Wyndham Hotels & Resorts, Inc.*, 538 F. Supp. 3d 1284 (M.D. Fla. 2021) .......... 6

*Calise v. Meta Platforms, Inc.*, 103 F.4th 732 (9th Cir. 2024) .......... 12

*Chi. Lawyers' Comm. for Civ. Rts. Under Law, Inc. v. Craigslist, Inc.*, 519 F.3d 666 (7th Cir. 2008) .......... 12

*Doe v. Atascadero Unified Sch. Dist.*, No. CV 19-8636 DSF (Ex), 2022 U.S. Dist. LEXIS 211709 (C.D. Cal. Sep. 12, 2022) .......... 11

*Doe v. Boland*, 698 F.3d 877 (6th Cir. 2012) .......... 8

*Doe v. G6 Hosp'y, LLC*, No. 1:23-CV-2597-TWT, 2023 U.S. Dist. LEXIS 222360 (N.D. Ga. Dec. 14, 2023) .......... 13

*Doe v. Grindr Inc.*, 128 F.4th 1148 (9th Cir. 2025) .......... 15

Doe v. Internet Brands, 824 F.3d 846 (9th Cir. 2016) .......... 4

*Doe v. Liberatore,* 478 F.Supp.2d 742 (M.D.Pa. 2007) .......... 10

*Doe v. Peterson*, 784 F. Supp. 2d 831 (E.D.Mich. 2011) .......... 7

*Doe v. Presiding Bishop of Church of Jesus Christ of Latter-Day Saints,* 837 F. Supp. 2d 1145 (D. Idaho 2011) .......... 17

*Doe v. Schneider,* No. 08-3805, 2013 WL 5429229 (E.D. Pa. Sept. 30, 2013) .......... 9, 10

*Does v. Reddit, Inc.*, 51 F.4th 1137 (9th Cir. 2022) .......... 12

*Est. of Bride v. YOLO Tech., Inc.*, 112 F.4th 1168 (9th Cir. 2024) .......... 4

*Fair Hous. Council of San Fernando Valley v. Roommates.Com,* LLC, 521 F.3d 1157 (9th Cir. 2008) ........ 5
*Fleites v. MindGeek S.A.R.L.*, 617 F.Supp.3d 1146 (C.D. Cal. 2022) ........ 14, 15
*Franza v. Royal Caribbean Cruises, Ltd.*, 772 F.3d 1225 (11th Cir. 2014) ........ 10
*G.G. v. Salesforce.Com, Inc.*, 76 F.4th 544 (7th Cir. 2023) ........ 12
Gray v. Toyota Motor Sales, U.S.A., Inc., 554 F. App'x 608 (9th Cir. 2014) ........ 3
*Holmes v. Lerner*, 74 Cal. App. 4th 442, 88 Cal. Rptr. 2d 130 (1999) ........ 7
*HomeAway.com, Inc. v. City of Santa Monica*, 918 F.3d 676 (9th Cir. 2019) ........ 4
*In re Hotel TVPRA Litig.,* No. 2:22-CV-1924, 2023 WL 3075851 (S.D.Ohio Apr. 25, 2023) ........ 9
In re Tracht Gut, LLC, 836 F.3d 1146 (9th Cir. 2016) ........ 3, 5
*Interstate Nat. Gas Co. v. S. Cal. Gas Co.,* 209 F.2d 380 (9th Cir.1953) ........ 17
*Jane Doe No. 8 v. Royal Caribbean Cruises*, *Ltd.*, 860 F.Supp.2d 1337 (S.D.Fla. 2012) ........ 9, 10
*Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365 (6th Cir. 2015) ........ 10
*M.A. ex rel. P.K. v. Village Voice Media Holdings*, LLC, 809 F.Supp.2d 1041 (E.D. Mo. 2011) ........ 9
*Mavrix Photographs, Ltd. Liab. Co. v. LiveJournal, Inc*., 873 F.3d 1045 (9th Cir. 2017) ........ 6
*McCandless Grp., LLC v. Coy Coll., Inc*., No. 2:21-cv-02069-DOC-KES, 2022 U.S. Dist. LEXIS 54450 (C.D. Cal. Feb. 14, 2022) ........ 7
*McIntyre v. Kavanaugh*, 242 U.S. 138 (1916) ........ 7
*N.S. v. Rockett*, No. 3:16-CV-2171-AC, 2018 U.S. Dist. LEXIS 223678 (D. Or. Oct. 19, 2018) ........ 11
*Paroline v. United States,* 572 U.S. 434 (2014) ........ 9
*Parrino v. FHP, Inc.,* 146 F.3d 699 (9th Cir.1998) ........ 16
*Prewett v. Weems*, 749 F.3d 454 (6th Cir. 2014) ........ 11
*Sarcuni v. bZx DA*, 664 F. Supp. 3d 1100 (S.D. Cal. 2023) ........ 7
*Sedima S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479 (1985) ........ 11
Smith v. Husband, 376 F.Supp.2d 603 (E.D.Va. 2005) ........ 10, 11

