BRIAN M. WILLEN (*Pro Hac Vice*)
BENJAMIN D. MARGO, SBN 348644
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue of the Americas, 40th Floor
New York, NY 10019-6022
Telephone: (212) 999-5800
Facsimile: (212) 999-5801
Email: bwillen@wsgr.com
bmargo@wsgr.com

AMIT Q. GRESSEL, SBN 307663
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
One Market Plaza
Spear Tower, Suite 3300
San Francisco, CA 94105-1126
Telephone: (415) 947-2000
Facsimile: (866) 974-7329
Email: agressel@wsgr.com

*Attorneys for Defendants*
GOOGLE LLC and YOUTUBE, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO

| | |
|---|---|
| IN RE YOUTUBE TRAFFICKING LITIGATION | Case No.: 3:23-cv-05523-JD<br><br>**REPLY IN SUPPORT OF GOOGLE LLC AND YOUTUBE, LLC'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED THIRD AMENDED COMPLAINT**<br><br>Date: June 12, 2025<br>Time: 10:00 a.m.<br>Courtroom 11, 19th Floor<br><br>Before: Hon. James Donato |

# TABLE OF CONTENTS

**Page**


INTRODUCTION .......... 1

I. PLAINTIFFS CANNOT EVADE SECTION 230 .......... 2

A. As Judge Chhabria Already Found, Plaintiffs' Section 2255 and 1595 Claims Treat YouTube as a Publisher of Third-Party Content .......... 2

B. Plaintiffs' Agency and Partnership Theories Fail .......... 4

C. Plaintiffs Concede That They Cannot Make It Through the FOSTA Gateway .......... 6

II. PLAINTIFFS' CLAIMS FAIL EVEN WITHOUT SECTION 230 .......... 7

A. Plaintiffs Have Not Plausibly Alleged Claims Under Section 2255 .......... 7

B. Plaintiffs Have Not Plausibly Alleged Claims Under Section 1595 .......... 8

III. PLAINTIFFS CANNOT TRANSFORM YOUTUBE'S MOTION INTO ONE FOR SUMMARY JUDGMENT .......... 9

CONCLUSION .......... 10

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Amy v. Curtis*,
2020 U.S. Dist. LEXIS 163599 (N.D. Cal. Sept. 8, 2020)....7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....4

*Bartenwerfer v. Buckley*,
598 U.S. 69 (2023)....6

*Boim v. Holy Land Found. for Relief & Dev.*,
549 F.3d 685 (7th Cir. 2008) (en banc)....7

*Carvalho v. Equifax Info. Servs., LLC*,
629 F.3d 876 (9th Cir. 2010)....1

*Daza v L.A. Cmty. Coll. Dist.*,
247 Cal. App. 4th 260 (2016)....6

*Delta Sav. Bank v. United States*,
265 F.3d 1017 (9th Cir. 2001)....1

*Doe 1 v. Apple, Inc.*,
96 F.4th 403 (D.C. Cir. 2024)....8

*Doe No. 8 v. Royal Caribbean Cruises, Ltd.*,
860 F. Supp. 2d 1337 (S.D. Fla. 2012)....7

*Doe v. Grindr Inc.*,
128 F.4th 1148 (9th Cir. 2025)....3, 6

*Doe v. Internet Brands, Inc.*,
824 F.3d 846 (9th Cir. 2016)....2, 3

*Doe v. Liberatore*,
478 F. Supp. 2d 742 (M.D. Pa. 2007)....8

*Doe v. Mindgeek USA Inc.*,
558 F. Supp. 3d 828 (C.D. Cal. 2022)....9

*Doe v. Red Roof Inns, Inc.*,
21 F.4th 714 (11th Cir. 2021)....8

*Doe v. Schneider*,
2013 U.S. Dist. LEXIS 140274 (E.D. Pa. Sept. 30, 2013)....8

*Doe v. Twitter, Inc.*,
2023 U.S. App. LEXIS 10808 (9th Cir. May 3, 2023)....6

*Does 1-6 v. Reddit, Inc.*,
51 F.4th 1137 (9th Cir. 2022)....6, 9

*Est. of Bride v. YOLO Techs., Inc.*,
112 F.4th 1168 (9th Cir. 2024),
*cert. denied*, 2025 U.S. LEXIS 1097 (Mar. 24, 2025) ........................................ 3, 4

