1

2

3

4 UNITED STATES DISTRICT COURT

5 NORTHERN DISTRICT OF CALIFORNIA

6

7 In re YouTube Trafficking Litigation

Case No.  23-cv-05523-JD

8

9 **ORDER RE DISMISSAL AND TRANSFER**

10

11

12

13 Plaintiffs sued Google LLC, YouTube LLC, and pro se individuals James Jackson,

14 otherwise known as Onision, and Lucas Jackson, in connection with alleged sexual victimization

15 and exploitation suffered at the hands of the individual defendants.  *See generally* Dkt. No. 193

16 (Consolidated Third Amended Complaint or TAC).  This order resolves Google and YouTube's

17 request to dismiss the complaint as to them.  Dkt. No. 196.  The governing standards have been

18 discussed at length in the Court's prior orders and are herein incorporated.  *See, e.g.*, *McDonald v.*

19 *Kiloo ApS*, 385 F. Supp. 3d 1022, 1030 (N.D. Cal. 2019).

20 The parties' familiarity with the record is assumed.  The claims against Google and

21 YouTube are dismissed with prejudice.  The claims against the pro se Jackson defendants are

22 transferred to the Western District of Washington, where they reside and venue is proper.  28

23 U.S.C. § 1404(a).

24 Section 230 of the Communications Decency Act of 1996 provides that interactive

25 computer service providers are immune from state law liability where a plaintiff seeks to treat the

26 provider as a publisher of third-party content.  47 U.S.C. § 230(c)(1).  The Court will consider

27 "whether a plaintiff's '*theory of liability* would treat a defendant as a publisher or speaker of third-

28

United States District Court
Northern District of California

party content.'" *Calise v. Meta Platforms, Inc.*, 103 F.4th 732, 740 (9th Cir. 2024) (emphasis in original) (citation omitted).

It is plain from the allegations that plaintiffs seek to treat YouTube (and by extension Google) as a publisher or speaker of Onision's third-party content. The allegations center on how Onision posted video content to his YouTube channels, how that content is said to have targeted and garnered underage audiences which gave him access to underage fans, and how YouTube derived ad revenue from the online traffic to Onision's videos. In short, plaintiffs' theory of liability would require Google and YouTube to act as a monitor of third-party content, which is precisely the sort of liability that Section 230 prohibits. *See Doe v. Grindr Inc.*, 128 F.4th 1148, 1153 (9th Cir. 2025).

Plaintiffs try to sidestep Section 230 by saying that YouTube is liable "for its own actions" on the basis of an alleged agency relationship or partnership between YouTube and Onision. TAC ¶ 175; *see* Dkt. No. 204 at 2-4, 7, 9. Plaintiffs rely on the YouTube Partnership Program (YPP) agreement for this theory.

The point is not well taken. The TAC does not present allegations that permit the reasonable inference of an agency relationship between Onision and YouTube. Plaintiffs say YouTube had the "contractual right to control Onision's conduct, both on and offline," Dkt. No. 204 at 5, but the TAC does not so allege. The YPP agreement, which is a standard revenue-sharing agreement between a platform that hosts third-party content and thirty-party content creators, also does not support that assertion. *See* Dkt. No. 196-2.[1] Nor does the TAC or the YPP agreement plausibly establish there existed a partnership between YouTube and Onision under California law. Revenue-sharing alone does not show the existence of a partnership, *see* Cal. Corp. Code § 16202(c)(2), and there are no plausible allegations that Onision or YouTube participated in the "management" of one another's business, *Dickenson v. Samples*, 104 Cal. App.

---

[1] The YPP agreement is extensively referenced in the TAC and "forms the basis of" plaintiffs' claims because of the allegations that YouTube is liable by virtue of a partnership or being in an agency relationship with Onision. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (quoting *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003)). The YPP agreement was incorporated into the TAC by reference and may be considered by the Court. *See id.*

2d 311, 315 (1951); *see also Holmes v. Lerner*, 74 Cal. App. 4th 442, 454 (1999) ("[T]he distinguishing feature of partnership is association to carry on business together, not agreement to share profits." (citation omitted)). Plaintiffs' expert report, *see* Dkt. Nos. 181-1; 182-1, did not plausibly establish otherwise. *See Cao v. Bank of Am.*, No. 24-cv-01195-JD, 2025 WL 660248, at *1 (N.D. Cal. Feb. 28, 2025) ("The Court need not 'accept as true allegations that are merely conclusory, unwarranted deductions of fact.'" (citation omitted)).

There is an exception to Section 230's grant of immunity for civil claims brought under 18 U.S.C. § 1595 "if the conduct underlying the claim constitutes a violation of section 1591 of that title." 47 U.S.C. § 230(e)(5)(A). "A plaintiff bringing an action under [Section 1595], as allowed by [Section 230(e)(5)(A)], must plausibly allege that the defendant either was a knowing perpetrator of sex trafficking, or was a person that knowingly benefitted from the sex trafficking." *Grindr*, 128 F.4th at 155. "The defendant's 'own conduct' must violate" Section 1591. *Id.* "A defendant's own conduct violates [Section 1591] when the defendant 'actually engaged in some aspect of the sex trafficking,'" but "turning a blind eye to trafficking that may occur on a platform does not constitute active participation in sex trafficking." *Id.* (citations omitted).

For this claim, plaintiffs rely on allegations about YouTube's general video-search algorithms, control over ad revenue generated from viewership of Onision's content per the YPP agreement, and instances in which YouTube was notified via complaints that Onision was violating its terms of service. *See* Dkt. No. 204 at 9-12. The claim is directly foreclosed by *Grindr* because these allegations, taken as true, show no more than that YouTube "provided a platform that facilitated the sharing of [videos] between users" and "merely turn[ed] a blind eye to the source of its revenue." 128 F.4th at 1155. Plausible allegations that YouTube "generally benefitted from sex traffickers' use of [its platform]" do not establish that YouTube's "own conduct" violated section 1591. *Id.* at 1156. Consequently, plaintiffs' claims under Section 1595 are barred by Section 230.

A few loose ends warrant discussion. Plaintiffs did not respond to YouTube and Google's contention that the state law claims for negligence per se should be dismissed. Dkt. No. 196 at 13-15; TAC ¶¶ 578-84. Accordingly, all claims against YouTube and Google are dismissed with

prejudice.  "The Court's discretion to dismiss with prejudice is 'particularly broad' after prior leave to amend has been granted."  *Louis D. Brandeis Ctr., Inc. v. Regents of the Univ. of Cal.*, No. 23-cv-06133-JD, 2025 WL 974983, at *2 (N.D. Cal. Mar. 31, 2025) (citation omitted). Plaintiffs had "ample notice" of the deficiencies in their federal claims, *see* Dkt. No. 118 (dismissing with leave to amend for substantially the same reasons), so "another bite at the apple is not warranted on this record."  *Brandeis*, 2025 WL 974983, at *2 (cleaned up) (citation omitted).  With respect to the state law negligence per se claim, further amendment would be futile, particularly where plaintiffs did not endeavor to defend it or suggest how they could cure the asserted deficiencies.

   **IT IS SO ORDERED.**

Dated: June 24, 2025

_____
JAMES DONATO
United States District Judge