*Stockwell v. U.S.*, 80 U.S. 531 (1871) ........ 7

*Tyla D. v. MGM Resorts Int'l,* No. 2:24-cv-00698-APG-BNW, 2024 U.S. Dist. LEXIS 210612 (D. Nev. Nov. 19, 2024) ........ 13

*United States v. Ritchie,* 342 F.3d 903 (9th Cir.2003) ........ 17

*Van Buskirk v. CNN,* 284 F.3d 977 (9th Cir.2002) ........ 17

**Statutes**

18 U.S.C. § 1591(a)(2) ........ 9

18 U.S.C. § 2255 ........ 7

18 USC §1595 ........ 9

**Other Authorities**

Restatement (Third) Of Agency § 1.01 ........ 5

## FACTUAL ALLEGATIONS

Google is the parent company of YouTube (collectively the "YouTube Defendants") and both monetized the YouTube platform. (Consolidated TAC). YouTube offers eligible creators that meet specific criteria the opportunity to join its YouTube Partnership Program ("YPP"). (Id. ¶¶ 94-95). The YPP their partners to enter contractual relationship and agree to abide by the YouTube Terms of Service and Community Guidelines ("TOS"), while the YouTube Defendants monetize the relationship by managing and promoting all the matching of videos with advertisers, advertising placements and adjustments, monitoring of traffic/views to page, monitoring of ad responses, and revenue collection. (Id. ¶¶ 96-98, 117). YouTube helps its partners grow, expand, and increase profitability. (Id. ¶¶ 109-15, 142). YouTube designed its algorithm to "recommend" and promote certain partners and drive the activity on YouTube. (Id. ¶ 103). Both YouTube and the creator share profits earned from this joint-venture and partnership program. (Id. ¶¶ 106, 131-32).

Defendant James Jackson ("Onision") joined the YPP and YouTube monetized their relationship. (Id. ¶¶ 163-64). Around 2012, Onision and his spouse ("Lucas") (collectively the "Jackson Defendants") used the YPP to groom and lure underage girls through the Onision YouTube channels and forums, and they targeted engagement from minor girls and teens (Id. ¶¶165, 183-85). The YouTube Defendants were independently monitoring Onision's content as a YPP creator in order to match and place advertisements that were most appealing to his content viewers. (Id. ¶¶ 96-97, 140, 143). The YouTube Defendants received actual and constructive knowledge about the Jackson Defendants and their luring and enticing of children through numerous means. Such notice includes: (1) in 2012, YouTube was notified by numerous people that Onision violated their TOS and should terminate Onision from the YPP (id. ¶¶39-44, 178); (2) a change.org petition was sent to YouTube asking that Onision be demonetized based on violations of the TOS (id. ¶ 169); (3) viewers reported Onision's violations of the TOS and grooming tactics

to AdSense, which is one of the Google programs that matches ads to the individual YouTube website based on content and visitors to maximize monetization, (id. ¶¶ 170-71); and (4) multiple viewers flagged his videos that were offensive and violated the TOS through YouTube's video reporting feature, (id. ¶¶ 172-73, 276). YouTube nonetheless continued the profit–sharing relationship with Onision and facilitated the dangerous environment on its platform. By contrast, when VidCon received similar feedback, it was alarming enough that they removed him as a speaker and banned his attendance at their conference. (Id. ¶ 174-78).

12-year-old Regina Alonso discovered Onision's channels after she googled "How to Kill Yourself" and the Google algorithm suggested Onision's monetized YouTube content. (Id. ¶ 204). Onision's channel and content lured and enticed this young child to watch more and more of his videos. (Id. ¶ 205). Ultimately, Lucas ended up sending and soliciting child pornography from Alonso and the Jackson's lured and enticed her to visit the Jackson's at the their home for the purpose of engaging in sexual activity with her while she was still a minor. (Id. ¶¶ 208-39).