*Fair Housing Coun. of San Fernando Valley v. Roommates.com, LLC*,
521 F.3d 1157 (9th Cir. 2008)........................................................................ 4

*Fleites v. MindGeek S.A.R.L.*,
617 F. Supp. 3d 1146 (C.D. Cal. 2022).......................................................... 8, 9

*G.G. v. Salesforce.com, Inc.*,
76 F.4th 544 (7th Cir. 2023)...................................................................... 1, 6, 8

*Henderson v. Select Portfolio Servs.*,
2016 U.S. Dist. LEXIS 35515 (N.D. Cal. Mar. 17, 2016),
*aff'd*, 691 F. App'x 897 (9th Cir. 2017) ..................................................... 10

*In re Hotel TVPRA Litigation*,
2023 U.S. Dist. LEXIS 72454 (S.D. Ohio Apr. 25, 2023)................................. 7, 8

*In re Tracht Gut, LLC*,
836 F.3d 1146 (9th Cir. 2016)........................................................................ 4

*ING Bank, FSB v. Ahn*,
758 F. Supp. 2d 936 (N.D. Cal. 2010) ............................................................. 6

*Jean-Charles v. Perlitz*,
937 F. Supp. 2d 276 (D. Conn. 2013) .............................................................. 7

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018)......................................................................... 10

*Kimzey v. Yelp! Inc.*,
836 F.3d 1263 (9th Cir. 2016)........................................................................ 4

*Knievel v. ESPN*,
393 F.3d 1068 (9th Cir. 2005)....................................................................... 10

*M.A. ex rel. P.K. v. Vill. Voice Media Holdings, LLC*,
809 F. Supp. 2d 1041 (E.D. Mo. 2011)............................................................ 8

*Mindlab Media, LLC v. LWRC Int'l, LLC*,
2012 U.S. Dist. LEXIS 14769 (C.D. Cal. Feb. 6, 2012) ....................................... 5

*Nelson v. Abraham*,
29 Cal. 2d 745 (1947).................................................................................... 5

*Quintessential, LLC v. Quintessential Brands S.A.*,
2022 U.S. Dist. LEXIS 21702 (N.D. Cal. Feb. 7, 2022) (Donato, J.)....................... 5

*Sarcuni v. bZx DAO*,
664 F. Supp. 3d 1100 (S.D. Cal. 2023) ............................................................ 5

*Shook v. Atallah Grp. US Inc.*,
747 F. Supp. 3d 1321 (C.D. Cal. 2024)............................................................ 4

*Singleton v. Clash*,
951 F. Supp. 2d 578 (S.D.N.Y. 2013),
*aff'd*, 558 F. App'x 44 (2d Cir. 2014) .......... 7

*Smith v. Husband*,
376 F. Supp. 2d 603 (E.D. Va. 2005) .......... 8

*Stencel v. Lyft, Inc.*,
2024 U.S. Dist. LEXIS 155832 (N.D. Cal. Aug. 29, 2024) .......... 1