Starting at age 16, Sarah began traveling to visit the Jackson's numerous times, where she was groomed by the Jackson's. (Id. ¶¶ 56-57). After Onision raped Sarah, he began posting numerous videos on YouTube to attack, humiliate and silence Sarah, furthering the harm to Sarah. (Id. ¶¶ 388-98). Only after being repeatedly publicly exposed, YouTube demonetized Onision in or about 2021. (Id. ¶ 402). YouTube stated that "Onision violated the Partner Program's Creator Responsibility guidelines. These mandate that partners not engage in behavior (either on- or off-platform) that can cause widespread harm to the YouTube community, and potentially damage the trust among creators, users, and advertisers." (Id. ¶ 403).

## ARGUMENT

### I. THE MOTION TO DISMISS STANDARD

Rule 8(a) requires that a complaint contain "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). To survive a motion to dismiss for failure

to state a claim under Fed.R.Civ.P. 12(b)(6), a complaint must allege "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)

A court must construe the complaint's allegations "in the light most favorable to the nonmoving party" *Gray v. Toyota Motor Sales, U.S.A., Inc.*, 554 F. App'x 608, 608–09 (9th Cir. 2014) (internal citations omitted), and "accept as true all facts alleged in the complaint and draw all reasonable inferences in favor of the plaintiff." *In re Tracht Gut, LLC*, 836 F.3d 1146, 1150 (9th Cir. 2016) (internal citations omitted). Plausibility is not akin to probability. *Iqbal*, 556 U.S. at 678. Ultimately, dismissal is proper where "it appears beyond doubt that the non-movant can prove no set of facts to support its claims." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

## II. SECTION 230 IMMUNITY IS NOT APPLICABLE AND DOES NOT BAR PLAINTIFFS' CLAIMS

The YouTube Defendants claim that Plaintiff's claims should be dismissed because they have immunity pursuant to Section 230 of the Communications Decency Act ("CDA 230"). Plaintiff's claims fall outside of CDA 230 for three reasons: (1) Plaintiffs do not seek to treat the YouTube Defendants as a publisher or speaker, (2) the YPP creates an agency relationship with YouTube, and (3) the YPP creates a profit–sharing partnerships relationship with YouTube.

**Not a Publisher or Speaker.** CDA 230 bars causes of action that treat an internet service provider as a publisher or speaker of third-party content. *Est. of Bride v. YOLO Tech., Inc.*, 112 F.4th 1168, 1176 (9th Cir. 2024) (citing *Barnes v. Yahoo!, Inc.,* 570 F.3d 1100, 1101 (9th Cir. 2009)). But rather than treating Facebook as a publisher or speaker of harmful content provided by others, Plaintiff's claims seek to treat YouTube as (1) the authoritative partner in a dangerous partnership, (2) a material contributor to the harmful content, (3) a distributor of their harmful

partner's dangerous content, and/or (4) a known profiteer of their harmful partner's dangerous content.

CDA 230 only provides immunity from claims that seek to treat an ICS as a publisher or speaker of third–party content. 47 U.S.C. §230(c) s*ee also HomeAway.com, Inc. v. City of Santa Monica*, 918 F.3d 676, 682 (9th Cir. 2019) (city ordinance did not require the online platforms to monitor third–party content and thus fell outside of CDA 230 immunity); *Gonzalez v. Google LLC*, 2 F.4th 871, 898–99 (9th Cir. 2021), *cert. vacated and remanded*, 143 S. Ct. 1191 (2023)￼(plaintiff's revenue–sharing allegations were not directed to any third–party content that Google should have allegedly removed and therefore CDA 230 is not applicable); *Doe v. Internet Brands*, 824 F.3d 846, 851 (9th Cir. 2016) (Internet Brands did not get CDA 230 immunity because using information found from source other than monitoring posts online meant they were not treated as a publisher or speaker of content when they failed to warn plaintiff of harm).

Here, Plaintiffs' claims do not treat the YouTube Defendants as the publisher or speaker of any content; instead, Plaintiffs intend to hold YouTube responsible for its own actions and its own material contribution to contributing to, enabling, and participating in or profiting from the harms committed against Plaintiffs. Plaintiffs do not contend that any specific content or channel(s) required moderation by the YouTube Defendants. Like *Internet Brands*, Google and YouTube were made aware of Onision's risky and harmful conduct through alternative means—complaints made directly to the company, which means their conduct falls outside of CDA 230. "The CDA does not grant immunity for inducing third parties to express illegal preferences." *Fair Hous. Council of San Fernando Valley v. Roommates.Com,* LLC, 521 F.3d 1157, 1165 (9th Cir. 2008).