*Zeyen v. Bonneville Joint Dist.*,
114 F.4th 1129 (9th Cir. 2024) .......... 1

**STATUTES**

18 U.S.C. § 1591 .......... 6, 9

18 U.S.C. § 1595 .......... 2, 6, 7, 8, 9

18 U.S.C. § 2255 .......... 2, 6, 7, 8, 9

**RULES**

Fed. R. Civ. P. 12(b)(6) .......... 2

**INTRODUCTION**

Plaintiffs' opposition to YouTube's Motion to Dismiss makes clear that they have no fresh allegations or arguments to avoid Section 230 or state a viable claim that YouTube participated in the Jacksons' purported sex-trafficking venture. Tellingly, Plaintiffs ignore Judge Chhabria's order dismissing the prior version of their claims. They do not even try to argue that their Third Amended Complaint (TAC) overcomes the problems that Judge Chhabria identified with Plaintiffs' earlier pleading. *See Zeyen v. Bonneville Joint Dist.*, 114 F.4th 1129, 1138 (9th Cir. 2024) ("A second district judge should not reconsider the ruling of a predecessor unless," *inter alia*, "the decision is clearly erroneous and its enforcement would work a manifest injustice") (quoting *Delta Sav. Bank v. United States*, 265 F.3d 1017, 1027 (9th Cir. 2001)). And Plaintiffs abandon the only new claim against YouTube that they asserted after Judge Chhabria's dismissal order. *See* YouTube MTD (Dkt. 196) at 13-15 (moving to dismiss negligence *per se* claim on multiple grounds); Opp. (Dkt. 204) (failing to respond to YouTube's arguments about negligence *per se*). *See, e.g.*, *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 888 (9th Cir. 2010) (cleaned up) ("'A plaintiff who makes a claim ... in his complaint, but fails to raise the issue in response to a defendant's motion to dismiss ..., has effectively abandoned his claim[.]'"); *Stencel v. Lyft, Inc.*, 2024 U.S. Dist. LEXIS 155832, at *10 n.2 (N.D. Cal. Aug. 29, 2024) (same).

Plaintiffs instead largely repeat meritless old arguments. Without meaningfully engaging with YouTube's opening brief, Plaintiffs insist that their claims do not seek to hold YouTube liable as a publisher or speaker; that YouTube and Onision had an agency or partner relationship; and that this case is similar to *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544 (7th Cir. 2023). But Judge Chhabria already rejected each of those arguments, and for good reason: (1) while YouTube's connection to the underlying sex trafficking allegations is tangential, Plaintiffs seek to hold YouTube liable for core publishing activity—hosting third-party videos and advertising on Onision's channel; (2) a general revenue-sharing agreement for online videos is not a legal partnership or agency relationship that triggers vicarious liability; and (3) this case is nothing like one where a non-publisher provided customized advice and software designed to help grow the business of "the biggest and most notorious sex trafficking and pimping website in the United

States," *G.G.*, 76 F.4th at 555. Nor can Plaintiffs avoid dismissal by claiming that YouTube's motion should somehow be treated as a summary judgment motion because it discusses the terms of the YouTube Partnership Program ("YPP") Agreement. That agreement, which is the basis for Plaintiffs' claims of a legal partnership between YouTube and Onision, is incorporated by reference into the TAC and properly considered on Rule 12(b)(6) motion.

Plaintiffs' claims should be dismissed, this time with prejudice.

## I. PLAINTIFFS CANNOT EVADE SECTION 230

### A. As Judge Chhabria Already Found, Plaintiffs' Section 2255 and 1595 Claims Treat YouTube as a Publisher of Third-Party Content

With Plaintiffs having abandoned their negligence *per se* claim, what remains are claims under 18 U.S.C. § 2255 and § 1595 aimed at holding YouTube liable for the Jacksons' alleged sexual misconduct. YouTube's opening brief (at 4-9) explained that these claims would treat YouTube as a publisher of Onision's channel and thus run squarely into Section 230, as Judge Chhabria previously found (MTD Order at 1). Plaintiffs respond by ignoring Judge Chhabria's ruling and failing to engage with either YouTube's arguments or established Section 230 law.

Plaintiffs argue that they "intend to hold YouTube responsible for its own actions and its own material contribution to contributing to, enabling, and participating in or profiting from the harms committed against Plaintiffs." Opp. at 4. This hand-waving cannot be squared with the actual allegations in the TAC, which makes clear that the only purported connection between YouTube and Onision's alleged sexual misconduct is that YouTube allowed Onision to create an online channel, on which he posted videos that made him popular with young people and helped him forge relationships with his fans. Plaintiffs fault YouTube for supposedly failing to exercise sufficient control over its publishing function by allowing Onision to use that channel to publish his videos and in-video advertisements. MTD at 5 (citing ¶¶ 11-20, 33, 45, 151-154, 159, 165, 185, 203). This is core publisher liability. MTD Order at 1; MTD at 6.