YouTube has attempted to recharacterize Plaintiff's legal theory as liability based on monitoring third-party content on the platform. But this rebranding of Plaintiff's legal theory does not conform with this Circuit's standard. Rather, this Court must "accept as true all facts alleged in the complaint and draw all reasonable inferences in favor of the plaintiff." *In re Tracht Gut,* 836

F.3d at 1150. Plaintiffs have plausibly alleged that the YouTube Defendants were made aware that Onision was violating the law and grooming children. Therefore, YouTube is not immune from liability for its role in being independently notified of Onision's illegal behavior and risky business, but still choosing to partner with him and profit from this illegal conduct.

**Agency Relationship:** An agency relationship exists where an agent has authority to act on behalf of the principal and the principal has a right to control the actions of the agent. *Mavrix Photographs, Ltd. Liab. Co. v. LiveJournal, Inc.*, 873 F.3d 1045, 1054 (9th Cir. 2017) (citing Restatement (Third) Of Agency § 1.01). Here, Plaintiffs have submitted attached to their Consolidated TAC the report and statement of John P. Branagan which establishes, when taken as true, the clear and obvious context in which Onision was an agent of YouTube and Google. Indeed, Onision's fame and following which connected him to Plaintiffs would not have existed but-for YouTube's partnership with him. Onision became an agent and contractor in a profit-sharing, contractual relationship with YouTube for two reasons. ***First***, the YPP acknowledged that Onision would act on its behalf, posting content of his own creation, but within the confines of the TOS; in exchange, YouTube agreed to profit share for the ad revenue generated from that content. ***Second***, YouTube has the contractual right to control Onision's conduct, both on and offline, and consequently, this right gives rise to an agency relationship. *See C.S. v. Wyndham Hotels & Resorts, Inc.*, 538 F. Supp. 3d 1284, 1299 (M.D. Fla. 2021) (franchisee was an agent of the franchisor because franchisor exercised control over the means and methods of how those defendants conducted business, such as by profit sharing, standardized training, standardized rules of operation, regular inspection, and price fixing).

**Profit-Sharing Partnership Relationship:** "Generally, partners are individually liable for torts committed by their firm or other partners when they are acting within the scope of its business whether they personally participate or not." *Doe v. Peterson*, 784 F.Supp.2d 831, 844–45 (E.D.Mich. 2011) (citing *McIntyre v. Kavanaugh*, 242 U.S. 138, 139 (1916)); *see also Stockwell v.*

*U.S.*, 80 U.S. 531, 547-48 (1871). "This is true even if the defendant has no knowledge of his partner's wrongdoing." *See McIntyre*, 242 U.S.at 140 (holding defendant personally liable for fraud his partners committed without his authority, knowledge, or consent).

Several factors are considered in determining whether two parties are in a partnership. Profit sharing alone is prima-facie evidence that two parties are partners. *Sarcuni v. bZx DA*, 664 F. Supp. 3d 1100, 1116 (S.D. Cal. 2023) (citing *Holmes v. Lerner*, 74 Cal. App. 4th 442, 457, 88 Cal. Rptr. 2d 130, 141 (1999)). The partnership is also demonstrated by each of the partners sharing some degree of management and control of the business. *McCandless Grp., LLC v. Coy Coll., Inc.*, No. 2:21-cv-02069-DOC-KES, 2022 U.S. Dist. LEXIS 54450, at *28 (C.D. Cal. Feb. 14, 2022). Plaintiffs, having submitted with their Consolidated TAC the report of Professor John P. Branagan attached and incorporated, which alleges and claims that there was an exiting partnership between YouTube and Onision before, during, and after they were directly trafficked and abused by Onision. Lainey, Google and YouTube.

There is no question that the YouTube Defendants and Onision were acting as partners as they each shared profits, Onision agreed to post content within the restrictions of the TOS Agreement, and Google/YouTube in response matched the content Onision created with advertisers, and decided what ad appeared, tracked the views, and recommended content through their algorithm. Furthermore, Google's non–neutral algorithm was designed to help its paid content creators, like Onision, maximize their shared profit by recommending videos and driving viewers to their pages. In other words, Onision created the content and was the labor or talent in the partnership (front end of the house), and Google placed ads on his YouTube page, driving viewers to the page with ads thereby monetizing the content as the investment side of the partnership (back end of the house).