Without addressing the extensive authorities YouTube cited, Plaintiffs rely on *Doe v. Internet Brands, Inc.*, 824 F.3d 846, 851 (9th Cir. 2016), to argue that Section 230 does not apply because they "do not contend any specific content or channel(s) required moderation by the

YouTube Defendants." Opp. at 4. But *Internet Brands* does not help Plaintiffs—indeed, it only underscores why the claims here are barred. *Internet Brands* involved a failure-to-warn theory, which Plaintiffs do not assert here.[1] Even more importantly, Section 230 did not apply in *Internet Brands* because the *wrongdoers had not posted any content on the defendants' website.* The plaintiffs thus did not "claim to have been lured by any posting that Internet Brands failed to remove"—and so the warnings at issue would not have required the website "to remove any user content or otherwise affect how it publishes or monitors such content." *Internet Brands*, 824 F.3d at 851; *accord Bride*, 112 F.4th 1181 (distinguishing *Internet Brands* on this basis; "plaintiff had posted her own profile on the website, and did not allege that the rapists had posted anything on the website").

Here, in contrast, the premise of Plaintiffs' claims against YouTube are that Onision maintained a YouTube channel where he posted content that, while not illegal, was supposedly "used to lure, entice, and recruit underage girls." TAC ¶ 43; *see also* MTD at 7 n.2. Plaintiffs expressly fault YouTube for allegedly taking "no action … to … force Onision to stop posting content that violated these guidelines" (TAC ¶ 175), and for failing to block third-party ads from appearing alongside videos in his channel, Opp. at 2, 7, 9. That theory has everything to do with YouTube's "efforts, or lack thereof, to edit, monitor, or remove user generated content." *Internet Brands*, 824 F.3d at 852. And it belies any suggestion that Plaintiffs' claims would not impose on YouTube a duty to make different content-moderation choices—exactly what Section 230 forecloses. *See Bride*, 112 F.4th at 1182 ("Section 230 prohibits holding companies responsible for moderating or failing to moderate content."); *Grindr*, 128 F.4th at 1154-56 (because "Grindr provided a platform that facilitated sharing of messages between users," Section 230 barred claim that Grindr participated in sex-trafficking venture by allegedly matching minor plaintiffs with adult users who raped him).

---

[1] More recent Ninth Circuit law makes clear that Section 230 bars failure-to-warn claims premised on the theory that an online platform should have warned about the risks of third-party content published on its service, *Est. of Bride v. YOLO Techs., Inc.*, 112 F.4th 1168, 1179-80 (9th Cir. 2024), *cert. denied*, 2025 U.S. LEXIS 1097 (Mar. 24, 2025), including the risks of sexual misconduct by platform users, *Doe v. Grindr Inc.*, 128 F.4th 1148, 1154 (9th Cir. 2025).

Unable to escape this established law, Plaintiffs insist that YouTube cannot "rebrand" their legal theories and that the Court must "accept as true all facts alleged in the complaint." Opp. at 4 (quoting *In re Tracht Gut, LLC*, 836 F.3d 1146, 1150 (9th Cir. 2016)). But in applying Section 230, "the name of a cause of action is irrelevant to immunity." *Bride*, 112 F.4th at 1178. And here, as the TAC makes clear, the claims Plaintiff assert impermissibly seek to hold YouTube liable "for not moderating content in some way, whether through deletion, change, or suppression." *Id*. at 1180. Plaintiffs also confuse factual allegations, which are accepted as true, and legal conclusions, which are not. Plaintiffs' own case recognizes that mere assertions are insufficient—a complaint must be dismissed where plaintiffs cannot allege "a cognizable legal theory or a factual basis supporting such a theory." *Tracht Gut*, 836 F.3d at 1151; *accord Kimzey v. Yelp! Inc*., 836 F.3d 1263, 1268 (9th Cir. 2016) ("threadbare allegations" that "are implausible on their face" are "insufficient to avoid immunity under the CDA").[2]

**B. Plaintiffs' Agency and Partnership Theories Fail**

Nor can Plaintiffs get around Section 230 by trying to hold YouTube vicariously liable via a partnership or agency theory. Here again, Plaintiffs do not acknowledge—much less refute—Judge Chhabria's prior conclusion that "the YouTube Partnership Program does not create an agency or partnership relationship between YouTube and Onision." MTD Order at 1. Nor do they engage with the authority cited in YouTube's opening brief. MTD at 9-12.