Most importantly, because this was a partnership, the normal CDA 230 caveat that YouTube does not need to monitor the content of its website does not apply. Had Onision been an

unmonetized, random person, his content would not have triggered liability. Rather, because he was a monetized YouTube contractual partner, Onision was YouTube's business partner, was in a business venture with the YouTube Defendants, and YouTube and Google have liability for their partner's tortious conduct since it was committed in the ordinary course of business.

## III. PLAINTIFFS HAVE PLAUSIBLY ALLEGED CLAIMS UNDER 18 U.S.C. § 2255

Section 2255 provides remedy to any person who can show by a preponderance of the evidence that, while a minor, they were victim of a predicate criminal act. *Doe v. Boland*, 698 F.3d 877, 880 (6th Cir. 2012). As Plaintiffs properly alleged, the YouTube Defendants themselves violated two predicate statutes, 18 U.S.C. §§2242 and 1591, against Plaintiffs entitling them to relief under 18 U.S.C. §§2255 (hereinafter "Masha's Law"). The YouTube Defendants claim that section 2255 does not permit vicarious or secondary liability and therefore the claims must be dismissed.[1] The YouTube Defendants' argue against secondary liability, but courts nationwide that have held it is proper.[2] Statutory construction clearly permits such secondary liability. Looking at the plain text, Masha's Law is silent on *who* may be sued and notably fails to restrict claims. YouTube Defendants ultimately asked this Court to rewrite Masha's Law to suit their purpose and limit who may be sued. Had Congress intended such a limitation on who could be sued, it would have codified the same. *Bostock v. Clayton County, Georgia,* 140 S. Ct. 1731, 1738 (2020) (courts must interpret a statute based on the ordinary meaning and not add or subtract words through judicial interpretation); *Royal Caribbean*, 860 F.Supp.2d at 1341 (to limit liability to only the direct

---

[1] The YouTube Defendants gloss over the fact that the YouTube Defendants were not only in a secondary liability role; they were also partners and were profit–sharing with Onision.

[2] *See Jane Doe No. 8 v. Royal Caribbean Cruises, Ltd.*, 860 F.Supp.2d 1337, 1340 (S.D.Fla. 2012) ; *In re Hotel TVPRA Litig.*, No. 2:22-CV-1924, 2023 WL 3075851, at *7 (S.D.Ohio Apr. 25, 2023); *Doe v. Schneider,* No. 08-3805, 2013 WL 5429229, at *11 (E.D. Pa. Sept. 30, 2013); *M.A. ex rel. P.K. v. Village Voice Media Holdings*, LLC, 809 F.Supp.2d 1041, 1053-55 (E.D. Mo. 2011).

perpetrators of the predicate acts underlying §2255 would add language to the statute not codified by Congress).

The YouTube Defendants wish to treat the criminal predicate acts as equivalent to 18 U.S.C. § 2255 by demanding only the perpetrator of the underlying criminal act can be liable civilly. This argument again fails because Congress created the predicate criminal offenses and §2255 for different purposes and created Masha's law for remedial purposes. *Paroline v. United States,* 572 U.S. 434, 457 (2014). Symmetry in criminal and civil liability is not required. *Royal Caribbean*, 860 F.Supp.at 1340. "[W]hile §2255 requires that the victim sustain an injury "as a result" of a predicate criminal violation, that causation requirement does not mean that only the criminal offender may be held liable." *Id.* at 1343. Masha's Law only requires that the plaintiff prove, by a preponderance of the evidence, that a violation of the predicate act occurred – and it does not limit who can be liable for such a violation. *Smith v. Husband,* 376 F.Supp.2d 603, 613 (E.D.Va.2005), *Liberatore,* 478 F.Supp.2d at 756; *Schneider,* No. 08-3805 at *11; *Village Voice*, 809 F.Supp.2d at 1053-55. Vicarious liability need not require a formal agency relationship; it may also be based on principals of apparent authority and ratification. *Franza v. Royal Caribbean Cruises, Ltd.*, 772 F.3d 1225, 1251 (11th Cir. 2014); *Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 372 (6th Cir. 2015). The YouTube Defendants had an agency relationship with Onision and apparent authority over his activity since they held the purse strings. The YouTube Defendants argue that Plaintiff's allegations should be dismissed because they did not commit the criminal acts enumerated in §2422 or 1591(a). This argument fails. The YouTube Defendants were party to multiple violations of Masha's Law predicate offenses. "Masha's Law does not require a defendant to have been criminally convicted of the predicate offense — a civil claimant need only prove by a preponderance of the evidence that the defendant violated the enumerated statute." *Doe v. Atascadero Unified Sch. Dist.*, No. CV 19-8636 DSF (Ex), 2022 U.S. Dist. LEXIS 211709, at *7 (C.D. Cal. Sep. 12, 2022) (citing *Prewett v. Weems*, 749 F.3d 454, 458 (6th Cir. 2014)); *see also*