Plaintiffs repeat the legal conclusions offered by a purported expert, insisting that they should be "taken as true." Opp. at 5-6. But "legal conclusion[s] couched as [] factual allegation[s]," are not entitled to the presumption of truth. *Shook v. Atallah Grp. US Inc.*, 747 F. Supp. 3d 1321, 1328 (C.D. Cal. 2024) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (granting motion to dismiss and refusing to accept conclusory "allegations as to actual agency"); *see also*

[2] Despite using the phrase "material contribution" (Opp. at 4), Plaintiffs do not make any actual argument for how YouTube could meet the narrow exception to Section 230 that applies—not if a website "merely … augment[s] the content generally"—but only "if it contributes materially to the alleged illegality of the conduct." *Fair Housing Coun. of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1167-68 (9th Cir. 2008). Nor could they, as what little the TAC alleges on this score is legally insufficient to make YouTube the creator or developer of Onision's content. *See* MTD at 8-9.

*Quintessential, LLC v. Quintessential Brands S.A.*, 2022 U.S. Dist. LEXIS 21702, at *4 (N.D. Cal. Feb. 7, 2022) (Donato, J.) (same where allegations that a defendant was a "partner and agent" were "nothing but legal conclusions"); *Mindlab Media, LLC v. LWRC Int'l, LLC*, 2012 U.S. Dist. LEXIS 14769, at *10 (C.D. Cal. Feb. 6, 2012) (same for "unsupported" allegations that defendants were "agents" for purposes of vicarious liability). Whether Google had an actual partnership with YouTube is a legal issue, and Plaintiffs must come forward with factual allegations to make that conclusion plausible. They have not done so, and a purported expert report that fails to offer any new facts (or even define what a legal partnership is) does not move the needle.

The bottom line is that a "partnership connotes coownership in the partnership property with a sharing in the profits and losses of a continuing business." *Nelson v. Abraham*, 29 Cal. 2d 745, 749 (1947). But all Plaintiffs have here is a standard-form agreement to share revenue on ads displayed on certain online videos. That does not come close to making Onision (and all other YouTube content creators) co-owners of YouTube's business, sharing in profits and losses. *See* MTD at 10. Plaintiffs cite *Sarcuni v. bZx DAO*, 664 F. Supp. 3d 1100, 1116 (S.D. Cal. 2023), but that case only underscores the problems with their partnership theory. The court recognized that partnership requires "specific factual allegations," and explained that to "participate to some extent in the management of a business is a primary element in partnership organization, and it is virtually essential to a determination that such a relationship existed." *Id.* at 1115 (citation omitted). That standard was met in *Sarcuni* where the plaintiffs alleged that the putative partners shared profits and had governance rights over the overall entity, including the ability to "vot[e] to distribute treasury assets among themselves." *Id.* at 1116-18. Nothing like that is alleged here. Plaintiffs do not claim that Onision had the power to set YouTube policy or demand a share of its profits—or indeed had any right to participate in the management of YouTube's business. This is nothing like a legal partnership.

Plaintiffs similarly cannot save their agency theory with a bare conclusion that "YouTube has the contractual right to control Onision's conduct, both on and offline." Opp. at 5. Plaintiffs point to nothing (whether in the YPP agreement or otherwise) to support this wild assertion. And there are certainly no factual allegations suggesting that YouTube had the kind of "control that

gives rise to agency”—“comprehensive, immediate, and day-to-day.” *ING Bank, FSB v. Ahn*, 758 F. Supp. 2d 936, 941-42 (N.D. Cal. 2010). *See* MTD at 10-11.