*N.S. v. Rockett*, No. 3:16-CV-2171-AC, 2018 U.S. Dist. LEXIS 223678, at *5 (D. Or. Oct. 19, 2018); *Husband*, 376 F. Supp. 2d at 613 (citing *Sedima S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479 (1985).

The First Consolidated FAC plausibly alleges sufficient facts to support a civil allegation that the YouTube Defendants engaged in participant sex trafficking liability, 18 U.S.C. § 1591(a)(2), as explained *infra* IV, and a civil allegation that the YouTube Defendants engaged in by continuing to fund Onision's platform as he and his spouse, working together, used it to induce, entice and coerce both Plaintiffs (at separate times) to travel across state lines to engage in sexual activity with Onision and Lucas. YouTube was notified of this harm, but still chose to profit-share until the public exposure shamed the YouTube Defendants into demonetizing Onision.

## IV. PLAINTIFFS HAVE PLAUSIBLY ALLEGED CLAIMS UNDER 18 U.S.C. § 1595

The YouTube Defendants erroneously argue that Plaintiff's claims do not plausibly allege that YouTube violated the TVPRA, 18 U.S.C. §1595. All of Defendants' arguments hinge on *Does v. Reddit, Inc.,* 51 F.4th 1137, 1141 (9th Cir. 2022). But this is irrelevant because Plaintiffs do not allege that their claims rely on the FOSTA exception to the TVPRA; rather, Plaintiffs rely on the TVPRA outside of the FOSTA exception.

Section 1595 creates two kinds of civil liability: perpetrator liability and participant liability. *G.G. v. Salesforce.Com, Inc.*, 76 F.4th 544, 548 (7th Cir. 2023). Looking at the text of 230, the Ninth Circuit acknowledged that § 230(c)(1) does not 'declare[] a general immunity from liability deriving from third-party content.'" *Calise v. Meta Platforms, Inc.*, 103 F.4th 732, 740 (9th Cir. 2024). Indeed, § 230(c)(1) "does not mention 'immunity' or any synonym" to immunity. *Id.* (quoting *Chi. Lawyers' Comm. for Civ. Rts. Under Law, Inc. v. Craigslist, Inc.*, 519 F.3d 666, 669 (7th Cir. 2008)). To bring a claim for civil perpetrator liability under Section 1595, Plaintiffs must allege that (1) a venture has engaged in a violation of the TVPRA, (2) the defendant(s) knew or should have known that the venture had violated the TVPRA, (3) the defendants(s) participated

in the venture, and (4) the defendants knowingly benefitted from their participation. *Salesforce*, 76 F.4th at 553 (the court reorganized the elements for logical sequence); 18 U.S.C. § 1595(a).

**Element 1: A Venture has Engaged in a Violation of the TVPRA.** The first element requires the Plaintiffs to plead that a venture exists. **"**Under the TVPRA, a 'venture' is 'any group of two or more individuals associated in fact.'" *Doe v. Mindgeek USA Inc*., 558 F. Supp. 3d 828, 837 (C.D. Cal. 2021) (citing 18 U.S.C. § 1591(e)(6)).

A "venture need not be primarily a *sex-trafficking* venture." *Salesforce,* 76 F.4th at 556; *Doe v. G6 Hosp'y, LLC*, No. 1:23-CV-2597-TWT, 2023 U.S. Dist. LEXIS 222360, at *15 (N.D. Ga. Dec. 14, 2023) ("the Seventh Circuit has considered this venture theory and provided a well-reasoned explanation for concluding that § 1595(a) does not require the 'venture' to be a sex-trafficking venture."); *see also Tyla D. v. MGM Resorts Int'l,* No. 2:24-cv-00698-APG-BNW, 2024 U.S. Dist. LEXIS 210612 (D. Nev. Nov. 19, 2024) ("A venture under § 1595 can be an isolated act of sex trafficking, or it can also be a business whose primary focus is not on sex trafficking).