Moreover, Plaintiffs do not even try to explain how Onision’s alleged off-platform sexual misconduct regarding Plaintiffs could have been within the scope of any conceivable partnership or agency relationship. MTD at 11. That independently rules out vicarious liability. *See also Daza v L.A. Cmty. Coll. Dist.*, 247 Cal. App. 4th 260, 268 (2016) (explaining that California courts have repeatedly rejected claims that even an actual employee’s “sexual assault or sexual harassment of a third party falls within the scope of employment”); *Bartenwerfer v. Buckley*, 598 U.S. 69, 82 (2023) (“[I]f one partner takes a wrongful act without authority or outside the ordinary course of business, then the partnership—and by extension, the innocent partners—are generally not on the hook.”).

Finally, Plaintiffs do not respond to YouTube’s showing that Section 230 would still apply even to an otherwise viable vicarious liability claim. MTD at 11-12.

### C. Plaintiffs Concede That They Cannot Make It Through the FOSTA Gateway

Plaintiffs concede that if Section 230 applies, their claim under § 1595 fails because they cannot pass through the FOSTA gateway, which requires allegations that YouTube’s “own conduct violated section 1591.” MTD at 12 (discussing *Does 1-6 v. Reddit, Inc.*, 51 F.4th 1137, 1141 (9th Cir. 2022)). Plaintiffs do not suggest that their allegations rise to that level. *See Grindr*, 128 F.4th at 1155 (“turning a blind eye to trafficking that may occur on a platform does not constitute active participation in sex trafficking”); *Doe v. Twitter, Inc.*, 2023 U.S. App. LEXIS 10808, at *5 (9th Cir. May 3, 2023) (“‘*Reddit* … requires a more active degree of ‘participation in the venture’ than a ‘continuous business relationship’ between a platform and its users.”) (quoting *Reddit*, 51 F.4th at 1142).

Plaintiffs try to sidestep the Ninth Circuit cases foreclosing similar sex trafficking claims by relying on the Seventh Circuit’s decision in *G.G. v. Salesforce*. Opp. at 9. But as Judge Chhabria explained, “*Salesforce* is readily distinguishable.” MTD Order at 2. Section 230 did not apply there because “Salesforce was simply not involved in any publishing,” but instead merely provided back-end business-support services to a third-party publisher. 76 F.4th at 567. YouTube is

unquestionably a publisher of Onision's content. And the allegations against Salesforce were worlds away from those here: "Salesforce was alleged to have sold 'software designed specifically for Backpage and provided affirmative, personalized support' that 'helped Backpage operate its business, manage relationships with existing customers, market itself to new customers, and improve profitability.'" MTD Order at 2. In contrast, "the plaintiffs here do not allege anything close to this type of business support between YouTube and Onision. The only allegation suggesting a business relationship between YouTube and Onision is the YPP, which is a standard advertising revenue agreement that YouTube offers to many content creators." *Id. G.G.* thus neither helps Plaintiffs escape Section 230 nor state a viable claim against YouTube.

## II. PLAINTIFFS' CLAIMS FAIL EVEN WITHOUT SECTION 230

The Court can stop there, as Section 230 bars Plaintiffs' claims under § 2255 and § 1595, and there is no need to go further to grant YouTube's motion. But even apart from Section 230, Plaintiffs cannot save those claims.

### A. Plaintiffs Have Not Plausibly Alleged Claims Under Section 2255

As for § 2255, Plaintiffs ignore the extensive authority ruling out vicarious liability under that statute. *See* MTD at 11; *see also Jean-Charles v. Perlitz*, 937 F. Supp. 2d 276, 281 (D. Conn. 2013) ("§ 2255 does not provide for secondary liability"); *Singleton v. Clash*, 951 F. Supp. 2d 578, 584 (S.D.N.Y. 2013), *aff'd*, 558 F. App'x 44 (2d Cir. 2014) (same); *Amy v. Curtis*, 2020 U.S. Dist. LEXIS 163599, at *5-7 (N.D. Cal. Sept. 8, 2020) (same). Instead, Plaintiffs argue that because the statute "is silent on *who* may be sued," there is no "limitation on who could be sued." Opp. at 7. But this flouts the established principle that, under federal law, "statutory silence on the subject of secondary liability means there is none." *Boim v. Holy Land Found. for Relief & Dev.*, 549 F.3d 685, 689 (7th Cir. 2008) (en banc).