Onision and the YouTube Defendants were in a contractual, profit-sharing business relationship through the YPP, which lured, enticed, and recruited young, vulnerable children. Plaintiffs have plausibly alleged the existence of a venture that violated the TVPRA.

**Element 2: Knew or Should Have Known.** It is well-settled that the *mens rea* for participant liability is a negligence standard.[3] Plaintiffs have plausibly alleged that the YouTube

---

[3] See *Red Roof,* 21 F.4th at 725; *Lundstrom v. Choice Hotels Int'l, Inc.*, No. 21-cv-00619-PAB-SKC 2021 U.S. Dist. LEXIS 228651, at *5 (D. Colo. Nov. 30, 2021); *Mindgeek*, 558 F. Supp. 3d at 839; *M.L. v. Craigslist Inc.*, No. C19-6153 BHS-TLF, 2020 U.S. Dist. LEXIS 166334, 2020 WL 5494903, at *5-6 (W.D. Wash. Sept. 11, 2020); *B.M. v. Wyndham Hotels & Resorts, Inc.*, No. 20-cv-00656-BLF, 2020 U.S. Dist. LEXIS 135494, 2020 WL 4368214, at *5-6 (N.D. Cal. July 30, 2020); *S.J. v. Choice Hotels Int'l, Inc.,* 473 F. Supp. 3d 147, 154 (E.D.N.Y. 2020); *S.W. v. Lorain-Elyria Motel, Inc.,* No. 2:19-CV-1194, 2020 U.S. Dist. LEXIS 44961, at *15 (S.D. Ohio Mar. 16, 2020); *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 965-68 (S.D. Ohio 2019).

Defendants had actual or constructive knowledge that the venture violated the TVPRA as to the plaintiff.

In *Fleites v. MindGeek S.A.R.L.*, 617 F.Supp.3d 1146 (C.D. Cal. 2022) the plaintiff sued a website run by Mindgeek and the credit card company, Visa, arguing that Visa's was liable for their participation in the Mindgeek sex trafficking operation. In regard to knowledge, the Court stated that Mindgeek was rife with child pornography and Visa (like YouTube) regularly placed ads alongside its videos and gave Mindgeek access to its payment network. It was held that this was enough to draw the plausible inference that Visa knew or should have known that the Mindgeek venture was in violation of Section 1591. *Id.* at 1163. Like Visa, the YouTube Defendants were matching Onision's video content with advertisers, were doing all the advertising placements and adjustments, were monitoring the traffic to Onision's channels, were monitoring the ad responses, and collecting revenue from the advertising efforts. The YouTube Defendants were notified repeatedly that Onision was violating the TOS yet continued to allow him to remain a part of YPP program. Onision's YouTube channel videos invited his young teenage followers to send pictures of their bodies to him so he could "rate" them, he invited these children to message him. Like Visa, this plausibly alleges that at the YouTube Defendants should have known their YPP Partner's activity.

Additionally, the YouTube Defendants maintained expansive control over Onision. YouTube Defendants held the power to demonetize any YPP Partner that broke their TOS. (Id. ¶¶ 88, 91). The *Fleites* Court stated "[w]hen MindGeek crosses the line . . . Visa crack[ed] the whip and MindGeek respond[ed] vigorously.[] Yet, here is Visa, standing at and controlling the valve, insisting that it cannot be blamed for the water spill because someone else is wielding the hose." *Id.* at 1156-57. Likewise, after public outcry and a documentary exposed YouTube's negligence, the YouTube Defendants finally did demonetize Onision in 2021. The YouTube Defendants, like Visa, controlled the money flow for the Jackson Defendants, demonetized him, but claim they

cannot be blamed for the environment they paid him to create and helped to foster because the Jackson defendants are "wielding" the proverbial "hose." Plaintiff plausibly alleged that the YouTube Defendants knew or should have known that Onision and Lucas both lured and enticed children, including Plaintiffs, on and offline and nonetheless continued to profit-share with them.

**Element 3: Participation in the Venture.** In the context of a civil suit, the meaning of "participation" in a venture in the civil context does *not* require more than "assisting, supporting, or facilitating a venture" that violates the TVPRA. *Doe v. Grindr Inc.*, 128 F.4th 1148, 1155 (9th Cir. 2025).