Plaintiffs' cases (Opp. 7 n.2) do not support their position. *Doe No. 8 v. Royal Caribbean Cruises, Ltd.*—the only case Plaintiffs cite that allowed a vicarious claim under § 2255—relied on the "principle of federal maritime law" that makes a cruise ship carrier strictly liable for an assault by its crew against its passengers. 860 F. Supp. 2d 1337, 1340 (S.D. Fla. 2012). That principle does not apply here. *In re Hotel TVPRA Litigation* says only that § 2255(a) "does not require a

defendant to be *criminally convicted* of the predicate offense." 2023 U.S. Dist. LEXIS 72454, at *28 (S.D. Ohio Apr. 25, 2023) (emphasis added). YouTube has not argued otherwise. But even that case makes clear that a civil plaintiff must "prove by a preponderance of the evidence that the *defendant* violated the enumerated statute." *Id.* (emphasis added); *accord Doe v. Liberatore*, 478 F. Supp. 2d 742, 755 (M.D. Pa. 2007) (same); *Smith v. Husband*, 376 F. Supp. 2d 603, 613 (E.D. Va. 2005) (same). That is precisely what is missing here. *Doe v. Schneider* did not contemplate vicarious liability but addressed whether defendants can be held liable for the *criminal offense* of aiding and abetting. 2013 U.S. Dist. LEXIS 140274, at *20 (E.D. Pa. Sept. 30, 2013). *M.A. ex rel. P.K. v. Vill. Voice Media Holdings, LLC*, 809 F. Supp. 2d 1041 (E.D. Mo. 2011) does not embrace vicarious liability either. The court dismissed § 2255 and 1595 claims, and to the extent it addresses secondary liability at all, it suggests that aiding and abetting claims cannot be brought against platforms under these circumstances. *Id.* at 1054.

In any event, as discussed above, Plaintiffs have no basis for asserting vicarious liability here even if it were theoretically available under § 2255, and such a claim would in any event still be barred by Section 230. MTD at 13.

**B. Plaintiffs Have Not Plausibly Alleged Claims Under Section 1595**

Plaintiffs' § 1595 claims would also fail even without regard to Section 230. Plaintiffs do not rehabilitate the TAC's failure to plead core requirements of such a claim: (1) YouTube did not participate in a "venture" engaged in sex trafficking simply by allowing Onision to post and monetize videos that were themselves not unlawful; and (2) YouTube did not have knowledge that the Jacksons were alleged in sex trafficking, and certainly not as to Plaintiffs themselves. MTD at 13. Instead, Plaintiffs rely on *G.G.*, 76 F.4th at 548 and *Fleites v. MindGeek S.A.R.L.*, 617 F. Supp. 3d 1146 (C.D. Cal. 2022). Even assuming those cases apply the correct legal standard (*but see Doe v. Red Roof Inns, Inc.*, 21 F.4th 714, 719 (11th Cir. 2021)), neither case is on point. As discussed above, the allegations in *Salesforce* have no analogue here. MTD Order at 2. Nothing in the TAC remotely suggests that YouTube provided "direct support" or "specific business advice" to Onision to enhance his ability to groom underage girls. *Doe 1 v. Apple, Inc.*, 96 F.4th 403, 416 (D.C. Cir. 2024) (affirming dismissal of § 1595 claim and distinguishing *Salesforce* because plaintiffs "have

not alleged a factual basis to infer a common purpose, shared profits and risk, or control ... nor do they allege the Tech Companies and the cobalt suppliers had the type of direct and continuous relationship that existed between the parties in *Salesforce*").