A sex trafficking scheme is not a simple criminal act; like racketeering, it is a complex and multi-step process to locate, groom, and exploit a person and uses legitimate businesses in the process to execute the scheme. ***Step one***, the trafficker needs to find, lure, entice, recruit, and solicit the potential victim(s). Frequently, online websites and platforms are used for this step – in part, because it provides the trafficker with a larger pool of potential victims to choose from, and in part, because conducting this step online provides the trafficker with more anonymity to avoid getting caught. ***Step two***, the trafficker will groom and coerce the selected target to become their victim. This can involve promises, threats, violence, love, fraud, deceit, controlled substances, or any other means to prey on that victim's vulnerabilities. Children are particularly susceptible to grooming. ***Step three*****,** the trafficker will exploit their victim. Frequently, hotels and motels are used for this step – the buyers of sex want the security of going to a hotel/motel instead of a private residence where they might get attacked, and the trafficker wants a location that can change easily if the police become aware of what is occurring. At any stage of this scheme, a business can elect to profit by participating in that portion of the venture. Lawsuits have been brought against internet companies who engage in step one, and separately, lawsuits have been brought against hospitality businesses, such as hotels and motels, that engage in step three.

The YouTube Defendants are liable for plausibly participating in a venture for their role in Part I.

**<u>Element 4</u>: Knowing Benefit.** The fourth element requires the Court to address if the YouTube Defendants *knowingly benefited by receiving some value* for participation in the alleged venture, which is not disputed.

## V. YOUTUBE DEFENDANTS HAVE CONVERTED THEIR 12 (b) (6) MOTION TO A RULE 56 MOTION

"When ruling on a Rule 12(b)(6) motion to dismiss, if a district court considers evidence outside the pleadings, it must normally convert the 12(b)(6) motion into a Rule 56 motion for summary judgment, and it must give the nonmoving party an opportunity to respond." *See* Fed.R.Civ.P. 12(b); *Parrino v. FHP, Inc.,* 146 F.3d 699, 706 n. 4 (9th Cir.1998). Here, the YouTube defendants have attached a version of their YouTube Partnership Agreement to their Motion to Dismiss as extrinsic evidence for the Court to consider, which is outside the four-corners of the Complaint.

The fact that Plaintiffs attached evidence to their complaint does not permit Defendants to do the same. *Doe v. Presiding Bishop of Church of Jesus Christ of Latter-Day Saints,* 837 F. Supp. 2d 1145, 1156 (D. Idaho 2011). Moreover, the report of John P. Branagan supported Plaintiff's plausible claims but was not referred to "extensively" throughout the complaint nor does it "form[ ] the basis of the ... claim." *United States v. Ritchie,* 342 F.3d 903, 908 (9th Cir.2003). "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.* (citing *Van Buskirk v. CNN,* 284 F.3d 977, 980 (9th Cir.2002)); *Barron v. Reich,* 13 F.3d 1370, 1377 (9th Cir.1994); *James Wm. Moore et al., Moore's Federal Practice* § 12.34[2] (3d ed.1999). Plaintiffs did not ask this Court to take judicial notice of the Partnership agreement, nor are extrinsic documents appropriate for judicial

notice because they are not records and reports or administrative bodies. *Interstate Nat. Gas Co. v. S. Cal. Gas Co.,* 209 F.2d 380, 385 (9th Cir.1953). Nor do they constitute facts "not subject to reasonable dispute ... capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201.

While Defendant attempts to argue against the strength of Plaintiff's evidence and the declaration of John P. Baranga, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge… The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248.

## CONCLUSION

For all the above reasons, Plaintiffs respectfully request that this court Deny the Defendant's Motion to Dismiss in its entirety, and/or, to convert the motion to a Rule 56 Motion and Deny this Motion as well.

DATED: May 12, 2025

Respectfully Submitted,

*/s/ Lisa D. Haba*
Lisa D. Haba
**THE HABA LAW FIRM, P.A.**
1220 Commerce Park Dr., Suite 207
Longwood, FL 32779
Telephone: (844) 422-2529
lisahaba@habalaw.com

*/s/ Margaret E. Mabie*
Margaret E. Mabie
Robert Y. Lewis
**MARSH LAW FIRM PLLC**
31 Hudson Yards, 11th Floor
New York, New York 10001
Telephone: (212) 372-3030
margaretmabie@marsh.law
robertlewis@marsh.law

*Attorneys for Plaintiff* Regina *Alsonso*