*Fleites* does not help Plaintiffs either, even assuming it remains good law.[3] The plaintiff in *Fleites* sued MindGeek (a pornography website) and Visa. The court allowed a beneficiary claim against MindGeek based on allegations that it knowingly monetized specific instances of child pornography, even after "[p]laintiff quite literally told MindGeek herself that she was a minor in her videos." *Fleites*, 617 F. Supp. 3d at 1160-61. Nothing remotely comparable is alleged here. But the *Fleites* court *dismissed* a beneficiary claim against Visa because it had no "continuous relationship with or tacit agreement with Plaintiff's primary traffickers" and because the plaintiff's allegations "do not reflect that Visa had any knowledge—constructive or otherwise—of Plaintiff, her videos, or her age in the videos." *Id.* at 1161-62.

## III. PLAINTIFFS CANNOT TRANSFORM YOUTUBE'S MOTION INTO ONE FOR SUMMARY JUDGMENT

Finally, Plaintiffs argue that YouTube's motion to dismiss must be treated as a motion for summary judgment because YouTube attached a copy of its standard, two-page YPP Agreement. Opp. at 13-14. This is surprising because the YPP Agreement has been referenced in each of Plaintiffs' prior complaints and discussed in YouTube's prior motions without issue. Indeed, YouTube attached the same YPP Agreement to its motion to dismiss the FAC (Dkt. 112-2), triggering no objection from Plaintiffs (Dkt. 114 at 1, 3)—or from Judge Chhabria who described the agreement in granting YouTube's motion. MTD Order at 1-2 ("YPP is simply a revenue-sharing agreement," which is "not enough to show that a partnership was formed[.]").

---

[3] *Fleites* applied a more lenient standard to claims against websites under FOSTA, which was subsequently abrogated by the Ninth Circuit. *Fleites*' analysis of the § 1595 claim against MindGeek was overtly based on the premise (*see* 617 F. Supp. 3d at 1160) that "when a plaintiff seeks to impose civil liability under Section 1595 based on a violation of Section 1591(a)(2), the 'known or should have known' language of Section 1595 (rather than the actual knowledge standard of Section 1591) applies." *Doe v. Mindgeek USA Inc.*, 558 F. Supp. 3d 828, 836 (C.D. Cal. 2022). That was exactly what the Ninth Circuit rejected in *Reddit*. 51 F.4th at 1141.

Plaintiffs' objection is not well taken in any event. The YPP Agreement may (again) be considered on a motion to dismiss because it is incorporated by reference in the TAC "[Plaintiffs'] claim depends on the contents of [the] document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); *accord Henderson v. Select Portfolio Servs.*, 2016 U.S. Dist. LEXIS 35515, at *1 n.1 (N.D. Cal. Mar. 17, 2016) (applying incorporation by reference where plaintiff relied on, but did not explicitly allege contents of, a deed of trust), *aff'd*, 691 F. App'x 897 (9th Cir. 2017). The TAC cites the YPP Agreement several times, in a (misguided) effort to establish that Onision's offline behavior was part of a purported legal partnership or agency with YouTube. TAC ¶¶ 21, 23, 29, 94, 96, 97, 116. Plaintiffs even cite the specific percentage of revenue shared under the YPP Agreement. TAC ¶ 96 ("YouTube pays the YouTube Partner 55% of advertising revenue from their page"); Dkt. 196-2 § 1(a) ("YouTube will pay you 55% of net revenues"). And, far from disputing authenticity, Plaintiffs' Opposition relies upon the agreement itself—including it within the first paragraph. Opp. at 1-3, 5-7, 10-11. Plaintiffs' position seems to be that they can rely on the YPP agreement to support their claims but resist consideration of what the YPP agreement actually says to avoid dismissal of those same claims. This is precisely what the incorporation-by-reference doctrine is designed to avoid. The rule "prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018). While not necessary to grant YouTube's motion, YouTube's inclusion of the YPP does not convert that motion into a motion for summary judgment.

**CONCLUSION**

After two years and multiple amendments, it is clear that Plaintiffs cannot allege viable claims against YouTube. The Court should dismiss those claims without further leave to amend.

Respectfully submitted,

Dated: May 29, 2025

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: */s/ Brian M. Willen*
Brian M. Willen
E-mail: bwillen@wsgr.com

*Attorneys for Defendants*
GOOGLE LLC and YOUTUBE, LLC